IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| CHARLES MORROW, MICHAEL OVERTON, JAMES MARTY SMITH, MICHAEL SMITH, MARK MURPHY and DWAYNE CLEVELAND, Individually and on behalf of similarly situated employees, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | 3:07-CV617-MHT |
| | ) | |
| FLOWERS FOODS, INC., FLOWERS BAKING CO. OF OPELIKA, LLC | ) ) ) | |
| Defendants. | ) ) | |

PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO CONDITIONALLY
CERTIFY AND FACILITATE CLASS NOTICE

COME NOW Plaintiffs, by and through their counsel, respectfully submit this

Memorandum of Law and the Affidavits of Charles Morrow and Michael Overton in Support of

their Motion to Conditionally Certify Class and Facilitate Class Notice to the class as set forth in

the notice attached to the Plaintiff's Motion.

## I. BACKGROUND

Plaintiffs are all current and/or former employees of Flowers Foods and Flowers Baking

Co. of Opelika and worked in their Montgomery, Alabama, Roanoke, Alabama and LaGrange,

Georgia warehouses that regularly drove established intrastate routes, which did not cross state

lines.  (Compl. ¶¶ 3-4 and 45.)

Plaintiffs seek conditional certification of a class of:

All current and former route distributors, or other persons performing a service
and/or delivery function on a non-hourly basis from July 2, 2004 to the present,
who worked overtime while employed at Flowers Foods subsidiaries, and were

not compensated for such overtime work at an amount equaling one and one-half times the employee's regular rate of pay. Such persons shall not include persons who, as part of their duties, cross state lines to make deliveries.

Plaintiffs each allege that while serving as route distributors and performing service and/or delivery functions for Flowers Foods, Inc. and Flowers Baking Company of Opelika, LLC (collectively "Defendants" or "Flowers") they performed work on a non-hourly basis, were not exempt from the Fair Labor Standards Act's ("FLSA") wage and hour requirements and therefore were improperly denied compensation for hours worked in week in excess of forty (40) in violation of the FLSA. (Comp. ¶¶37, 44, 45 and 55.)

Plaintiffs further allege that Flowers Foods Inc. and Flowers Baking Company of Opelika jointly engaged in the acts that resulted in the violations of the FLSA in that Flowers Foods Inc. established the policies and guidelines which Flowers Baking Company of Opelika and other subsidiaries implemented regarding the treatment by Flowers of Plaintiffs and other similarly situated route distributors as independent contractors, when in fact, they were employees, and thus entitled to overtime compensation. In fact, Plaintiffs allege that Flowers Foods, Inc.'s policies concerning the route distributor position were the same in each of its four regions. Both Flowers Foods, Inc. and Flowers Baking Company of Opelika exercised control over Plaintiffs, requiring them to work particular hours, are directly to a particular auto dealer to purchase their delivery vehicle, to lease hand-held computers from Flowers to track purchases or bakery products, to deliver bakery purchasers that are selected by Defendants. Moreover, other factors such as the fact that these route distributors, including Plaintiff Overton, were in fact previously Flowers employees, Flowers' control over national purchasers of bakery products such as Wal-Mart or Winn Dixie and their ability to negotiate prices and enter into contracts with such entities in Plaintiffs' territories clearly supports conditional certification of a Class of route distributors.

Thus, notice should be provided to each present and former route distributor to allow them the opportunity to elect to participate in this class action and potentially obtain compensation for the work they performed.

## II. ARGUMENT

### A.    Plaintiffs have met the low threshold of Establishing a Collective Action Under the FLSA and are Entitled to Conditional Class Certification

The FLSA authorizes collective actions on behalf of similarly situated persons under 29 U.S.C. § 216(b).  Unlike F.R.C.P. 23 and its requirements that provide that class members are participants in a class action unless they opt out of the class, in order for a person to join a collective action pursuant to 29 U.S.C. § 216(b), they must file a written consent with a court to join the lawsuit.  *Garner v. G.D. Searle Pharms. & Co.*, 802 F. Supp. 418, 420 (M.D. Ala. 1991). Thus, if a case is conditionally certified, a plaintiff is then entitled to send notice to potential class members requesting that they join the litigation.  *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

