IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CHARLES MORROW and MICHAEL ) 
OVERTON, Individually and on behalf ) 
of similarly situated employees, ) 
) 
      Plaintiffs, ) 
)    CIVIL ACTION NO:
v. )    3:07-CV-617-MHT
) 
FLOWERS FOODS, INC., FLOWERS ) 
BAKING CO., OF OPELIKA, LLC, ) 
) 
      Defendants. ) 

PLAINTIFFS' REPLY TO DEFENDANTS' REPONSE
IN OPPOSITION TO PLAINITFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT

COME NOW Plaintiffs, by and through their undersigned counsel, and submit the

following Reply to Defendant's Response in Opposition to Plaintiff's Motion for Leave

to Amend Complaint in accordance with this Court's Order of September 26, 2007.

## I.     FACTUAL BACKGROUND

Plaintiffs Charles Morrow and Michael Overton filed a complaint against Flowers

Foods, Inc. and Flowers Baking Co. of Opelika, LLC on July 2, 2007, alleging violations

of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA").  On September 19, 2007,

Plaintiffs Morrow and Overton filed a Motion to Amend the Complaint, adding the

following Plaintiffs James Marty Smith, Michael Smith, Mark Murphy, and Dwayne

Cleveland pursuant to Rule 20(a) of the Federal Rules of Civil Procedure.  No other

changes to the original complaint were made.  On September 20, 2007, this Court granted

Plaintiff's Motion for Leave to Amend Complaint.  Defendants filed their Response in

Opposition to Plaintiff's Motion to Leave to Amend Complaint on September 24, 2007.

## II.    ARGUMENT

### A.  Because of the permissive rules of joinder, Plaintiffs are free to amend the complaint at this point until the action is certified as a collective action.

Fed. R. Civ. P. 15 governing the amendment of pleadings requires that the court's

leave to amend shall be freely give when justice so requires.  Fed. R. Civ. P. 15.  Leave to

amend shall be granted in the absence of undue delay, bad faith, or dilatory motive on the

part of the movant or undue prejudice to the opposing party.  *Foman v. Davis*, 371 U.S.

178, 182 (1962).  Defendants, in their Opposition to Motion to Amend, incorrectly state

that joinder of parties is not permissible or the appropriate method to adding parties in an

FLSA action.  *See D's Opp to Mot to Amend* at 2-5.  Joinder is an acceptable method of

adding additional parties to an FLSA action.  *Shiver v. Metropolitan Atlanta Rapid

Transit Authority*, Not Reported in F.Supp., 1986 WL 15379 (N.D.Ga. Sept. 9, 1986)

("As a preliminary matter, the court notes that an amendment is an appropriate method

for adding similarly situated employees in an FLSA suit.")  In *Shiver*, the two original

named plaintiffs sought to amend their complaint to add nearly 1,000 additional

plaintiffs, which the court allowed because plaintiffs did not seek to add a "substantially

new and different legal claim" nor did they seek to do so "on the eve of trial."  1986 WL

15379 at *6 (where the amendment was sought after suit was filed nine months prior and

had only focused thus far on questions of notice and amendment).

The requirement for permissive joinder is that it arises from the same transaction

or occurrence and involves common questions of law or fact.  Fed. R. Civ. P. 20.  *See*

*also Shiver*, 1986 WL 15379 at \*6-7 (where the court held that plaintiffs had met the requirements of permissive joinder because the additional employees' overtime claims involved similar claims for report time, travel time, court time, mark-up time, administrative duties, training and probation and dispatch work, and even though the employees held different jobs, their claims involved the common legal question of MARTA's liability for the above work.)  In this case, the plaintiffs sought to be added hold the same job as the original plaintiffs.  The proposed plaintiffs and the original plaintiffs are all route distributors hired by Defendants.  See Proposed Amended Compl. ¶¶ 35, 42, 49, 56, 62, and 67.  In addition, the proposed plaintiffs allege the same basic facts and raise the same questions of law regarding Defendants' liability under the FLSA. Thus, the requirements of permissive joinder have been met and the proposed Motion for Leave to Amend Complaint should be granted.