Because the requirements are unlike those in F.R.C.P. 23 class actions, the threshold for conditional certification is low.  To initiate a collective action, a plaintiff need only show that she or he is bringing the action for herself or himself and other similarly situated employees. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).  In addition, 29 U.S.C. § 216(b)'s similarly situated requirement is less stringent than joinder under Fed. R. Civ. P. 20 or the requirement for separate trials under Fed. R. Civ. P. 42(b).  *Grayson,* 79 F.3d at 1096.  The Eleventh Circuit in *Grayson* noted that the requirements needed to establish a § 216(b) collective action are independent of and unrelated to the Fed. R. Civ. P. 23 class action requirements.  *Id.* at 1096 n.12.

Indeed, a plaintiff's position does not need to be identical, only similar to the positions held by other members of the class. *Grayson*, 79 F.3d at 1096 (quoting *Sperling v. Hoffman La-Roche*, 118 F.R.D. 392, 407 (D.N.J. 1988). Here, however the class Plaintiffs seek to certify includes individuals with the exact same job title -- route distributors.

Plaintiffs' claims are similarly situated to those of the other class members as they are all route distributors in Flowers Foods service areas. Moreover, Plaintiffs' claims are common to one another as they are based on Defendants' failure to recognize and properly pay overtime for the work performed by route salespersons like plaintiffs Morrow, Overton, James Marty Smith, Michael Smith, Cleveland and Murphy. (Compl. ¶¶37,44).[1] A plaintiff is not required to show a particular plan or policy to demonstrate the other employees are similarly situated. *Marsh v. Butler County Sch. Sys.*, 242 F.Supp.2d 1086, 1091 (M.D. Ala. 2003). Rather, a plaintiff need only show some rudimentary showing of commonality with the potential claims of the class to establish that others are similarly situated to the Plaintiff.

Class members are considered "similarly situated" for the purposes of certifying a collective action "when a discrete group of employees sufficiently provides evidence of a pattern of FLSA violations." *Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 – 04 (M.D. Ala. 2003).

The Eleventh Circuit has established a two-pronged procedure for certifying collective actions. At this stage of the litigation, only the first part is relevant.

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.

---

[1] Since filing this lawsuit, Plaintiffs have had four additional Plaintiffs amended to become party plaintiffs. The affidavits submitted here with this memorandum are from two route distributors who worked at different warehouses but detail similar experiences.

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

*Hipp v. Liberty Nat'l Life Ins.*, 252 F.3d 1208, 1218 (11th Cir. 2001). (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 – 14 (5th Cir. 1995)).

Plaintiffs are making this Motion at the notice stage without the benefit of discovery, and, therefore, this Court should make its determination based on the pleadings and the consents to join submitted. As set forth herein as well as the information submitted in support thereof, Plaintiffs have plead sufficient evidence in support of a conditional class certification as they have met the lenient standards discussed above. In *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 360 – 361 (M.D. Ala. 1999), the plaintiffs held a variety of jobs at the restaurant, but all claimed FLSA overtime and minimum wage violations for restaurant policies that included requiring workers to perform duties outside of their job description while off the clock and clocking workers in and out without their knowledge. The court granted the plaintiffs' motion for class certification of all hourly employees based on affidavits and consents to become party plaintiffs, despite the defendant's argument that workers who held different jobs in the restaurant could not be similarly situated. *Id.* at 364 – 365.

Like the plaintiffs in *Harper*, Plaintiffs and the class here are similarly situated. Indeed the Plaintiffs here are much more similarly situated than were the plaintiffs whose class was conditionally certified in *Harper* because all the potential class members hold the same route distributor position and have been treated the same by Flowers with respect to their overtime. Accordingly, for the reasons described below, Plaintiffs' Motion for Conditional Class Certification should unequivocally be granted.