Indeed, Plaintiffs should be allowed permissive joinder because of the possibility of potential plaintiffs from other Flowers' subsidiaries that have been subjected to the same practices.  In fact, attached to this motion as Exhibit 1 is a proposed second amended complaint, which adds one additional plaintiff, Gary Chambliss, and Flowers Baking Co. of Thomasville, LLC. as a Defendant in this action.  Flowers Baking Co. of Thomasville, LLC, is a subsidiary of Flowers Foods, Inc., with whom Chambliss entered into an agreement as a route distributor.  An additional paragraph was also added naming the current subsidiaries of Flowers Foods.  We respectfully request that this Court consider this amendment to the complaint at this time.

**B. Defendants will not be prejudiced by permissive joinder at this stage of the litigation.**

3

As shown above, joinder of parties by amending complaint is clearly allowable in an FLSA action. *See Shiver v. Metropolitan Atlanta Rapid Transit Authority*, Not Reported in F.Supp., 1986 WL 15379 (N.D. Ga. Sept. 9, 1986). Although Defendants claim they will be severely prejudiced by the amendment of the complaint to include additional plaintiffs, they present no compelling arguments evidencing any prejudice. *See Defs. Opp. To Motion to Amend* at 7. At this stage of litigation, given that discovery has not commenced and the time to add parties has not expired, Defendants will not be prejudiced by the addition of plaintiffs. *See Harris v. Johns*, Slip Copy, 2007 WL 2310784 (M.D. Fla. August 8, 2007). In *Harris*, the court held the addition of plaintiffs in an FLSA action was allowable where the amended complaint was almost identical to the original complaint except for the addition of the new plaintiffs and one new claim. *Id.* at * 2-3. In addition, the court held the amendment was not unfairly prejudicial to defendant, because the claims arose out of the same transaction or occurrence in that the proposed plaintiffs' substantive claims and time period involved were identical, the defendants had adequate notice that they potential violated the rights of a putative class by virtue of it being a collective action, and the litigation was still in the discovery phase, which would not close for another 4 months giving defendants adequate time to conduct discovery. *Id.* at *3.

Following the reasoning set forth above, and given the state of the proceedings this Court has even more reason to grant this Motion for Leave to Amend, as Defendants has yet to even serve any discovery and therefore have adequate time to conduct discovery which does not close until June 20, 2008. See Uniform Scheduling Order, Doc No. 28. Additionally, the amended complaint submitted by the plaintiffs is identical to

the original complaint except for the addition of new plaintiffs. There are no additional substantive claims. The new plaintiffs make the same claims for overtime based on the same conduct by the Defendants as did the original plaintiffs in the original complaint. Given that the action was filed as a collective action, the Defendants should know that they would be called upon to defend against claims asserted by the newly-added plaintiffs.

For the reasons set forth herein, Plaintiffs Charles Morrow and Michael Overton respectfully request that this Honorable Court continue to grant Plaintiff's Motion for Leave to Amend Complaint.

Respectfully submitted this 17th day of October, 2007.


    /s/ Amy A Weaver
    Amy A. Weaver, ASB-6878-Y82A


**OF COUNSEL:**

THE LAW OFFICES OF GREG L. DAVIS
6987 Halcyon Park Drive
Montgomery, Alabama 36117
334-832-9080
gldavis@knology.net

WHATLEY DRAKE & KALLAS, LLC
2001 Park Place North, Suite 1000
Birmingham, Alabama 35203
205-328-9576
Joe R. Whatley, Jr. (ASB-1222-Y69J)
jwhatley@wdklaw.com
Amy A. Weaver (ASB-6878-Y82A)
aweaver@wdklaw.com

WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, New York, 10036

212-447-7007
Joseph P. Guglielmo
jguglielmo@wdklaw.com

WOOD LAW FIRM, LLC
2900 1st Avenue South, Suite A
Birmingham, Alabama 35233
205-612-0243
E. Kirk Wood (ASB-2937-W55E)
ekirkwood1@cs.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of October, I electronically filed the foregoing Reply to Defendants' Response in Opposition to Plaintiffs' Motion for Leave to Amend Complaint using the CM/ECF system which will send notification of such filing to:

Sandra B. Reiss
Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203-2118
205-328-1900
Sandra.Reiss@odnss.com

Kevin P. Hishta
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
600 Peachtree Street, NE
Suite 2100
Atlanta, Georgia 30308
404-881-1300
Kevin.Hishta@ogletreedeakins.com

_/s/Amy A Weaver_____
Amy A Weaver, ASB-6878-Y82A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

CHARLES MORROW, MICHAEL )
OVERTON, JAMES MARTY SMITH, )
DWAYNE CLEVELAND, MICHAEL SMITH, )
MARK MURPHY, GARY CHAMBLISS, )
Individually and on behalf of similarly )
situated employees, )
            )
         Plaintiffs, ) CIVIL ACTION NO.:
            ) 3:07-CV-617-MHT
            ) JURY TRIAL DEMANDED
v. )
            )
FLOWERS FOODS, INC., FLOWERS )
BAKING CO., OF OPELIKA, LLC, and )
FLOWERS BAKING CO. OF )
THOMASVILLE, LLC, )
            )
         Defendants. )

SECOND AMENDED
CLASS ACTION COMPLAINT

The named Plaintiffs, individually and on behalf of a nationwide class of similarly situated employees, collectively complain against the Defendants Flowers Foods, Inc., Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC, as follows:

**Jurisdiction and Venue**

1.  This is a collective action brought under the Fair Labor Standards Act.  This Court has jurisdiction over Plaintiffs' claims because they are brought pursuant to the Fair Labor Standards Acts, 29 U.S.C. §216(b), and because they raise a federal question pursuant to 28 U.S.C. § 1331.

2.  Venue is proper in this federal judicial district pursuant to 28 U.S.C. §1391(a) and (c), because a substantial part of the events or omissions giving rise to these claims occurred within this judicial district, and because Defendants Flowers Baking Company of Opelika, LLC and Flowers Foods, Inc. regularly conduct business within this judicial district and thus is subject to personal jurisdiction within this judicial district.

## Parties

3.  Plaintiff, Charles Morrow, is over the age of nineteen (19) and worked as a route distributor for Flowers Baking Company of Opelika.  He worked out of the Montgomery warehouse located on Norman Bridge Road in Montgomery, Alabama.  Mr. Morrow has expressly authorized the filing of this collective action.

4.  Plaintiff, Michael Overton, is over the age of nineteen (19) and worked as route distributor for Flowers Baking Company of Opelika.  He worked out of the Roanoke warehouse located in Roanoke, Alabama.  Mr. Overton has expressly authorized the filing of this collective action.

5.  Plaintiff, James Marty Smith, is over the age of nineteen (19) and worked as a route distributor for Flowers Baking Company of Opelika.  He worked out of the Roanoke warehouse located in Roanoke, Alabama.  Mr. Smith has expressly authorized the filing of this collective action.

6.  Plaintiff, Dwayne Cleveland, is over the age of nineteen (19) and currently works as a route distributor for Flowers Baking Company of Opelika.  He works out of the Montgomery warehouse located on Norman Bridge Road in Montgomery, Alabama.  Mr. Cleveland has expressly authorized the filing of this collective action.

2

7.  Plaintiff, Michael Smith, is over the age of nineteen (19) and worked as a route distributor for Flowers Baking Company of Opelika.  He worked out of the LaGrange warehouse located in LaGrange, Georgia.  Mr. Smith has expressly authorized the filing of this collective action.

8. Plaintiff, Mark Murphy, is over the age of nineteen (19) and currently works as a route distributor for Flowers Baking Company of Opelika.  He works out of the LaGrange warehouse located in LaGrange, Georgia.  Mr. Murphy has expressly authorized the filing of this collective action.

9.  Plaintiff Gary Chambliss is over the age of nineteen (19) and worked as a route distributor for Flowers Baking Company of Thomasville, LLC.  He works out of the Cottondale warehouse located in Cottondale, Florida.