Plaintiffs have alleged that the policies and procedures, created by Flowers Foods, Inc., and by Flowers Foods' subsidiaries, such as Flowers Baking Co. of Opelika, created the independent route distributor position from a position that was once an employee position in order to avoid the requirements of the FLSA. Compl. ¶ 14, 15. Additionally, Flowers Foods, Inc. and Flowers Baking Co. of Opelika seek out new customers on national and regional levels and can negotiate directly with customers within individual route distributor territories. Compl. ¶ 17. Defendants' behavior makes a nationwide class appropriate as the parent company's behavior perpetuates the imposition of the FLSA violations plaintiffs allege they have suffered.

Two (2) Plaintiffs joined this suit originally, both claiming violations of FLSA wage and hour laws. (Compl. ¶¶3-4.) Both Plaintiffs and potential class members reported to work at the Montgomery, Alabama and Roanoke, Alabama warehouse or conducted work related to this facility. (Compl. ¶¶31-44.)  The policies that resulted in violations of the FLSA were applied and continue to be applied in the same manner to all potential plaintiffs as they were to both Plaintiffs. (Compl. ¶¶37 and 44.) The job requirements and duties of Plaintiffs and potential class members all involve performing a service and/or delivery function. (Compl. ¶¶ 31-45.) None of the services Plaintiffs or class members provide involve transportation of goods over interstate lines. (Compl. ¶45.)  But, Plaintiffs and class members are paid under the same system that has resulted in unpaid overtime wages for time spent working. (Compl. ¶¶ 45.)

The evidence submitted by the Plaintiffs is consistent with prior class certifications, and is sufficient to meet the lenient standard imposed by the court for conditional class certification in an FLSA collective action under § 216(b). *Hipp*, 252 F.3d at 1217-18.

**B.    Plaintiffs are Entitled to Judicial Intervention to Facilitate Class Notification**

After meeting its burden for conditional class certification, Plaintiffs seek the Court's assistance in identifying and notifying potential class members of their right to join this collective action.

Although the actual number of current and former Flowers employees working out of the bakeries and warehouses of Flowers' subsidiaries under this same policy created by Flowers Foods is unknown, Plaintiffs believe the potential class members to number in the thousands. (Compl. ¶¶26, 58-9.)

However, Plaintiffs do not have the capability to locate and notify each and every potential class member without the Court's intervention.   Therefore, Plaintiffs request the Court's assistance to facilitate class notice, and to use the Court's authority and recognition to inform potential class members of their rights.

The FLSA does not require Plaintiffs to obtain judicial approval before seeking other similarly situated persons to join the collective action.  However, Plaintiffs may request judicial involvement, and this Court is permitted to assist Plaintiffs in giving notice to other similarly situated persons of their right to join the lawsuit.  *Garner*, 802 F. Supp. at 421.

In *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1568 (11th Cir. 1991), the Court of Appeals for the Eleventh Circuit following the Second Circuit, ruled that a district court has the power to give notice to potential class members of their right to join an FLSA collective action and establish the procedures to facilitate notice of class member's rights to opt in. *Id.*.  In so holding, the court noted that the exercise of such power will best serve the "broad remedial purpose of the Act." (quoting *Braunstein v. E. Photographic Laboratories*, 600 F.2d 335, 336 (2nd Cir. 1978)). *Id.* At 1567.

The *Dybach* court established a two-pronged test to determine if intervention in the notice procedure is appropriate.  The Court "should satisfy itself that [(1)] there are other employees of [Flowers] who desire to 'opt-in' and [(2)] who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Id.* at 1567 – 68.  As noted in the preceding section, the test for similarly situated is a very lenient one, and the positions held by similarly situated employees need only be similar, not identical. *Grayson*, at 79 F.3d 1096.

As stated in the preceding section, Plaintiffs and potential members of the class all meet the lenient standard imposed by the court for similarly situated persons under § 216(b).  The violations of the FLSA wage and hour laws claimed by Plaintiffs are based on company policies that apply to all route distributors eligible for this suit.  All Plaintiffs and class members provided the same services, and were subjected to the same wage payment policies.  (Compl. ¶¶ 45.)