10.  Defendant Flowers Foods, Inc. is a foreign corporation with its principal place of business in Thomasville, Georgia and is incorporated under the laws of Georgia.

11.  Defendant Flowers Baking Company of Opelika, LLC, a subsidiary of Flowers Foods, Inc., is headquartered in Opelika, Alabama, and is incorporated under the laws of Alabama.

12.  Defendant Flowers Baking Company of Thomasville, LLC, a subsidiary of Flowers Foods, Inc., is headquartered in Thomasville, Georgia and is incorporated under the laws of Georgia.

13.  Throughout this Complaint, Defendants Flowers Foods, Inc., Flowers Baking Company of Thomasville, LLC, and Flowers Baking Company of Opelika, LLC, are referred to collectively as "Flowers."

## Factual Allegations

3

14.  Flowers is a leading producer and marketer of packaged bakery foods in the United States.  Flowers produces breads, buns, rolls, snack cakes and pastries, which are distributed fresh to foodservice and retail customers in the Southeastern, Southwestern, and mid-Atlantic states.

15.  Flowers Foods Inc. has more than 30 bakeries located in Alabama, Georgia, Florida, Louisiana, North Carolina, Tennessee, Texas, Virginia, West Virginia, and Arkansas.

16.  Flower's brand names include Nature's Own, Cobblestone Mill, Bluebird, ButterKrust, Evangeline Maid, Mary Jane, Dandee, European Bakers, Mrs. Freshley's, Bunny, and Sunbeam.

17.  Flowers is the third largest wholesale baker in the United States and, most recently, had annual sales of $1.9 billion in 2006.

18.  As stated in Flowers Foods' SEC Form 10-K filing for the fiscal year ending December 30, 2006, Flowers Foods is the parent of the following subsidiaries: Flowers Baking Co. of Florida, LLC, Flowers Baking Co. of Miami, LLC, Flowers Baking Co. of Jacksonville, LLC, Flowers Baking Co. of Bradenton, LLC, Flowers Baking Co. of Thomasville, LLC, Flowers Baking Co. of Villa Rica, LLC, Flowers Baking Co. of McDonough, LLC, Table Pride, LLC, Flowers Baking Co. of Opelika, LLC, Bailey Street Bakery, LLC, Flowers Baking Co. of Tucker, LLC, Flowers Baking Co. of Birmingham, LLC, Flowers Baking Co. of Tuscaloosa, LLC, Flowers Baking Co. of Lafayette, LLC, Flowers Baking Co. of New Orleans, LLC, Flowers Baking Co. of Baton Rouge, LLC, Flowers Baking Co. of Jamestown, LLC, Flowers Baking Co. of Newton, LLC, Franklin Baking Company, LLC, Flowers Baking Co. of Lynchburg, LLC, Flowers

Baking Co. of Norfolk, LLC, Flowers Baking Co. of Morristown, LLC, Flowers Baking Co. of Memphis, LLC, Flowers Baking Co. of Nashville, LLC, West Tennessee Baking Co., LLC, Flowers Baking Co. of Houston, LLC, Flowers Baking Co. of West Virginia, LLC, The Donut House, LLC, Flowers Baking Co. of Texas, LLC, Leeland Baking Co., LLC, Flowers Baking Co. of Denton, LLC, Flowers Baking Co. of Tyler, LLC, Flowers Baking Co. of San Antonio, LLC, Flowers Baking Co. of El Paso, LLC, San Antonio Baking Co, Austin Baking Co., LLC, Corpus Christi Baking Co., LLC, Flowers Baking Co. of Pine Bluff, LLC, Flowers Baking Co. of Batesville, LLC, Flowers Baking Co. of West Virginia, LLC, The Donut House, LLC, and Storck Baking Company, LLC.

19.  At all material times, Flowers has been an employer within the meaning of § 3 (d) of the FLSA.

20.  At all material times, Plaintiffs have been employed by Flowers within the meaning of §3 (d) of the FLSA.

21.  Before 1994 or 1995, all of Flowers' route salesmen were employees of Flowers and had the same job duties and performed the same job functions as the current route distributors.