Since the commencement of the action by Mr. Morrow and Mr. Overton a current and a former employee of Flowers has signed consents to join the action.  Plaintiffs believe that additional individuals will likewise seek to join or opt in to the litigation.  At this stage of the litigation a court's decision "typically results in 'conditional certification' of a representative class." *Hipp*, 252 F.3d at 1218.  As Plaintiffs have submitted sufficient evidence to meet the burden of establishing conditional class certification, and intervention by this Court in the notice procedure is appropriate.

**C.    Judicial Supervision of Notice to Potential Class Members is Warranted**

As discussed above, a district court has the power to provide notice to "opt-in" class members as the exercise of such power is the best way to serve the remedial purpose of the FLSA. *Dybach*, 942 F.2d at 1568.  In order to exercise its power and best serve the purpose of

the Act, the district court must determine the procedures necessary to give notice to the class. *Id.* at 1567 – 68.

In *Hoffmann-LaRoche Inc. v. Sperling,* 493 U.S. 165, 169 – 170 (1989), the Supreme Court upheld the district court's authority to collect names and addresses of potential opt-in class members and facilitate notice. The numerous plaintiffs and requirement of court-filed written consents make the court's involvement in a collective action under § 216(b) "inevitable." *Id.* at 171. The district has discretion on when it wants to get involved, but as noted by the Court in *Hoffmann-LaRoche,* one of the most significant insights acquired by trial judges "in recent years is the wisdom and necessity for early judicial intervention in the management of litigation." *Id.* (citing Robert F. Peckham, *The Federal Judge as a Case Manager: The New Role in Guiding a Case from Filing to Disposition,* 69 Cal. L. Rev. 770 (1981); Schwarzer, *Managing Civil Litigation: The Trial Judge's Role,* 61 Judicature 400 (1978)). By intervening in a collective action at the beginning and knowing the contours of the case, a trial court will be better prepared to efficiently manage the lawsuit.[2] *Hoffman-LaRoche,* 493 U.S. at 171 – 172.

There are a number of goals associated with early judicial oversight of the notice process, including the prevention of misleading communications and abuse of the class device. *Id.* at 171. In addition, when the district court gets involved early it ensures that timely notice is received by potential class members, and it helps prevent multiple individual suits from arising out of the same event. *Id.* at 169. The court can also speed up the resolution of the case by setting a cut-off date for receipt of the consents to join. *Id.* at 171.

There are perhaps hundreds of potential opt-in plaintiffs in this case. Plaintiffs have recently submitted a motion for leave to amend the complaint with 4 new plaintiffs, which was

---

[2] In *Hoffman-LaRoche,* the court was dealing with an ADEA action, but the ADEA has adopted the FLSA § 216(b) collective action requirements. *Hoffman-LaRoche,* 493 U.S. at 170.

granted on September 20, 2007. Plaintiffs do not have the ability to locate the names and addresses of every potential class member, and the Court's intervention at this stage of the litigation will benefit all parties involved. The Court's assistance in facilitating this class notice will further judicial economy, conserve resources of the parties and ensure the rights of every potential class member are protected.

### D.    Plaintiffs' Proposed Judicial Notice Procedure is Warranted

The Eleventh Circuit has left "it to the district court to establish the specific procedures to be followed" when giving notice to potential opt-in plaintiffs. *Dybach*, 942 F.2d at 1568. Therefore, after demonstrating that Plaintiffs have met the burden for judicial intervention in the notice procedure, Plaintiffs propose the following procedures to facilitate class notice and promote judicial economy.

Plaintiffs respectfully request the Court to require Flowers Foods, Inc. and Flowers Baking Co. of Opelika, to produce a computer readable list to Plaintiffs of the names and addresses of all current and former route distributors in each of Flowers Foods Inc.'s service areas who regularly drove an established route which did not cross state lines during the period from July 2, 2004 to the present.

In the alternative, if the Court believes that notice to all route distributors in Flowers Foods Inc.'s service areas is premature at this time, Plaintiffs request the Court require Flowers Foods, Flowers Baking Co. of Opelika, and its other bakeries throughout the state of Alabama produce a list with the names and addresses of all current and former employees who while working as employee drivers regularly drove an established route within the states of Alabama and Georgia which did not cross state lines during the period from July 2, 2004 to the present.[3]

---

[3] If the Court were to allow notice to proceed in this alternative manner, Plaintiffs request to reserve their rights to seek certification of route distributors in other states Flowers Foods employs route distributors.