22.  In or about 1994 or 1995, Flowers eliminated the company-owned position of route salesman and instead, sold territories to route distributors, ostensibly creating an independent contractor position.

23.  Many route distributors like plaintiffs are former route salesman employees of Flowers.

24.  Territories are exclusive to each route distributor, but Flowers retains the right to enter and negotiate with the route distributor's stores in any territory.

25.  The route distributors who were former employees of Flowers were allowed to buy the old Flowers' delivery vans.

26.  When the route distributors buy new vans, Flowers recommends a particular dealership and a particular bank for the financing.

27.  Flowers provides the route distributors with labels, racks, dollies, and displays.

28.  The route distributors usually wear shirts with Flowers' products on them when they are working.

29.  In addition to the foregoing, Flowers provided plaintiffs and other route distributors with a hand-held computer that provides the route distributors with the amount of bread to order based on the customers past weekly sales.

30.  The hand-held computer lists each stop in the order in which it has to be made, along with the amount to deliver and prints out statements for the route distributor.

31.  The hand-held computers are returned to a central location within the warehouse at the end of the day where they sync up with the central office.

32. Flowers requires route distributors to pick up product that is out of code (more than a certain number of days old, which is usually referred to as stales) and take it to the local thrift store on a daily basis.  At the thrift store, the route distributor must sort the product into separate types and provide Flowers with a signed stale report.

33.  In the event a route distributor consistently has excess stale bread, Flowers will contact the customer and talk to them about cutting back on product in order to have less stales.

34.  Plaintiffs and other route distributors were not allowed to carry any other company's product in their van.  Flowers does not allow route distributors to carry any competitive products on their routes.

35.  Customers pay Flowers and not the route distributors, either by an authorized charge or by check, and route distributors are paid by Flowers directly.

36.  Flowers controls the price of the bread.  Route distributors cannot change the price or offer discounts to customers as incentive to buy more product.

37.  Flowers can change the price or offer discounts to customers in a route distributor's exclusive territory without first consulting that distributor.

### Facts pertaining to Morrow

38.  In 1980, Flowers hired Morrow as a route salesman.  He worked as a route salesman from 1980 to 1994.

39.  In 1994, Flowers made Morrow an independent contractor.  Morrow was a route distributor from 1994 to the end of 2005.

40.  In 1994, Morrow purchased a territory and a Flowers delivery van.

41.  His duties and responsibilities remained the same as when he was a route salesman.

42.  Flowers determined the route and the prices of the products for each customer on his route.

43.  Flowers solicited new contracts within his route when a new grocery store or restaurant opened up.

44.  On average, Morrow worked 9 to 12 hours a day, 5 days a week, or approximately 45 to 60 hours per week, resulting in overtime for which he was not compensated.

### Facts pertaining to Overton

45.  In or about October 2005, Flowers hired Overton as an extra man to run the route he purchased six months later.  He stayed in this position for six months.

46. In or about March 2006, Flowers made Overton an independent contractor. Overton was a route distributor from March 2006 until September 2006.

47.  In March 2006, Overton purchased a territory and a Flowers delivery van.

48.  His duties and responsibilities remained the same as when he was an extra man.

49.  Flowers determined the route and prices of the products for each customer on his route.

50.  Flowers solicited new contracts within his route when a new grocery store or restaurant opened up.

51.  On average, Overton worked 12 to 14 hours a day, 5 days a week, or approximately 60 to 68 hours per week, resulting in overtime for which he was not compensated.

### Facts pertaining to James Marty Smith

52.  In or about January 2006, Flowers hired Smith as an extra man through a temp agency to provide help running routes.  He stayed in this position for 8 months.

53.  In or about September 2006, Flowers made Smith an independent contractor. Smith was a route distributor from September 2006 to January 2007.