In addition, the Plaintiffs also request that if it is known to the Defendant that a current or former employee's first and/or preferred language is one other than English, the person's preferred and/or first language should be provided alongside their other information. This list shall be used to determine potential opt-in class members who will receive notice of their right to join the collective action.

Attached to Plaintiff's Motion to Conditionally Certify a Nationwide Class and Facilitate Class Notice as Exhibit 1, is the proposed Notice of a Plaintiff's Right to Opt-In to Collective Action against Flowers Foods, Inc. and Flowers Baking Co. of Opelika, LLC. For the reasons set forth herein, the Plaintiffs request for the Court to approve the Notice. The Court's approval of the proposed Notice will help ensure that all potential class members get a timely notification of their rights. By approving the proposed Notice, the Court will help ensure its accuracy, and its legitimacy to potential plaintiffs who may be uncertain of their rights under the FLSA or who fear retaliation by their employer.

### III. CONCLUSION

For the reasons set forth herein as well as in the supporting affidavits, Plaintiffs respectfully request that this Court grant their Motion to Conditionally Certify a Class and Facilitate Class Notice, and to approve the proposed Notice attached thereto. The Court's intervention at this stage of the litigation is crucial for the effective management of this case and to protect the rights of potential plaintiffs.

Respectfully submitted,

/s/ Greg L. Davis
Greg L. Davis, ASB-8134-I71G
One of the Attorneys for Plaintiffs

**OF COUNSEL:**

THE LAW OFFICES OF GREG L. DAVIS
6987 Halcyon Park Drive
Montgomery, Alabama 36117
334-832-9080
gldavis@knology.net

WHATLEY DRAKE & KALLAS, LLC
2001 Park Place North, Suite 1000
Birmingham, Alabama 35203
Telephone: (205) 328-9576
Joe R. Whatley, Jr. (ASB-1222-Y69J)
jwhatley@wdklaw.com
Amy A. Weaver (ASB-6878-Y82A)
aweaver@wdklaw.com

WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, New York 10036
212-447-7007
Joseph P. Guglielmo
jguglielmo@wdklaw.com

WOOD LAW FIRM, LLC
2900 1st Avenue South, Suite A
Birmingham, Alabama 35233
205-612-0243
E. Kirk Wood (ASB-2937-W55E)
ekirkwood1@cs.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 21st day of September, 2007, I electronically filed the foregoing Memorandum of Law in Support of Plaintiff's Motion to Conditionally Certify and Facilitate Class Notice with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Sandra B. Reiss
Ogletree, Deakins, Nash, Smoak, & Stewarts, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203-2118
205-328-1900
Sandra.Reiss@odnss.com

Kevin P. Hishta
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
600 Peachtree Street, NE
Suite 2100
Atlanta, Georgia 30308
404-881-1300
Kevin.Hishta@ogletreedeakins.com

        /s/ Greg L. Davis
        Greg L. Davis, ASB-8134-I71G

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES MORROW, <br> and MICHAEL OVERTON, <br> individually and on behalf of other <br> similarly situated employees, | ) <br> ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | Civil Action No.: |
| v. | ) <br> ) | 3:07-CV617-MHT |
| FLOWERS FOODS, INC., and <br> FLOWERS BAKING COMPANY OF <br> OPELIKA, LLC. | ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

AFFIDAVIT OF CHARLES MORROW

STATE OF ALABAMA)

MONTGOMERY COUNTY)

I, CHARLES MORROW declare as follows:

1.    My name is Charles Morrow. I am over the age of twenty one (21), and currently reside at 113 Turnberry Court, Prattville, Alabama 36066. I am of sound mind and am fully competent to execute this Affidavit. I have personal knowledge of all the facts contained herein, and if called to testify, I am competent to testify to the same. I submit this affidavit in support of the Plaintiff's Motion to Conditionally Certify Class and Facilitate Class Notice in the above styled case.