54.  In September 2006, Smith purchased a territory and a Flowers delivery van.

55.  His duties and responsibilities remained the same as when he was an extra man.

56.  Flowers determined the route and prices of the products for each customer on his route.

57.  Flowers solicited new contracts within his route when a new grocery store or restaurant opened up.

58.  On average, Smith worked 12 to 14 hours a day, 5 days a week, or approximately 60 to 68 hours per week, resulting in overtime for which he was not compensated.

## Facts pertaining to Cleveland

59.  In or about 2003, Cleveland was hired as an extra man through a temp agency to provide help running routes.  He stayed in this position for 3 months.

60.  In or about 2003, Flowers made Cleveland an independent contractor. Cleveland has been a route distributor since 2003.

61.  In 2003, Cleveland purchased a territory and a Flowers delivery van.

62.  His duties and responsibilities remain the same as when he was an extra man.

63.  Flowers determines the route and the prices of the products for each customer on his route.

64.  Flowers solicits new contracts within his route when a new grocery store or restaurant opened up.

65.  On average, Cleveland works between 8.5 and 13.5 hours a day, 5 days a week, or approximately 54 hours per week, resulting in overtime for which he is not compensated.

### Facts pertaining to Michael Smith

66.  In or about 2001, Flowers made Smith an independent contractor.  Smith was a route distributor from 2001 to December 2006.

67.  In or about 2001, Smith purchased a territory and a Flowers delivery van.

68.  Flowers determined the route and the prices of the products for each customer on his route.

69.  Flowers solicited new contracts within his route when a new grocery store or restaurant opened up.

70.  On average, Smith worked 12 to 13 hours a day, 5 days a week, and a couple hours on both his off days, or approximately 60 to 68 hours a week, resulting in overtime for which he was not compensated.

### Facts pertaining to Murphy

71.  In or about September 2002, Flowers made Murphy an independent contractor.  Murphy has been a route distributor since September 2002.

72.  In or about September 2002, Smith purchased a territory and a Flowers delivery van.

73.  Murphy drove a route that did not cross state lines from September 2002 until the end of 2006 when he began crossing into the state of Alabama for a new store assigned to him by Flowers.

74. Flowers determines the route and the prices of the products for each customer on his route.

75. Flowers solicits new contracts within his route when a new grocery store or restaurant opened up.

76. On average, Murphy works between 10 and 13 hours a day, 5 days a week, or approximately 55 to 58 hours a week, resulting in overtime for which he was not compensated.

## Facts Pertaining to Chambliss

77. In or about June 1991, Flowers hired Chambliss as an employee route salesman. He worked as a route salesman from June 1991 to approximately 1994.

78. In 1994, Flowers made Chambliss an independent contractor. Chambliss was a route distributor from 1994 to 2006.

79. In 1994, Chambliss purchased a territory and a Flowers delivery van. These were the same as when he was an employee route salesman.

80. His duties and responsibilities remained the same as when he was a route salesman.

81. Flowers determined the route and the prices of the products for each customer on his route.

82. Flowers solicited new contracts within his route when a new grocery store or restaurant opened up.

83. On average, Chambliss worked 12 to 14 hours a day, 5 days a week, and about 6 hours on the other two days, or approximately 66 to 72 hours per week, resulting in overtime for which he was not compensated.

11

**Class Allegations**

84.  Plaintiffs bring their claim pursuant to 29 U.S.C. §216 (b) as a representative

action on behalf of the following opt-in class:

> All current and former route distributors, or other persons performing a
> service and/or delivery function on a non-hourly basis, who worked
> overtime while employed at Flowers Foods subsidiaries, and were not
> compensated for such overtime work at an amount equaling one and one-
> half times the employee's regular rate of pay.  Such persons shall not
> include persons who, as part of their duties, cross state lines to make
> deliveries.

85.  The Class, as defined above, is so numerous that joinder of all members is

impracticable.

86.  Plaintiffs are members of the class and their claims are typical of the claims

of the members of the Class as defined.

87.  Plaintiffs will fairly and adequately represent the Class and the interests of all

members of the Class.

88.  Plaintiffs have no interests that are antagonistic to or in conflict with those

interests that they have undertaken to represent as Class Representatives.