2.    I was formerly hired by the Defendant, Flowers Baking Company of Opelika, LLC, ("Flowers") out of their Montgomery, Alabama warehouse as an independent contractor. During the period of 1994 to the end of 2005, I was a route distributor who exclusively delivered Flowers products to stores within a territory local to

Montgomery, Alabama. My route was within the state of Alabama and did not require me to cross state lines.

      3.     I am a Plaintiff if the above-styled case against my former employer, Flowers Foods, Inc. and Flowers Baking Company of Opelika, LLC.

      4.     All route distributors are provided with a handheld computer by Flowers which is used to register each delivery, the order of the deliveries, the amount of product to be provided to each customer, and the amount of out-of-code product or stale bread being returned to the warehouse.

      5.     In a typical day, I arrived at the warehouse between 3:30 and 4:00 a.m. Upon arrival, I checked and loaded the Flowers product onto the truck, which took about an hour. I then started my route. I usually took somewhere between thirty (30) minutes and an hour for lunch. At the end of the day, I returned to the warehouse, unloaded the out of code product, filled out paperwork regarding issues such as the amount of each delivery and out of code bread, and hooked up the personal hand-held computer to its docking station in the warehouse. I finished my day around 3:00 p.m.

      6.     All route distributors or persons serving in service and and/or delivery function  are required to ensure that each of their deliveries are correct, load up their trucks, drive their routes, and return to the warehouses with stales and to unload their trucks and dock their handheld computers. Though these are part of my normal job duties, I am not compensated for all the hours I work during a typical day.

      7. I was originally hired as an employee in 1980, where I worked until 1994 when they my position changed to being an independent contractor. My job duties and

2

responsibilities as an employee were the same as my job duties and responsibilities as an independent contractor.

8.    When the position was changed to that of an independent contractor, , Flowers continued to retain control over my job duties and responsibilities and exercise authority of what stores I made deliveries to.   I cannot negotiate or change the price of product on my route, but Flowers can without telling me about it.  Flowers determined where I took my out of code or stale bread and could enter my exclusive territory to enter into contracts with stores to supply them bread at any time.

9.    I generally spent ten to eleven hours a day to finish my route and take back the stales to the warehouse.

10.    I worked five days a week, which can add up to ten or more hours a week in unpaid wages.

11.    I wanted to become part of this suit because I felt like I was being cheated by my employer, Flowers, out of money I earned for hours I worked.  I know that the hours I worked benefited Flowers Foods, and, therefore, I should get compensated for the time I spend performing functions essential to my job duties.  There were several other route distributors who are similarly situated to me, who agree with my preceding statement, and who want to get paid for the time they work.  Dwayne Cleveland has signed a consent to join because I spoke with him about the case.

12.    I believe several of the route distributors, both past and present, do not fully understand that Flowers' practices violated their rights guaranteed by the government and who may be afraid to join the suit because they fear retaliation by

3

Flowers. These people are in the same/ similar position as me, and I believe most are or would be interested in joining this suit.

13.    It is my belief that if the Court informs route distributors who worked in the Montgomery and Roanoke, Alabama warehouse locations as well as other warehouses controlled by Flowers, that it has authorized and approved this suit for the benefit of Flowers' route distributors or others performing a service and/or delivery function, and that if they believe they can join without fear of reprisal, most employees will signup and in turn become more aware of their rights.

Dated this the 31st day of August, 2007.

Respectfully Submitted,

*Charles Morrow*

Charles Morrow

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CHARLES MORROW,                          )
and MICHAEL OVERTON,                     )
individually and on behalf of other      )
similarly situated employees,            )
                                         )
        Plaintiffs,                  )
                                         )        **Civil Action No.:**
v.                                       )        **3:07-CV617-MHT**
                                         )
FLOWERS FOODS, INC., and                 )
FLOWERS BAKING COMPANY OF                )
OPELIKA, LLC.                            )
                                         )
        Defendants.                  )

## AFFIDAVIT OF MICHAEL OVERTON

STATE OF ALABAMA)

MONTGOMERY COUNTY)

I, MICHAEL OVERTON, declare as follows:

    1.    My name is Michael Overton. I am over the age of twenty one (21), and currently reside at 141 County Road 823, Wadley, Alabama 36276. I am of sound mind and am fully competent to execute this Affidavit. I have personal knowledge of all the facts contained herein, and if called to testify, I am competent to testify to the same. I submit this affidavit in support of the Plaintiff's Motion to Conditionally Certify Class and Facilitate Class Notice in the above styled case.