89.  Plaintiffs have retained competent and experienced class action counsel who

are able to effectively represent the interests of the entire Class.

90.  Questions of law and fact that are common to the Class predominate over any

individual questions.  Among such common questions of law and fact include, inter alia,

the following:

a. Whether Route Distributors are employees subject to Flowers' control

and thus entitled to relief under the Fair Labor Standards Act?

12

b. Whether Route Distributors are entitled to overtime compensation at the rate of one-and-a-half times their regular rate of pay under federal law?

91. There is a community of interest among the Class members in obtaining appropriate declaratory and injunctive relief, damages, and compensation for costs and fees incurred herein.

## VIOLATION OF THE FAIR LABOR STANDARDS
## ACT 29 U.S.C. § 201 *et seq.*

92. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

93. The FLSA requires that covered employees be compensated for every hour worked in a workweek. *See* 29 U.S.C. §206(b).

94. The Plaintiffs and the class they seek to represent are employees who are not except under the Fair Labor Standards Act. Flowers does not pay the plaintiffs and similarly situated employees time and a half for hours worked over 40 in a given workweek. The failure to pay time and a half for hours worked over 40 in a given workweek violates 29 U.S.C. §207.

95. The defendant Flowers willfully and/or knowingly failed to pay plaintiffs and similarly situated employees time and a half for hours worked over 40 in a given workweek. The plaintiffs and similarly situated employees were damaged as a result of Flowers' willful and/or knowing violation of 29 U.S.C. §207.

96. Pursuant to the Fair Labor Standards Act, specifically 29 U.S.C. §216(b), Defendant Flowers, because it failed to pay employees the required amount of overtime,

must reimburse the employees not only for the unpaid overtime wages, but also for liquidated damages in an amount equal to the amount of unpaid overtime wages.

97. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), Plaintiffs are entitled to reimbursement of the costs and attorneys' fees expended if they are successful in prosecuting an action for unpaid overtime wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief against Defendant Flowers:

A. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the collective action;

C. Enter judgment against Defendant and in favor of Plaintiff and others similarly situated, for the amount of unpaid overtime that the Defendants has failed and refused to pay in violation of the Fair Labor Standards Act;

D. Find that Defendant's violations of the Fair Labor Standards Act were willful;

E. An injunction prohibiting Defendant Flowers Foods from engaging in future violations of the Fair Labor Standards Act;

F. Liquidated damages to the fullest extent permitted under the Fair Labor Standards Act;

G. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the Fair Labor Standards Act; and,

H. Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to the Seventh Amendment of the United States Constitution, the

plaintiffs respectfully request a trial by jury.

Respectfully submitted,


    /s/ Amy A. Weaver
Amy A. Weaver
ASB-6878-Y82A

**<u>OF COUNSEL:</u>**


THE LAW OFFICES OF GREG L. DAVIS
6987 Halcyon Park Drive
Montgomery, Alabama 36117
334-832-9080
gldavis@knology.net

WHATLEY DRAKE & KALLAS, LLC
2001 Park Place North, Suite 1000
Birmingham, Alabama  35203
Telephone: (205) 328-9576
Joe R. Whatley, Jr. (ASB-1222-Y69J)
jwhatley@wdklaw.com
Amy Weaver (ASB-6878-Y82A)
aweaver@wdklaw.com

WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, New York 10036
212-447-7007
Joseph P. Guglielmo
jguglielmo@wdklaw.com

WOOD LAW FIRM, LLC
2900 1st Avenue South, Suite A
Birmingham, Alabama 35233
205-612-0243
E. Kirk Wood (ASB-2937-W55E)
ekirkwood1@cs.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of October 2007, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Sandra B. Reiss
Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203-2118
205-328-1900
Sandra.Reiss@odnss.com

Kevin P. Hishta
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
600 Peachtree Street, NE
Suite 2100
Atlanta, Georgia 30308
404-881-1300
Kevin.Hishta@ogletreedeakins.com


                    ___/s/ Amy A. Weaver_____
                    Amy A. Weaver
                    ASB-6878-Y82A