    2.    I was formerly hired by the Defendant, Flowers Baking Company of Opelika LLC, and under the policies of the Defendant, Flowers Foods, Inc. ("Flowers") as an independent contractor for their Roanoke, Alabama warehouse. During the period of March 2006 to September 2006, I was a route distributor who exclusively delivered

Flowers products to stores within a territory local to Roanoke, Wadley, and Lafayette, Alabama. My route was within the state of Alabama and did not require me to cross state lines.

3.     I am a Plaintiff in the above-styled case against my former employer, Flowers Foods, Inc. and Flowers Baking Company of Opelika, LLC.

4.     All route distributors are provided with a handheld computer by Flowers which is used to register each delivery, the order of the deliveries, the amount of product to be provided to each customer, and the amount of out-of-code product or stale bread being returned to the warehouse.

5.     In a typical day, I arrived at the warehouse at 4:00 a.m. Upon arrival, I loaded the truck and delivered to Flowers' customers such as Burger King and Piggly Wiggly in Roanoke, Alabama. I would then return to the warehouse, unload empty product trays, and reload the truck with additional product for the other deliveries. I returned to the warehouse at the end of the day, and unloaded the truck, filled out paperwork regarding issues such as the amount of each delivery and out of code bread, and returned the handheld computer to its docking station. I finished my day between 4:00 and 6:00 p.m.

6.     All route distributors or persons performing a service and/or delivery function are required to ensure that each of the deliveries are correct, load up their trucks, drive their routes, and return to the warehouses or thrift stores with stales and to unload their trucks and dock their handheld computers. Though these are part of my normal job duties, I am not compensated for all the hours I work during a typical day.

2

7.      Initially, Flowers hired me as an extra man through a Temp Agency from September 2005 to March 2006. As an extra man of Flowers, I drove the same route, had the same job duties and responsibilities, was issued a handheld computer, arrived and left work at the same time as I did as a route distributor, and had the same territory as in my independent contractor position.

8.      When my position was changed to that of an independent contractor, Flowers continued to retain control over my job duties and responsibilities and exercise authority of what stores I made deliveries to. I used a truck Flowers supplied to me. I could not negotiate or change the price of the product on my route, but Flowers could without informing me. Flowers determined where I took my out of code of stale bread and could enter my exclusive territory to enter into contracts with stores to supply them bread at any time.

9.      I generally spent twelve to fourteen hours a day to finish my route and take the stales to the Valley thrift store in Valley, Alabama.

10.      I worked five days a week, which can add up to twenty or more hours a week in unpaid wages.

11.      I wanted to become part of this suit because I felt like I was being cheated by my employer, Flowers, out of money I earned for hours I worked. I know that the hours I worked benefited Flowers, and therefore, I should get compensated for the time I spent performing functions essential to my job duties. There were several other route distributors who are similarly situated to me, who agree with my preceding statement, and who want to get paid for the time they work. I spoke with Marty Smith and he has signed a consent to join this lawsuit.

3

12.     I believe several of the route distributors, both past and present, do not fully understand That Flowers' practices violated their rights guaranteed by the government and who may be afraid to join the suit because they fear retaliation by Flowers. The people are in the same or similar position as me, and I believe most are or would be interested in joining this suit.

13.     It is my belief that if the Court informs route distributors who worked in the Montgomery and Roanoke warehouse locations as well as the other warehouses controlled by Flowers, that it has authorized and approved this suit for the benefit of Flowers' route distributors or other performing a service and/or delivery function, and that if they believe they can join without fear of reprisal, most employees will sign up and in turn becomes more aware of their rights.

Dated this the _31_ day of August, 2007.

Respectfully submitted,

Michael Overton

4