**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHARLES MORROW, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CASE NO: 3:07-cv-00617-MHT** |
| **v.** | ) | |
| | ) | |
| **FLOWERS FOODS, INC., *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT FLOWERS FOODS, INC.'S, FLOWERS BAKING CO. OF OPELIKA,**
**LLC'S, AND FLOWERS BAKING CO. OF THOMASVILLE, LLC'S**
**BRIEF IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER AND/OR**
**MOTION TO QUASH NON-PARTY NATIONAL ACCOUNTS SUBPOENAS**

COME NOW, Defendant Flowers Foods, Inc. ("Flowers Foods"), Flowers Baking Co. of Opelika, LLC ("Flowers/Opelika"), and Flowers Baking Co. of Thomasville, LLC ("Flowers/Thomasville"), by and through its undersigned counsel, and respectfully submit this Brief in Support of their Motion for Protective Order and/or Motion to Quash Non-Party National Accounts Subpoenas ("Motion for Protective Order").

Plaintiffs, who are limited in number and geographic representation, and who contracted with only two Flowers Foods' subsidiaries, [1] namely Flowers/Opelika and Flowers/Thomasville, brought this Section 216(b) action on behalf of a nationwide class. Plaintiffs filed their Motion to Conditionally Certify and Facilitate Class Notice ("Motion for Conditional Certification"), which this Court has not yet ruled on, seven months ago. In the interim, this Court has issued <u>two</u>

---

[1]   Specifically, Plaintiffs are currently comprised of only three current, and eight former, distributors with Flowers/Opelika and Flowers/Thomasville. Plaintiffs Charles Morrow, Michael Overton, James Marty Smith, Michael Smith, Ricky Small, Melvin Snow, and Greg Patisaul are former distributors of Flowers/Opelika. Plaintiff Gary Chambliss is a former distributor of Flowers/Thomasville. Plaintiffs Dwayne Cleveland, Mark Murphy, and Lew Baxter are current distributors of Flowers/Opelika.

Orders specifically providing that any pre-conditional certification discovery in this case is limited to that which pertains to the named parties and the allegations against them. In both Orders, the Court stated that pre-conditional certification class-wide discovery is not appropriate.

Notwithstanding, Plaintiffs have <u>again</u> attempted to obtain pre-conditional certification class-wide discovery by sending subpoenas, <u>without advance or even contemporaneous notice</u> (and while seemingly misstating when the subpoenas were served), to sixteen different national accounts. Despite being in complete disregard of this Court's Orders limiting the scope of pre-conditional certification discovery, the information Plaintiffs seek in these non-party subpoenas is duplicative of information Defendants already provided to Plaintiffs and reaches far beyond the representative sampling approach which both parties have agreed would be sufficient for national accounts documents.

As will be discussed below, it is clear that any information responsive to these subpoenas would merely be duplicative of the representative sampling of documents Plaintiffs have already received, produced upon explicit agreement of the parties, and <u>would be completely irrelevant to Plaintiffs' individual FLSA overtime claims</u>. Therefore, because Plaintiffs' subpoenas seek duplicative information that exceeds far beyond the scope of permissible discovery established by this Court, Defendants respectfully urge this Court to grant its Protective Order and/or Motion to Quash prohibiting Plaintiffs from obtaining the information they seek in their subpoenas and rendering any such subpoenas unenforceable.

## I.     PROCEDURAL AND RELEVANT FACTUAL BACKGROUND

### A.     Factual Background Regarding Complaint, Motion for Conditional Certification, and Scheduling Order

Plaintiffs filed their Complaint on July 2, 2007, against Flowers Foods and Flowers/Opelika under 29 U.S.C. § 216(b), seeking to maintain a "nationwide" collective action

on behalf of themselves and others "similarly situated."[2]  Specifically, Plaintiffs sought a class of all current and former distributors, located in twenty different states and the District of Columbia, who are currently operating out of 500 different warehouses and who contracted with (or were employed by)[3] any one of the twenty-five different Flowers Foods' subsidiaries that utilized independent distributors. (Ct. Doc. Nos. 1; 42 (filed October 17, 2007), pp. 2-3 and the affidavits cited therein and filed concurrently therewith.)

Plaintiffs filed their Motion to Conditionally Certify and Facilitate Class Notice and Memorandum in Support ("Motion for Conditional Certification") on September 21, 2007 (Ct. Doc. Nos. 32; 33), pursuant to this Court's Uniform Scheduling Order. (Ct. Doc. No. 28.)  This Court has not ruled on Plaintiffs' Motion.  In a subsequent Order dated April 25, 2008, this Court provided that "no further briefing (on whether conditional certification is appropriate) is permitted without leave of court." (Ct. Doc. No. 102, citing Ct. Doc. No. 35.)

Pursuant to this Court's Scheduling Order, Plaintiffs had until January 3, 2008, to add additional parties. (Ct. Doc. No. 28, pp. 2-3, § 5.) Although Plaintiffs moved to extend this deadline (Ct. Doc. No. 67), the Court issued an Order denying Plaintiffs' Motion, preserving the January 3, 2008, deadline to add additional parties.  In this Order, the Court provided that it would reconsider whether an extension of time to add additional parties was warranted <u>only after</u> the court resolved the class certification motion, and then <u>only upon a showing of good cause</u>. (emphasis added). (Ct. Doc. No. 91.)  Therefore, to date, the only subsidiaries of Flowers Foods which are, and can be added as, parties at this time are Flowers/Thomasville and Flowers/Opelika.

---

[2]  While Defendants deny that Plaintiffs were or are "employees," Section 216(b) nonetheless is the vehicle for Plaintiffs to bring their claims given their contention that they are or were "employees" under the FLSA.
[3]  Some distributors may have been Company route sales employees, and not independent distributors, during statutory period.

B.     <u>Court's Orders Limiting Discovery and Approving the Parties' Agreement
Regarding the Production of a Representative Sampling of Documents for
National Accounts</u>

1.     Plaintiffs' 30(b)(6) Deposition Notice Seeking Class-wide Pre-Conditional
Certification Discovery

On September 5, 2007, Plaintiffs served Defendant Flowers Foods with a 30(b)(6)
Deposition Notice, seeking class-wide discovery pertaining to Flowers Foods' involvement with
thousands of current and former distributors who contracted with, or were route sales employees
for, any one of the twenty-five (25) subsidiaries that utilize independent distributors. (*See* Ct.
Doc. No. 100, Exhibit C, attached thereto, Plaintiffs' 30(b)(6) Notice of Videotaped Deposition
to Flowers Foods, Inc.) The Deposition Notice listed several "Subject Matter Topics" and
"Requests for Production of Documents" ("Document Requests"). Included in the list of Subject
Matter Topics and Document Requests was a request specifically pertaining to national accounts.
(*See id.*, ¶ 6.)

On October 31, 2007, Defendants filed a Motion for a Protective Order to limit the scope
of this Deposition Notice and the Document Requests contained therein, outlining in detail <u>that
under precedent of this Court, such "class-wide" discovery was inappropriate before any
decision by the Court conditionally certifying this action</u>. (Ct. Doc. No. 48.) In their Motion,
Defendants included proposed scopes of inquiry for the Subject Matter Topics and Document
Requests. Specifically, for the paragraphs discussing national accounts, the parties proposed the
following scope of inquiry for testimony:

<u>Plaintiffs' Proposed Scope of Inquiry</u>: Flowers Foods, Inc.'s
involvement in the determination of route sales by route
distributors to national accounts.

<u>Defendants' Proposed Scope of Inquiry</u>: **Flowers Foods'
involvement with national accounts in Plaintiffs' or the**

> **Opelika opt-ins'[4] respective territories (*i.e.* testimony regarding those national accounts that one or more of the Plaintiffs or Opelika opt-ins actually sold products to) from July 2, 2004, to date.**

(Ct. Doc. No. 48, p. 15, ¶6; Ct. Doc. No. 68, ¶6.)

For the Document Requests pertaining to national accounts, the parties proposed:

> <u>Plaintiffs' Proposed Production:</u> Documents concerning Flowers Foods, Inc.'s involvement in Flowers Baking Co. of Opelika, LLC's sale of products to national markets.

> <u>Defendants' Proposed Production</u>**: Representative non-privileged documents concerning Flowers Foods' involvement in national accounts serviced by Plaintiffs or the opt-in Plaintiffs from July 2, 2004, to date.**

(Ct. Doc. No. 48, p. 17, ¶ 6; Ct. Doc. No. 68, ¶ 6.)[5]  In response to Defendants' Motion for Protective Order, Plaintiffs outlined, in detail, their position that pre-conditional class-wide discovery was relevant and within the proper scope of discovery. (Ct. Doc. No. 57.)

<u>Importantly</u>, although the parties had yet to reach an agreement with regard to the general scope of discovery prior to any decision on conditional certification, the parties reached an agreement regarding the production of documents pertaining to national accounts.  Specifically, during several meet and confer sessions between the parties, Defendants discussed with Plaintiffs that documents pertaining to national accounts to which Plaintiffs sold products were voluminous and that  production of a representative sampling of such documents, including (for example) pertinent contracts, agreements, and emails, should provide a sufficient amount of information for Plaintiffs' claims. On November 26, 2007, Plaintiffs' Counsel wrote Defendants' counsel a letter, confirming that during the parties' October 16, 2007, and November 15, 2007,

---

[4]  At the time Plaintiffs' filed this 30(b)(6) Deposition Notice, the only Plaintiffs were individuals who contracted with Flowers/Opelika.
[5]  Court Document 68 is Defendants' Reply Brief, which incorporates the same proposed inquiry and document production, with a few minor wording changes.

meet and confer sessions, the parties "agreed that **production of representative sampling of documents of . . . national accounts** could be made at this time . . . and that the plaintiffs . . . would discuss the production with you after initial review." (*See* Letter from Joseph Guglielmo to Kevin Hishta, dated November 26, 2007, attached as Exhibit "A") (emphasis added).

On November 27, 2007, <u>after the benefit of full briefing by both parties</u>, this Court granted Defendants' Protective Order ("Order or Protective Order"), rejecting Plaintiffs' position that such class-wide discovery was appropriate prior to conditional certification and <u>explicitly limiting</u> the scope of pre-conditional certification discovery to the named parties and the allegations against them. (*See* Ct. Doc. No. 64.)[6]    The **Court also specifically adopted Defendants' proposed production** and scope of inquiry for the 30(b)(6) Deposition, <u>including the parties' agreement that **a "representative sampling"** of documents pertaining to national accounts Plaintiffs sold products to during the statutory period would be sufficient</u>.

      2.      Court's April 25, 2008, Order Denying Plaintiffs' Motion to Compel the Production of Pre-Conditional Certification Class-wide Discovery

On April 15, 2008, Plaintiffs filed a Motion to Compel the Production of Documents ("Motion to Compel") (Ct. Doc. No. 96), asking the Court to compel Defendants to produce pre-conditional certification class-wide discovery involving communications with all distributors. After the benefit of full briefing by both parties, the Court denied Plaintiffs' Motion to Compel, re-iterating that because the Court has not yet ruled on Plaintiffs' Motion for conditional certification, "this case only involves the current named parties and the allegations against them.

---

[6]  Specifically, this Court provided:

> Because the Court has not yet ruled upon the Motion to Conditionally Certify Class and Facilitate Class Notice (Doc. 32, filed September 21, 2007), **this case only involves the current named parties and the allegations against them. Thus, discovery is also limited to those parties and subject matter**.

(Ct. Doc. No. 64) (emphasis added).

Thus, discovery is also limited to those parties and subject matter." (Ct. Doc. No. 102, Order dated April 25, 2008 (quoting Ct. Doc. No. 64.))

      C.    <u>Discovery Pertaining to National Accounts</u>

      1.    Plaintiffs' Territories and Accounts to Which They Sell Products

While independent distributors with Flowers/Opelika or Flowers/Thomasville, Plaintiffs each own (owned) a territory, and sell (sold) products to different accounts within their respective territories. Plaintiffs' territories include(d) some national accounts with whom representatives of Flowers Foods, Flowers Foods Bakeries Group, Flowers/Opelika or Flowers/Thomasville secured the initial business relationship. (Ct. Doc. No. 42, p.9, and Affidavits attached thereto and cited concurrently therewith; *see also* Dep. Tr. of David Roach ("Tr. of Roach"), pp. 17-25, attached as Exhibit "B.") These national accounts include(d) Family Dollar Stores, Inc.; Wal-Mart Stores, Inc.; Fred's Stores of Alabama, Inc.; Publix Supermarkets, Inc.; Winn-Dixie Stores, Inc.; Bruno's, Inc.; Southern Family Markets, LLC; Target Corporation; Sonic Restaurants, Inc.; Arby's, Inc.; Burger King Corporation; Hardee's Food Systems, Inc.; Sodexho, Inc.; Chick-fil-A, Inc.; Zaxby's Holdings; and The Krystal Company. (*See* Tr. of Roach, Exhibit 1 attached thereto.)

The composition of accounts within Plaintiffs' territories differed substantially, with some Plaintiffs selling products to more national accounts than cash accounts, and vice versa. (Ct. Doc. No. 42, pp. 9-11.) [7] Indeed, many Plaintiffs did not sell products to a number of different national accounts. For example, Plaintiff Dwayne Cleveland was the only Plaintiff who sold products to a Bruno's or Target. Plaintiff Michael Overton was the only Plaintiff who sold

---

[7]  The territories also included cash accounts, which the distributors were responsible for personally collecting monies for sales thereto. Some Plaintiffs had substantially more cash accounts in their territories than national accounts. *See, e.g.,* Plaintiff Melvin Snow's Verified Responses to Defendants' First Interrogatories (attached as Exhibit "C"), listing 26 cash accounts.

products to a Publix. Charles Morrow was the only Plaintiff who sold products to a Sonic, Sodexho, or Zaxby's. (Ct. Doc. No. 42; pp. 10-11.)

2.     Parties' Discovery Pertaining to Such National Accounts to Date

Over the past seven months, the parties have engaged in substantial discovery, and Defendants have produced thousands of documents in response to Plaintiffs' Requests for Production of Documents and Requests for Interrogatories. (*See* Ct. Doc. No.100, Exhibit L attached thereto, Morrow Document Production Chart, for listing of all documents produced by Defendants.)  Included in this production have been a "representative sampling" of documents (pursuant to the production approach agreed to by the parties) pertaining to the national accounts to which Plaintiffs sold products during the statutory period. (*See id.; See also*, Listing of Documents Produced Regarding National Accounts, attached as Exhibit "D.")  Plaintiffs never objected to the representative sampling approach upon receipt of any of these documents, nor have they taken the position that the representative sampling they have been receiving is insufficient for purposes of their claims.

In addition to production of numerous documents pertaining to national accounts, on January 29th and 30th, 2008, Plaintiffs conducted the 30(b)(6) deposition of three different officials designated by Flowers Foods as their 30(b)(6) witnesses. (*See* Ct. Doc. No. 100, Exhibit C attached thereto, Plaintiffs' 30(b)(6) Notice of Videotaped Deposition to Flowers Foods, Inc.) One of the 30(b)(6) witnesses was David Roach, who was specifically designated by Flowers Foods to testify about the national accounts to which Plaintiffs sold products.  Flowers Foods designated a separate witness, Karyl Lauder, to testify about various accounting issues implicated by the national accounts. Plaintiffs sought and obtained detailed testimony pertaining to these national accounts during these depositions. (*See generally* Tr. of David Roach; *see also*

Dep. Tr. of Karyl Lauder, pp. 1-6; 15-27; 33-25; and 38-60, attached as Exhibit "E.")  <u>However, during the 30(b)(6) deposition, Plaintiffs failed to utilize a single document from individuals involved with the national accounts that Defendants had produced as part of their representative sampling</u>.

Following the 30(b)(6) deposition, and during future productions pertaining to national accounts, the parties continued to use this representative sampling approach for documents pertaining to national accounts, and <u>Plaintiffs never disagreed with this approach or took the position that the representative sampling they received was insufficient</u>.  Although Plaintiffs did request additional (voluminous) accounting and other national accounts documents in a March 19, 2008, letter to Defendants,[8] during a conference call on March 25, 2008, and in a letter on the same date, Defendants reminded Plaintiffs that the parties had agreed to a representative sampling of documents pertaining to national accounts.  Defendants also reminded Plaintiffs that they <u>failed to utilize a single documents from individuals involved in the national accounts during the 30(b)(6) deposition,</u> and discussed that these additional requested documents were "<u>wholly unnecessary for litigating the FLSA claims</u>" of the named Plaintiffs. (*See* Ct. Doc. No. 100, Exhibit J, attached thereto, Letter from Defendants to Plaintiffs, dated March 25, 2008.) The parties ended their call by discussing that they would each go back to determine what national accounts for which they still needed (or had not produced) a representative sampling.[9] Defendants also specifically told Plaintiffs that they would be producing some specific national account documents Plaintiffs had requested previously.  Indeed, Defendants produced those

---

[8]  In this letter, Plaintiffs also claimed they had not received a number of documents pertaining to national accounts, such as documentation pertaining to Wal-Mart.  However, in Defendants' letter dated March 25, 2008, Defendants reminded Plaintiffs that they had already produced such documents.

[9]  Defendants have produced representative documents for all of the national accounts that Plaintiffs sell or sold products to.

documents to Plaintiffs on March 27, 2008, and April 25, 2008. (*See* Ct. Doc. No. 100, Exhibit L attached thereto, Letter from Defendants to Plaintiffs dated March 27, 2008; *see also* Exhibit D, *supra*.)  Since this call, Plaintiffs have not informed Defendants that the representative sampling they had, and were continuing to receive, was insufficient or indicate that they no longer agreed with the representative sampling of documents approach.

        3.      Plaintiffs' Improper Course of Serving Subpoenas on Non-Party National Accounts

Notwithstanding this representative sampling production agreement, and subsequent production in accordance therewith throughout close to six months of discovery, Plaintiffs, without any advance (or even contemporaneous) notice to Defendants, served subpoenas on sixteen different non-party national accounts, seeking the same types of documents previously provided by Defendants, and more.

On or around April 15, 2008, and for the next few days thereafter, Defendants began receiving e-mails from the national accounts, including Hardee's Food Systems, Inc.; Zaxby's Holdings; Chick-fil-A; Publix; and Burger King, informing them that they had been served with subpoenas from Plaintiffs' counsel for this matter, attaching copies of the subpoenas received. These subpoenas were all "issued" by Plaintiffs' counsel on April 10, 2008, and were served on or about April 11, 2008.  (*See* Subpoena for Hardee's Food Systems, Inc., Zaxby's Holdings, Chick-fil-A, and Burger King (attached as Exhibit "F".))  None of the subpoenas were signed by Plaintiffs' counsel.

On April 23, 2008, close to two weeks after Plaintiffs issued these subpoenas, Plaintiffs sent an e-mail to Defendants, providing:

> In accordance with Federal Rule of Civil Procedure 45(b)(1), let this serve as Plaintiff's notice that **we will be issuing subpoenas** to the following:   Family Dollar Stores, Inc.; Wal-Mart Stores, Inc.;

Fred's Stores of Alabama, Inc.; Publix Supermarkets, Inc.; Winn-Dixie Stores, Inc.; Bruno's, Inc.; Southern Family Markets, LLC; Target Corporation; Sonic Restaurants, Inc.; Arby's Inc.; Burger King Corporation; Hardee's Food Systems, Inc.; Sodexo, Inc.; Chick-fil-A, Inc.; Zaxby's Holdings; and The Krystal Company.

The email did not attach copies of any of these subpoenas. (*See* E-mail from Teva Allen, CP, Paralegal to Greg Davis, dated April 23, 2008, attached as Exhibit "G" (emphasis added)).

The subpoenas themselves requested numerous documents, such as protocol agreements and contracts, which Defendants had already produced to Plaintiffs pursuant to the agreement between the parties. Further, the subpoenas requested all correspondence between the national accounts and various non-party entities of Flowers Foods with whom Plaintiffs had no relationship whatsoever. Specifically, the subpoenas sought:

1.  A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

    This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia. Documents are requested for the past four (4) years.

2.  A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence,

and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

The subpoenas provided that the date for compliance therewith was April 30, 2008. (*See id.*).

On April 25, 2008, Plaintiffs finally sent Defendants an email attaching all subpoenas Plaintiffs had issued two weeks earlier. The subpoenas sent by Plaintiffs' counsel were exactly the same as the subpoenas Defendants received from the national accounts, except for one important detail: <u>unlike those subpoenas Defendants received from the national accounts directly, the subpoenas Plaintiffs' counsel sent to Defendants were all signed by Plaintiffs' counsel</u>. (*See* Email from Plaintiffs' Counsel and Attached Subpoenas, attached as Exhibit "H.").

## II.     ARGUMENT AND CITATION OF AUTHORITY

Under Rule 26(c)(4), the Court may "make any order which justice requires to protect a party or person from . . . undue burden or expense, including . . . that certain matters not be inquired into, or that the scope of the discovery or disclosure be limited to certain matters . . ." FED. R. CIV. P. 26(c)(4). A court may issue a protective order limiting discovery if it finds that the discovery sought is "unreasonably cumulative or duplicative or obtainable from some other source that is more convenient and less burdensome," or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i);(ii).

As will be discussed below, the Court should enter a Protective Order prohibiting Plaintiffs from obtaining the information sought within their subpoenas to the aforementioned national accounts, and rendering the subpoenas unenforceable, because the information sought therein is (A) irrelevant to Plaintiffs' individual claims and is well beyond the scope of discovery

as provided in this Court's Order; and (B) duplicative of the representative documents already produced by Defendants pursuant to the parties' own agreement.

A.    The Subpoenas Request Information Which Is Irrelevant to Plaintiffs' Individual Claims and Extends Far Beyond the Scope of Permissible Discovery Established by This Court

This Court's prior Protective Order, Order dated April 25, 2008, and other precedent of this Court, [10] make it clear that "class-wide discovery" is inappropriate and premature before any decision on conditional certification.  Notwithstanding, Plaintiffs are once again attempting to obtain pre-conditional class-wide discovery through the improper means of serving subpoenas on non-parties, which seek (in pertinent part) the same type of discovery that this Court has specifically held to be inappropriate.

The majority of information sought by Plaintiffs in their subpoenas to the aforementioned national accounts is completely irrelevant to the only issue subject to discovery at this stage of the lawsuit:  that is, whether Plaintiffs were denied overtime wages in violation of the FLSA.  As discussed above, Request 1 of the subpoena attachment requests (in pertinent part) a copy of the national account's "complete file referable to Flowers Food, Inc., Flowers Foods Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC," [11] which by its terms includes documents and communications pertaining to or involving numerous individuals and entities which are not, and cannot currently be added as, parties to this

---

[10] This Court has specifically held that any class discovery is premature unless and until a class is conditionally certified.  *Crawford v. Dothan City Board of Education*, 214 F.R.D. 694, 695 (M.D. Ala 2003).  In *Crawford*, plaintiffs filed a motion for leave to conduct limited discovery for purposes of conditional class certification.  Chief Judge Albritton denied this motion – "*Applying [the Hipp] analysis in this case, because no collective action has been conditionally certified, discovery before step one of the two-step procedure is premature*."  *Id.*  (emphasis added).

[11]  Any request for documents pertaining to Flowers/Thomasville sent to national accounts which Chambliss (the only Plaintiffs who had any relationship whatsoever with Flowers/Thomasville) did not sell products to would be completely irrelevant.

lawsuit.[12] The subpoenas also seek information regarding communications or negotiations which do not pertain to or involve Plaintiffs or products sold by Plaintiffs to the national accounts, and most importantly do not involve or pertain to Plaintiffs' individual overtime claims. Further, although one small portion of the subpoena attachment requested specific communications between the national account and the individual Plaintiffs, the same subpoena attachment was used for each national account, without regard to whether the particular Plaintiff actually sold products to that account. Indeed, many Plaintiffs did not sell products to a number of the accounts to whom Plaintiffs sent subpoenas. (Ct. Doc. No. 42, pp. 9-11 and Affidavits attached thereto and cited concurrently therewith.) A representative sampling of any information requested in this attachment that is relevant to Plaintiffs' individual claims, such as contracts with accounts Plaintiffs actually sold products to, was or is being provided to Plaintiffs by Defendants per the parties' agreement.

Request 2 in the subpoena attachment seeks information regarding "contracts, protocol agreements, and distribution agreements" between the national accounts and Plaintiffs, including documents pertaining to negotiations with the Plaintiffs. However, ample testimony had already been provided in both 30(b)(6) deposition to establish that although distributors are often the initial business contact with cash accounts, an individual with Flowers Foods, Flowers Bakeries Group, Flowers/Thomasville or Flowers/Opelika is generally the initial business contact with the national accounts. This testimony provides that Plaintiff did not, as a matter of course, enter into contracts with these national accounts directly. (*See generally* Tr. of Roach.) Rather, Plaintiffs are responsible for selling product to the account, while building and increasing sales within that

---

[12] This would include subsidiaries with which Plaintiffs do or did not have any contractual relationship whatsoever, such as all other Flowers Foods' subsidiaries (except the subsidiary with which the particular Plaintiff contracted) and entities, such as Flowers Foods Bakeries Group, which do not contract with any distributors, neither of whom have any relationship with any of the Plaintiffs.

account through various sales tactics to maximize their profits. (Ct. Doc. No. 42, p. 9 and Affidavits attached thereto and cited concurrently therewith.) Therefore, Plaintiffs are fully aware that documents requested in Paragraph 2 do not exist.

      B.    <u>The Subpoenas Seek  Documents and Information that is Duplicative of that already Provided by Defendants Pursuant to the Parties' Agreement, and For Which Plaintiffs Never Sought to Obtain from Defendants Directly</u>

Federal Rule of Civil Procedure 26(b)(2)(C) provides that the Court must limit discovery if it determines that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" Fed. R. Civ. P. 26(b)(2)(C)(i). Further, the Court must limit discovery if it finds that the "party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii).

Here, Plaintiffs have served subpoenas on numerous national accounts for documents and information that has already been provided by Defendants pursuant to the parties' own representative sampling agreement. <u>Plaintiffs have never informed Defendants that they believed these representative samples to be inadequate.</u> Further, as noted above, Plaintiffs <u>failed to use a single representative document from individuals involved with the national accounts in their 30(b)(6) Deposition</u>.

In addition to being duplicative of information already provided to Plaintiffs, the information sought in the subpoenas was extensively covered in David Roach's 30(b)(6) deposition on January 30, 2008. During that deposition, Plaintiffs had ample opportunity to (and did) explore Flowers Foods', Flowers Foods Bakeries Group's, Flowers/Thomasville's, and Flowers/Opelika's involvement with national accounts in Plaintiffs' respective territories that Plaintiffs sold products to during the statutory period. Mr. Roach and Ms. Lauder's testimony

specifically delved into topics such as (for example) exactly how this business is obtained, any negotiations that take place between the national account and Flowers Foods, Flowers Foods Bakeries Group, and Flowers/Thomasville and/or Flowers/Opelika, and any contractual terms entered into thereto, contact persons for such business within Flowers Foods, Flowers Foods Bakeries Group, and Flowers/Thomasville and/or Flowers/Opelika, how pricing is established for each type of product sold to these national accounts and how such pricing differs, and the business processes for when new stores are opened. (*See generally*, Tr. of Roach; Tr. of Lauder.)

Moreover, the subpoenas also request "all documents describing Flowers Foods, Inc., [and] products distributed," which not only far exceeds that which is relevant to Plaintiffs' individual claims but also necessarily includes voluminous accounting records about which a separate Flowers Foods 30(b)(6) designee, Karyl Lauder, was produced to provide testimony. Plaintiffs had every opportunity to, and did, discuss these issues in depth with Ms. Lauder during her 30(b)(6) deposition. (Tr. of Lauder.)

C.    The Court Should Enter a Protective Order Because Plaintiffs are Using the Subpoena Process Inappropriately, in an Improper Attempt to Obtain Discovery to Which They Would Otherwise Not be Entitled

As discussed above, because there is no legitimate justification for serving all of the above-referenced national accounts with these subpoenas, Plaintiffs are clearly misusing the subpoena process in an attempt to obtain documents to which they otherwise would not be entitled and to harass national accounts so that they may exact leverage in connection with this litigation. Recognizing the critical importance of safeguarding customer relationships, courts have precluded plaintiffs from seeking such discovery. *See, e.g.*, *Joy Tech., Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 849 (D. Del. 1991) (vacated on other grounds) (precluding plaintiff from

seeking discovery from defendant's customers where plaintiff had not shown that it could not obtain the information from defendant).

Further, Plaintiffs failed to comply with Federal Rule of Civil Procedure 45(b)(1) by providing advance, or even contemporaneous, notice of the subpoenas as required by Federal Rule of Civil Procedure 45. Rather, Plaintiffs sent an email, almost two weeks after they had already "issued" the subpoenas, and six days before the compliance deadline, seeming misrepresenting that they had not yet served the subpoenas. As noted above, the subpoenas served on the national accounts appeared to be unsigned. Only the copies sent to the undersigned counsel appear to be signed. Due to the lack of advance or even contemporaneous notice by Plaintiffs regarding these subpoenas, Defendants were unable to object to the scope of these subpoenas before they were issued, or otherwise attempt to resolve this dispute without judicial intervention, because the subpoenas had already been served.

As Chief Judge Albritton of this Court has noted in the Section 216(b) context, "Courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Horne v. United Services Auto Ass'n,* 279 F. Supp. 2d 1231, 1237 (M.D. Ala. 2003) (quoting *Brooks v. BellSouth Telecommunications, Inc.,* 164 F.R.D. 561, 567 (N.D. Ala. 1995)). The aforementioned subpoenas fall into this category.

## CONCLUSION

For the above reasons, Defendants respectfully requests that the Court grant its Protective Order and render any subpoenas issued by Plaintiffs to non-party national accounts unenforceable.

Respectfully submitted this 29th day of April, 2008.


/s/ Kevin P. Hishta
Kevin P. Hishta

Georgia Bar No. 357410
Admitted *Pro Hac Vice*
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
Bank of America Plaza
600 Peachtree Street, NE
Suite 2100
Atlanta, GA  30308
E-mail: Kevin.Hishta@ogletreedeakins.com
Ph. (404) 881-1300; Fax: (404) 870-1732

Sandra B. Reiss
Alabama Bar No. ASB-3650-S80S
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203-2118
e-mail:  Sandra.Reiss@odnss.com
Ph.  (205) 328-1900; Fax:  (205) 328-6000

*Counsel for Defendants, Flowers Foods, Inc.*
*Flowers Baking Co. of Opelika, LLC, and Flowers Baking*
*Co. of Thomasville, LLC*

18

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this the 29th day of April, 2008, I electronically filed the foregoing Defendant Flowers Foods, Inc.'s, Flowers Baking Co. of Opelika, LLC's, and Flowers Baking Co. of Thomasville, LLC's , Brief In Support of Its Motion For Protective Order And/Or Motion to Quash Non-Party National Account Subpoenas with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

      Greg L. Davis, Esq.
      The Law Offices of Greg L. Davis
      6987 Halcyon Park Drive
      Montgomery, AL  36117

      Joe R. Whatley, Jr., Esq.
      Whatley Drake & Kallas, LLC
      2001 Park Place North
      Suite 1000
      Birmingham, Alabama  35203

      Joseph P. Guglielmo, Esq.
      Whatley Drake & Kallas, LLC
      1540 Broadway, 37th Floor
      New York, New York 10036

      Amy Lynne Weaver
      Whatley Drake & Kallas, LLC
      2001 Park Place North
      Suite 1000
      Birmingham, Alabama  35203

      Glen M. Connor
      Whatley Drake & Kallas, LLC
      2001 Park Place North
      Suite 1000
      Birmingham, Alabama  35203

      E. Kirk Wood, Esq.
      Wood Law Firm, LLC
      PO Box 382434
      Birmingham, Alabama 35238-2434

                            /s/ Kevin P. Hishta
                            Kevin P. Hishta

**EXHIBIT LOG**

| Exhibit | Description | Date |
|---------|-------------|------|
| A | Letter from Joe Guglielmo to Kevin Hishta | 11/26/2007 |
| B | Deposition Transcript of David Roach | 01/30/2008 |
| C | Plaintiff Melvin Snow's Answers to Defendants' First Interrogatories | 01/21/2008 |
| D | Listing of Documents Produced regarding National Accounts | |
| E | Excerpts from the Deposition of Karyl Lauder | 01/30/2008 |
| F | Subpoenas from National Accounts: Zaxby's Holdings, LLC; Chick-fil-A, Inc.; Burger King Corporation and Hardee's Food Systems, Inc. | |
| G | E-mail from Teva Allen to Kevin Hishta regarding subpoenas | 04/23/2008 |
| H | E-mail from Plaintiffs' Counsel with attached copies of subpoenas | 04/25/2008 |

# EXHIBIT A

 WhatleyDrake&Kallas

Joseph P. Guglielmo
Direct Dial: 212-447-7007
jguglielmo@wdklaw.com

November 26, 2007

<u>VIA E-MAIL</u>

Kevin P. Hishta
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2100 Bank of America Plaza
Atlanta, Georgia 30308

     Re:   *Morrow et al. v. Flowers Foods, Inc. and Flowers Baking Co. of Opelika, LLC*
           Civil Action No. 3:07-cv-00617-MHT

Dear Kevin:

     The purpose of this letter is to set forth our discussion regarding the production of documents, the plaintiffs' requests for admission and plaintiffs' interrogatories.

     During our meet and confers October 16 and November 15, 2007 on Plaintiffs' 30(b)(6) Notice, you have agreed to produce discovery from and concerning Flowers Foods, Flowers/Opelika and Flowers/ Thomasville (collectively "Defendants"). However, it is our understanding that Defendants continue to take the position that the scope of discovery should not include information concerning other potential independent distributors other than the twelve (12) named plaintiffs nor should it include information relating to any subsidiaries other than Defendants Flowers/ Opelika and Flowers/ Thomasville. Therefore, we agreed to set aside the overarching objection on the scope of discovery allowed until the Court has ruled on the pending Motion for Protective Order. Plaintiffs continue to believe that permissible discovery includes information relating to any subsidiaries of Flowers Foods including any discovery of Flowers Foods concerning its involvement or control of its subsidiaries.

     During our meet and confer, you identified areas where responsive materials potentially exist, including: the individual distributor files, accounting documents, national accounts files, policy and procedure documents, training documents, business model documents, implementation documents, prospective distributor records, hand-held computer records, emails and documents regarding risk of loss.

Kevin P. Hishta
November 26, 2007
Page 2

Specifically, as to production of these documents trails you confirmed the following:

- individual distributor files would be maintained at the subsidiary level and would primarily consist of paper files.

- accounting documents consisting primarily of weekly settlement statements and certain back-up documentation (most likely maintained as electronically stored information) that would be possessed both by the parent company and the subsidiaries.

- We agreed that production of representative sampling of documents of pay-by-scan, national accounts could be made at this time based on your representation of the volume and that plaintiffs and would discuss the production with you after the initial review.

- policy and procedure documents would be produced both at the parent and subsidiary level.

- training documents would exist at the individual subsidiary level and that production would be made from both locations.

- business model documents are located at both the parent and the subsidiary level.

- implementation documents are located primarily at the subsidiary level, but there will be some documents at the parent level.

- prospective distributor records are located at the individual subsidiary level.

- hand-held computer documents are located at the individual subsidiary level.

- Emails are located at both the parent and the subsidiary levels.

- We agreed that production of a representative sampling of documents concerning risk of loss documents including those that are found in the Protocol Agreement both from the parent and the subsidiary levels.

- As with the national account documents, we have agreed to accept the representative sampling and would discuss the production with you after the initial review.

With regard to these document trails, for those documents not subject to the overarching discovery disagreement mentioned above, You confirmed that Defendants have agreed to a rolling production, which should commence in the next three to four weeks. At this time, you have also agreed to confer with your production team and then consult us on the manner and method of production, including the method we have set forth in our request for production.

Kevin P. Hishta
November 26, 2007
Page 3

Lastly, you have agreed to re-review the requests for admission and the interrogatories and to modify Flowers Foods' responses with respect to the addition of the new Defendant, Flowers/ Thomasville. With this letter, plaintiffs are serving separate requests for production on Flowers/ Thomasville.

As to the specific interrogatories and requests for admission, we believe the following accurately reflects our discussion last week:

## Interrogatories

### Interrogatory Nos. 3 & 4:

Plaintiffs clarified that these interrogatories seek the identification of what is used to track various purchases, on a national level and on a local level. Defendants agreed they would revisit providing further responses in light of this clarification.

### Interrogatory No. 5:

Plaintiffs clarified that this interrogatory seeks to know any alternate means of delivering fresh baked products. Defendants agreed they would revisit providing further responses in light of this clarification.

### Interrogatory No. 6:

Defendants have responded that the only policy on whether distributors can distribute other product is in the contained in the independent distributor contract and have confirmed that there are no policy documents on this issue.

### Interrogatory No. 7:

In addition to the response set forth in the interrogatory, Defendants confirmed that Flowers Industries wanted a model developed that was similar to other contracts in the bread industry, so they contacted outside counsel and that no person within Flowers Industries drafted any portion of the distributor agreement.

### Interrogatory Nos. 8 & 9:

Defendant will revisit these interrogatories with respect to the new Defendant, Flowers/ Thomasville.

Kevin P. Hishta
November 26, 2007
Page 4


### Interrogatory Nos 15 & 16:

Defendants have further clarified their response by providing that Flowers/Opelika and Flowers/ Thomasville bear most of the burden of the price allowance and that distributors need to seek approval to change prices on the bakery products.

### Interrogatory No. 19:

Flowers Foods confirms that it does not have any thrift stores.

### Interrogatory No. 20:

Flowers/Opelika does not have regular company-run sales routes but rather certain instances where company-run routes may exist. Flowers/ Opelika stated that, in new market areas, there are company-run employee routes until that market area is sufficiently developed. Additionally, when a distributor sells his or her territory, an employee of the company will run the route until a new distributor is found.

## Requests for Admission:

### Request for Admission No. 18:

Regarding whether distributors are required to sell their stale products on a daily basis, Flowers admitted that, for a distributor to sell product back to Flowers, he or she must sell the product back within a certain time frame in order for Flowers to use it in their thrift stores. If a distributor does not sell it back within the designated time frame, Flowers will not buy the stale product.

If you disagree with any of the information above, please contact me.

Sincerely,

Joseph P. Guglielmo

JPG:ar

cc:    Sandra Reiss
       Greg L. Davis
       E. Kirk Wood
       Joe R. Whatley, Jr.
       Amy Weaver

EXHIBIT B

D. ROACH

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

EASTERN DIVISION

CHARLES MORROW and MICHAEL

OVERTON, individually and on

behalf of similarly situated

employees,

       Plaintiffs,           CIVIL ACTION NO.

    vs.                 3:07-CV-617-MHT

FLOWERS FOODS, INC., AND

FLOWERS BAKING CO., OF

OPELIKA, LLC,

       Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~

VIDEOTAPED DEPOSITION OF

DAVID M. ROACH

January 30, 2008

9:50 a.m.

Ogletree Deakins Nash Smoak & Stewart, P.C.

2100 Bank of America Plaza

600 Peachtree Street

Atlanta, GA 30308

Thomas R. Carey, CCR-B-1715

D. ROACH

Page 2

1                  APPEARANCES OF COUNSEL

2

3    On behalf of the Plaintiffs:

4    JOSEPH P. GUGLIELMO, Esq.

5    AMY A. WEAVER, Esq.

6    Whatley Drake & Kallas, LLC

7         1540 Broadway, 37th Floor

8         New York, NY  10036

9         (212) 447-7070

10        (212) 447-7077

11        jguglielmo@wdklaw.com

12

13   On Behalf of the Plaintiffs:

14   GREG L. DAVIS, Esq.

15   The Law Office Of Greg L. Davis

16        6987 Halcyon Park Drive

17        Montgomery, AL  36117

18        (334) 832-9080

19        gldavis@knology.net

20

21

22

23

24

25

D. ROACH

Page 3

```
 1              APPEARANCES OF COUNSEL (continued)

 2

 3   On behalf of the Defendants:

 4   KEVIN P. HISHTA, Esq.

 5   DAVID H. GRIGEREIT, Esq.

 6   MARGARET E. SANTEN, Esq.

 7   Ogletree Deakins Nash Smoak & Stewart, P.C.

 8        2100 Bank of America Plaza

 9        600 Peachtree Street

10        Atlanta, GA  30308

11        (404) 881-1300

12        (404) 870-1732

13        kevin.hishta@ogletreedeakins.com

14

15   Also present:  Videographer Ben Jones

16                  Stephanie B. Tillman, Esq.

17                  Vice President and Associate

18                  General Counsel Flowers Foods, Inc.

19

20

21

22

23

24

25
```

D. ROACH

Page 4

1                    DISCLOSURE

2

3           Pursuant to Article 8(B) of the Rules and

4    Regulations of the Board of Court Reporting of the

5    Judicial Council of Georgia, I make the following

6    disclosure:

7           I am a Georgia Certified Court Reporter,

8    here as a representative of Brown & Gallo, L.L.C.,

9    to report the foregoing matter. Brown & Gallo,

10   L.L.C., is not taking this deposition under any

11   contract that is prohibited by O.C.G.A. 5-14-37

12   (a) and (b).

13          Brown & Gallo, L.L.C., has agreed to

14   provide reporting services for VERITEXT, LLC - NY,

15   the terms of which are as follows:

16          The above mentioned referring firm will do

17   production and billing of transcripts of this matter.

18

19

20

21

22

23

24

25

D. ROACH

Page 5

1           Videotaped Deposition of David M. Roach

2                     January 30 2008

3

4           VIDEOGRAPHER:  Today's date is January 30,

5      2008.  The time is approximately 9:45 a.m.  The

6      location is 600 Peachtree Street, Northeast

7      Atlanta, Georgia, 30308.  The deponent is Mr.

8      David Roach.  Will counsel please identify

9      themselves for the record.

10           MR. GUGLIELMO:  Joseph Guglielmo, for

11      Whatley, Drake & Kallas for the plaintiffs.

12           MS. WEAVER:  Amy Weaver, Whatley, Drake &

13      Kallas for Plaintiffs.

14           MR. DAVIS:  Greg Davis for plaintiffs.

15           MS. TILLMAN:  Stephanie Tillman for

16      Flowers Foods.

17           MS. SANTEN:  Maggie Santen Handerhan with

18      Ogletree Deakins for defendants.

19           MR. GRIGEREIT:  David Grigereit, Ogletree

20      Deakins for defendants.

21           MR. HISHTA:  Kevin Hishta with Ogletree

22      Deakins for the defendants.

23           VIDEOGRAPHER:  Will the Court Reporter

24      please swear in the witness.

25                     (WHEREUPON, a brief recess was

D. ROACH

Page 6

1              taken)

2         DAVID M. ROACH, having been first duly

3    sworn, was examined and testified as follows:

4         MR. GUGLIELMO:  Kevin, I think I just

5         wanted to put the stipulation on the report

6         with respect to the topics that Mr. Roach was

7         going to testify to, this way we sort of have

8         it for the record.

9         MR. HISHTA:  Sure.  Mr. Roach is Flowers

10        Foods designee for inquiries five and six,

11        which are identical.  And those inquiries are

12        Flowers Foods involvement with national

13        accounts in plaintiff's respective territories,

14        i.e. testimony regarding those national

15        accounts that one or more of the plaintiffs

16        actually sold products to from July 2, 2004 to

17        date.

18        And prior to the deposition starting this

19        morning, I have provided opposing counsel a

20        list of the national accounts serviced by one

21        or more plaintiffs as best as I can tell based

22        on the records available to us.  If for some

23        reason another national account shows up that a

24        plaintiff services or serviced, we would

25        certainly let you know that.

D. ROACH

1           MR. GUGLIELMO:  Thank you.

2      EXAMINATION

3      BY-MR.GUGLIELMO:

4      Q    Mr. Roach, my name is Joseph Guglielmo,

5  I'm one of the attorneys representing the plaintiffs

6  today.  Could you please state your full name and

7  address for the record?

8      A    David Michael Roach.  My address is 16

9  Meander Trace, Thomasville, Georgia, 31792.

10     Q    Mr. Roach, I'm going to go over some of

11 the ground rules or instructions for a deposition.

12 I'm going to be asking you questions today.  If you

13 don't understand a question I ask, please just say

14 so and then I'll rephrase the question or try to

15 give you a better question.

16     A    Okay.

17     Q    I would like for you to provide verbal

18 responses to the questions that I ask, yes's and

19 no's.  No nods of the head, or uh-huh, or huh-uh.

20 Although we have a videographer here today, just so

21 we have a clear record, transcript, we require

22 verbal, at least request verbal responses.

23          Let me finish a question before you

24 answer, and this is so we have a clear record so

25 there is no overlapping and the Court Reporter

VERITEXT/NEW YORK REPORTING COMPANY

212-267-6868                              516-608-2400

D. ROACH

1    doesn't mistake a question of mine as an answer of

2    yours.

3                If you need to take a break at any

4    time, let me know.  I'm glad to oblige.  Do you

5    understand these instructions I've just provided?

6        A    Yes.

7        Q    You understand also that you've been sworn

8    in now and that you are under oath, and that your

9    testimony is as if you were before a Judge, before a

10   court of law?

11       A    Yes.

12       Q    That you are supposed to answer truthfully

13   and to the best off your ability?

14       A    Yes.

15       Q    Likewise, if there is a particular

16   question I ask and you don't know the answer, or you

17   don't recall, just say so.  I don't want you to

18   speculate and I don't want to you to guess?

19       A    Okay.

20       Q    Just, again, I want you to answer

21   truthfully and to the best of your knowledge.

22                Is there anything that we should know

23   today that would prevent you from testifying

24   truthfully and to the best of your ability?

25       A    No.

D. ROACH

Page 9

```
 1      Q    Mr. Roach, have you ever been deposed
 2  before?
 3      A    No.
 4      Q    Have you ever provided any testimony under
 5  oath?
 6      A    No.
 7      Q    Without getting into any of your
 8  attorney/client communications or any work-product
 9  privileges that your client, that your attorney may
10  have, can you generally describe for me what you did
11  to prepare for this deposition?
12      A    Yes, we had one conference call with
13  counsel and one meeting last week with counsel.
14  And, you know, I did contact a couple of my account
15  guys to kind of brush me up on a few things that I
16  might have had questions on.
17      Q    Okay.  And with respect to the conference
18  call that you just identified, can you tell me who
19  were the participants?
20      A    Yes.  It was Kevin, myself and Chuck Rich.
21      Q    Anyone else?
22      A    David Dodge, which is one of my account
23  guys came in on one of the calls for a few minutes.
24  That would be it.
25      Q    What is Mr. Dodge's title or position?
```

D. ROACH

Page 10

1     A    He is a Vice President of National

2  Accounts.  He is a responsible for Dollar Stores.

3     Q    Do you know how long that first conference

4  call took place?

5     A    I would say a couple of hours.

6     Q    Okay.  Then with respect to, I guess an

7  in-face meeting you had with counsel, can you also,

8  can you identify for me who was present during that

9  meeting?

10    A    Kevin David and Chuck Rich.

11    Q    Anyone else?

12    A    That was it.

13    Q    Do you know, can you tell me the duration

14  of that meeting?

15    A    It was an all-day meeting.

16    Q    I think you also mentioned a little while

17  ago that you contacted some of your account guys, I

18  guess?

19    A    Yes, National Account Managers.

20    Q    Can you tell me who those people were?

21    A    At Wal-Mart we have Doug Brown.  At Dollar

22  Stores I have David Dodge.  Winn-Dixie I have Robert

23  Meadows.  Bruno's I have David Johnson.  And some of

24  those guys are actually responsible for more than

25  one account.  And then food service I have Jeff

D. ROACH

Page 11

1    Strain.

2         Q    Without getting into any specifics of any

3    attorney/client privilege you may have, can you just

4    tell me the purpose of your discussions with these

5    individuals?

6         A    Just to make sure if I understood how we

7    were, you know, a lot of times we have zones or

8    things like that.  Just trying to refresh my memory

9    on how many zones are at, how many zones we have

10   with different accounts, things like that.

11        Q    Do you know approximately how long your

12   discussions or meetings with these people were?

13        A    Five to ten minutes.

14        Q    Each?

15        A    Yes.

16        Q    Did you speak with anyone else in

17   preparation for your deposition today?

18        A    No.

19        Q    Again, without getting into any

20   attorney/client or work-product privileges you may

21   have, describe for me generally any documents you

22   may have reviewed in preparation for today?

23        A    I did supply a map for the zones at

24   Wal-Mart.  The, outside of that it would just be the

25   E-mail, E-mail responses.

D. ROACH

Page 12

1     Q   Do you know if your counsel has produced

2  those documents in connection with this litigation?

3     A   I don't know.

4        MR. HISHTA:  We haven't produced the

5     E-mail.  I haven't produced the Wal-Mart

6     regional map.  If it's responsive, you'll

7     certainly get it.

8     Q   (By Mr. Guglielmo) Are there any other

9  documents that may be in your possession, either in

10  your office or in your home, that may be responsive

11  to any of the topics that you're going to testify to

12  today?

13     A   I'm not sure.

14        MR. HISHTA:  For the record, we've

15     provided for purposes of the 30(b)(6) a

16     representative sampling of E-mail

17     correspondence and other documents, electronic

18     and otherwise, with a cross section of the

19     national accounts.

20     Certainly there are other documents that

21     are potentially relevant to issues with respect

22     to the national accounts, and the understanding

23     with counsel, as I understand it, was that

24     y'all would utilize that representative

25     sampling and then we would discuss further

D. ROACH

Page 13

```
 1        whether or not additional documents would be
 2        needed.
 3             And just to follow-up on that point.  Per
 4        the Court's Order of November 27th, that is the
 5        understanding that the Court approved.
 6             MR. GUGLIELMO:  I'm just trying to
 7        understand whether there is any documents that
 8        Mr. Roach is aware of that are in his
 9        possession that may be responsive to the
10        testimony provided today that he may or may not
11        have produced, you know, or things that we may
12        be discussing, so --
13             MR. HISHTA:  The only one that I can think
14        of, Joseph, is the map or where we were trying
15        to figure out how many areas were serviced by,
16        how many Wal-Mart zones or regions were
17        serviced by Flowers Foods subsidiaries.  And I
18        tried to make a copy of it the other day, and
19        it's so small I could not enlarge it.  But I'll
20        attempt to do so and provide you a copy.
21             MR. GUGLIELMO:  Okay.
22        Q    (By Mr. Guglielmo) Mr. Roach, can you
23        briefly describe for me your educational background
24        beginning with graduation from high school?
25        A    Yes.  Graduated from high school at
```

D. ROACH

Page 14

1    Southland Academy in Americas, Georgia.  And I went

2    to college at the University of Georgia, as well as

3    Georgia Southwestern College where I graduated with

4    a Marketing Degree.

5         Q    Do you have any, do you have any

6    post-graduate Degrees or any certificate studies?

7         A    No.

8         Q    Do you hold any licenses, professional

9    licenses?

10        A    No.

11        Q    Can you tell me what your current title or

12   position is?

13        A    My current title is President of Flowers

14   Baking Company of Villa Rica.

15        Q    For how long have you held that position?

16        A    Since mid December.

17        Q    Of 2006?

18        A    Of 2007.

19        Q    Forgot what year it was.  Can you briefly

20   describe for me your duties and responsibilities as

21   the Vice President of Flowers Baking Company?

22             MR. HISHTA:  Actually President.

23             MR. GUGLIELMO:  I'm sorry.

24             THE WITNESS:  Flowers Baking Company in

25        Villa Rica?

D. ROACH

1          MR. GUGLIELMO:  Yes.

2          THE WITNESS:  I mean, I'm totally

3     responsible for P&L responsibilities, sales

4     responsibilities, manufacturing

5     responsibilities, anything that is involved

6     with the Flowers Baking Company of Villa Rica.

7     Q     (By Mr. Guglielmo) By P&L responsibility,

8  can you provide me some more description?

9     A     Yes, we have a profit and loss statement

10  that each subsidiary has of Flowers.  But I'm

11  responsible for the one that is respective to Villa

12  Rica.

13    Q     And in terms of a sales responsibility,

14  can you describe for me a little bit more what you

15  mean by that?

16    A     Well, we have a sales management team.

17  The, I have two Vice Presidents of sales.  I have an

18  account management team.  I also have a sales team

19  made up of Directors of Sales, Sales Managers and

20  Operations Managers.  And those guys are the, that's

21  the team that assists and supports the

22  distributorship program.

23    Q     And do these, do the sales management

24  team, does the, do the personnel within the sales

25  management team report to you?

D. ROACH

1      A    Well, the two VP's report to me.  The

2    Directors report to the VP.  The Sales Managers to

3    the Director.  And the Operations Managers to the

4    Sales Managers.

5      Q    Okay.  And so there would be a Director in

6    charge of the sales management team; is that

7    correct?

8      A    A Director would be responsible for, and

9    it varies from Director to Director, for two to

10    three warehouses.  Each warehouse would house,

11    typically house a Sales Manager and an OEM.  And

12    depending on the number of routes, it could be more.

13      Q    What would the Sales Manager's

14    responsibilities be?

15      A    He is, the Sales Manager's responsibility

16    is to assist the distributors in their market areas.

17    He'll actually go to an account, and within that

18    account he will try and help secure displays.  He's

19    a communication link from between Flowers Baking

20    Company of Villa Rica and the distributor.

21           So he's a vital, his most important

22    role is to communicate with that distributor on

23    sales activities and assist him in getting displays,

24    et cetera.

25      Q    And then he communicates with the Director

D. ROACH

1    of the sales team, correct?

2        A    Yes.  Like a Director will have three

3    warehouses, a Sales Manager will be over one of

4    those warehouses.

5        Q    So there will be a Sales Manager per each

6    warehouse?

7        A    Typically.  Now, if you have a lot of

8    routes in one warehouse, you might have two Sales

9    Managers in that warehouse.

10       Q    Does the Sales Manager within the

11   warehouse also deal with distributor issues

12   pertaining to national accounts?

13       A    The sales, the subsidiaries deal with the

14   distributor issues.  The national accounts team does

15   not deal with the distributor issues.

16       Q    By the subsidiaries, what are you

17   referring to, the bakery?

18       A    Each individual bakery.  Flowers Baking

19   Company of Villa Rica, Flowers Baking Company of

20   Opelika, Flowers Baking Company of Thomasville, for

21   example.

22       Q    So I'm clear, you're saying the national

23   accounts team, what are you referring to?

24       A    The national accounts team is part of

25   Flowers Foods, or Flowers Bakeries, that team is,

D. ROACH

1  this team was developed because our customers

2  actually demanded that we get set up this way.

3          This team is only for the big

4  accounts, the national-type accounts like a Wal-Mart

5  or Winn-Dixie.  And these, the national account team

6  like a Wal-Mart, for example, will cover several

7  bakeries.  The Wal-Mart will cover every bakery that

8  we have in the company.

9          So this national accounts team is to

10  be one point of contact.  Our customers insisted

11  that we be, that we have one point of contact.  And

12  that is really the reason that this national account

13  team was developed to have one person communicating

14  with an account.

15      Q    Do you know when, approximately, this

16  national accounts team was developed?

17      A    I don't know exactly.  I would say six,

18  seven years ago.

19      Q    Do you know who are the members of the

20  national account team, presently?

21      A    Yes.  It's the guys that I mentioned to

22  you earlier, that is part of the national accounts

23  team.

24      Q    So some of the individuals you were

25  speaking of earlier that you spoke with?

D. ROACH

Page 19

```
 1      A    Yes.  Just to keep it clear, there is
 2  Flowers Baking Company of Villa Rica, which I'm
 3  responsible for now.  And previously I was Vice
 4  President of Sales and National Accounts, and that's
 5  two separate things going on here.
 6      Q    Okay.  So I take it, to follow that,
 7  follow what you just said.  While you were in the
 8  position of Vice President of Sales for National
 9  Accounts --
10      A    Right.
11      Q    -- you oversaw individuals who were
12  responsible for each individual national account?
13      A    That's correct.
14      Q    So the individuals you mentioned, for
15  example, David Dodge, was responsible for a
16  particular national account?
17      A    Yes.
18      Q    And would report to you on the activities
19  relating to them?
20      A    Yes.
21      Q    And so, just so I understand again, with
22  respect, for example, take Mr. Dodge, what would be
23  his responsibilities or duties as, with respect to
24  the national accounts?
25      A    Okay.  His responsibilities would be to
```

D. ROACH

Page 20

1    communicate what -- you know, one thing he does is

2    takes, he will take a plan that has been developed

3    to Dollar General.  Dollar General will want, for

4    example, Dollar General has six different pricing

5    zones.  And those six zones we have taken, we fit

6    the bakeries within the zone that closely aligns

7    with that market pricing.

8              So the zones are actually, we're

9    limited to the number of zones that we can have in

10   Dollar General, and that is determined by Dollar

11   General.  They limit us to six zones.

12   Q    And can you describe for me the purpose of

13   establishing the zones?

14   A    It is to limit the amount of work that

15   comes into Dollar General.  They don't want to have

16   50 people handling accounting work.

17   Q    But are zones created based on location of

18   a particular Dollar General stores throughout the

19   Flowers network?

20   A    Yes.  It's basically set up where we

21   have -- we have six zones that were set up between

22   Dollar General and David Dodge.  Once those zones

23   were established, the plant's current market pricing

24   was fit into the zone that most closely aligned with

25   that market pricing.

D. ROACH

Page 21

1      Q     Can you give me an example of what you

2    mean by that, the plant's market pricing fits within

3    the zone?

4      A     Yes.

5      Q     What does this mean in sort of a --

6      A     Okay.  Zone one may be Giant bread, maybe

7    $1.19, Old Fashioned, $1.29.  Zone two, Giant bread

8    pricing may be $1.50.  So Thomasville, Flowers

9    Baking Company of Thomasville may fit into price

10   zone one, where Flowers Baking Company of Villa Rica

11   may fit into price zone two because of the

12   difference in the pricing in that market.

13     Q     So the particular bakery would manufacture

14   bread that would be sold to a particular zone for

15   Dollar General?

16     A     Well, we reciprocate all throughout the

17   plants, so that is not totally true.

18     Q     Okay.  I just want to understand.  So how

19   would that work with respect to, like the example

20   you just gave.  You have a zone one, and they have a

21   particular type of product, the Old Fashioned

22   product?

23     A     Right.

24     Q     How would that, how is that function of

25   establishing zones and overlaying those zones with

D. ROACH

Page 22

1    respect to the bakeries, how does that function in

2    ultimately providing the product to the distributor?

3    How does that work?

4        A    I'm not sure I understand your question.

5            MR. HISHTA:  Let me just, I think it's

6        confusing for the witness because we're dealing

7        with two separate issues, a pricing issue

8        versus ordering the products.

9            MR. GUGLIELMO:  And I'm just trying to

10       understand the structure issue right now.  I'm

11       putting my structure, I want you to put your

12       structure hat on.

13           THE WITNESS:  Right.

14       Q    (By Mr. Guglielmo) You said, for example,

15   there are six zones between Dollar General and --

16       A    This is also brand pricing zone.  In

17   Dollar General we also have private label.  Now, we

18   don't have private label in the regular Dollar

19   General stores, we have it in the Dollar General

20   market stores.  There is only one price for private

21   label.  But for brand --

22       Q    I mean, one price is the price that is --

23       A    Company wide.

24       Q    The price that is sold, the price that

25   bread is sold to Dollar General is what you're

D. ROACH

Page 23

1    referring to?

2        A    That's correct.  Wholesale price.

3        Q    And how do the zones work together to

4    manufacture product?

5        A    Well, the manufacturing doesn't fit into

6    the zones.

7        Q    Okay.  I'm just, maybe I'm just -- I'm

8    getting confused.  I think I've asked this, but I

9    apologize.

10       A    Let me, I might clarify something here.

11   The zone pricing will be closely aligned with, to

12   make the distributors and help them be competitive

13   in certain markets, that's where those zones are set

14   up, that is one of the reasons those zones are set

15   up that way.

16       Q    So are zones are set up more along the

17   lines of what the territory structure of the various

18   territories are set up?

19       A    No.  No.  Because they limit us to six.

20   We have, you know, 20-some odd bakeries, so, we are

21   limited to the number of zones we can set up.  But

22   that is determined by the account.

23       Q    But just so I'm clear, again, the six

24   zones are pricing zones, is what you are saying?

25       A    That's correct.

D. ROACH

Page 24

```
 1       Q     Okay.  And are, those six pricing zones

 2   overlap the entire territory that the route

 3   distributor served?

 4       A     That Flowers serves Dollar General stores,

 5   yes.

 6       Q     Okay.  And is that different than what the

 7   route distributors serve?

 8       A     No.

 9       Q     Is that the same?

10       A     Yes.  The Flowers distributorship, we

11   don't serve all Dollar General stores, so, the areas

12   that we do service, that those distributors will fit

13   into one of those zones.

14       Q     And, again, so I understand this.  The six

15   zones are pricing, they're basically pricing zones,

16   they're not like a territorial area?

17       A     No.

18       Q     And do you have an understanding of why

19   they're set up for, why there is different pricing

20   zones?

21       A     Why?

22       Q     Yes.

23       A     To make us, to make the distributor as

24   competitive as possible in each area.  What they

25   would like to have is one price everywhere.  We have
```

VERITEXT/NEW YORK REPORTING COMPANY

D. ROACH

Page 25

```
 1    convinced them to at least give us six zones, they

 2    have limited us to six.  So that's the reason for

 3    the zones.

 4         Q    Okay.  Let me take another step back.  So

 5    is Mr. Dodge responsible for communicating with

 6    Dollar General on the, on the, on the national

 7    account, on the Dollar General account?

 8         A    Yes.

 9         Q    So he's got day-to-day responsibility for

10    communicating with Dollar General?

11         A    Yes, he does.

12         Q    Does anyone else have sort of that

13    responsibility with respect to Dollar General?

14         A    No.

15         Q    Then while, I assume that Mr. Dodge then

16    reported to you while you were the Vice President of

17    Sales for national accounts, correct?

18         A    Correct.

19         Q    Then who did you report to when you were

20    the Vice President of Sales for national accounts?

21         A    I reported to Gene Lord, who was the

22    President of the Bakery Division.

23         Q    Then who did Mr. Lord report to with

24    respect -- I'm sorry.  Who did Mr. Lord report to?

25         A    He reported to George Deese, who is CEO,
```

D. ROACH

Page 26

1   Chairman.

2        Q    And did Mr. Deese report to anybody?

3        A    Just the Board.

4        Q    This structure, for example, with respect

5   to establishing a national accounts team, that

6   occurred on or about six years ago, you said?

7        A    Yes, approximately.

8        Q    And is there, so I'm clear, is there, as

9   part of the national accounts team, is there a

10  particular person responsible for each national

11  account at Flowers?

12       A    Yes.

13       Q    Okay.  Could there be more than one

14  person?

15       A    No.

16       Q    So with respect to, for example, Wal-Mart,

17  is there a person that is responsible for dealing

18  with that national account?

19       A    Yes.  Well, at Wal-Mart we have one lead

20  person.

21       Q    Who is that?

22       A    That person is Doug Brown.

23       Q    Doug Brown?

24       A    Right.

25       Q    What is Mr. Brown's title or position?

D. ROACH

Page 27

1    A    His title is Executive Vice President of

2  National Accounts, Wal-Mart.

3    Q    And then?

4    A    Then under him I have Bobby Massanelli.

5    Q    What is Mr. Massanelli's title?

6    A    He's Vice President of National Accounts.

7    Q    And then?

8    A    And Bobby Cause, he actually is the sales

9  guy that makes the call on Wal-Mart.

10    Q    By the "call" on it, you mean he's the one

11  that, for example, if there's a new store that is

12  coming within a Flowers, where Flowers serves --

13    A    Right.

14    Q    -- Flowers can serve, he would make the

15  call on the particular Wal-Mart entity to see if

16  they can negotiate a deal to sell bread?

17    A    Wal-Mart would actually let him know they

18  have a store opening in a certain area, and then he

19  would in turn let them know whether or not we could

20  service it.

21    Q    Take me through the steps of how that

22  works, like that example?

23    A    Yes.  Sure.  As I said, Wal-Mart will let

24  us know what, where the stores are opening and the

25  date they will be opening.  They will, they're

D. ROACH

Page 28

1    asking can we service this account.  We let them

2    know whether or not we, it falls within the service

3    area that we, that we're currently distributing in.

4                    And once they know that at Wal-Mart,

5    Wal-Mart does have private label in their stores.

6    The private-label business is, they don't actually

7    bid each store, they used to, but they don't any

8    more.  They have zones set up as well.  Within each

9    zone we have a price, a private label bid price that

10   had been established.  And within that, if they say

11   that we can service the store, they know what our

12   price is in that zone, and they determine who will

13   take on that private label for that account.  As

14   well as they will allocate a certain amount of

15   branded space in that account as well.

16       Q    Let me break this down.  So Wal-Mart then

17   would reach out to Mr. --

18       A    Massanelli.

19       Q    -- Massanelli, and then would there be an

20   addendum to a master contract, or would there be a

21   contract entered into between Wal-Mart and Flowers?

22       A    There are no contracts with Wal-Mart.

23       Q    Okay.  How are, I guess then, how is the,

24   you said there is a bid price --

25       A    Yes.

VERITEXT/NEW YORK REPORTING COMPANY

D. ROACH

Page 29

```
 1      Q    -- within a particular zones, I guess?
 2      A    He'll give it to me, but he can take it
 3   away any time he wants.
 4      Q    Okay.  So how is the bid price
 5   established?
 6      A    The bid price is established by the, each
 7   subsidiary -- at some point that when the zones were
 8   set up, which that was prior to me, but zones were
 9   set up to prevent him from having so much work with
10   each individual store having a bid.  So that the
11   pricing was there and they wouldn't have to go get
12   pricing every time a store opened up because they
13   have so many stores opening.
14               The Regional VP would have been
15   involved with setting up the zone pricing, because
16   zone pricing covers several different plants.  So
17   that Regional VP would have been involved in that
18   process.
19      Q    So the Regional VP, is that the Regional
20   VP of the Bakery, or Flowers Baking Group?
21      A    He works for Flowers Bakeries Group.
22      Q    And who would he work with, would he work
23   with Mr. Massanelli in this example?
24      A    In my current role as Flowers Baking
25   Company Villa Rica, President there, he would assist
```

D. ROACH

Page 30

1    me, he would kind of give me direction and

2    assistance.  So he's actually, he works along with

3    the national accounts group.  He also works along

4    with the operations side of the business.

5        Q    Okay.  So the steps would be, the first

6    step would be Wal-Mart would approach him.  Then in

7    the process of confirming the bid price, or

8    establishing the bid price, at some point he would

9    have then reached out to someone like, someone in

10   your position to establish that bid price?

11       A    At some point in the past that would have

12   been established.  After that bid, after that price

13   was established, now when we have ingredient cost

14   increases and things like that, we'll just, we take

15   that cost increase to Wal-Mart, and it just raises

16   that price in that zone.  So we don't, we are not in

17   a process of rebidding all the time and establishing

18   new prices outside of, you know, seeing a commodity

19   increase or something like that.

20       Q    So it's not an annual review of the prices

21   that y'all negotiate with Wal-Mart, it's sort of ad

22   hoc?

23       A    Well, ad hoc, if, meaning when we have

24   cost increases, yes.

25       Q    Okay.  So how many zones, did you mention

D. ROACH

Page 31

1    how many zones there were with respect to Wal-Mart?

2        A    I believe there are six zones.

3        Q    And the six zones cover the various

4    distributor territories that are serviced by the

5    independent distributors?

6        A    There are six zones that Flowers covers,

7    that Flowers distributorships cover.  So the, there

8    is not, there may be more zones than that, but we

9    don't cover the entire U.S.  So --

10       Q    It's based on where Flowers is serving,

11   where Flowers geographic limits are with respect to

12   its product?

13       A    Right.

14       Q    In other words, Flowers doesn't serve

15   bread or doesn't manufacture bread in California, so

16   there may be a zone in California for Wal-Mart, but

17   you guys don't serve it?

18       A    That's correct.

19       Q    That makes sense.  And so you mentioned a

20   private label, is that the bid price?  Is that the

21   same, is that set up the same way with respect to

22   private-label products too?

23           MR. HISHTA:  That is private label.

24       Q    (By Mr. Guglielmo) Oh, okay.  So all of

25   those answers are with respect to private label?

D. ROACH

```
 1      A     That's correct.

 2      Q     Take me -- how are the --

 3      A     Brand prices.

 4      Q     -- brand prices, how are those --

 5      A     Brand prices do come from each subsidiary.

 6  So each plant, with respect to what is going on in

 7  their market, the comparative, the competitiveness

 8  in the markets.  You have regional players, for

 9  example, that may drive the price down in certain

10  markets, but the subsidiaries actually have their

11  own pricing.  So that's, that is given to Bobby

12  Massanelli.  He gets it approved by the buyer, and

13  then once it's approved, that's what the price is

14  for that system.  So that is all done by each plant.

15      Q     Now, how is that, like you said, there is

16  sort of a bid price with respect to the

17  private-label product?

18      A     Right.

19      Q     How are the prices for particular branded

20  products communicated to Wal-Mart in that example?

21      A     Well, the plant VP would turn that

22  information into Bobby Massanelli.  He would in turn

23  get it approved by Janet Sullivan, who is the, one

24  of the buyers at Wal-Mart.  Once we have pricing

25  established in a market for Flowers Baking Company
```

D. ROACH

Page 33

1   of Opelika, for example, if they have certain

2   branded pricing that is established in that market,

3   when a new store opens up, that pricing is actually

4   put into that store.  So it's, it doesn't have to be

5   reviewed each time, you know, when a new one comes

6   into the market.

7        Q    And our prices sort of, are they ad hoc in

8   that, the way they were with private label, in

9   that --

10       A    Yes.

11       Q    -- as commodities increase, that they will

12  report that to Wal-Mart?

13       A    Yes.

14       Q    So with the particular -- is the zone

15  structure, does that apply to the branded product

16  too?

17       A    The zones, the zones are specific to the

18  plants.  The, I mean, the plant's pricing is

19  specific to the stores.  The zone pricing is only

20  specific to private label.

21       Q    Okay.  But with respect to a particular

22  Wal-Mart, let's say there is a Wal-Mart that falls

23  within Opelika's territory.

24       A    Zones mean nothing to brand.

25       Q    Okay.  But with respect to -- again, I'm

D. ROACH

Page 34

1    going to take a step back.

2        A    Okay.

3        Q    If you have a Wal-Mart within the Opelika

4    territory, how are -- does Opelika communicate

5    prices for all of the products that Wal-Mart is

6    going to put in its stores, the branded products?

7        A    Yes.

8        Q    It communicates it to Mr. Massanelli?

9        A    Yes.

10       Q    And that includes, I would assume, based

11   on my understanding yesterday, that would include

12   products that Opelika doesn't make?

13       A    That's correct.

14       Q    So it includes products from other --

15       A    Yes.  Opelika only produces buns and

16   rolls.  Flowers Baking Company of Villa Rica will

17   make that product, make the bread products for them,

18   the local breads.  We will sell it to Opelika.

19       Q    Under a reciprocal arrangement?

20       A    Yes.  We sell the product to Opelika,

21   Opelika in turn sells the product to the

22   distributor.

23       Q    Okay.  And with respect to Villa Rica,

24   where you are at now, I assume they then sell the

25   bun products to y'all?

D. ROACH

Page 35

```
 1      A    They do.
 2      Q    Okay.  To service these, ultimately to the
 3   distributor to service the national account?
 4      A    That's correct.
 5      Q    Okay.  So if Mr. Brown and Mr. Massanelli
 6   with respect to dealing, they deal with the Wal-Mart
 7   national account.  Are there any other individuals
 8   besides Mr. Brown and Mr. Massanelli that deal with
 9   the national account?
10      A    Yes, we have Michael Anderson, he's
11   actually a Specialty employee, Flowers Specialty
12   employee.  He calls on Wal-Mart with cake.  And we
13   also have -- well, it's not, that would be all the
14   Wal-Mart.  In that same office we have one guy,
15   Shane Redd, who calls on Sam's Club.
16      Q    Now, explain to me what Mr. Anderson does
17   with respect to the specialty products?
18      A    Okay.  He calls on Wal-Mart with cake,
19   period.  Whether it be, you know, something, Blue
20   Bird, which is carried on your DSD routes, or Mrs.
21   Freshley's, which is a warehouse product.
22           So he actually, he makes that sales
23   call.  All the pricing and everything for the
24   Freshley's product is derived from the Specialty
25   Division.  And then the Blue Bird pricing is derived
```

D. ROACH

1    from the Bakery Foods Division, or Bakery Division.

2        Q    So Mr. Anderson would then negotiate the

3    prices for all of the specialty products that would

4    be placed in all of the Wal-Mart stores?

5        A    The Specialty Division has Mrs. Freshley's

6    brand.  He would be, he will, he does call on

7    Wal-Mart with specialty products.  The pricing is

8    actually done by Mark Courtney, who is Executive VP

9    of, on the Specialty Division side.

10       Q    Is he --

11       A    Michael is, he's the carrier.  I mean, he

12   will basically take and sell, you know, make the

13   sales call.  But Mark Courtney is ultimately the guy

14   responsible for the pricing.

15       Q    He's the Executive Vice President of

16   Flowers Baking Group?

17       A    No, he's on Flowers Specialty Group.

18       Q    Okay.  And you mentioned Shane, Shane

19   Redd?

20       A    Shane Redd.

21       Q    Who is that?

22       A    He's on the national accounts team, and he

23   calls on Sam's Club.

24       Q    Does he perform the same function that Mr.

25   Anderson performs, but with respect to Sam's Club?

D. ROACH

Page 37

1      A     Yes.  Well --

2      Q     Specialty products and the Mrs.

3  Freshley's?

4      A     Yes.  He actually calls on, for the Bakers

5  Group.  Shane calls on Sam's Club for the Bakeries

6  Group.  But he does bread, not cake.

7      Q     Does someone do the cake product for Sam's

8  Club?

9      A     Yes, Michael Anderson does.

10     Q     Oh, he does.  Okay.  So he does --

11     A     He does all cake.

12     Q     For both Sam's and Wal-Mart?

13     A     And Wal-Mart.

14     Q     All right.  Now, other than these

15  individuals that you just mentioned, is there anyone

16  else that is in charge of the Wal-Mart account?

17     A     No.  I mean, Regional VPs, you know, will

18  have some influence on the private label, which we

19  discussed earlier, but as far as being responsible

20  for calling on the national accounts, that's the

21  group.

22     Q     Okay.  And just so I don't -- we discussed

23  Wal-Mart and we've discussed Dollar General.  Is the

24  structure that you've described, I think with the

25  respect to Wal-Mart or Dollar General, is that the

D. ROACH

Page 38

1    same basic structure that would apply to national

2    accounts like Family Dollar, or is it a, is it

3    different per each national account?

4        A    It's very different per each national

5    account.  But when you talk about Dollar General,

6    Family Dollar, those are similar.  But Wal-Mart to

7    Dollar General is very different.

8        Q    Is Wal-Mart, I'm sorry, is Dollar General

9    more similar to the, I'm sorry, is the Family Dollar

10   more similar to the Dollar General description?

11       A    Yes.

12       Q    Okay.  So there are zones with respect to

13   the Family Dollar?

14       A    There are five zones at Family Dollar.

15       Q    And the establishment of the -- who is the

16   person in charge of the Family Dollar?

17       A    David Dodge.  Same guy.

18       Q    Oh, he's in charge of both?

19       A    Yes.

20       Q    So is there private label, and --

21       A    No.

22       Q    Just branded product.

23       A    Just branded, Family Dollar.

24       Q    And, is the -- are there contracts entered

25   into with Family Dollar, or is it the same type of

D. ROACH

```
 1   situation that was entered into --

 2        A    No contracts.

 3        Q    Just bid, bid price?

 4        A    It's actually not even, the private label

 5   was a bid at one point with Dollar General.  There

 6   are no contracts with either one, so they can get

 7   out, you know, at any time.  We call on them to, you

 8   know, to say we can service you in this area.  And

 9   they give us certain areas, certain areas they do

10   not.  We do have an advantage because we carry bread

11   and cakes.  So that is one reason we have so many

12   Dollar Stores.

13        Q    And how are, there is no contract, but how

14   are prices determined for the Family Dollar national

15   accounts?

16        A    It's the exact same scenario as we

17   discussed in Dollar General.  They have the five

18   zones instead of six, and the structure is set up

19   the same way.

20        Q    Is there anyone else other than David

21   Dodge that is responsible for calling on Family

22   Dollar?

23        A    Not on the Bakeries Group.

24        Q    What about Specialty Group?

25        A    Specialty, I'm not sure.  I believe they
```

D. ROACH

Page 40

1   do have somebody calling on them, but I'm not

2   positive on that.

3       Q    Do you know the structure of how that

4   works?

5       A    I do not.

6       Q    How about Fred's?

7       A    Fred's is, again, David Dodge.  We

8   consider Fred's a Dollar-type store.

9       Q    Is the arrangement there --

10      A    There is no private label there, there is

11  no contract.

12      Q    Okay.  But is David Dodge responsible for

13  communicating the prices that ultimately get --

14      A    Yes.

15      Q    -- agreed upon with Fred's?

16      A    Yes, he is.  The difference with Fred's is

17  it's all-branded product.  No private label.  And

18  the, each plant or each subsidiary has their own

19  pricing.

20      Q    Are there zones set up with respect to

21  Fred's?

22      A    No.

23      Q    So the subsidiaries provide the prices

24  to --

25      A    To David Dodge.

D. ROACH

Page 41

1      Q      -- to David Dodge, then David Dodge

2   communicates those prices to?

3      A      To the buyer.

4      Q      And that depends on the area in which

5   Fred's operates?

6      A      That's correct.

7      Q      So is it a store-by-store approach, or is

8   it --

9      A      It's, we service all of Fred's.  So if a

10   store, Fred's store opens up within our territory,

11   we get it.  And we are exclusive in those accounts,

12   so there is no other bread in Fred's.

13      Q      With respect to Publix, who is the person

14   that is in charge of calling on Publix?

15      A      Jim Williams.

16      Q      What is his title or position?

17      A      He is a Director of National Accounts.

18      Q      And did he report to you when you were the

19   Vice President of National Accounts?

20      A      Yes.

21      Q      What is Mr. Williams' responsibilities?

22      A      His responsibility is, again,

23   communicating whatever our strategic initiative is

24   as a company to Publix.  He also, in turn,

25   communicates each subsidiaries' pricing.  As we just

D. ROACH

Page 42

```
 1    discussed, each plant or subsidiary will send

 2    pricing to Jim.  Jim will, in turn, turn that in at

 3    Publix.

 4        Q     So take me through that step.  So, in

 5    other words, again, you would have a subsidiary, for

 6    example, Opelika makes the buns that we've all, we

 7    understand.  That pricing would be then communicated

 8    along with the pricing for the Villa Rica

 9    products --

10        A     Yes.

11        Q     -- to them, as well, whatever other

12    products Publix needs, it would sort of be, those

13    prices would all be communicated to them.  But if

14    there are -- is that how it works?

15        A     Well, Flowers Baking Company of Villa

16    Rica, we would purchase buns from Opelika.  We would

17    establish what our market price is based on

18    competition, based on costs, manufacturing costs, et

19    cetera.  We establish that.  We send that to Jim to,

20    for our pricing in the stores.

21        Q     So the pricing for Publix, for example, is

22    based on the bakery.  So in other words, if there is

23    a bakery that, if there is a Publix that is going to

24    be served by the Villa Rica store, or the Villa Rica

25    bakery, or the Villa Rica subsidiary --
```

D. ROACH

Page 43

```
 1      A      Right.

 2      Q      -- the Villa Rica subsidiary would then

 3   obtain the prices for the various products and

 4   communicate those prices to Mr. Williams?

 5      A      That's correct.

 6      Q      And if there is Publix's that are going to

 7   be within the bakery area of Opelika, does Opelika

 8   then do the same?

 9      A      Yes, they do.

10      Q      So then they solicit the prices from you

11   with respect to the bread product?

12      A      Costs.

13      Q      And then that would then get ultimately

14   put together with all the other products that Publix

15   is seeking, and then that would be communicated over

16   to --

17      A      That's correct.

18      Q      I don't know if I asked this.  Is there a

19   contract with Winn-Dixie?

20      A      No.  No at Publix either.

21      Q      Okay.  That was my question.  All right.

22   You answered my question, that was the next

23   question.

24             So again, the prices would be the

25   prices that are established between, or the prices
```

D. ROACH

Page 44

1   would be the prices that are communicated by

2   Williams, Mr. Williams to Publix.  And then if there

3   is a price increase because of, sort of commodities

4   increase, would that then get the same type of

5   treatment that you described with respect to the

6   Dollar General situation?

7       A   Yes.  Yes.  Pricing is basically -- let me

8   add this.  On branded pricing you are bottom up.  I

9   mean, it comes from the subsidiaries to the

10  accounting guy for approval.  And then that is the

11  way it works on branded pricing, for the most part.

12      Q   And does Mr. Williams handle specialty

13  products too?

14      A   He will call on them to sell some

15  specialty products.  We have not been very

16  successful in doing so in Publix, so there is none

17  there.

18      Q   Okay.

19      A   Does he call on them?  Yes.

20      Q   Is the situation with Winn-Dixie the same

21  type of situation as you described with Publix?

22      A   Winn-Dixie, we have, we do have the

23  private-label business.  There is no contract.  The

24  branded pricing situation is the same.  The private

25  label, we've had the private label in Winn-Dixie for

D. ROACH

Page 45

1    many, many years.  Before I started with the

2    company, I believe.

3              So that pricing has worked in the

4    sense that as we got commodity increases, we were

5    able to take that and pass that on to the consumer.

6    David Scott is a Regional VP that is actually the

7    one most involved with the private-label pricing at

8    Winn-Dixie.

9         Q    Who calls on Winn-Dixie then with respect

10   to the stores?

11        A    Robert Meadows.

12        Q    What is his title?

13        A    He is a Director of National Accounts.

14        Q    Anyone else call on Winn-Dixie with

15   respect to the national account?

16        A    No.

17        Q    Is there a specific person with Specially

18   Products that would call on them?

19        A    The, Robert actually calls on them for

20   specialty as well, but we don't have any specialty

21   products, any Mrs. Freshley's product in there

22   today.

23        Q    And David Scott, what is his title?

24        A    Regional Vice President.

25        Q    Of Flowers Bakeries Group?

D. ROACH

Page 46

1          A      Of Flowers Bakeries Group, yes.

2          Q      And the, you may have said this, but with

3   respect to the private-label product at Winn-Dixie,

4   is this a bid-type product, bid-type price?

5          A      Like I said, I don't even know how many

6   years ago it was, 15, 20 years ago, it was bid at

7   that point.  But since then it's just been with

8   commodity increases we go to them and get the

9   increase.  So as a new store opens, there is no bid

10  process.  If it's within our territory, we get the

11  business at the price we're at today.

12         Q      Is it a zone situation, or a zone, is a

13  zone set up or not?

14         A      One private-label price.

15         Q      For all of the Winn-Dixie, for all of the

16  Winn-Dixie stores within the areas that Flowers

17  Foods services?

18         A      That's correct.

19         Q      Okay.

20         A      And that is private label.  Again, bring

21  the label from the subsidiaries.

22         Q      Winn-Dixie?

23         A      That's correct, Winn-Dixie.

24         Q      I've had them.  Bruno's, can you tell me

25  who is responsible for calling on Bruno's?

D. ROACH

Page 47

1     A     Yes, David Johnson.

2     Q     And what is his title?

3     A     He is a VP of National Accounts.

4     Q     What is his responsibility or duties?

5     A     He's responsibilities are the same as the

6     others, in communication and trying to generate, you

7     know, generate sales opportunities for the

8     distributors.  I think, and I hadn't pointed this

9     out, but I think one thing to point out is the fact

10    that within all of these accounts, the distributor

11    can go in and build that business, build a

12    relationship with the store manager.  Get end-caps,

13    get displays here and there to increase his equity

14    in his business.

15              So all of these accounts, outside of

16    the programs that we have, they do have that

17    opportunity to build and establish relationships

18    themselves that promote their business.

19    Q     So an end-cap, can you describe what that

20    is?

21    A     Yeah, at the end of an aisle in a grocery

22    store, the seven or eight shelves on that end is the

23    end-cap.

24    Q     Okay.  Is there anything else that you can

25    recall that a distributor could do to build his

D. ROACH

Page 48

1   business with a Winn-Dixie, for example?

2        A    I mean, the relationship at store level is

3   the biggest thing for him.  And in his, if he has

4   great service, he can build, he can build that

5   relationship easily.  So, you know, a lot lies on

6   his shoulders as far as who can get additional space

7   with the relationships that he builds.  The

8   relationship, a lot of times, is built through great

9   service.

10       Q    With respect to Bruno's --

11       A    Yes.

12       Q    -- is the, how is the, does Bruno's have a

13  private label?

14       A    Bruno's does have a private label.  We do

15  not have it currently.

16       Q    So Bruno's purchases branded product?

17       A    They do.

18       Q    Flowers branded product?

19       A    Yes.

20       Q    And how is that, is there a contract

21  between Bruno's and Flowers for the national

22  accounts?

23       A    There is no contract with Bruno's.

24       Q    How is the price agreed to between --

25       A    We -- a branded price?

D. ROACH

Page 49

1     Q    Yes.

2     A    Again, comes from the subsidiaries.  Now,

3  you say is there a contract?  We agree on certain

4  advertising things that, you know, through the year.

5  But there is no written contract, that says, for

6  this time frame.  But we do do some ad activity and

7  things like that with them.

8     Q    Okay.  Ad activity being you would agree

9  to have certain promotional areas, or something like

10  that?

11     A    Exactly.

12     Q    What, can you give me an example off the

13  top of your head?

14     A    Yes.  If we got a honey wheat promotion on

15  honey wheat bread, we may go to them, it may cost

16  us, you know, $5,000 to put our ad in their weekly

17  paper.

18     Q    Their circular?

19     A    Yes.  They may put that in the store.  So

20  we do participate in some of those type of

21  opportunities.

22     Q    Is that like a sales give-away or

23  something like, would it be a, is it just they're

24  promoting the product, or is it they're promoting a

25  special sale of a product?

D. ROACH

Page 50

1      A      It can be any of that.  Some, you know, a

2    lot of times they will bring it to us, sometimes we

3    can bring it to them.  So it can go either way.

4      Q      And that is something you guys have agreed

5    to, but not in sort of a formal contractual manner?

6      A      Exactly.

7      Q      Is there someone that calls on Bruno's

8    with respect to the specialty products?

9      A      David Johnson does that.

10     Q      Is the arrangement with respect to the

11   specialty products the same with the respect to the

12   branded products in terms of the bottom up that you

13   described?

14     A      Yes.  Well, specially, on the specialty

15   side Mark Courtney pretty much determines the

16   pricing.  They will share that information with

17   David Johnson, for example, here, and David would

18   actually make a sales call.

19     Q      With Mark?

20     A      From time-to-time we talked about him

21   earlier, Executive VP on Flowers Specialty Group,

22   from time-to-time somebody from the Specialty

23   Division may make that call with David.

24           MR. HISHTA:  I'm not sure that this is

25           clear on the record, but he's using the

D. ROACH

Page 51

1     terminology, "call," and that does not

2     necessarily mean there is a particular product

3     in that account.

4          MR. GUGLIELMO:  No, I think, I think the

5     description that Mr. Roach provided originally

6     is call on is sort of to solicit the business.

7          MR. HISHTA:  Yes.

8          MR. GUGLIELMO:  I think in a couple of

9     instances you said, I think it was with respect

10    to maybe Publix, you said this gentleman Mr.

11    Williams has been calling on them, but they

12    haven't been purchasing any specialty product.

13    So I've been understanding it.  If you want, we

14    can make it clearer.  When you are referring to

15    "call on," you're saying they're sort of going

16    out their trying to get the direct contact with

17    them, trying to push the product whether

18    successfully or not.

19         THE WITNESS:  Right.

20         MR. GUGLIELMO:  But, yes, we can make it

21    more clear.

22         MR. HISHTA:  That's fair.  Just as long as

23    y'all are of the same mind set on that

24    terminology.

25         MR. GUGLIELMO:  I have a general

D. ROACH

Page 52

1    understanding of what the term "call on" means

2    too, so that's a --

3        Q    (By Mr. Guglielmo) We're going to turn to

4    Southern Family Markets.

5        A    Yes.

6        Q    With respect to Southern Family Markets,

7    is there a particular person that deals with

8    national account?

9        A    Yes.  David Johnson also has that account.

10       Q    And does he have that account with respect

11   to the fresh as well as the specialty products?

12       A    Yes.

13       Q    And what are his responsibilities?  Are

14   they the same as with respect to Bruno's?

15       A    Yes.

16       Q    And how is the price established with

17   respect to the Southern Family Market's national

18   accounts?

19       A    The branded price is the same, it's bottom

20   up.  Each subsidiary determines their pricing.

21       Q    Is there a private label?

22       A    Yes.

23       Q    How is that established?

24       A    It's, again, we've had that business for a

25   long while, so it pretty much acts similar to the

D. ROACH

Page 53

1    others.  As have commodity increases, we have been

2    able to get the increases in that account.

3                    (WHEREUPON, a brief recess was taken)

4             VIDEOGRAPHER:  The time is approximately

5        11:27.  This is the beginning of Tape No. 2.

6        We're back on the record.

7        Q    (By Mr. Guglielmo) Mr. Roach, before the

8    break we were going over some of the national

9    accounts that have been identified.  I think we left

10   off with Southern Family Markets.  I'm not sure if I

11   asked this question, but if I have, I apologize.  Is

12   there, is there a private label that is purchased by

13   the Southern Family Markets?

14       A    Yes.

15       Q    Can you describe for me the general

16   arrangement for the private-label brand that is

17   purchased by Southern Family Markets?

18       A    Yes.  The, as I stated earlier, the

19   private-label brand for Southern Family we had,

20   we've had that business a considerable amount of

21   time.  Now, they, about two years ago they did,

22   re-bid the business.  We kept the business at that

23   time.  We do have a contract that ends, we've got

24   one more year on that contract.  But we, over many

25   years now we have retained that business.

D. ROACH

Page 54

1    Q    So there is an actual contract between

2    Flowers Bakeries Group and Southern Family Markets?

3    A    There is a contract between Flowers

4    bakeries with each subsidiary signing as a -- the

5    Bakeries Group acts as a liaison to the process.

6    Q    Okay.  But who is the signatory to the

7    contract?

8    A    The signatory would be the individual

9    subsidiaries.

10    Q    And they're signatories to the contact

11    that, the direct contract with the Southern Family

12    Markets?

13    A    Ask that again.

14    Q    Are they the signatories to the contract

15    with Southern Family Markets?

16    A    That's the way I understand it.  I can't

17    be positive on that.

18    Q    Okay.

19        MR. HISHTA:  You have a document request

20        pending for any contracts with national

21        accounts, which we responded that we will

22        provide copies of any contracts with respect to

23        any national accounts, and we are in the

24        process of ensuring that we have all of the

25        relevant documents, and we'll certainly produce

D. ROACH

Page 55

1    it, so and, you know, Mr. Roach has testified

2    that he has not -- have you seen that document

3    recently?

4        THE WITNESS:  No.

5        MR. HISHTA:  So I think if we need to go

6    back to this area, we'll certainly, you know,

7    willing to do so once we have provided the

8    contract and we can see exactly who the

9    signatories are and who the parties to that

10   contract are.

11       MR. GUGLIELMO:  Again, this is to the best

12   of your knowledge.  I'm not asking you to

13   speculate or to guess.

14       MR. HISHTA:  I just want to make it clear

15   for the record, this is a 30(b)(6) deposition.

16   We are agreeing to cooperate with you in

17   producing the document, you know, the document,

18   I don't think fall, necessarily falls within

19   "representative documents," but we have now

20   gotten into this particular area, and certainly

21   if y'all feel you need additional testimony

22   after reviewing the document, we will

23   certainly, you know, make either Mr. Roach or

24   someone available to answer any questions that

25   you might have.

D. ROACH

Page 56

```
 1            MR. GUGLIELMO:  Okay.  Fair enough.  Thank
 2      you.
 3       Q    (By Mr. Guglielmo) And does that contract,
 4   to the extent that you can recall, does that cover
 5   specialty products as well?
 6       A    No.
 7       Q    Are there, is there a contract with
 8   Southern Family Markets for the specialty products?
 9       A    Not that I'm aware of.
10       Q    Are the -- do the Southern Family Markets
11   purchase specialty products?
12       A    They purchase very little.  They may
13   purchase a shipper, which is a pop-up type display.
14   And they may have, they may do a truckload sale.
15   But that's pretty much it.
16       Q    Who is the -- is there a different person?
17   I know, I think you testified before the break that
18   David Johnson --
19       A    Yes, it would be David.
20       Q    David Johnson would call on the Southern
21   Family Markets with respect to the specialty
22   products?
23       A    That's correct.
24       Q    Turn to Target.  Is there a person that is
25   responsible for the national accounts with Target?
```

D. ROACH

Page 57

```
 1      A    Yes.  Charles Avera.

 2      Q    Avery?

 3      A    Avera, with an A.

 4      Q    Okay.  And what is Mr. Avera's title or

 5  position?

 6      A    Vice President of National Accounts.

 7      Q    Vice President of Flowers Bakeries Group?

 8      A    He is on the national accounts team, which

 9  is part of the Bakeries Group.

10      Q    What are Mr. Avera's duties and

11  responsibilities?

12      A    His duties, again, are to help build that

13  relationship with that account, and to communicate

14  the information to the account.

15      Q    Is there someone, is there anyone in

16  addition to Mr. Avera that is responsible for the

17  Target national account?

18      A    No.

19      Q    And is there a contract with Target with

20  respect to the Flowers --

21      A    No --

22      Q    I'm sorry.

23      A    I'm sorry.

24      Q    I'm sorry, let me finish the question.  I

25  apologize, I'm starting to -- is there a contract
```

D. ROACH

Page 58

1    with Target with respect to the Flowers products?

2        A    No.

3        Q    And so how are the prices communicated to

4    Target with respect to the Flowers products?

5        A    Ask that again.

6        Q    How are the prices of the Flowers products

7    communicated to Target?

8        A    Branded prices?

9        Q    Yeah, let's stick with branded prices.

10       A    Okay.  The branded prices are communicated

11   just like the rest we've discussed today.  From

12   bottom-up subsidiaries determine the pricing.

13   Pricing is then sent to Charles, Charles submits

14   that pricing to the buyer.  And then once approved,

15   that pricing comes back as approved, and they submit

16   it or go with that pricing.

17       Q    And is there any private-label product

18   that is purchased by Target?

19       A    There is.

20       Q    How is that handled with respect to the

21   pricing?

22       A    The private-label pricing with Target is

23   done state-by-state.

24       Q    Branded?

25       A    But we do have one price with Target.

D. ROACH

1       Q     One price per state?

2       A     We have one price that crosses all states.

3    Even though they bid it state-by-state, we have one

4    price.

5       Q     Okay.  And that's, the price is the, that

6    is, the prices for the product in the areas in which

7    Flowers manufactures it's product, in other words,

8    it doesn't transcend any other areas outside of

9    Flowers sort or distributor network?

10              MR. HISHTA:  When you're talking about the

11         Flowers distributor network, you're talking

12         about a particular, subsidiaries that have

13         distributors within a target where there are

14         Target stores?

15              MR. GUGLIELMO:  Correct.  Yes.  Do you

16         understand that question?

17              THE WITNESS:  Ask it one more time.

18       Q     (By Mr. Guglielmo) Okay.  You said there

19    is a, there is one price, and then you said it's bid

20    out state by state?

21       A     Private label.

22       Q     Private label, correct.

23              So that would be, the bidding state

24    by state would be applicable to those areas where

25    Flowers Bakeries sell their products?

D. ROACH

Page 60

1      A     That's correct.  Each subsidiary.

2      Q     Okay.  In other words, it wouldn't be a

3    nationwide bidding going on by Flowers?

4      A     No.

5      Q     Because Flowers doesn't sell bread

6    nationwide?

7      A     That's correct.

8      Q     Is there a person that deals with the

9    specialty products as it pertains to the Target

10   national account?

11     A     I don't know that answer.

12     Q     Okay.

13     A     I'm not aware of one.

14     Q     Do you know if Target purchases specialty

15   product, Flowers specialty product?

16     A     Not that I'm aware of.

17     Q     I'm going to turn to what I think may be a

18   term that you may understand, Food Service Accounts,

19   do you have an understanding of what that is?

20     A     Yes.

21     Q     Can you describe to me what you think Food

22   Service Accounts to be?

23     A     I understand Food Service Accounts to be,

24   to include fast food accounts, such as the Burger

25   King and/or a U.S. Food Service or Sysco-type

D. ROACH

Page 61

1    account where the product goes through some frozen

2    or warehouse-type distribution.

3        Q    And are, is the term Food Service

4    Accounts, would that be, would that include only

5    national accounts?

6        A    No.

7        Q    Okay.  So it could include local accounts

8    as well?

9        A    Yes.

10       Q    But there are national accounts within the

11   term, the Food Service Accounts as used by --

12       A    Yes.

13       Q    As understood by you?

14       A    That's correct.

15       Q    Okay.  With respect to, turn to Sonic.  Do

16   you know if there is a particular person that is

17   responsible for dealing with the Sonic national

18   account?

19       A    Yes.  All of the national accounts are

20   handled by one person for me, it would be Jeff

21   Strain.

22       Q    So I'm clear, all of the national accounts

23   with respect to Food Service?

24       A    All the -- well, as we go through them

25   individually, the ones that actually fall under the

D. ROACH

Page 62

```
 1    national accounts team are managed by Jeff Strain.

 2    There are a couple in here that are managed by, or

 3    that have a Regional VP, maybe the guy that is

 4    predominantly involved with it.

 5         Q    Okay.  What is Mr. Strain's title or

 6    position?

 7         A    He is Director of National Accounts Food

 8    Service.  I'm not sure exactly, but it's in that

 9    arena.

10         Q    Okay.  Did he report, did Mr. Strain

11    report to you when you were in the position of Vice

12    President of National Accounts?

13         A    Yes.

14         Q    What is Mr. Strain's, to the extent you

15    know, do you know what Mr. Strain's duties or

16    responsibilities are as the Director of National

17    Food Service accounts?

18         A    His responsibilities are, he communicates

19    pricing.  He's the main contact to the account,

20    which communicates back to the subsidiaries of

21    Flowers Bakeries.

22         Q    And does, would Mr. Strain be the

23    individual responsible for calling on the Food

24    Service accounts that are national accounts?

25         A    Not all of them.
```

D. ROACH

Page 63

1        Q     Can you tell me which ones he would be

2    responsible for?

3        A     He has Sonic, Arby's, Burger King is Craig

4    White, who is a Regional Vice President.

5        Q     Regional Vice -- so let me interrupt you

6    for a second.  I apologize.  Regional Vice President

7    of?

8        A     Of Flowers Bakeries.

9        Q     Okay.

10       A     Then Jeff has Hardee's, Sodexho,

11   Chick-Fil-A.  He does call on them, but we can get

12   into it more later.  But a lot of the individual

13   subsidiaries also have a big play in that.  He does

14   call on Hooters.  We have a Director of Sales in

15   Augusta who calls on Zaxby's.  But Jeff is also

16   involved from a peripheral.  And then Krystal is

17   called on by Brad Alexander, who is also Regional

18   Vice President.

19       Q     Regional Vice President of?

20       A     Flowers Bakeries.

21       Q     Okay.  And with respect to the, with

22   respect to Sonic, what types of product are

23   purchased by Sonic?

24       A     Hamburger, hot dog buns.

25       Q     Are those branded or private label, how

D. ROACH

Page 64

1    would you describe them?

2        A    They would be non-branded.

3        Q    But you wouldn't consider them private

4    label?

5        A    No.

6        Q    How would you describe these products that

7    are purchased by Sonic?

8        A    I would describe them as just non-branded

9    bulk product.

10       Q    Is there a contract between Sonic and

11   Flowers with respect to the purchase of the bulk

12   product?

13       A    With Sonic, I'm not aware of a contract.

14       Q    How is the, how is the, how is the

15   purchase by Sonic of Flowers product sort of

16   memorialized?  Is it just an oral -- I'll take it a

17   step back.  How are prices agreed to between Sonic?

18       A    We have one price with Sonic.  And it's,

19   and Jeff basically communicates that price.  So we

20   have one price across all subsidiaries.

21       Q    Okay.  And is the, is the price similar to

22   the description that you provided earlier with

23   respect to the private-label product, or is it

24   something different?

25       A    It's something different.

D. ROACH

Page 65

```
 1        Q     Okay.  Can you describe what, what that
 2    is?
 3        A     It's --
 4              MR. HISHTA:  Describe how it's done.
 5              THE WITNESS:  How the price is --
 6        Q     (By Mr. Guglielmo) Let me help you out.
 7    I'm not going -- is there a zone structure, or is
 8    it --
 9        A     No, one price.
10        Q     Okay.
11        A     One price.
12        Q     It's one price for the products that are
13    purchased by Sonic throughout the territories that
14    Flowers distributors serve?
15        A     That's correct.
16        Q     Okay.  And other than Jeff Strain, is
17    there anyone else that is responsible for the Sonic
18    national account?
19        A     I know Jim Frier who is on the specialty
20    side, specialty division has also in the past been
21    involved with Sonic, but I don't know if he's
22    currently.
23        Q     What was, what is, what -- when Mr. Frier
24    was involved in the Sonic account, what was his
25    title or position?
```

D. ROACH

Page 66

```
 1        A     I believe he's a Vice President of Food

 2   Service for Specialty Division.

 3        Q     Just want to take a step back.  The Food

 4   Service Specialty Division, did they report, did

 5   those individuals report to you when you were the

 6   Vice President of National Accounts?

 7        A     Just Jeff.

 8        Q     Just Jeff.  Okay.  And how is the -- is

 9   there a particular, how are the -- the -- I'm sorry,

10   strike that.

11              So with respect, so Jeff would report

12   to you while you were the Vice President of National

13   Accounts pertaining to the Food Service accounts

14   that he serviced that were also national accounts?

15        A     Yes, that's correct.

16        Q     Okay.  Anyone else other than Mr. Strain

17   or Mr. Frier?

18        A     Frier.

19        Q     Frier involved in the Food Service

20   national accounts?

21        A     Food Service national accounts.  The

22   Specialty Division is very involved with Food

23   Service.

24        Q     Who from the Specialty Division was

25   involved in the national accounts, Food Service
```

D. ROACH

Page 67

1    national accounts?

2        A    I know Bob Heizel is in charge of the

3    Specialty Division, Food Service business.

4        Q    And what is Mr. Heizel's title or

5    position?

6        A    I'm not sure.

7        Q    Do you know what his general duties and

8    responsibilities are?

9        A    Yes, I mean, he's in charge of all food

10   service sales for the Specialty Division.

11       Q    And is the, are the sales of specialty

12   products, is the -- strike that.

13              With respect to the specialty

14   business pertaining to Sonic, is the, are the prices

15   communicated in the same way that they're

16   communicated with respect to the bulk product?

17            MR. HISHTA:  Are you going back now to the

18       bakery side of the business?

19            MR. GUGLIELMO:  Yes, I want to understand

20       whether it's the same.  Whether the --

21            THE WITNESS:  I'm not aware, I'm not aware

22       if Specialty has any business with Sonic.

23       Q    (By Mr. Guglielmo) Okay.  But Mr. Heizel

24   will call on Sonic with respect to --

25       A    No.

D. ROACH

Page 68

```
 1      Q    He would not?
 2      A    No.  You'd asked about Food Service.  On
 3   the Specialty Division side he's responsible for
 4   food service.
 5      Q    And is he also responsible for specialty
 6   products that are sold to any national account
 7   that's a Food Service account?
 8      A    No.
 9      Q    Is there a particular person that would be
10   responsible for that?
11      A    Each, well, each subsidiary is responsible
12   for their own, but -- I'm not following your
13   question.
14      Q    I think what I was trying to get at is,
15   with respect to, you give the exam Mr. Strain was
16   responsible for calling on Sonic as it pertained to
17   the bulk product.  Is he also responsible for
18   calling on Sonic with respect to any potential
19   specialty product that may be purchased by Sonic?
20      A    Well, there is none, so --
21      Q    Okay.  Would their be any specialty
22   products that would be purchased by any of the Food
23   Service accounts?
24      A    Yes.
25      Q    Who would be responsible for calling on
```

D. ROACH

Page 69

1   those specialty, I'm sorry, those Food Service

2   accounts that are also national accounts?

3       A    It can be different in each account.

4       Q    Okay.  We'll go through them one-by-one.

5            With respect to Arby's, I think you

6   said Mr. Strain is also responsible for dealing with

7   the national account; is that correct?

8       A    Yes.

9       Q    Is he -- is there any specialty product

10  that is purchased by Arby's?

11      A    Yes, there is.

12      Q    Who is responsible for dealing with Arby's

13  on the purchasing of specialty product?

14      A    Actually I'm not sure.  I don't know on

15  the specialty side of the business.

16      Q    Okay.  Do you know who, do you know anyone

17  who may know?

18      A    Jim Frier or Bob Heizel would be able to

19  answer that.

20           MR. HISHTA:  Just for the record, when

21       we're talking about "this" side of the

22       business, we're talking about frozen products.

23       We're not talking about --

24           MR. GUGLIELMO:  Snack cakes.

25           MR. HISHTA:  -- fresh, we're not talking

D. ROACH

Page 70

```
 1        about fresh buns going into an Arby's that, the
 2        DSD network.  We're talking about an alternate
 3        distribution network where goods would be sold,
 4        you know, through a warehouse, or a buyer, you
 5        know, none DSD frozen business, correct?
 6             THE WITNESS:  Right.
 7             MR. GUGLIELMO:  Let me make that clear,
 8        then I'll ask a couple of questions to clarify.
 9        Again, maybe I was just under --
10        Q    (By Mr. Guglielmo) Are any of the
11   specialty products sold to food, national accounts
12   that are Food Service accounts, that are sold
13   through the independent distributor network?
14        A    Are there any specialty products produced
15   in specialty plants?  Yes.
16        Q    Okay.
17             MR. HISHTA:  He didn't understand the
18        question.
19             MR. GUGLIELMO:  Let me ask it.
20        Q    (By Mr. Guglielmo) Is it fair to say that
21   there are specialty products that are sold to the
22   national food service accounts that are delivered
23   using the independent distributor network?
24        A    I don't know what you mean by, "specialty
25   products."  There are products produced by the
```

D. ROACH

Page 71

1   Specialty Division that a subsidiary will purchase

2   from them, and they sell that product to the

3   distributor to sell to the account.

4           MR. HISHTA:  To a food service account?

5           THE WITNESS:  To a food service account,

6      yes.

7           MR. GUGLIELMO:  Okay.

8           MR. HISHTA:  Just go through the list.

9      Q    (By Mr. Guglielmo) Can you off of the top

10  of your head give me an example of a couple of types

11  of products that would fall into that category?

12      A    Let me see, a sub roll, for example, we

13  may purchase a sub roll from a Specialty Division

14  plant, deliver that product to a food service

15  account, or deliver that product to the bakery.  The

16  bakery turns around and sells it to the distributor,

17  the distributor sells it to the Food Service

18  account.

19      Q    Okay.  And I think the first question that

20  started this whole area and line of questioning, is

21  there a particular person that would be responsible

22  for dealing with the specialty products that are

23  purchased by these Food Service accounts that are

24  sold by the, sold by the individual, independent

25  distributor program?

D. ROACH

Page 72

```
 1      A     Is there an individual person?

 2      Q     Is there a person that is responsible for

 3   dealing with these Food Service accounts on the

 4   specialty products that are actually distributed

 5   through the independent distributor network?

 6      A     I mean, Jeff is the guy that would

 7   communicate to the individual subsidiaries.  So,

 8   that communication would be Jeff.

 9      Q     Okay.  With respect to, I'll turn to

10   Burger King now.

11      A     Yes.

12      Q     You indicated that Craig White is

13   responsible for calling on Burger King?

14      A     Correct.

15      Q     Can you describe for me generally what Mr.

16   White's duties and responsibilities are?

17      A     He's a Regional Vice President, and he

18   also is responsible for, you know, the contact at

19   Burger King.

20      Q     Is there a contract between Burger King

21   and Flowers for the purchase of product?

22      A     Yes.

23      Q     Okay.  Can you describe for me generally

24   what the pricing arrangement is with respect to the

25   contract?
```

D. ROACH

Page 73

1        A       I know that Flowers Bakeries, which Craig

2    White works, he's part of the Bakeries Group.  He is

3    the, he acts as the, as a, he's the lead guy for,

4    you know, to call on Burger King.  The pricing is,

5    he basically determines the pricing that goes

6    company-wide.

7        Q       So is it one price similar to the Sonic

8    arrangement?

9        A       I wouldn't say any of these are similar.

10       Q       Okay.

11       A       But in retrospect, yes, it is one price,

12   and it is determined by commodities and increases

13   and decreases in commodities as well.

14       Q       Okay.  Does Burger King purchase any

15   specialty product from Flowers?

16       A       Not that I'm aware of.

17       Q       Turn to Hardee's.  You indicated Jeff

18   Strain is in charge of Hardee's?

19       A       Yes.

20       Q       Are his duties generally the same with

21   respect to Hardee's as they are with Sonic and

22   Arby's?

23       A       Yes, his duties are the same.

24       Q       Are there any additional duties with

25   respect to Hardee's?

D. ROACH

Page 74

1      A      No.

2      Q      And does Hardee's have a contract with

3   Flowers for the purchase of product?

4      A      Not that I'm aware of.

5      Q      Can you describe for me generally the

6   pricing arrangement for Hardee's purchasing Flowers

7   product?

8      A      Yes.  Jeff, again, handles the pricing

9   there.  The, we have four plants that produce

10  product for Hardee's.  So we actually have four

11  different prices set up depending on which facility

12  that product comes from.

13     Q      Similar to a zone set up?

14     A      Yes.

15     Q      Does Hardee's purchase any specialty

16  product?

17     A      Not that I'm aware of.  Just to make

18  something clear, some specialty product could come

19  through a Sysco or a U.S. Food Service.  As, you

20  know, Flowers may sell product to a U.S. Food

21  Service that actually Arby's or somebody like that

22  could purchase from them and not from Flowers.  But

23  it would be Flowers product, you know.

24     Q      Could be Flowers specialty products, in

25  other words?

D. ROACH

Page 75

```
 1      A     Yeah.

 2      Q     But the fresh product would come from --

 3      A     From the distributors.

 4      Q     Okay.  Turn to Sodexho.  Is Mr. Strain

 5   responsible for Sodexho?

 6      A     Yes.

 7      Q     Can you generally describe his

 8   responsibilities with respect to the Sodexho

 9   national account?

10      A     Yes.  Sodexho is, his responsibilities are

11   similar in all of these accounts in communicating

12   pricing and with the plants.

13      Q     And do you, are you aware of the pricing

14   arrangement with respect to the Sodexho national

15   account?

16      A     Sodexho is state-by-state pricing.

17      Q     Mr. Strain communicates the pricing with

18   respect to the Sodexho national account?

19      A     That's correct.

20      Q     And any specialty product purchased by

21   Sodexho?

22      A     I don't know.

23      Q     The Chick-Fil-A, I think you indicated

24   that there is a little bit different arrangement

25   there, although Mr. Strain is involved; is that
```

D. ROACH

Page 76

1    correct?

2        A    Yes.

3        Q    Can you describe for me what the

4    arrangement is with respect to Chick-Fil-A national

5    account?

6        A    Yes.   There is a, there is one golden

7    wheat bun that is basically one price across all

8    Chick-Fil-A's.   The Chick-Fil-A, as you probably

9    know, are owner-operators.   So the pricing could be

10   set up by bakery or by each individual unit, if

11   needed to be competitive.

12       Q    So, just to be clear, the pricing could be

13   set up by the Flowers bakery or by the individual

14   Chick-Fil-A?

15       A    Both.   Each Chick-Fil-A can negotiate a

16   different price, if they wanted.

17       Q    And they negotiate that with the bakery?

18       A    They would negotiate that with a person

19   at, with a sales person at each subsidiary.

20   Typically a --

21       Q    At the bakery?

22       A    The VP at the bakery level, yes.

23       Q    So Chick-Fil-A purchases one, they

24   purchased one Flowers product?

25       A    No, there are several others.   The others

D. ROACH

Page 77

1    are, again, those are the ones that the prices can

2    differ in.  Chick-Fil-A has different buying groups

3    that are set up by these owner-operators, and then

4    those buying groups can try to negotiate different

5    pricing.  So that's one of the differences in

6    Chick-Fil-A.

7        Q     Does Mr. Strain deal with those buyer

8    groups?

9        A     No.  That would be done at each

10   subsidiary.

11       Q     I would assume there is, correct me, there

12   is no contract between Chick-Fil-A and Flowers for

13   the purchase of any product?

14       A     No.  There is a specialty, a bun that

15   comes through the Specialty Division as well.

16       Q     Is that specialty bun distributed by the

17   independent distributors?

18       A     No.  And Jeff Strain, I mean, Jim Frier

19   would actually make that sales call --

20       Q     Okay.

21       A     -- to Chick-Fil-A.

22       Q     Turn to Hooters.  Mr. Strain is

23   responsible for the Hooters national account?

24       A     Yes.

25       Q     Are his duties the same, generally the

D. ROACH

Page 78

1    same as to the other Food Service accounts?

2        A    Yes.

3        Q    You understand -- does Hooters have a

4    contract with Flowers Foods for the purchase of

5    product?

6        A    Not that I'm aware of.

7        Q    Do you understand the pricing arrangement

8    that is communicated to Hooters?

9        A    Yes.  The way I understand it is we have,

10    we have one price in Georgia, which is where the

11    majority of their corporate or company-owned stores

12    are.  And outside of that, all the pricing is done

13    by each subsidiary, each plant.

14        Q    Just so I'm clear.  The pricing, you said

15    the pricing is done with each plant, you mean each

16    Flowers bakery?

17        A    Yes.

18        Q    Each Flowers bakery then would negotiate

19    with each individual Hooters?

20        A    Yes.

21        Q    Do you know who's responsible for those

22    negotiations, would that be a particular person in

23    each bakery?

24        A    Yes.  VP.  Typically a VP.  Could be a

25    Director of Sales.

D. ROACH

1        Q      But with respect to the company-owned

2    Hooters in Georgia, that would fall on the

3    responsibilities of Jeff Strain?

4        A      Jeff strain, that's correct.

5        Q      Does Hooters purchase any specialty

6    product that is delivered by the independent

7    distributors?

8        A      I'm not sure of that.

9        Q      Turn to the Zaxby's.  Do you know who is

10   responsible for calling on the Zaxby's national

11   account?

12       A      Yes, that is Steve Matthews.  He's a

13   Director of Sales.

14       Q      And is he a Director at Flowers Bakery

15   Group?

16       A      He is a Director of Flowers Baking Company

17   of Villa Rica and --

18       Q      What are his duties and responsibilities?

19       A      His day-to-day duties are responsibility

20   for several warehouses.  Zaxby's office is in that

21   area where he's responsible for, so we have him call

22   on that account.

23       Q      Does he call on that account on behalf of

24   the Flowers Villa Rica, or other Flowers as well?

25       A      Other Flowers as well.

VERITEXT/NEW YORK REPORTING COMPANY

212-267-6868                                        516-608-2400

D. ROACH

Page 80

1    Q    Does Zaxby's have a contract with Flowers

2    for the purchase of product?

3    A    They do not.

4    Q    How are the prices communicated to

5    Zaxby's?

6    A    We have one price with Zaxby's, and prices

7    are communicated through Steve to the different

8    subsidiaries.

9    Q    Anyone else other than Mr. Matthews

10   responsible for dealing with the Zaxby's national

11   account?

12   A    I said earlier Jeff Strain has a little

13   involvement there.

14   Q    I think you said he may call on them

15   sometimes as well?

16   A    Yes.

17   Q    Anyone else?

18   A    No.

19   Q    Turn to Krystal.  I think you testified

20   Brad Alexander is responsible for the Krystal

21   national account?

22   A    Yes.

23   Q    Do you know what Mr. Alexander's title or

24   position is?

25   A    He's a Regional Vice President.

D. ROACH

Page 81

1     Q     Flowers Bakeries?

2     A     Flowers Bakeries Group.

3     Q     Do you know what his duties and

4    responsibilities are as to the Krystal national

5    account?

6     A     There is actually, there is another guy,

7    Ray McDaniel, who has been also calling on Krystal

8    with him.  I'm not sure which is, which is the lead.

9    But they both have been calling on Krystal.  Ray has

10   been the President of our Bailey Street Bakery,

11   which produces the Krystal bun.  And recently has

12   changed jobs, but the two of them have been handling

13   that account.

14    Q     What is the Bailey Street Bakery?

15    A     It's a bakery in downtown Atlanta.

16    Q     And the Bailey Street Bakery produces, are

17   they the exclusive producer of the buns for Krystal?

18    A     No.  We have several other bakeries to

19   produce it.

20    Q     But Mr. McDaniel and Jeff Strain are

21   responsible for --

22    A     Not Jeff.

23    Q     Oh, not Jeff?

24    A     Jeff doesn't do anything with Krystal.

25    Q     I'm sorry.  Mr. McDaniel is responsible

D. ROACH

Page 82

1    for communicating with respect to Krystal on the

2    national account?

3        A    Yes.  He and/or Brad Alexander.

4        Q    Is there a contract between Krystal and

5    Flowers Foods for the purchase of any product?

6        A    Yes.

7        Q    Do you know what the, how the pricing is

8    communicated to Krystal with respect to the purchase

9    of Flowers product?

10       A    I just know that Brad and Ray are the

11   communication link that, to go make that sales call

12   with Krystal.

13       Q    Okay.  Does the contract contain one price

14   for the purchase of Flowers product?

15       A    Yes.  One price per item.

16       Q    I think you may have said this, the, Mr.

17   McDaniel -- I'm sorry.  The Bailey Street Bakery

18   isn't the only bakery that produces product for

19   Krystal?

20       A    Correct.

21       Q    But Mr. McDaniel is one of the two

22   individuals who call on Krystal's as it pertains to

23   that national account?

24       A    Correct.

25       Q    Do you have an understanding why Mr.

D. ROACH

1    McDaniel is part of the process to call on Krystal?

2        A    Because he's in Atlanta, Krystal's office

3    is in Chattanooga, and he is a major manufacturer of

4    their product, so they will come, Krystal will come

5    in and audit that plant.  So he had some significant

6    involvement with Krystal.

7            MR. GUGLIELMO:  Okay.  Does it make sense

8        to mark the list that we've been using as an

9        exhibit, just for the purposes of --

10           MR. HISHTA:  Sure.  Mark it.  At least as

11       far as our understanding today, you know, one

12       or more of the plaintiffs service these

13       national accounts.

14           MR. GUGLIELMO:  Yes, and I'm not, it's

15       not, we're not, you know, making any

16       representations, or you aren't, as to the

17       authentication of the document, or whatever.

18       It's just, for purposes of the discussion we

19       have been having, I think it makes sense,

20       because this will help others who may read this

21       transcript sometime in the future.

22           But, yeah, if we can just have the, this,

23       we have a document that lists the accounts that

24       we have been, Mr. Roach has been providing

25       testimony as to that was provided by counsel

D. ROACH

Page 84

1     for Flowers.  I just want to mark that as

2     Flowers Foods 8.  Flowers Foods 8.

3                    (Marked for identification

4                    purposes, Exhibit No. 8.)

5          MR. HISHTA:  Now, for the record I'll ask

6     for the other contract that we discussed, get

7     copies of the contracts for Sodexho, and I

8     believe there's one other one.

9          MR. GUGLIELMO:  Zaxby's.

10         MR. DAVIS:  Burger King.

11         MR. HISHTA:  Burger King.

12         THE WITNESS:  Burger King.

13         MR. HISHTA:  Actually, as I understand it,

14    the contract with Burger King, it's not

15    actually with Burger King.  It is with a group

16    that acts on behalf of Burger King, which is

17    RSI.

18         MR. GUGLIELMO:  Okay.

19    Q    (By Mr. Guglielmo) Mr. Roach, I want to

20    turn you back to this document that sort of has been

21    assisting my questions and also your answers.  As

22    you take a look at this list, are there any other

23    national accounts that may have been serviced by the

24    plaintiffs in this case that are no longer national

25    accounts with Flowers?

D. ROACH

Page 85

1      A      No.

2      Q      Okay.  I think with respect to Bruno's,

3   you indicated that Flowers engages in certain

4   advertising, they put their ads into the circular.

5   I think that was part of the testimony you provided

6   earlier?

7      A      Right.

8      Q      Are there any other national accounts

9   where Flowers also engages in certain advertising

10  similar to that that you described with respect to

11  Bruno's?

12     A      Yes.

13     Q      Okay.  What other national accounts?

14     A      Publix would be one, Bruno's, Southern

15  Family Markets.  That would be all on this list.

16     Q      With respect to, turn to Publix for a

17  minute.

18     A      Winn-Dixie is on.

19     Q      Okay.  Turn to Publix.  Do you have a

20  general understanding of the types of advertising

21  that would appear in regard to Publix's national

22  account?

23     A      I think so.

24     Q      Can you describe for me generally what

25  type of advertising?

D. ROACH

Page 86

1       A     For example, the Publix will have a

2   holiday ad book that goes out to so many thousand

3   consumers.  We come out with a new product, we may

4   place that product in that ad, in that ad magazine,

5   or ad book.  And that would be an example for

6   Publix.

7       Q     Would you also have certain things like

8   promotional sales with respect to --

9       A     Yes.

10      Q     -- Flowers products?

11      A     Right.

12      Q     How about Winn-Dixie, the same type of

13  advertising?

14      A     Yes.  Similar.  Winn-Dixie would be more

15  along the lines of the weekly-type ad, the ad that

16  goes out to homes in the Sunday paper and placed up

17  in the front of the store when the customer walks

18  in.

19      Q     With respect to the Southern Family

20  Markets?

21      A     Similar.

22      Q     Similar type of advertising.  Could that

23  also include promotional advertising, or advertising

24  with respect to sales of particular Flowers

25  products?

D. ROACH

Page 87

1    A   Yes, sometimes.  As in conjunction with,

2  or at the same time as, yes.

3    Q   And would the, I think for the most part

4  Mr. Strain -- no, I'm sorry.  Strike that.

5          Would the individual responsible for

6  calling on those accounts also be responsible for

7  dealing with the advertising related to those

8  national accounts?

9    A   Yes.

10    Q   And with respect to these accounts that

11  are listed, do you have an understanding of how

12  these accounts would pay for the product that is

13  sold within their stores?

14    A   Somewhat.

15    Q   Okay.  For example?

16      MR. HISHTA:  I think we're kind of

17      crossing into Karyl's territory as far as, you

18      know, the topic areas described in the

19      accounting and payment methodology.

20      MR. GUGLIELMO:  Okay.  I'll ask one

21      question to make sure that that's --

22    Q   (By Mr. Guglielmo) With respect to the

23  Wal-Mart account, for example, do you, would you be

24  the person knowledgeable to provide testimony as to

25  how Wal-Mart will, whether or not Wal-Mart remits

D. ROACH

Page 88

```
 1    the funds to Flowers and then Flowers would then

 2    ultimately remit payment to the distributors, or

 3    would that be someone else?

 4        A    Karyl would probably be better to answer

 5    that.

 6        Q    Okay.  Mr. Roach, do you understand the

 7    term, "authorized accounts"?

 8        A    Authorized accounts, yes.

 9        Q    Do you know what that means with respect

10    to -- do you have -- what does that mean to you?

11        A    Authorized accounts, what it means to me

12    is accounts within a distributor's territory that

13    that distributor would be authorized to sell

14    products.

15        Q    Okay.  So have you heard of the term,

16    "unauthorized accounts"?

17        A    Unauthorized?

18        Q    If it's not a term that you are familiar

19    with, you can just say so.

20        A    I've heard the term, I'm just not sure

21    where that's going.

22        Q    No, I just -- would unauthorized accounts

23    be the opposite of authorized accounts, Is that sort

24    of two terms --

25        A    Yes.
```

D. ROACH

1      Q     Okay.  That is what I was trying to

2   understand.  And just so I'm clear, Kevin, again, I

3   apologize, the testimony regarding the Pay-By-Scan

4   as it pertains to the national accounts would be Ms.

5   Lauder as well?

6              MR. HISHTA:  Yes.

7      Q     (By Mr. Guglielmo) Okay.  I want to go

8   back for a minute.  Mr. Roach, can you tell me what

9   period of time you were the Vice President of

10  National Accounts?

11     A     Yes.  Let's see, for the past four years

12  leading up to mid December.

13     Q     Okay.  So mid December 2007, going back to

14  about mid December 2003?

15     A     I don't know the exact date, approximately

16  four years.

17     Q     Prior to that time what was your position

18  or title?

19     A     Prior to that time I was the President of

20  Flowers Baking Company of Nashville.

21     Q     For what period of time did you hold that

22  position?

23     A     For approximately two years.

24     Q     Prior to that time what title or position

25  did you hold?

D. ROACH

Page 90

1      A      Prior to that I was Vice President of

2   Sales at Flowers Baking Company of Villa Rica.

3      Q      And prior to this, prior to your, prior to

4   you holding the position of Vice President of

5   Sales --

6      A      I was a Regional Sales Director.

7      Q      For a particular -- what region would that

8   be?

9      A      It would be -- regions have changed since

10  then.  At that time I was working for Gene Lord, who

11  was a Regional Vice President at the time.

12     Q      Do you know what region that was?

13     A      They called it the Lord region.

14     Q      Is there a particular geographic area to

15  that region?

16     A      Yes.  It was more south, the southeast.

17  Several states, Georgia, Alabama.  And that region

18  actually changed some during that tenure too.  So it

19  is a moving target.

20     Q      And then prior to you holding that

21  position as Regional Director, did you have any

22  positions or titles with Flowers?

23     A      Yes, I was a Director of Sales for Flowers

24  Baking Company of Villa Rica.

25     Q      Prior to --

D. ROACH

1        A      Prior to that I was a Sales Manager for

2    Flowers Baking Company of Villa Rica.

3        Q      How long did you hold that position?

4        A      Sales Manager, I don't remember, quite

5    honestly.

6        Q      Okay.

7        A      A year, two years.

8        Q      And prior to that did you hold any

9    position or title with Flowers?

10       A      I ran a route for approximately a year and

11   a half.

12       Q      You were a route distributor?

13       A      We were company routes at the time.

14       Q      Do you remember approximately what time

15   period you ran a route?

16       A      Started in 1992, May of '92.

17       Q      When did you cease running a route?

18       A      I don't know, approximately a year and a

19   half later.

20       Q      On or about '93 or '94?

21       A      Yes.

22       Q      Where did you run that route?

23       A      In, well, I ran a route every day.  It was

24   different routes, for the most part.  I ran

25   Cobblestone Mill route, but all of it was in the

D. ROACH

Page 92

1    Marietta, Georgia, and out of the Marietta

2    warehouse.

3         Q    What Flowers Food Bakery was that, do you

4    know?

5         A    When I started, it was Atlanta Baking

6    Company.  And it later became Flowers Baking Company

7    of Villa Rica.

8         Q    Prior to running the route did you hold

9    any other titles or positions, or were you employed

10   by Flowers?

11        A    No.  I must, when I say I ran a route, I

12   was actually hired as an extra man which runs

13   routes.

14        Q    That was your title or position?

15        A    I guess.  I don't know if it had a title.

16             MR. GUGLIELMO:  Go off the record.

17             VIDEOGRAPHER:  The time is approximately

18        12:19 p.m.  We are now off the record.

19                     (WHEREUPON, a brief recess was

20                     taken)

21             VIDEOGRAPHER:  The time is approximately

22        12:41 p.m.  We are back on the record.

23             MR. GUGLIELMO:  Kevin, I think we're going

24        to reserve any time for rebuttal, but we're

25        basically done.

D. ROACH

Page 93

1    EXAMINATION

2    BY-MR.HISHTA:

3

4    Q    Mr. Roach, towards the end of Mr.

5    Guglielmo's questions, he asked you a few questions

6    concerning authorized accounts and unauthorized

7    accounts.  I want to go back to that just to make

8    sure it's, we have that testimony clear on the

9    record.  In the context of the Flowers

10   distributorship program, what is your understanding

11   of an authorized account?

12   A    Okay.  In context of the distributorship

13   program, an authorized account will be an account

14   where the billing and the payment is actually done

15   to the subsidiary that that distributorship is

16   connected to.  On the other side, an unauthorized

17   account would be an account that that billing and

18   payment is not being done through the bakery, but

19   that distributor can still work any account that he

20   wants to through, by way of cash transaction.  So in

21   no way are we limiting him as to what he can service

22   within his territory.  He can service anything.  But

23   that unauthorized account is simply that the billing

24   and the payments and all did not come through that

25   subsidiary.

D. ROACH

Page 94

1              MR. HISHTA:  I have no further questions.

2              MR. GUGLIELMO:  Okay.  One quick

3         clarification.

4         FURTHER EXAMINATION

5         BY-MR.GUGLIELMO:

6         Q    Are you the person that provides, that

7    would provide testimony as to how the authorized

8    accounts would flow from the national account to the

9    distributor, or is that Ms. Lauder?

10             MR. HISHTA:  That would be Ms. Lauder.

11             MR. GUGLIELMO:  Okay.  With that, nothing

12        further.

13             VIDEOGRAPHER:  This concludes the

14        videotape deposition --

15             MR. HISHTA:  Mr. Roach will read his

16        deposition transcript and sign as will the

17        other witnesses, Ms. Lauder, and if we need any

18        additional witnesses.  Thank you.

19             VIDEOGRAPHER:  This concludes the

20        videotape deposition of Mr. David Roach.  The

21        date is January 30th, 2008.  The time is

22        approximately 12:44 p.m.  We are now off the

23        record.

24    (Whereupon, deposition concluded at 12:44 p.m.)

25

D. ROACH

1                    DESCRIPTION OF EXHIBITS

2

3    EXHIBIT    IDENTIFICATION

4      8        Account List

5

6               (Original exhibits attached to the

7               Original transcript.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

D. ROACH

Page 96

1    STATE OF GEORGIA:

2    COUNTY OF FULTON:

3            I hereby certify that the foregoing

4    transcript was reported, as stated in the

5    caption, and the questions and answers

6    thereto were reduced to typewriting under my

7    direction; that the foregoing pages represent

8    a true, complete, and correct transcript of

9    the evidence given upon said hearing, and I

10   further certify that I am not of kin or

11   counsel to the parties in the case; am not

12   in the employ of counsel for any of said

13   parties; nor am I in any way interested in

14   the result of said case.

15

16

17

18

19

20

21

22

23

24

25

D. ROACH

Page 97

1          Disclosure Pursuant to Article

2     8(B) of the Rules and Regulations of the

3     Board of Court Reporting of the Judicial

4     Council of Georgia, I make the following

5     disclosure:

6          I am a Georgia Certified Court

7     Reporter, here as a representative of

8     Brown & Gallo, L.L.C., to report the

9     foregoing matter. Brown & Gallo, L.L.C.,

10    is not taking this deposition under any

11    contract that is prohibited by O.C.G.A.

12    5-14-37 (a) and (b).

13         Brown & Gallo, L.L.C., will be

14    charging its usual and customary rates

15    for this transcript.

16

17

18

19

20          THOMAS R. CAREY, CCR-B-1715

21

22

23

24

25

D. ROACH

Page 98

1                         CAPTION

2

3          The Deposition of David M. Roach,

4   taken in the matter, on the date, and at the time and

5   place set out on the title page hereof.

6          It was requested that the deposition be taken

7   by the reporter and that same be reduced to

8   typewritten form.

9          It was agreed by and between counsel and the

10  parties that the Deponent will read and sign the

11  transcript of said deposition.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

D. ROACH

100

```
1                    DEPOSITION ERRATA SHEET

2

3       RE:          Brown & Gallo, L.L.C.

4       File No.   24079

5       Case Caption: CHARLES MORROW, et al,

6       vs.  FLOWERS FOODS, INC., et al.

7       Deponent:   David M. Roach

8       Deposition Date:   January 30, 2008

9       To the Reporter:

10      I have read the entire transcript of my Deposition taken

11      in the captioned matter or the same has been read to me.

12      I request that the following changes be entered upon the

13      record for the reasons indicated.   I have signed my name to

14      the Errata Sheet and the appropriate Certificate and

15      authorize you to attach both to the original transcript.

16

17      Page No. 16  Line No. 11   Change to: typically house a Sales Manager and

18      an OM (Operations Manager).  And

19      Reason for change: Correct typographical error and clarification.

20      Page No. 17  Line No. 25   Change to: Flowers Bakeries, that team is,

21

22      Reason for change: Clarification of testimony.

23      Page No. 23  Line No. 11  Change to: The zone pricing will be closely

24       aligned with market pricing, to

25      Reason for change: Clarification of testimony.
```

D. ROACH

101

1    Deposition of David M. Roach

2

3    Page No. 27  Line No. 8   Change to: And Bobby calls, he actually

4    is the sales

5    Reason for change:  Typographical error.

6    Page No. 29  Line No. 2   Change to: He'll give us the business,

7    but he can take it

8    Reason for change: Clarification of testimony.

9    Page No. 32  Line No. 23   Change to: get it approved by Kevin

10   Sullivan, who is the, one

11   Reason for change: Typographical error.

12   Page No. 34  Line No. 13   Change to: That's correct, but Opelika

13   establishes the branded pricing, not the producing bakery.

14   Reason for change: Clarification and to be consistent with prior
     testimony.

15   Page No. 34  Line No. 18   Change to: the loaf breads.  We will

16   sell it to Opelika.

17   Reason for change: Typographical error.

18   Page No. 43  Line No. 17   Change to: That's correct.  Opelika

19   would decide market pricing.

20   Reason for change: Clarification of testimony.

21

22   SIGNATURE: _David M. Roach_    DATE: 3-10-08

23        David M. Roach

24

25

VERITEXT/NEW YORK REPORTING COMPANY

212-267-6868                                    516-608-2400

1    SUPPLEMENTAL ERRATA SHEET of David M. Roach

2

3    Page No. 54  Line No. 16-17  Change to: Yes.

4    Reason for change:  Following deposition confirmed bakeries
     are signatories.

5    Page No. 64  Line No. 13  Change to: Yes, Sonic and various

6    Flowers' subsidiaries.

7    Reason for change: Following deposition discovered contract

8    in existence.

9    Page 68  Line 15  Change to:  with respect to, you give the

10   example Mr. Strain was

11    Reason for change: Typographical error.

12   Page No. 77  Line No. 14 Change to: There is a Vendor

13   Agreement.  There is a specialty, a bun that

14   Reason for change: Following deposition discovered Vendor

15   Agreement in place between Chick-Fil-A, Inc. and Flowers

16   Foods, Inc. and its affiliated companies.

17   Page No. 85 Line No. 18  Change to: Winn- Dixie is one.

18   Reason for change:  Typographical error.

19   _____

20   Page No._____ Line No._____ Change to:_____

21   _____

22   Reason for change:_____

23   SIGNATURE: _David M. Roach_____ DATE: 3-10-08

24        David M. Roach

25

1.   Wal-Mart

2.   Dollar General

3.   Family Dollar

4.   Fred's

5.   Publix

6.   Winn Dixie

7.   Bruno's

8.   Southern Family Markets

9.   Target

10.  Foodservice Accounts

- Sonic

- Arby's

- Burger King

- Hardee's

- Sodexho

- Chick-Fil-A

- Hooters

- Zaxby's

- Krystal


Plaintiff's Exhibit
11/30/08 TCC
ROACH - 8
BROWN & GALLO

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| CHARLES MORROW, MICHAEL<br>OVERTON, JAMES MARTY SMITH,<br>DWAYNE CLEVELAND, MICHAEL SMITH,<br>MARK MURPHY, DOUG BRANCH, LEW<br>BAXTER, RICKY SMALL, MELVIN SNOW,<br>GREG PATISAUL and GARY CHAMBLISS,<br>Individually and on behalf of similarly<br>situated employees,<br><br>        Plaintiffs,<br><br>v.<br><br>FLOWERS FOODS, INC., FLOWERS<br>BAKING CO., OF OPELIKA, LLC, and<br>FLOWERS BAKING CO. OF<br>THOMASVILLE, LLC,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO.:<br>) 3:07-CV-617-MHT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF MELVIN SNOW'S VERIFIED RESPONSES TO
DEFENDANTS' FIRST INTERROGATORIES**

COMES NOW the Plaintiff, Melvin Snow, by and through his undersigned

counsel, and hereby submits his objections and responses to Defendants' First

Interrogatories to Plaintiff, as follows:

**PRELIMINARY STATEMENT**

Plaintiff reserves the right to modify, amend, or supplement these objections and

responses at a later date.  Plaintiff's responses are made without in any way waiving, but,

on the contrary, expressly reserving: (1) the right to question or object to the authenticity,

foundation, relevancy, materiality, privilege and admissibility of the information

produced in response to the Interrogatories in any subsequent proceeding in, or the trial

of, this action; (2) the right to object to the introduction of these responses and objections

into evidence in this action; and (3) the right to object on any ground at any time to other discovery involving the subject matter of the Interrogatories, or Plaintiff's responses and objections to the Interrogatories or the information produced in response to the Interrogatories.

Plaintiff remains available to meet and confer about the Interrogatories and their responses and objections thereto.

## GENERAL OBJECTIONS

1.    Plaintiff objects to each and every Interrogatory to the extent the request seeks information and/or the production of documents, which are subject to the attorney-client or other applicable privileges and accordingly entitled to protection.  Nothing contained in these objections is intended as, or shall in any way be deemed, a waiver of such privilege or protection, or any other applicable privilege or doctrine.

2.    Plaintiff objects to each and every Interrogatory to the extent the request seeks the information and/or production of documents which are attorney work product. Nothing contained in these objections is intended as, or shall in any way be deemed, a waiver of such privilege or protection, or any other applicable privilege or doctrine.

3.    Plaintiff objects to each and every Interrogatory to the extent that the request purports to impose requirements upon Plaintiff beyond those authorized by the Federal Rules of Civil Procedure.

4.    Plaintiff objects to each and every Interrogatory to the extent the request calls for Plaintiff to produce information and/or documents that are not reasonably calculated to lead to the discovery of admissible evidence.

5.      Plaintiff objects to each and every Interrogatory to the extent the request

calls for the production of information and/or documents that are not relevant to any of

the issues and matters raised in the complaint.

6.      Plaintiff objects to each and every Interrogatory to the extent the request

calls for the production of information and/or documents that are outside the scope of

discovery allowed.

7       Plaintiff objects to each and every Interrogatory to the extent the request is

unduly burdensome and requires Plaintiff to go to extraordinary measures to produce said

information and/or documents in violation of the Federal Rules of Civil Procedure.

8.      Plaintiff objects to each and every Interrogatory to the extent the request

calls for the creation of documents that are not now in existence.

9.      Plaintiff objects to the Interrogatories to the extent the requests are vague,

overbroad, and not limited in time and scope.

10.     Plaintiff objects to the Interrogatories to the extent the requests, including

all subparts exceed forty (40), the number which was agreed to by the parties in the Rule

26 Report.

11.     The fact that Plaintiff has objected to any Interrogatory, or part thereof,

should not be taken as an admission that the Interrogatory or the objection thereto

constitutes admissible evidence.

12.     The failure to object on a particular ground of grounds shall not be

construed as a waiver of Plaintiff's right to objection on any additional ground(s).  In

addition to the general objections above, set forth below are Plaintiff's specific objections

to the Interrogatories. By setting forth specific objections, Plaintiff does not intend to limit, restrict, or waive the general objections set forth above.

## INTERROGATORIES

1.    Please state your full name, including middle name, and all nicknames or aliases by which you have been known.

**ANSWER:**

**Melvin James Snow**

**Alias: Breadman**

2.    Please list the full address of all residences at which you have lived from July 2, 2004, to the present, specifying the dates you lived at each address.

**ANSWER:**

**2271 Bonaparte Blvd Apt 5**
**Montgomery, Alabama 36116**
**1999 to 2006**

**2802 F Scott Court**
**Montgomery, Alabama 36116**
**2006 to Present**

3.    Identify the following information concerning all employment and/or self-employment you held prior to, or contemporaneously with, your independent distributor relationship with FBC of Opelika:

(a)    the name, address, and phone number of each employer and/or self-employment arrangement;

(b)    the dates of each period of employment and/or self-employment; and

(c)    The reason for leaving each employer and/or self-employment arrangement.

4

**ANSWER:  In addition to the general objections, Plaintiff objects to this Interrogatory as being overbroad and not limited in time and scope.  Subject to and without waiving the objection, Plaintiff responds as follows:**

(a)

    (1)    **Phillie's Cigar Company**
            **Morgan Street**
            **Selma, Alabama  36701**
            **(334) 874-7423**

    (2)    **Coca Cola Bottling Company**
            **300 Coca Cola Road**
            **Montgomery, Alabama  36105**
            **(334) 284-9555**

(b)

    (1)    **1987 to 1993**

    (2)    **1993**

(c)

    (1)    **I took another job.**

    (2)    **I took another job.**

4.    Identify the following information concerning all employment and/or self-employment you have held since your independent distributor relationship with FBC of Opelika ceased:

    (a)    The name, address, and phone number of each employer and/or self-employment arrangement;

    (b)    The dates of each period of employment and/or self-employment; and

    (c)    The reason for leaving any such employer and/or self-employment arrangement.

**ANSWER:  In addition to the general objections, Plaintiff objects to this Interrogatory as being unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the objection, Plaintiff responds as follows:**

5

    (a)    **P & S Meats**
             **51 County Road 464**
             **Minter, Alabama 36761**
             **334-303-5780**

    (b)    **2005 to Present**

    (c)    **Not Applicable**

5.    Identify each person with knowledge, or who you believe has knowledge, of the facts alleged in your complaint, giving the count number(s) and paragraph(s) of which each person has knowledge, or you believe has knowledge.

    **ANSWER:  In addition to the general objections, Plaintiff objects to this Interrogatory as being overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff also objects to this Interrogatory as being premature. Discovery has yet to commence in this action and therefore any response is based on information in plaintiff's possession at the time the complaint was drafted.  Finally, Defendant already has within its possession all of the information sought by this request.  Subject to and without waiving these objections, Plaintiff responds as follows:**

    **Ricky Small has knowledge of all the facts in the complaint.**

6.    Identify each person, other than your attorneys, with whom you have discussed the alleged unlawful acts and alleged damages set forth in your Complaint.

    **ANSWER:  In addition to the general objections, Plaintiff objects to this Interrogatory as being vague, overly broad, and not limited in time.  Subject to and without waiving this objection, Plaintiff responds as follows:**

    **I have not discussed any facts concerning this case with anyone other than my attorney.**

7.    Please state each item and amount of damages that you claim and an explanation of how you computed each item of damages, including any mathematical formula used.

    **ANSWER:  In addition to the general objections, Plaintiff objects to this Interrogatory to the extent it seeks information that is subject to protection under the attorney-client privilege or attorney work product doctrine.  Plaintiff further**

6

objects to this Interrogatory as being premature as discovery has yet to commence and Defendants have not yet produced any documents or data. Plaintiff does not yet have sufficient information to complete an accurate calculation of damages. Subject to and without waiving this objection, Plaintiff is seeking overtime pay plus interest, attorney fees and costs of litigation. Plaintiff reserves the right to supplement this response as discovery proceeds and as the Court's Scheduling Order permits.

8.    Please identify each document pertaining to each item of damages stated

in your response to Interrogatory No. 7 above.

ANSWER: In addition to the general objections, Plaintiff objects to this Interrogatory to the extent it seeks information that is subject to protection under the attorney-client privilege or attorney work product doctrine. Plaintiff further objects to this Interrogatory as being premature as discovery has yet to commence and Defendants have not yet produced any documents or data. Plaintiff does not yet have sufficient information to complete an accurate calculation of damages. Subject to and without waiving this objection, Plaintiff is seeking overtime pay plus interest, attorney fees and costs of litigation. Plaintiff reserves the right to supplement this response as discovery proceeds and as the Court's Scheduling Order permits.

9.    From July 2, 2004, until you ceased being a distributor for FBC of

Opelika, identify all individuals who assisted you in operating your distributorship with

FBC of Opelika, including the date(s) each such individual(s) assisted you.

ANSWER: In addition to the general objections, Plaintiff objects to this Interrogatory as being overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Plaintiff responds as follows:

Fred Jeffco, Ricky Bell and Billie Reid have all, on occasion, assisted me in operating my distributorship. I do not remember the specific dates when they assisted me.

10.    Identify all persons providing information used to respond to these

Interrogatories and/or FBC of Opelika's First Request for Production of Documents

and/or all persons assisting in the development of the responses to these Interrogatories

and/or FBC of Opelika's First Request for Production of Documents.

ANSWER: In addition to the general objections, Plaintiff objects to this Interrogatory as being premature as discovery has not yet commenced. In addition,

**Plaintiff objects to this Interrogatory to the extent it seeks information protected by attorney-client privilege or attorney work product doctrine. Subject to and without waiving these objections, Plaintiff responds as follows:**

**No person assisted me in responding to discovery.**

11.    Have you ever pleaded guilty or no contest/*nolo contendere* to, or been convicted of, any misdemeanor or any felony? If answer is anything other than an unqualified "no," then state for each such offense, for which you have either been convicted or plead guilty, the following information:

   (a)    Nature of the offense;

   (b)    Date;

   (c)    Court, county, and state in which the matter was pending; and

   (d)    The disposition or sentence you were given.

**ANSWER:  In addition to the general objections, Plaintiff objects to this Interrogatory as the information it seeks is overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Plaintiff responds as follows:**

**No.  I have not plead guilty or not contest to or been convicted of any misdemeanor or felony.**

12.    Have you ever been a party to, or witness in, any lawsuit or litigation? If you answer is anything other than an unqualified "no," then state for each case in which you were involved the following information:

   (a)    The title and nature of the action and a brief description of your role or part in it;

   (b)    The names and addresses of the court and the case number;

   (c)    The names and addresses of all parties;

   (d)    The date the action was initiated;

8

(e)     The nature of the allegations; and

(f)     the verdict, judgment, or other outcome of the case.

**ANSWER: In addition to the general objections, Plaintiff objects to this Interrogatory as seeking information protected by the attorney-client privilege and the attorney work-product doctrine. Plaintiff also objects to this Interrogatory as the information is seeks is overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Plaintiff will respond with information relating to any employment litigation he has been involved in.**

**No. I have not been a party to or witness in any lawsuit or litigation.**

13.     If you, or your attorneys, paralegals, or other representatives or agents

ever took or received any statement, either orally or in writing, from any person who had

any information or knowledge relevant to the alleged unlawful acts or alleged damages

set forth in your Complaint, identify each such person who provided a statement, provide

the date of each statement, describe the substance of each statement, and identify the

current custodian or custodians of such statement(s).

**ANSWER: In addition to the general objections, Plaintiff objects to this Interrogatory to the extent it seeks information that is subject to attorney-client privilege or attorney work product doctrine. Plaintiff further objects to this Interrogatory as the information it seeks is privileged, not relevant, and not reasonably calculated to lead to discovery of admissible evidence. Subject to and without waiving this objection, Plaintiff responds as follows:**

**No statements have been taken to my knowledge, information or belief.**

14.     Identify all email addresses and hosting website addresses you have had

and/or used for the period of July 2, 2004, to date, by providing: the e-mail address and

the website address, the internet service provider for each address, the name under which

the account was opened and maintained, the time period the account was open and used,

and the account number for each account.

9

**ANSWER:** In addition to the general objections, Plaintiff objects to this interrogatory to the extent it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Plaintiff will respond with any email sites used for his employment with Flowers.

None.

15.   Identify all electronic communications devices you have had and/or used

for the period July 2, 2004, to date, including the current location of each device. For all

electronic devices no longer in your possession, provide the manner in which you

disposed of each device and the date on which you disposed of each device.

**ANSWER:** In addition to the general objections, Plaintiff objects to this Interrogatory to the extent it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Plaintiff will provide the requested information for any communication devices used for his employment with Flowers.

Since 2004, I have had a cellular phone. I have the same phone but a new cellular number.

16.   Since July 2, 2004, have you subscribed to or participated in any Internet

newsgroup(s) or chat group(s) wherein any of the allegations on this action were

discussed or otherwise communicated. If so, list all users and the services you subscribed

to and/or participated in.

**ANSWER:** In addition to the general objections, Plaintiff objects to this Interrogatory to the extent it seeks information that is subject to the attorney-client privilege or the attorney work product doctrine. Subject to and without waiving this objection, Plaintiff responds as follows:

None.

17.   Identify all accountant(s) and/or other persons, from July 2, 2004, until

you ceased being a distributor for FBC of Opelika, who have assisted you with your

books, financial statements, and/or tax returns, including address and phone number.

10

**ANSWER:  In addition to the general objections, Plaintiff objects to this Interrogatory for being overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving that objection, Plaintiff will produce information relating to any accountant(s) and/or other persons that assisted him with any accounting related to his employment at Flowers.**

> **Frank V. Jones**
> **602 Avenue A**
> **Opelika, Alabama 36801**
> **(334)745-0075**

18.    From July 2, 2004, until you ceased being a distributor for FBC of

Opelika, identify all cash accounts you have serviced, including address, phone number,

and principal contact at such account.

**ANSWER:  Objection.  Plaintiff objects to this Interrogatory as it is vague, overly broad, and the information sought is equally available to Defendants.  Indeed, Defendants already have within their possession all of the information sought by this request.  Without waiver of this objection, the case accounts I have serviced are:**

> **(1)    Comfort Inn**
> **1029 Fort Dale Road**
> **Greenville, Alabama 36037**
> **(334) 383-9595**
> **Contact: I do not recall.**

> **(2)    Econo Lodge**
> **946 Fort Dale Road**
> **Greenville, Alabama 36037**
> **(334) 382-3118**
> **Contact: I do not recall.**

> **(3)    Best Western Inn**
> **56 Cahaba Road**
> **Greenville, Alabama 36037**
> **(334) 382-9200**
> **Contact: I do not recall.**

> **(4)    I-65 Amoco**
> **2621 Pineapple Highway**
> **Greenville, Alabama 36037**
> **(334) 382-7189**

Contact: I do not recall.

(5)    **Myrick's Grocery**
        **3684 Pineapple Highway**
        **Greenville, Alabama 36037**
        **(334) 383-9045**
        **Contact: Wayne Myrick**

(6)    **Oak Hill Grocery**
        **5843 Highway 21**
        **Pine Apple, Alabama 36768**
        **(251) 746-2517**
        **Contact:  Mr. Bo (I do not know full name)**

(7)    **Journeys End Sports Grill**
        **Highway 10**
        **Camden, Alabama 36726**
        **Restaurant is closed.**
        **Contact: Ms. Tibb (I do not know full name)**

(8)    **Highway 41 Grocery**
        **8347 Highway 41 South**
        **Vredenburgh, Alabama 36481**
        **(334) 337-4621**
        **Contact: Miss Trudie (I do now know full name)**

(9)    **McGraw's Grocery**
        **10740 County Road 56**
        **Vredenburgh, Alabama 36481**
        **(334) 337-4377**
        **Contact: Mr. and Mrs. McGraw**

(10)   **Sheffield Grocery**
        **I do not recall the address or phone number.**
        **Vredenburgh, Alabama 36481**
        **Contact: I do not recall.**

(11)   **Hunt's Tiny Diner**
        **Closed.**
        **Vredenburgh, Alabama 36481**
        **Contact: I do not recall.**

(12)   **Kwik Way**
        **1198 Main Street**
        **Beatrice, Alabama 36425**
        **(251) 789-2387**

Contact:  Mr. and Mrs. Sellers (I do not know full names)

(13)    **Chandlers Country Market**
103 Bryan Street
Beatrice, Alabama 36425
(251) 789-2819
Contact:  I do not recall.

(14)    **Loftin's Bait Shop**
51 Camden By-Pass
Camden, Alabama 36726
(334) 682-9304
Contact: Mr. Loftin (I do not know full name)

(15)    **Bones Grocery**
2233 Camden By-Pass
Camden, Alabama 36726
(334) 682-5215
Contact: Mr. Bones (I do not know full name)

(16)    **Larry's Drive-In**
5 Camden By-Pass
Camden, Alabama 36726'
(334) 682-4069
Contact: Larry (I do not recall full name)

(17)    **Hall's Grocery**
1021 County Road 85
Minter, Alabama 36
Contact: Edward Hall

(18)    **McDonald Grocery**
1535 Highway 221
Camden, Alabama 36726
(334) 682-4523
Contact: Mr. McDonald (I do not know full name)

(19)    **Travis's General Store**
8 Claiborne Street
Camden, Alabama 36726
(334) 682-5885
Contact: Travis (I do not recall full name)

(20)    **Mac's Grocery**
16 Claiborne Street
Camden, Alabama 36726

13

(334) 682- 4416
Contact: Mr. McGraw (I do not know full name)

(21)    **Dallas Soul Food**
**Restaurant closed.**
**Camden, Alabama**
**Contact: Mr. Dallas (I do not know full name)**

(22)    **Snack Shack**
**101 Fail Street**
**Camden, Alabama 36726**
**(334) 682-4137**
**Contact: I do not recall.**

(23)    **Roy's Game Room & Package**
**1406 James Ephraim Road**
**Coy, Alabama 36435**
**(334) 337-4998**
**Contact: Mr. Roy (I do not know full name)**

(24)    **Howard's Country**
**I do not recall the address or phone number.**
**Minter, Alabama**
**Contact: Mr. Howard (I do not know full name)**

(25)    **Hunters Run**
**40 Camden By-Pass**
**Camden, Alabama 36726**
**(334) 682-5037**
**Contact: Frank (I do not know full name)**

(26)    **Franklins**
**I do not recall the address or phone number.**
**Camden, Alabama**
**Contact: Larry (I do not know full name)**

19.    From July 2, 2004, until you ceased being a distributor for FBC of

Opelika, identify all charge accounts you have serviced, including address, phone

number, and principal contact at such account.

    **ANSWER: Objection. Plaintiff objects to this Interrogatory as it is vague,**
**overly broad, and the information sought is equally available to Defendants.**
**Indeed, Defendants already have within their possession all of the information**

14

sought by this request. Without waiver of this objection, the charge accounts I have serviced are:

    (1)    Burger King
              100 Interstate Drive
              Greenville, Alabama 36037
              (334) 382-6484
              Contact: I do not recall.

    (2)    Krystal
              1020 Fort Dale Road
              Greenville, Alabama 36037
              (334) 382-4754
              Contact: I do not recall.

    (3)    Board of Education Wilcox County
              2210 Highway 221
              Camden, Alabama 36726
              (334) 682-4409
              Contact: I do not recall. I serviced all of the schools in Wilcox County.

    (4)    Piggly Wiggly
              12 Camden By-Pass
              Camden, Alabama 36726
              (334) 682-5330
              Contact: Mr. Scance (I do not know full name)

    (5)    Henry's Red & White
              119 Broad Street
              Camden, Alabama 36726
              (334) 682-4658
              Contact: Mr. Henry (I do not know full name)

    (6)    Grill Grocery
              I do not recall address or phone number.
              Camden, Alabama
              Contact: I do not recall.

    20.    From July 2, 2004, until you ceased being a distributor for FBC of

Opelika, identify all delivery vehicle(s) you utilized in servicing your territory, including

year, make, and model.

**ANSWER:**

(1)    **1999 Chevrolet Step-Van**

(2)    **2000 Grand Cherokee Jeep**

(3)    **Honda Accord.**

*Amy A Weaver*

**OF COUNSEL:**

THE LAW OFFICES OF GREG L. DAVIS
6987 Halcyon Park Drive
Montgomery, Alabama 36117
334-832-9080
gldavis@knology.net

WHATLEY DRAKE & KALLAS, LLC
2001 Park Place North, Suite 1000
Birmingham, Alabama 35203
205-328-9576
Joe R. Whatley, Jr. (ASB-1222-Y69J)
jwhatley@wdklaw.com
Amy A. Weaver (ASB-6878-Y82A)
aweaver@wdklaw.com

WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, New York, 10036
212-447-7007
Joseph P. Guglielmo
jguglielmo@wdklaw.com

WOOD LAW FIRM, LLC
2900 1st Avenue South, Suite A
Birmingham, Alabama 35233
205-612-0243
E. Kirk Wood (ASB-2937-W55E)
ekirkwood1@cs.com

16

## OATH

I swear and affirm that the answers to the interrogatories contained herein are true, complete and accurate to the best of my knowledge. I also understand it is my duty to promptly notify my attorney should I later learn that any of the answers are incomplete, inaccurate, or misleading.

Sworn to and subscribed before me this 18th day of January 2007, a Notary Public in and for Jefferson County, State of Alabama

Notary Public _Katherine Evatt_

My Commission Expires: Oct. 12, 2011

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Oct 12, 2011
BONDED THRU NOTARY PUBLIC UNDERWRITERS

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2008, a copy of the foregoing was served on the following counsel via email and U.S. Mail:

Sandra B. Reiss
Christopher W. Deering
Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203-2118
205-328-1900
Sandra.Reiss@odnss.com
Chris.Deering@odnss.com

Kevin P. Hishta
David H. Grigereit
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
600 Peachtree Street, NE
Suite 2100
Atlanta, Georgia 30308
404-881-1300
Kevin.Hishta@ogletreedeakins.com
David.Grigereit@ogletreedeakins.com

OF COUNSEL

# EXHIBIT D

## National Account Production Summary

| Bates Range | Document | Date Produced |
|---|---|---|
| FF000650 – FF000665 | Scan Based Trading Agreement with **Winn-Dixie** | 12/28/07 |
| FF002854- FF002860 | Scan Based Trading Vendor Agreement Worksheet (**Target**) (2003)(w/Target Stores Scan Based Trading Terms and Conditions) | 3/27/08 |
| FF000753 – FF000758 | **Wal-Mart** & Flowers Pay from Scan Process Protocol Agreement | 1/11/08 |
| FF002924- FF002929  FF003062 – FF003070 | **Sodexho** Agreement (Amendment Number 3)   (previously omitted information) | 3/27/08   4/25/08 |
| FF002994 – FF003032 | Regional Distribution Agreement (**Sodexho**) | 4/25/08 |
| FF003033 – FF003047 | **Sodexho** Agreement (Amendment Number 1) | 4/25/08 |
| FF003048 – FF003061 | **Sodexho** Agreement (Amendment Number 2) | 4/25/08 |
| FF002880- FF002906 | Supplier Business Relationship Agreement (**Sonic**)(11/1/06), Vendor Acknowledgement of Code of Conduct and Ethics of Sonic and Subsidiaries, Sonic Business Relationship Agreement Addendum (11/1/06) | 3/27/08 |
| FF002907- FF002923 | **Chick-Fil-A**, Inc. Master Vendor Agreement | 3/27/08 |
| FF002930- FF002941 | Private Label Agreement (**Southern Family Markets**) | 3/27/08 |
| FBO003262 – FBO003281 | **Wal-Mart** Pricing E-mail examples 8/07 & 10/07 | 12/28/07 |
| FBO003247 – FBO003261 | National Account e-mail examples 8/07 – 10/07 (Wal-Mart, Winn-Dixie, Publix, Fred's, Dollar General, Family Dollar, Burger King, Sonic) | 12/28/07 |
| FBO003282 – FBO003287 | 6/07 Winn Dixie Pricing Example | 12/28/07 |
| FF002758 | 8/29/07 Letter from Jeff Strain to Scott Sargent re: Price Increases to Chick-Fil-A | 1/24/08 |
| FF002759 | 6/27/07 Letter from Jeff Strain to Mark Koestner re: Prices Increases to Hardees | 1/24/08 |
| FF002760 | 6/11/07 Letter from Jeff Strain to Gary Nash re: Price Increases to Hooters | 1/24/08 |
| FF002827 – FF002843 | Sample Payment Report reflecting allocation of Wal-Mart payment by subsidiary | 1/30/08 |

## National Account Representative E-mails

| Date | From | To | Re | Bates Range | Date Produced |
|---|---|---|---|---|---|
| 10/11/07 | Kim Ford | Bobby Massanelli, et al. | **Wal-Mart** Price Increases for Opelika | FFE001250 - FFE001258 | 1/24/08 |
| 11/27/07 | Bobby Massanelli | Michael Lord | Wal Mart PL in Columbus GA | FFE001266 | 1/24/08 |
| 10/15/07 | Doug Brown | Michael Lord | PL Increase (**Wal-Mart**) | FFE001119 | 1/24/08 |
| 10/2/06 | Jeff Strain | Robbie Watkins, et al. | **Zaxby's** Price Increase | FFE000456 - FFE000457 | 1/24/08 |
| 10/18/06 | Jeff Strain | FBI VPs, et al. | Upcoming **Sonic** Promotions | FFE000492 - FFE000494 | 1/24/08 |
| 10/19/06 | Jeff Strain | Ricky Ward | **Arby's** Increase…effective Monday October 30, 2006 | FFE000495 - FFE000496 | |
| 10/26/06 | Jeff Strain | Michael Lord | **Hardee's** | FFE000497 - FFE000498 | 1/24/08 |
| 10/26/06 | Jeff Strain | Bobby Priest | Old Grand Star **Hardee's** that are now Corporate owned Hardee's | FFE000499 - FFE000502 | 1/24/08 |
| 6/15/07 | Jeff Strain | FBI VPs | **Zaxby's** Promo on Kickin Chicken Sand | FFE000644 | 1/24/08 |
| 6/15/07 | Jeff Strain | FBI Presidents, et al. | **Chick-Fil-A** | FFE000647 | 1/24/08 |
| 6/28/07 | Jeff Strain | FBI VPs | **Arby's** pricing | FFE000659 | 1/24/08 |

| Date | From | To | Re | Bates Range | Date Produced |
|---|---|---|---|---|---|
| 7/6/07 | Jeff Strain | FBI VPs, et al. | **Hooters** of America price increase | FFE000660 - FFE000661 | 1/24/08 |
| 11/26/07 | Jeff Strain | Grady Messer | Upcoming **Arby's** Features – Montgomery market | FFE000677 - FFE000679 | 1/24/08 |
| 11/28/07 | Jeff Strain | Norris McDaniel | **Hooters** Price Increase effective December 10, 2007 | FFE000680 - FFE000682 | 1/24/08 |
| 6/27/07 | Charles Avera | Willie Prince | **Target** Price Change Forms | FFE000689 - FFE000698 | 1/24/08 |
| 6/27/07 | Kim Ford | Charles Avera | Opelika Price Increase for **Target** | FFE000699 - FFE000703 | 1/24/08 |
| 7/20/07 | Charles Avera | Willie Prince, et al. | **Target** – August 13th Pricing | FFE000718 - FFE000719 | 1/24/08 |
| 9/28/07 | Charles Avera | Michael Lord | Price Increases **(Target, Kmart, Costco)** | FFE000726 | 1/24/08 |
| 10/4/07 | Michael Lord | Charles Avera | Revised Cost Changes for **Target** | FFE000727 - FFE000731 | 1/24/08 |
| 2/8/07 | David Johnson | Betty Easterling | **Bruno** Price Changes-Opelika Plant | FFE000950 - FFE000962 | 1/24/08 |
| 9/28/07 | David Johnson | Michael Lord | Price Increases **(Bilo's, SFM)** | FFE001018 | 1/24/08 |

| Date | From | To | Re | Bates Range | Date Produced |
|------|------|-----|-----|-------------|---------------|
| 11/12/07 | Grady Messer | David Johnson | Prices, Bruno's, Foodworld | FFE001025 - FFE001027 | 1/24/08 |
| 11/15/07 | David Johnson | FBI VPs | Regular **Dollar General** Price Increase Dec 3, 2007 | FFE000732 - FFE000765 | 1/24/08 |
| 6/15/07 | David Dodge | Mickey Miller | 16 oz. Sandwich Bread producing plant move to Savannah from Thomasville **(Dollar General)** | FFE000868 - FFE000872 | 1/24/08 |
| 9/18/07 | David Dodge | FBI VPs | Price Increase Information Needed – Dollar **General & Family Dollar** | FFE000917 - FFE000920 | 1/24/08 |
| 9/25/07 | Michael Lord | David Dodge | Dollar Store Increases from Opelika. Revised | FFE000926 - FFE000930 | 1/24/08 |
| 11/26/07 | David Dodge | FBI VPs | **Dollar General, Family Dollar, Fred's** new pricing starts next week | FFE000931 | 1/24/08 |
| 6/19/07 | Michael Lord | Bobby Massanelli | Opelika Price Changes **(Wal-Mart)** | FFE001210 - FFE001215 | 1/24/08 |
| 7/25/07 | Steve Bordeaux | Bobby Massanelli | **Wal-Mart** P/Label price increase | FFE001224 | 1/24/08 |

| Date | From | To | Re | Bates Range | Date Produced |
|------|------|-----|-----|-------------|---------------|
| 12/16/05 | Jeff Strain | FBI VPs, et al. | **Sodexho** Price Increase | FBOE001490 - FBOE001498 | 1/24/08 |
| 8/22/07 | Rick Rowan | Norris McDaniel, et al. | **Krystal** Price Increase Approved | FBOE000693 - FBOE000694 | 1/24/08 |
| 12/18/06 | Robert Meadows | Willie Prince, et al. | **Winn Dixie** DSD Forms | FFE001268 - FFE001272 | 1/24/08 |
| 12/5/06 | Jim Williams | Mike McCall, et al. | Guidelines for calling on **Publix** | FBO003291 – FBO003293 | 12/28/07 |
| 6/15/06 | Craig White | FBI VPs | **Burger King** Price Increase | FBOE001074 - FBOE001075 | 1/24/08 |

EXHIBIT E

K. LAUDER

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

EASTERN DIVISION


CHARLES MORROW and MICHAEL

OVERTON, individually and on

behalf of similarly situated

employees,

         Plaintiffs,          CIVIL ACTION NO.

    vs.                   3:07-CV-617-MHT


FLOWERS FOODS, INC., AND

FLOWERS BAKING CO., OF

OPELIKA, LLC,

         Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

VIDEOTAPED DEPOSITION OF

KARYL HALSTEAD LAUDER

January 30, 2008

1:25 p.m.

Ogletree Deakins Nash Smoak & Stewart, P.C.

2100 Bank of America Plaza

600 Peachtree Street

Atlanta, GA 30308

Thomas R. Carey, CCR-B-1715

K. LAUDER

Page 2

```
 1              APPEARANCES OF COUNSEL

 2   On behalf ofthe Plaintiffs:

 3   JOSEPH P. GUGLIELMO, Esq.

 4   AMY A. WEAVER, Esq.

 5   Whatley Drake & Kallas, LLC

 6        1540 Broadway, 37th Floor

 7        New York, NY  10036

 8        (212) 447-7070

 9        (212) 447-7077

10        jguglielmo@wdklaw.com

11

12   On Behalf of the Plaintiffs:

13   GREG L. DAVIS, Esq.

14   The Law Office Of Greg L. Davis

15        6987 Halcyon Park Drive

16        Montgomery, AL  36117

17        (334) 832-9080

18        gldavis@knology.net

19

20

21

22

23

24

25
```

K. LAUDER

Page 3

1                    APPEARANCES OF COUNSEL (continued)

2

3     On behalf of the Defendants:

4     KEVIN P. HISHTA, Esq.

5     DAVID H. GRIGEREIT, Esq.

6     MARGARET E. SANTEN, Esq.

7     Ogletree Deakins Nash Smoak & Stewart, P.C.

8         2100 Bank of America Plaza

9         600 Peachtree Street

10        Atlanta, GA  30308

11        (404) 881-1300

12        (404) 870-1732

13        kevin.hishta@ogletreedeakins.com

14

15    Also present:   Videographer Ben Jones

16                    Stephanie B. Tillman, Esq.

17                    Vice President and Associate

18                    General Counsel Flowers Foods, Inc.

19

20            Deposition of Karyl H. Lauder

21                  January 30, 2008

22

23

24

25

K. LAUDER

Page 4

1                    DISCLOSURE

2

3          Pursuant to Article 8(B) of the Rules and

4    Regulations of the Board of Court Reporting of the

5    Judicial Council of Georgia, I make the following

6    disclosure:

7          I am a Georgia Certified Court Reporter,

8    here as a representative of Brown & Gallo, L.L.C.,

9    to report the foregoing matter. Brown & Gallo,

10   L.L.C., is not taking this deposition under any

11   contract that is prohibited by O.C.G.A. 5-14-37

12   (a) and (b).

13         Brown & Gallo, L.L.C., has agreed to

14   provide reporting services for VERITEXT,LLC - NY,

15   the terms of which are as follows:

16         The above mentioned referring firm will do

17   production and billing of transcripts of this matter.

18

19

20

21

22

23

24

25

K. LAUDER

Page 5

```
 1        VIDEOTAPED DEPOSITION OF KARLY HALSTEAD LAUDER
 2                      JANUARY 30, 2008
 3
 4            VIDEOGRAPHER:  Today's date is
 5        January 30th, 2008.  The time is approximately
 6        1:26 p.m.  The deponent is Ms. Karyl Lauder.
 7        Will counsel please identify themselves for the
 8        record.
 9            MR. GUGLIELMO:  Joseph Guglielmo with
10        Whatley Drake & Kallas for plaintiffs.
11            MS. WEAVER:  Amy Weaver, Whatley Drake &
12        Kallas for plaintiffs.
13            MR. DAVIS:  Greg Davis for the plaintiffs.
14            MS. TAYLOR:  Stephanie Tillman for Flowers
15        Foods.
16            MS. HANRAHAN:  Maggie Santen Handerhan
17        with Ogletree Deakins for the defendants.
18            MR. GRIGEREIT:  David Grigereit, Ogletree
19        Deakins for the defendants.
20            MR. HISHTA:  Kevin Hishta with Ogletree
21        Deakins for the defendants.
22            VIDEOGRAPHER:  Will the Court Reporter
23        please swear in the witness.
24            KARYL LAUDER, having been first duly
25        sworn, was examined and testified as follows:
```

K. LAUDER

Page 6

1              MR. GUGLIELMO:  Kevin, before we begin, do

2        you want to also read into the record the

3        topics that Ms. Lauder will be testifying to

4        today?

5              MR. HISHTA:  Yes.  Thank you.  Ms. Lauder

6        is a Flowers Foods designee for this 30(b)(6)

7        deposition for the inquiry set forth in Item 7

8        of Defendants Reply Brief, which was approved

9        by the Court's Order of November 27th, 2007.

10       And that inquiry is Flowers Foods involvement

11       in the determination of who was responsible for

12       any losses sustained by Flowers Opelika and

13       Flowers Thomasville, or independent

14       distributors of Flowers Opelika and Flowers

15       Thomasville from July 2, 2004 to date.

16             This would include testimony regarding the

17       parent subsidiary consolidated accounting

18       between Flowers Foods and Flowers Opelika, and

19       Flowers Foods and Flowers Thomasville.

20             Inquiry No. 8 is partially duplicative of

21       Inquiry No. 7.  Inquiry No. 8 also covers the

22       accounting methodology utilized by Flowers

23       Opelika and Flowers Thomasville for distributor

24       accounting from July 2, 2004 to date.

25       EXAMINATION

K. LAUDER

Page 15

1      Q     And that included the Specialty Division?

2      A     That included the Specialty Division as

3  well as the Bread Group.

4      Q     Ms. Lauder, do you have an understanding

5  of the type of accounting information that Flowers

6  Food maintains regarding the route distributors?

7      A     Flowers Foods itself doesn't maintain the

8  route information.  The route information for

9  specific bakeries are maintained on their own

10  subsidiary ledgers, their own set of books.

11      Q     Do you know what type of information the

12  subsidiaries maintain regarding the independent

13  route distributors?

14      A     They maintain an SAP in our accounting

15  system.  The detail of the orders and the invoices

16  resides in SAP.  We also have two other accounting,

17  or not accounting, but two data warehouses that

18  maintain sales data warehouse information, which is

19  invoice detail, as well as a Pay-By-Scan repository

20  where all the data is collected for Pay-By-Scan

21  customers.

22      Q     With respect to the information that the

23  subsidiaries maintain on the route distributors,

24  does Flowers Food have access to that information?

25      A     Upon request they will submit information

K. LAUDER

1    to corporate if we request it.  But they maintain

2    all of their own paperwork, backup copies of

3    Distributor Statements, invoices, things like that

4    they maintain at the plant level, at the subsidiary

5    level.

6         Q     And that would be the same for the detail

7    orders and the invoices that you described?

8         A     Yes.  I mean, we have access through SAP

9    because it is an integrated system, but the detail

10   is maintained by the plants.

11        Q     And with, again, there is two other data

12   invoice detail systems, am I correct or am I

13   mistaken?

14        A     The sales data warehouse is where we

15   maintain detail of deliveries to specific customers

16   by route, by region, by plant.  And basically it's a

17   data warehouse to run various reports for reporting

18   sales to customers, or sales by distributor, that

19   type of -- the plants have access to the data

20   warehouse for their own information, for the, with

21   regard, related to their own plants.  As well as we

22   have a business analysis team that can run

23   consolidated reports using that information.

24        Q     And so, just so I'm clear, that data, the

25   sales data warehouse, is that data that is in the

Page 17

```
 1   possession of Flowers Foods?
 2       A    It's on, it resides on a server that's
 3   located at Flowers Foods.
 4       Q    So individuals such as yourself would have
 5   access to that data?
 6       A    Yes.
 7       Q    Okay.  And then, just so I'm clear, again,
 8   individuals at the particular bakeries would have
 9   access to their bakery's specific information as
10   well?
11       A    Yes.
12       Q    And that is separate from the Pay-By-Scan
13   information?
14       A    That's right.
15       Q    And how is the Pay-By-Scan information
16   maintained?
17       A    The server that we use for Pay-By-Scan is
18   also housed at corporate.  Various reports are
19   generated on a weekly basis that contain the data by
20   route, by customer, by plant.  And that information
21   is, the plants can access that information for their
22   individual plants as well as running consolidated
23   reports for customers at the division level.
24       Q    By, for clarity, you say running reports
25   for customers, who are you referring to?
```

K. LAUDER

Page 18

1        A      Our Pay-By-Scan customers, there is

2    probably 10 or 12.

3        Q      So an example of a Pay-By-Scan customer

4    would be like a Wal-Mart?

5        A      Yes.   Wal-Mart, Winn-Dixie, and we have

6    several other, Food Lion, Target.

7        Q      To the extent they would ask for a report

8    you would, you could run it from the data that is

9    maintained at the sales data warehouse?

10       A      Yes.

11       Q      And is it also maintained in the

12   Pay-By-Scan database?

13       A      That's right.

14       Q      Can you give me in your own words what

15   your understanding of Pay-By-Scan accounts are?

16   What is your understanding of what Pay-By-Scan is?

17       A      The Pay-By-Scan process is where the

18   customer does not pay for a product that is

19   delivered to their store until it is scanned through

20   the register.   They don't accept the product as

21   delivered to their store until it actually scans.

22       Q      And then with respect to the data

23   pertaining to a Pay-By-Scan store, do you have an

24   understanding of the process of where that data goes

25   with respect to those sales, how it would end up in

Page 19

1    a consolidated financial statement?

2        A    It's accumulated at subsidiary level, and

3    then those totals are rolled up at a summary level

4    at Bakery Division, because that's the division that

5    has Pay-By-Scan.

6        Q    So is it fair to say that the information

7    with respect to a particular Pay-By-Scan customer

8    would be, would be, would go to the bakery and then

9    from the bakery would go to Flowers Foods?

10       A    Yes.  It's on, it resides on a server, so

11   once it's in the system, it's in both places.  But

12   it's produced from the hand-held invoices that the

13   individual distributors produce in their hand-helds.

14       Q    Do you have an understanding what the

15   process is for the individual distributor to provide

16   this information to the bakery?

17       A    Yes, it's communicated through their

18   hand-held.  For a customer that is a Pay-By-Scan

19   customer there is a flag in the system that says

20   that this customer is a Pay-By-Scan customer.  So

21   the invoice is flagged when it comes in.

22            The distributor receives credit on

23   his weekly statement for that, those deliveries that

24   are generated off that invoice.  Even though

25   technically Flowers can't, Flowers can't accept that

K. LAUDER

Page 20

1    invoice as, to be billed to the Pay-By-Scan customer

2    because the customer hasn't accepted it because it

3    hasn't scanned through the register, because they

4    don't accept it until then, until that point.

5              But we give the distributor temporary

6    credit until that scanned item comes in, so he gets

7    credit in the week he makes the delivery as opposed

8    to the following week when the scanned data comes in

9    from the customer.

10       Q    The scanned data reflecting the purchases

11   from those Pay-By-Scan accounts?

12       A    That's right.

13       Q    Is there a physical process where the

14   distributor uploads or downloads his information on

15   his hand-held to the bakery, or --

16       A    There is an end-of-day procedure where all

17   the information that the distributor captures in his

18   hand-held, that is then transmitted up to the

19   individual bakery that he works out of.  That

20   information then is accumulated and totaled and goes

21   into SAP and is processed on consolidated, or sent

22   to the sales data warehouse or Pay-By-Scan.

23       Q    Is that, is it your understanding that it

24   is accumulated on a periodic basis, like a weekly

25   bases, monthly?

1        A    No, it goes in daily.

2        Q    All right.  And then that gets rolled up

3    into a, I think it's rolled up, I'm trying to use a

4    technical term, that data then gets entered into

5    the, either the Pay-By-Scan or the sales data

6    warehouse?

7        A    It's not an either/or process.

8    Pay-By-Scan's only in Pay-By-Scan.  That information

9    is only there.  The information that is in

10   Pay-By-Scan is also in the sales data warehouse,

11   because the information that is in sales data

12   warehouse is all the accumulated invoice information

13   that comes in through the hand-held, into SAP, and

14   from SAP into SDW.  So are the invoices that are

15   generated.

16       Q    So whether or not it's Pay-By-Scan --

17       A    It's in SDW.

18       Q    It's in SDW.  Easier to say what you are

19   saying rather than what I'm saying.

20            But also, so the converse there is,

21   there is a subset of data from the sales data, or

22   SDW that is in Pay-By-Scan?

23       A    Yes.

24       Q    Okay.  Is there anything that is in

25   Pay-By-Scan that is not in the SDW?

K. LAUDER

Page 22

```
 1        A     The, we run calculations for price in
 2   variances or shrink based on the inventory that's
 3   loaded into the hand-held at the end of the week.
 4   When the distributor takes his physical inventory of
 5   the product, then the store at the end of the week,
 6   that inventory value goes in, or quantity and value
 7   goes into the Pay-By-Scan system.  That doesn't go
 8   into SDW.
 9        Q     Is there anything else that would go in
10   the Pay-By-Scan and not the SDW?
11        A     Since it's just the information of the
12   detail of what's on those delivery invoices.  The
13   scan data that comes in from the customer is matched
14   in the Pay-By-Scan system.
15        Q     Okay.  Let me, so, in addition to whatever
16   data the distributor may send via his hand-held,
17   the, for Pay-By-Scan, the customer likewise would
18   send data, obviously, on those products that have
19   been scanned?
20        A     That's right.
21        Q     And that would go to -- where would that
22   go?
23        A     That comes in an electronic file that has
24   been loaded into the Pay-By-Scan system.  It goes
25   down to the detail, the detail item by store, which
```

 1    is assigned to a particular route, or a distributor

 2    that is assigned to a particular bakery.

 3         Q    And so does that, do the customers in the

 4    Pay-By-Scan, do they send their data to Flowers

 5    Foods, or do they send them to the bakery?

 6         A    They send it to Flowers Bakeries Group.

 7         Q    Okay.

 8         A    Because it's, you know, he's sending all

 9    the information to one place.

10         Q    Okay.  Then Flowers Bakery Group, are they

11    responsible for putting it into the Pay-By-Scan

12    database?

13         A    Yes.

14         Q    And with respect to the sales, SDW, you

15    said that the data can be, the data can be provided

16    by route, by region, or by plant.  Can you explain

17    to me what you meant by that?

18         A    Well, you could pull information in a lot

19    of areas and formats.  If you want to just look at

20    the deliveries made by one individual distributor,

21    you can pull his information that shows all the

22    individual customers that he serves, the detail of

23    all the products that got delivered, even the

24    product that was picked up as stale product, you

25    know, what had special pricing and allowances on it.

K. LAUDER

Page 24

1              All that data is captured at invoice

2     level, at product level on the invoice.  So all of

3     that information can be accumulated, and you can

4     view it either by route level, it shows all the

5     detail by his individual customers, or you can pull

6     all the information from all the distributors that

7     serve a particular customer in store, you know,

8     format, or you can look at that information by a

9     particular branch or region, in a particular area if

10    you're trying to just gather relevant information on

11    some, you know, you are trying to make an analysis

12    of some type and you need that information.

13         Q    So information pertaining to the routes

14    serviced by an independent distributor would be,

15    would be maintained in the SDW, in other words?

16         A    Yes.

17         Q    Okay.  And so, as I understand it, the

18    data that is provided by the route distributor would

19    get put from the hand-held, would end up coming

20    into, and that data ends up going into the SDW?

21         A    Right.  Additionally it goes to SAP.  It

22    goes to SAP, and it goes through a server at the

23    plant location where it's consolidated.  Then it is

24    loaded into SAP.  And SAP sends the information to

25    SDW.

K. LAUDER

Page 25

1               We put the information in SDW because

2   it's a tool we can use to analyze with that you

3   can't, I mean, you can do it with SAP, but it's,

4   there is so much data there that it's hard to get

5   the information you want to see.  So it's an easier

6   tool to use for sales analysis.  It's a tool.

7        Q    Okay.  Let me, so I'm clear, SDW also

8   contains data concerning national accounts as well

9   as local accounts?

10       A    Right.  You could select, I mean, you

11  could choose to run the report based on the national

12  account if you wanted to, rather than the individual

13  bakery or route level.

14       Q    So the distributor takes the information

15  and puts it into the hand-held.  Can you take me

16  through the steps of how that data then gets

17  reconciled so that the distributor then gets a

18  remittance saying how much he either is to be paid,

19  or how much, or how much income he's going to earn,

20  or whether he owes money with respect to the

21  particular, his particular route?

22       A    Okay.  In the settlement process, and it's

23  shown on the Distributor Statement, it starts off

24  with his prior balance forward.  If he didn't settle

25  to zero the prior week, he'll have a balance forward

K. LAUDER

Page 26

1    on his statement.  Then he will be charged with all

2    of the products that he accepted in his hand-held as

3    received on his truck on a daily basis as

4    accumulated on a weekly total.

5              He's then issued various credits if

6    he had product that he transferred from his route to

7    another route, or credits for load shortages.  When

8    he checked his load, if he saw that he didn't get

9    everything that he was charged with, he can take a

10   credit.  That would show up.  If he generated

11   invoices that were different in price from what he

12   was charged, what he delivered to the customer, that

13   would create an allowance.  He would get credit for

14   that.

15             He picks up product out of the retail

16   store and takes it back, he would get stale credit

17   for that product.  And that really is the gross

18   amount that he starts with, less those various

19   deductions, and all of those are factored in with

20   his discount that he earns, either in what he takes

21   out or what he brings back.  The net of those, and

22   he gets his net discount on his statement then.

23             Then he also receives credit on the

24   statement, or against his load that he took out for

25   authorized charge accounts that he turns in invoices

K. LAUDER

Page 27

1    for on customers that are non-Pay-By-Scan customers.

2    The company has approved authorized charges that

3    they will accept that invoice as payment on his

4    account.  Because if we then, in turn, bill the end

5    customer, and then collect the money from them on

6    behalf of the distributor, it makes it -- it's a

7    much simpler process for the customer, because they

8    don't want to write separate checks to every

9    distributor that comes into their stores.

10                But we give him credit then for those

11   invoices as long as he turns his invoices in.  And

12   then we give him, on the statement then he receives

13   credit for the scanned data that the company

14   receives from the Pay-By-Scan customers from the

15   previous week.  Because it's always a week in

16   arrears by the time it's received from the customer

17   process and goes in on his weekly statement.

18                He also receives credit for any kind

19   of difference in the total amount of the invoices

20   generated, or the scan data that comes in.  His

21   physical inventory in the store, he receives a

22   credit for those, what at that point in time is

23   truly shrink, its missing units.  He gets full

24   credit for that.

25                And then he has -- that is really the

K. LAUDER

Page 33

1    adjustments that were made on what he was charged

2    with, whether it was a credit that he received or

3    some shortage of some product on his load, or, in

4    this instance it looks like he had some damaged

5    product that he got credit for.

6         Q     And then it's looks like that portion of

7    this document goes on for two pages.  And then there

8    is another heading on Bates ending 5834.  It says,

9    "FBC of Opelika, Distributor Transfer Adjustments,"

10   do you see that?

11        A     That's right.  That would be products that

12   either he transferred out to another distributor, or

13   he transferred in from another distributor, or he

14   could transfer it in from the bakery itself.  If

15   it's an additional product that he needed it, he

16   didn't order or didn't get, he could transfer the

17   product in to get the information in his hand-held

18   to be available for sale.

19        Q     Okay.  That looks like that goes on for

20   about two pages.  And then the next heading with

21   Bates ending 5836, "FBC of Opelika, Price Allowance

22   and override."  Do you see that?

23        A     That's right.

24        Q     What is that?

25        A     That shows the difference between what,

1    the price that he put through his hand-held, the

2    difference between the price that he was charged

3    with, the gross price that he was charged with and

4    the price that he entered on the invoice when he

5    generated the invoice.

6              So if he was charged a dollar for a

7    particular product, and then there was a feature

8    going on in the grocery store where he could only

9    charge the customer 90 cents, then he gets his ten

10    cents credit back.  Because his invoice is only

11    going to have 90 cents on it, but in order to make

12    him whole for the whole dollar, then he gets credit

13    for the ten cents.

14        Q    Is that an override or an allowance?

15        A    That would be an allowance.  That would

16    be -- an override would be where he goes into his

17    hand-held, and there is a price in the hand-held

18    that is established for a particular customer, and

19    he overrides that price.  He goes in and puts in a

20    price that is different than that price.

21        Q    Okay.  This part of this document, looks

22    like it goes on for a few more pages, then there is

23    another heading beginning on Bates ending 5840, it's

24    the, "Distributor Stale Summary."  Do you see that?

25        A    Yes.

Page 35

1       Q     What is that?

2       A     That is the summary, the detail summary of

3    the total stale, stale product that he picked up out

4    of the grocery stores or restaurants, wherever he

5    picked the product up that was unsalable.  He

6    generally, he gets a credit back for that product as

7    well, because he's issued a credit to the customer,

8    this way he gets his credit back so he remains

9    whole.

10      Q     Looks like the last page ending in Bates

11   5843, "FBC Opelika, Route Discount Totals."  Do you

12   see that?

13      A     That's the, that just summarizes all the

14   pieces of the gross less the distributor discount to

15   the net amount that he's charged with on the face of

16   this statement.  This is just, it starts off with

17   the gross amount less his discount to the net amount

18   that he's charged on his statement.

19      Q     And just so I'm clear, the document we've

20   been looking at that we marked as Exhibit 10, all of

21   these various sub, I'd call them sub-reports, but I

22   don't know what, the terminology you would use,

23   those are all provided on a weekly basis to the

24   distributors?

25      A     Yes.

Page 38

1    closest to December 31st.

2        Q    Okay.  What does company code refer to?

3        A    Company code would refer to the identifier

4    of the individual subsidiary as part of Flowers

5    Foods.

6        Q    It would be the bakery that that

7    distributor picks up his bread?

8        A    Right.  All Flowers Bakeries plants start

9    with 01.  All Flowers Specialty plants start with

10   03.  And then the second to, the last two numbers

11   are the plant number.

12       Q    So 05 is Opelika?

13       A    Right.

14       Q    You can put that document aside.

15            VIDEOGRAPHER:  The time is approximately

16       2:17 p.m.  We're off the record.

17                 (WHEREUPON, a brief recess was

18                 taken)

19            VIDEOGRAPHER:  Time is approximately 2:19

20       p.m.  We're back on the record.

21                 (Marked for identification

22                 purposes, Plaintiff's Exhibit

23                 No. 11 )

24       Q    (By Mr. Guglielmo) Ms. Lauder, have you

25   had a chance to take a look at this document?

K. LAUDER

Page 39

1    A    Yes.

2    Q    Have you seen this document before?

3    A    Yes.

4    Q    Do you know what it is?

5    A    It's a payment advisory report. It's a

6    detail of electronic payment from, this particular

7    instance from Wal-Mart for a select portion of their

8    payment. It details the invoices paid by and sums

9    it up by location on which plan it's for.

10    Q    Is this what you were referring to when

11    you were talking about the certain types of data

12    from the SDW can be organized by customer?

13    A    This actually is information provided by

14    the customer, not from the SDW system.

15    Q    Okay.

16    A    This is just basically Wal-Mart submitting

17    us remittance advice on the payment that they are

18    going to send us.

19    Q    Okay. So I'm clear, that Wal-Mart would

20    transmit this information to, Wal-Mart would submit

21    this information regarding its, regarding Flowers

22    product to Flowers Foods?

23    A    That's right.

24    Q    And then this information would then be --

25    what would be done with this information at Flowers?

K. LAUDER

Page 40

1      A      Since the accounts receivable trade

2    customer balances are maintained on the

3    individually, individual subsidiaries' ledgers, the

4    payment had to be broken down to which bakery, which

5    invoices, which store, which bakery they belong to

6    before they can be applied to the balance sheet, to

7    the customer's account.  Because we don't

8    consolidate everything into one super account.  We,

9    it remains the responsibility of the individual

10   subs, and then that is how we have to apply payment.

11     Q      So the information comes in to Flowers

12   Foods and then Flowers Foods then transmits this

13   information to the various subsidiary bakeries?

14     A      The payment application process itself is

15   housed in our shared services center, which is in

16   Thomasville.  We, in our, the accounting shared

17   services center we maintain the payment application

18   process, the billing, the payment application

19   process for the bakeries to the customers, receive

20   the payments back, and apply them to the accounts.

21   And also we receive the invoices then from the

22   plants and pay the accounts payable side in a

23   centralized function.

24               Then we charge the bakeries for that

25   service.  They don't have to maintain administrative

K. LAUDER

Page 41

1    personnel.  So we charge them on a fee basis based

2    on the number of invoices processed for them, the

3    amount of cash applied, those type things.  It's

4    like a fee-based service.

5         Q    Okay.  So the reconciliation process, is

6    that also done at Flowers Foods with respect to the,

7    with respect to this information that comes in from

8    Wal-Mart?

9              MR. HISHTA:  I'm not sure we're correct on

10        our terminology.

11             MR. GUGLIELMO:  I'm sure I'm not.

12             MR. HISHTA:  I mean, just as far as the

13        entity, which entity is shared services with?

14             THE WITNESS:  Flowers Foods.

15             MR. HISHTA:  Okay.

16        Q    (By Mr. Guglielmo) And so my question to

17   you is with respect to that, the process that you've

18   just described, is there sort of, does the

19   reconciliation between the information you received

20   from the distributors and the information you then

21   receive from the, an account such as Wal-Mart, does

22   it get reconciled at Flowers Foods or does it get

23   reconciled at the bakeries?

24        A    Well, for Wal-Mart, because it's a

25   Pay-By-Scan account it's reconciled at the bakery

K. LAUDER

Page 42

1    based on the Pay-By-Scan data.  Because the

2    information transmitted by, from Wal-Mart for the

3    scan data goes into Pay-By-Scan.  And that's what

4    the reconciliation process is on the Distributor's

5    Statement.

6              As far as applying the, applying the

7    payment to the account, it's, Wal-Mart sends you a

8    file that says, "this is what is scanned, this is

9    what I'm going to pay you for."  So then when the

10   payment comes in, it matches.  It's the same thing.

11   It's two different files, but it matches because

12   they say, "this is what I scanned, and I'm paying

13   you, this here is your check."  So that piece of it

14   is separate from the Pay-By-Scan piece of it.

15       Q    Okay.  So with respect to the Pay-By-Scan,

16   that sort of, sort of a, sort of, the process is

17   sort of a one-step process, as I would describe, as

18   I would understanding it?

19       A    As far as the payment into accounts

20   receivable.

21       Q    Okay.  And then the non-Pay-By-Scan

22   accounts, how are those handled?

23       A    Typically on national accounts the

24   customer chooses to write one check.  It comes to

25   the shared services center, the checks, or it goes

K. LAUDER

Page 43

1    to a bank account.  It doesn't actually physically

2    come to shared services center, but then the

3    payment, we receive remittance advice where the

4    payment can be broken out to the individual subs and

5    applied on specific invoices on specific days and

6    paid out into their accounts receivable.

7        Q    And then the reconciliation process

8    between what is paid by the national account and

9    what the distributor entered as sort of the sales,

10   where does that occur?

11       A    Once the payment's applied, if there are

12   open amounts, open balances, invoice differences,

13   then that is resolved through the plant.  The

14   individual plant is responsible for reviewing the

15   account's balance to ensure if there is missed

16   invoices, skipped invoices, that type of thing.

17              Then they have to be partially

18   responsible for that collection effort.  Number one,

19   to ensure that the information, that they have all

20   the invoices.  But then we have a, it's a

21   coordinated effort between the plant and then the

22   shared services person that is assigned to make the

23   payment application for their bakery.

24              MR. HISHTA:  For the record I think she

25        answered your question with respect to the

K. LAUDER

Page 44

1    payment of the outstanding accounts receivable

2    with respect to the subsidiaries.  I don't

3    think she was answering any portion of that

4    question regarding any reconciliation with a

5    particular distributor.  But the way --

6        MR. GUGLIELMO:  No, I was trying to

7    understand what the, where, if any, where the

8    reconciliation process takes place.  I wasn't

9    looking at it at the distributor level, I was

10   looking at it sort of at a macro level.

11       MR. HISHTA:  You were looking at the

12   reconciliation process of the accounts

13   receivable that are outstanding at the

14   sub-level and how that is done.

15       MR. GUGLIELMO:  Yes.  Ms. Lauder, I'm

16   going to mark as Flowers Foods 12 a document

17   bearing Bates No. FF000753 through 758.

18                    (Marked for identification

19                    purposes, Plaintiff's Exhibit

20                    No. 12 )

21   Q    (By Mr. Guglielmo) Ms. Lauder, have you

22   had a chance to take a look at this document marked

23   Flowers Exhibit 12?

24   A    Yes.

25   Q    Do you know what this document is?

K. LAUDER

Page 45

1      A    This is the Protocol Agreement between

2    Wal-Mart and Flowers Bakeries establishing what the

3    process is for Pay-By-Scan delivery in their stores.

4      Q    And can you in layman's terms explain to

5    me what this document intends to do?

6      A    It establishes when deliveries are

7    permissible, how they are to take place, who

8    maintains responsibility for the inventories, how

9    the inventories would be conducted, the transmission

10    of item price synchronization, the, how they're

11    going to, when Wal-Mart is going to transmit the

12    scan data to Flowers, the timing of those

13    transmissions, and the process to, the backup

14    process in case some scan data is lost for some

15    reason, and then the calculation on the product

16    shrink and their agreement to pay a portion of that

17    shrink.

18      Q    Do you know who enters into this agreement

19    with Wal-Mart?

20      A    Typically our Chief Information Officer,

21    Vyto Razminas negotiates or, goes through the

22    process, because it's such a technical process

23    between not only our system, but their system.  All

24    of the information has to match exactly to make it

25    work.  And it takes the technical knowledge that

K. LAUDER

1    they have to know that the information is going to

2    communicate back and forth, you know, sending

3    information back and forth.

4        Q    Just so I'm also clear, would this

5    document marked as Exhibit 12, would this apply to

6    all of the purchases by Wal-Mart, that all the

7    purchases by Wal-Mart, or is it a bakery-by-bakery

8    agreement?

9        A    It would cover all the Wal-Marts.  This

10    particular agreement was the initial agreement that

11    only specifies one store.  This was what was used at

12    the roll-out when we first contemplated doing

13    Pay-By-Scan at Wal-Mart's request.  So it only lists

14    one store.

15             But between 1999 and today all of

16    Wal-Mart stores, all their business goes by

17    Pay-By-Scan under the Wal-Mart banner, not Sam's.

18        Q    And just so I'm clear Mr. Razminas,

19    Razminas?

20        A    Razminas.

21        Q    What is his title?

22        A    Flowers Foods Chief Information, VP and

23    Chief Information Officer.

24        Q    And has he been responsible for the

25    negotiation of the Pay-By-Scan Agreement with

K. LAUDER

1   Wal-Mart throughout the time period 1999 to now?

2        A    For any change, or any change as far as

3   any data transmission, timing of those, what is in

4   the data, the file format, that type of information,

5   then he would be responsible for that.

6                   Just as new stores open up in the,

7   you know, Wal-Mart opens up new stores and we roll

8   those into the Pay-By-Scan program, that's

9   communicated through the plant.  The plant contacts

10  Chad Wooten, who is our Pay-By-Scan Manager to get

11  the maintenance set up in the system so it will

12  accept.  It.

13                  There is, it's like setting up a new

14  account type thing.  He doesn't, Vyto does not act

15  in all of that.  He just, he's there now to make

16  changes if there is anything different.

17       Q    And what is Mr. Wooten's title or

18  position?

19       A    Pay-By-Scan supervisor.

20       Q    Pay-By-Scan for Flowers Foods?

21       A    For Flowers Foods.

22       Q    Other than Mr. Razminas and Mr. Wooten,

23  are there other people involved or responsible for

24  the Wal-Mart Pay-By-Scan Agreement?

25       A    The agreement itself?

K. LAUDER

Page 48

1        Q     The negotiation of the, the terms of the

2    agreement, yes.

3        A     No.  The negotiation of the agreement

4    itself, the national accounts representative for

5    Wal-Mart is involved in the process, but this

6    agreement was negotiated in 1999.  It hasn't changed

7    other than some file format changes and things like

8    that.  So this agreement is still in place.

9              MR. HISHTA:  For the record the protocol

10             is in place, the sharing arrangement with

11             Wal-Mart is no longer in place.  Wal-Mart no

12             longer shares the shrink.

13       Q     (By Mr. Guglielmo) Okay.  Just for we're

14   clear for the record, the document marked as 12 is

15   still in effect, there is just certain portions of

16   it that may not be in effect?

17       A     That's right.

18             MR. GUGLIELMO:  Mark as Flowers Foods 13 a

19             document bearing Bates No. FF000650 through

20             665.

21                         (Marked for identification

22                         purposes, Plaintiff's Exhibit

23                         No. 13 )

24       Q     (By Mr. Guglielmo) Ms. Lauder, have you

25   had a chance to take a look at the document marked

K. LAUDER

Page 49

1   as Flowers Foods 13?

2       A    Yes.

3       Q    Do you know what this is?

4       A    Yes, this is the Scan Based Trading

5   Agreement between Winn-Dixie and Flowers bakeries.

6       Q    And can you describe for me generally

7   what, what this document intends to do?

8       A    Similar to the Wal-Mart, it describes the

9   delivery merchandising for the store's inventory,

10  information systems, transmits, file transmissions,

11  covering of lost data, a calculation of inventory

12  shrink, and payment terms.

13      Q    And who is responsible for negotiating

14  this agreement?

15      A    Vyto Razminas and the customer.  At this

16  time their Director of Grocery was Philip Payman.

17      Q    And is Mr. Wooten also involved with

18  respect to this Pay-By-Scan Agreement?

19      A    Yes.  Well, he was not involved in this,

20  the execution of this agreement, but he's involved

21  in the day-to-day maintenance on the account of

22  adding new stores, if they close a store, taking one

23  out of the system, that type of thing.

24      Q    And other than the Winn-Dixie Agreement

25  and the Wal-Mart Pay-By-Scan Agreement, are you

K. LAUDER

Page 50

1    aware of any other Pay-By-Scan Agreements between

2    Flowers and any other national customers that would

3    be serviced by route distributors?

4        A    Not for the Opelika and Thomasville

5    bakeries.  We do have other agreements.

6        Q    Okay.  But they wouldn't include any route

7    distributors that service Flowers Opelika or Flowers

8    Thomasville?

9        A    Yes.

10       Q    So I'm clear, there is not --

11       A    Well, no, just --

12           MR. HISHTA:  There are no plaintiffs in

13       this lawsuit that have a Pay-By-Scan account

14       other than Winn-Dixie or Wal-Mart.

15           MR. GUGLIELMO:  But there could be others

16       that provide services to Flowers Opelika or

17       Flowers Thomasville that have Pay-By-Scan.

18           MR. HISHTA:  Other distributors of Flowers

19       Opelika or Flowers Thomasville other than the

20       plaintiffs potentially have a different

21       Pay-By-Scan account, that's possible.  I don't

22       know that for sure.  I do know, I do know that

23       the plaintiff group, the only Pay-By-Scan

24       stores that we're dealing with are Wal-Mart and

25       Winn-Dixie.

K. LAUDER

Page 51

1          Q     (By Mr. Guglielmo) I just to make sure I'm

2     clear for the record.  For example, with respect to

3     the Publix national account, you are aware of a --

4          A     Publix doesn't do Pay-By-Scan.  Food Lion

5     would be a customer that Thomasville bakery has that

6     has a, has a Pay-By-Scan Agreement.  But none of

7     these particular distributors service the Food Lion

8     stores.

9          Q     Does Target have a Pay-By-Scan Agreement?

10         A     Yes.

11         Q     Are you aware of whether or not any of the

12    route distributor's plaintiffs utilize the

13    Pay-By-Scan with respect to Target?

14         A     None that I'm aware of.

15              MR. GUGLIELMO:  Go off the record.

16              VIDEOGRAPHER:  The time is approximately

17         2:40 p.m.  We're off -- this concludes Tape No.

18         1 and we're now off the record.

19                        (WHEREUPON, a brief recess was

20                         taken)

21              VIDEOGRAPHER:  The time is approximately

22         3:00 p.m.  This is the beginning of Tape No. 2.

23         We are back on the record.

24         Q     (By Mr. Guglielmo) Ms. Lauder, I have, I

25    want you to turn back to the exhibit that was

K. LAUDER

Page 52

1    previously marked as Flowers Foods 11, which is the

2    Flowers Foods payment advice report.

3         A    Okay.

4         Q    I just want to confirm this.  I think you

5    said this previously.  This document was created by

6    Wal-Mart and provided to Flowers Foods?

7         A    It's generated through electronic

8    transmission.  We physically print it out at Flowers

9    Foods, but the data comes in in report format.  We

10   print it out, sort it, and apply payment to the

11   individual sub's accounts receivable.

12        Q    Is this data from the Pay-By-Scan data?

13        A    It would be generated from Pay-By-Scan

14   data that goes through Wal-Mart's registers.

15        Q    Is that data, the Pay-By-Scan data that

16   goes through Wal-Mart's registers, is that data

17   jointly maintained by Flowers Foods and Wal-Mart in

18   the Pay-By-Scan database?

19        A    Wal-Mart has its own repository for scan

20   data.  Flowers has our own.  We don't share that

21   Pay-By-Scan repository.

22        Q    Okay.  Ms. Lauder, keeping with the

23   exhibit marked as 11, Flowers Food 11, is this the

24   format in which the data is transmitted to Flowers

25   Foods, or does Flowers Foods have to create this

K. LAUDER

Page 53

1    report based on data that is submitted to it?  In

2    other words, is this sort of the way it appears when

3    it comes, when the electronic transmission comes to

4    Flowers?

5        A    It's sorted, the data comes in with a

6    Julian date, store number code, and sorted by store

7    number and date, which is assigned to a particular

8    bakery.  The number is assigned to a particular

9    bakery.  It's sorted and subtotaled at Flowers, I

10   guess.  I'm not sure what Wal-Mart does with it on

11   their side.  We subtotal it by bakery, because

12   that's how we bill and how we get paid is by

13   subsidiary.

14       Q    So they provide you the data, and then

15   you, Flowers Foods creates the report that would

16   appear as Flowers Foods 11?

17       A    Right.  I'm not sure what Wal-Mart's

18   report looks like.

19       Q    So the breakout on the first page, plant

20   summary in all the plants, that would be something

21   that Flowers Foods does once they receive the data

22   from Wal-Mart?

23       A    Right.

24            MR. GUGLIELMO:  I was just going to put on

25            the record, with respect to the discussion that

K. LAUDER

Page 54

1     we had previously with regard to the

2     Pay-By-Scan accounts and the status of the

3     Pay-By-Scan accounts, the discovery being with

4     respect to the Pay-By-Scan accounts that named

5     plaintiffs have, I just want to reserve

6     plaintiff's rights to obtain further discovery

7     as to Pay-By-Scan account information to the

8     extent court certifies, or additionally

9     certifies the Class.  Obviously then I think we

10    would probably come back and ask for additional

11    information or testimony relating to the other

12    Pay-By-Scan accounts that are applicable to the

13    Class members.

14         MR. HISHTA:  Assuming any such decision

15    would encompass any additional accounts that

16    might be Pay-By-Scan accounts, yes, understood.

17         MR. GUGLIELMO:  Okay.  With that reserve,

18    any time I have left for rebuttal, I think

19    we're done.

20         MR. HISHTA:  I just have a few questions.

21    EXAMINATION

22    BY-MR.HISHTA:

23    Q    In relation to Flowers Foods No. 10, Ms.

24    Lauder, if you could turn your attention to the page

25    that has the Bates No. FBO005836.

K. LAUDER

Page 55

1      A     Okay.

2      Q     I just want to make sure we have clear on

3  the record how, what information is contained on

4  this page and the price-allowance methodology that

5  is reflected on here.  If you could turn your

6  attention to the first line entry on this page,

7  which is, "Sunbeam sandwich thin, 16 ounces."  Do

8  you see that entry?

9      A     Yes, I do.

10      Q     To the left of that entry is a quantity

11  which is --

12      A     Twenty-seven.

13      Q     And what does that reflect?

14      A     That is the number of units that were

15  delivered at a different price than the standard

16  zone price in that particular week.

17      Q     So there were --

18      A     Forty-seven units delivered.  The normal

19  zone price is the normal suggested wholesale price.

20  The zone price the distributor is charged.  The

21  normal calculation of the 47 units times $1.64 would

22  be $77.08.  The amount that went through the

23  hand-held was $66.27, that created an allowance of

24  $10.81.

25      Q     And is the allowance of $10.81, is that an

K. LAUDER

Page 56

1    allowance that was given with respect to these 47

2    units to wherever this product was sold?

3         A    Yes.  That was an allowance that was

4    generated for the difference in the price of what

5    the distributor was charged and what went through

6    the invoice that he was, he would have received

7    credit for.

8         Q    What is the next column, "Distributor

9    Discount"?

10        A    The next column would be the distributor

11   discount, would is the distributor's share of the

12   reduced price.  The, a reduction in his discount, so

13   that he receives net credit at the net price

14   delivered to the store.

15        Q    And is this pricing methodology one that

16   is generally used with, you know, Flowers Opelika

17   and Flowers Thomasville?

18        A    Yes.

19             MR. GUGLIELMO:  I have just one follow-up

20        question on this page.

21        FURTHER EXAMINATION

22        BY-MR.GUGLIELMO:

23        Q    Looking at that line entry that you just

24   referred to, the title, "Distributor Discount."  Do

25   you see that?

1    A    Right.

2    Q    The entry says, "249," I guess?

3    A    That's right.

4    Q    Okay.  Do you have an understanding of how

5    that number is calculated?

6    A    In this distributor class, white bread,

7    brand white bread distributor class, the distributor

8    receives 23 percent discount.  So that would be

9    23 percent of the $10.81 allowance.

10    Q    So take me through the steps.  So the

11    allowance override of $10.81 is an amount that,

12    allowance override is the amount of difference

13    between what normally have been charged if there was

14    no discount and what the actual charge, or the

15    actual amount paid by the particular customer for

16    that?

17    A    Right.

18    Q    So of that $10.81, 23 percent,

19    approximately, is subtracted out of that, which is

20    the distributor's discount on that particular

21    product?

22    A    That's right.

23    Q    Okay.  And so the net allowance with

24    respect to that particular entry, the 47 pieces of,

25    47 loaves of Sunbeam was $8.32?

K. LAUDER

Page 58

```
 1       A    That's right.

 2       Q    Does that make sense to you?  So the

 3  classes you are referring to are the different

 4  classes by types of bread product, correct?

 5       A    That's right.

 6       Q    It's not unique to the particular

 7  distributor?

 8       A    There are standard discounts for each

 9  class.  The bakery, depending on the particular

10  distributor route, can change that discount for that

11  particular -- that is the standard unless there is

12  an overriding reason that they should need

13  additional.  Or if they are trying to develop a

14  market, they might pay additional discount to get

15  the distributor more inclined to want to deliver the

16  product.  Those kind of --

17            (WHEREUPON, a brief recess was taken)

18       Q    (By Mr. Guglielmo) Ms. Lauder, just so I'm

19  clear, the distributor discount would reflect either

20  the, would reflect the discount that has been agreed

21  to by the distributor and the bakery; is that

22  correct?

23            MR. HISHTA:  Objection.  I don't think

24        that's her testimony.

25       Q    (By Mr. Guglielmo) Okay.  The distributor
```

1    discount amount, I think you said is 23, 23 percent,

2    normally for this type of product?

3          A    Yes, that's the standard discount.

4          Q    Okay.  So --

5               MR. HISHTA:  For this particular class of

6          products.

7               MR. GUGLIELMO:  Correct.  I'm just

8          pointing to this particular line.  I'm not

9          going any further than that.

10         Q    (By Mr. Guglielmo) With respect to this

11   entry, you indicated that that would be the standard

12   for white bread, correct?

13         A    Yes.  Branded white bread.

14         Q    And so the distributor discount would

15   either be the standard for the particular product at

16   issue, or in certain instances a different discount

17   amount depending on what the bakery had determined,

18   correct?

19         A    Right.

20              MR. GUGLIELMO:  I have nothing further.

21              MR. HISHTA:  Just one or two follow-up

22         questions.

23   EXAMINATION

24   BY-MR.HISHTA:

25         Q    Is the $2.49 that is reflected on this

Page 60

1    first line this particular distributor's portion of

2    the $10.81 price allowance?

3         A    Yes.

4         Q    And with the net cost entry of $8.32, is

5    that an additional reduction in the purchase price

6    of 47 units of Sunbeam sandwich bread?

7         A    The net cost is the net credit that the

8    distributor will receive on his statement for the

9    allowances.

10        Q    So in this particular situation the

11   distributor is receiving an additional credit of

12   $8.32?

13        A    That's right.

14             MR. HISHTA:  I have nothing further.

15             MR. GUGLIELMO:  We're done.

16             VIDEOGRAPHER:  This concludes the

17   videotape deposition of Ms. Karyl Lauder.  The

18   date is January 30, 2008.  Time is

19   approximately 3:14 p.m.  We're off the record.

20   (Whereupon, deposition concluded at 3:14 p.m.)

21

22

23

24

25

K. LAUDER

66

DEPOSITION ERRATA SHEET

RE:          Brown & Gallo, L.L.C.

File No.   24079

Case Caption: CHARLES MORROW, et al,

vs. FLOWERS FOODS, INC., et al.

Deponent:   Karly Halstead Lauder

Deposition Date:  ***

To the Reporter:

I have read the entire transcript of my Deposition taken

in the captioned matter or the same has been read to me.

I request that the following changes be entered upon the

record for the reasons indicated.  I have signed my name to

the Errata Sheet and the appropriate Certificate and

authorize you to attach both to the original transcript.


Page No. 10  Line No. 14  Change to: Vandy


Reason for change: Correct typographical error.

Page No. 10  Line No. 15  Change to: Vandy


Reason for change: Correct typographical error.

Page No. 13  Line No. 3  Change to: Foods for the period from

approximately January of

Reason for change: Recollection of correct date.

VERITEXT/NEW YORK REPORTING COMPANY

67

1    Deposition of Karly Halstead Lauder

2

3    Page No. 13    Line No. 16    Change to: From the period of, from

4    the beginning of October 1997

5    Reason for change: Recollection of correct date.

6    Page No. 13    Line No. 17    Change to: until January 2002 I was

7    Flowers Bakeries

8    Reason for change: Recollection of correct date.

9    Page No. 14    Line No. 13-16 Change to: Bakeries Group Assistant

10   Controller and then Controller in 1997, and held this position until
     December 2002.  And
11   Reason for change: Correction of position held and dates.

12   Page No. 15    Line No. 14    Change to: They maintain information

13   in SAP/our accounting

14   Reason for change: Clarification of testimony.

15   Page No. 15    Line No. 15    Change to: system for Flowers Foods and

16   its subsidiaries. The detail of the orders and the invoices

17   Reason for change: Clarification of testimony.

18   Page No. 20    Line No. 5    Change to: But the bakery gives the

19   distributor temporary

20   Reason for change: Clarification of testimony.

21

22   SIGNATURE: _____    DATE: 3/1/2008

23            Karly Halstead Lauder

24

25

SUPPLEMENTAL ERRATA SHEET

68

1    Deposition of Karly Halstead Lauder

2

3    Page No. 22  Line No. 1  Change to: The bakeries run

     calculations for price in

4    _____

5    Reason for change: Clarification of testimony.

6    Page No. 29  Line No. 3  Change to: or he owes the company.

     And the bakeries settle on a weekly

7    _____

8    Reason for change: Clarification of testimony.

9    Page No. 39  Line No. 9  Change to: it up by location on

     which plant it's for.

10   _____

11   Reason for change: Correct typographical error.

12   Page No. 48  Line No. 3  Change to: Yes.  The negotiation of

     the agreement

13   _____

14   Reason for change: Correction of testimony as I noted

     national accounts representative involved.

15   Page No. 49  Line No. 5  Change to: Agreement between Winn-

     Dixie and Flowers Bakeries

16   _____

17   Reason for change: Correct typographical error.

18   Page No. 49  Line No. 16  Change to: time their Director of

     Grocery was Phillip Payment.

19   _____

20   Reason for change: Correct name.

21   Page No. 51  Line No. 14  Change to: Dwayne Cleveland

SUPPLEMENTAL ERRATA SHEET

69

1  Reason for change: <u>Discovered following deposition that Mr.</u>

   <u>Cleveland has a Target account with Pay-By-Scan</u>

2  Page No. <u>55</u> Line No. <u>12</u> Change to:  <u>Forty-seven.</u>

3  Reason for change:  <u>Correct typographical error.</u>

4  Page No. <u>64</u> Line No. <u>3</u> Change to:  <u>Deposition of Karyl</u>

   <u>Halstead Lauder</u>

5  Reason for change:  <u>Correct typographical error.</u>

6  Page No. <u>65</u> Line No. <u>6</u>  Change to: <u>Karyl Halstead Lauder,</u>

   <u>who, being duly sworn, states that the</u>

7  Reason for change:  <u>Correct typographical error.</u>

8  Page No. <u>65</u> Line No. <u>12</u> Change to: Karyl Halstead Lauder

9

10  SIGNATURE: _____  DATE: <u>3/7/2008</u>

11            Karyl Halstead Lauder

EXHIBIT F

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
04/11/2008
CT Log Number 513303241

TO: David Linder, Attorney
Fortson, Bentley & Griffin
2500 Daniell's Bridge Road, Building 200, Suite 3A
Athens, GA 30606

RE: **Process Served in Alabama**

FOR: Zaxby's Holdings, L.L.C. (Domestic State: GA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Charles Morrow, et al., Pltfs. vs. Flowers Food, Inc., et al., Dfts. // To: Zaxby's Holdings, LLC<br>*Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Subpoena, Proof of Service Form, Attachment |
| **COURT/AGENCY:** | US District Court for the Middle District, AL<br>Case # 3:07 CV 617 |
| **NATURE OF ACTION:** | Subpoena - Business records - Pertaining to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC and Flowers Baking Company of Thomasville, LLC |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Montgomery, AL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/11/2008 at 11:15 |
| **APPEARANCE OR ANSWER DUE:** | by 4/30/08 at 9:00 a.m. |
| **ATTORNEY(S) / SENDER(S):** | Greg L. Davis<br>The Law Offices of Greg L. Davis<br>6987 Halcyone Park Drive<br>Montgomery, AL 36117<br>334-832-9080 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 798418009432 |
| **SIGNED:** | The Corporation Company |
| **ADDRESS:** | 2000 Interstate Park Drive<br>Suite 204<br>Montgomery, AL 36109 |
| **TELEPHONE:** | 334-387-7680 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

MIDDLE          DISTRICT OF          ALABAMA

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:   Custodian of Records
      Zaxby's Holdings, LLC c/o The Corporation Company
      2000 Interstate Park Drive, Suite 204
      Montgomery, Alabama 36109

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE   THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis<br>6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME<br>4/30/2008 9:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117   (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
|---|---|---|
| | | HAND DELIVERY |

| SERVED BY (PRINT NAME) | | TITLE |
|---|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may be commanded to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# ATTACHMENT

Please produce:

1.    A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia. Documents are requested for the past four (4) years.

2.    A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

04/16/2008  08:05    3142596320                                    PAGE  01/03

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

MIDDLE                    DISTRICT OF                    ALABAMA

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 3:07-CV-617-MHT

TO:  Custodian of Records
Hardee's Food Systems, Inc. c/o CSC Lawyers Inc. Service
150 South Perry Street
Montgomery, Alabama 36104

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHMENT

| PLACE    THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis<br>6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME  4/30/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE  4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

# ATTACHMENT

Please produce:

1.    A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.    A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

AO88  (Rev. 12/06) Subpoena in a Civil Case.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
04/11/2008
CT Log Number 513303217

TO:    Bureon Ledbetter, General Counsel
       CHICK-FIL-A, INC.
       5200 Buffington Rd
       Atlanta, GA 30349

**RECEIVED**

APR 1 5 2008

Chick-Fil-A Inc.

RE:    **Process Served in Alabama**

FOR:   CHICK-FIL-A, INC. (Domestic State: GA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Charles Morrow, et al., Pltfs. vs. Flowers Food, Inc., et al., Dfts. // To: Chick-Fil-A, Inc. |
| **DOCUMENT(S) SERVED:** | Subpoena, Proof of Service Form, Attachment |
| **COURT/AGENCY:** | US District Court for the Middle District, AL<br>Case # 3:07 CV 617 |
| **NATURE OF ACTION:** | Subpoena - Business records - Pertaining to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC and Flowers Baking Company of Thomasville, LLC |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Montgomery, AL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/11/2008 at 11:15 |
| **APPEARANCE OR ANSWER DUE:** | by 4/30/08 at 9:00 a.m. |
| **ATTORNEY(S) / SENDER(S):** | Greg L. Davis<br>The Law Offices of Greg L. Davis<br>6987 Halcyone Park Drive<br>Montgomery, AL 36117<br>334-832-9080 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 798917957035 |
| **SIGNED:** | The Corporation Company |
| **ADDRESS:** | 2000 Interstate Park Drive<br>Suite 204<br>Montgomery, AL 36109 |
| **TELEPHONE:** | 334-387-7680 |

Page 1 of  1 / SR

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

⬡AO88 (Rev. 12/06) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT

MIDDLE _____ DISTRICT OF _____ ALABAMA

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:  Custodian of Records
     Chick-Fil-A, Inc. c/o The Corporation Company
     2000 Interstate Park Drive, Suite 204
     Montgomery, Alabama 36109

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE    THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis<br>6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME<br>4/30/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# **ATTACHMENT**

Please produce:

1.      A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.      A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.



# FAX TRANSMISSION

| | | | |
|---|---|---|---|
| **To:** | Sheila Cesarano, Esq. | **Date:** | 4/16/08 |
| **Company:** | Shutts & Bowen | **Time:** | 4:09 PM |
| **From:** | Matthew Sitkowski | **FAX#:** | 305-347-7386 |
| | | **No. of pages:** | 4 + cover |

**RE:  Charles Morrow, et al v. Flowers Food, et al**

Sheila,

Please see the attached Subpoena that we received yesterday.

Thanks,

Matt

NOTICE OF CONFIDENTIALITY:
The information contained in this facsimile message is confidential information intended only for the use of the individual or entity addressed above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the below address via the Postal Service. We will reimburse you for all postage expenses incurred. Thank you.

BURGER KING CORPORATION
5505 Blue Lagoon Drive • Miami, Florida 33126 • Phone (305) 378-7149 • Fax (305) 378-7275

*Matt*

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
04/11/2008
CT Log Number 513303204

RECEIVED
4/15/08

TO:     Sharalea Andrade
        Burger King Corporation
        5505 Blue Lagoon Drive
        Miami, FL 33126-

RE:   **Process Served in Alabama**

FOR:   Burger King Corporation (Domestic State: FL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Charles Morrow, et al., Pltfs, vs. Flowers Food, Inc., et al., Dfts, // To: Burger King Corporation |
| **DOCUMENT(S) SERVED:** | Subpoena, Proof of Service Form, Attachment |
| **COURT/AGENCY:** | US District Court for the Middle District, AL<br>Case # 3:07 CV 617 |
| **NATURE OF ACTION:** | Subpoena - Business records - Pertaining to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC and Flowers Baking Company of Thomasville, LLC |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Montgomery, AL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/11/2008 at 11:15 |
| **APPEARANCE OR ANSWER DUE:** | by 4/30/08 at 9:00 a.m. |
| **ATTORNEY(S) / SENDER(S):** | Greg L. Davis<br>The Law Offices of Greg L. Davis<br>6987 Halcyone Park Drive<br>Montgomery, AL 36117<br>334-832-9080 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 790982635849<br>Email Notification, Sharalea Andrade sandrade@whopper.com |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Company<br>2000 Interstate Park Drive<br>Suite 204<br>Montgomery, AL 36109 |
| **TELEPHONE:** | 334-387-7660 |

Page 1 of 1 / SR

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

MIDDLE                    DISTRICT OF                    ALABAMA

CHARLES MORROW, et al.,

V.                                        **SUBPOENA IN A CIVIL CASE**

FLOWERS FOOD, INC., et al.

Case Number:[1]   3:07-CV-617-MHT

TO:  Custodian of Records
     Burger King Corporation c/o The Corporation Company
     2000 Interstate Park Drive, Suite 204
     Montgomery, Alabama 36109

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHMENT

| PLACE    THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis 6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME 4/30/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT

Please produce:

1.     A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew  Baxter;  Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.     A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew  Baxter;  Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# EXHIBIT G

**Hishta, Kevin**

| | |
|---|---|
| **From:** | Teva Allen [teva.allen@charter.net] |
| **Sent:** | Wednesday, April 23, 2008 10:39 AM |
| **To:** | Hishta, Kevin |
| **Subject:** | Fwd: Re: Subpoenas in Morrow |

```
--
Teva Allen, CP
Paralegal to Greg L. Davis
6987 Halcyon Park Drive
Montgomery, AL 36106
Phone:(334)832-9080
Fax: (334) 409-7001

> Date: Wed, 23 Apr 2008 7:10:29 -0700
> From: Teva Allen <teva.allen@charter.net>
> To: Sandra.Reiss@ogletreedeakins.com, Kevin.Hista@ogletreedeakins.com
> Subject: Re: Subpoenas in Morrow
> Cc: jguglielmo@wdklaw.com, gldavis@knology.net
>
>
> --Dear Dear Kevin and Sandra: In accordance with Fed.R.Civ.P. 45 (b)(1) let this serve
as Plaintiff's notice that we will be issuing subpoenas to the following:
>
> Family Dollar Stores, Inc.;Wal-Mart Stores, Inc.;Fred's Stores of
> Alabama, Inc.; Publix Supermarkets, Inc.;Winn-Dixie Stores,
> Inc.;Bruno's, Inc.;Southern Family Markets, LLC;Target
> Corporation;Sonic Restaurants, Inc.;Arby's, Inc.; Burger King Corporation;Hardee's Food
Systems, Inc.;Sodexo, Inc.; Chick-Fil-A, Inc.;Zaxby's Holdings and The Krystal Company.
>
> We will, of course, be copying you on any documents received.
>
> Teva Allen, CP
> Paralegal to Greg L. Davis
> 6987 Halcyon Park Drive
> Montgomery, AL 36106
> Phone:(334)832-9080
> Fax: (334) 409-7001
```

EXHIBIT H

## Hishta, Kevin

| | |
|---|---|
| **From:** | Tammi Poff [tammip@knology.net] |
| **Sent:** | Friday, April 25, 2008 5:44 PM |
| **To:** | Hishta, Kevin |
| **Subject:** | Fw: Morrow Subpoenas |
| **Attachments:** | Morrow Subpoenas.pdf |

----- Original Message -----
**From:** Tammi Poff
**To:** Kevin.Hishta@ogletreedeakins.com
**Sent:** Friday, April 25, 2008 2:38 PM
**Subject:** Morrow Subpoenas

Please find attached copies of subpoenas referenced in my earlier emails.

Teva Allen, CP
Paralegal to Greg L. Davis

# FILE COPY

☜AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

MIDDLE                 DISTRICT OF                 ALABAMA

CHARLES MORROW

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:   ATTN: Bob Einhorn
      Zarco Einhorn & Salkowski
      100 SE 2nd Street, 27th Floor
      Miami, FL 33131

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE    THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis 6987 Halcyon Park Drive, Montgomery, Alabama 36117 | DATE AND TIME 4/30/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis-Attorney for Plaintiffs
6987 Halcyon Park Drive, Montgomery, Alabama 36117 (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED | | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

ATTACHMENT

Please Produce:

1.   Copies of all Plaintiffs' depositions which were taken in the case styled "Keith D. Quarles, et al., v Flowers Foods, Inc. et al., CASE NO. 05-21738-CIV-SEITZ/MCALILEY filed in the UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA", including all exhibits attached to said depostions.

2.   Copies of all Defendants' depositions which were taken in the case styled "Keith D. Quarles, et al., v Flowers Foods, Inc. et al., CASE NO. 05-21738-CIV-SEITZ/MCALILEY filed in the UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA",  including all exhibits attached to said depositions.

3.   Copies of all 30b6 depositions and 30b1 depositions taken in the case styled "Keith D. Quarles, et al., v Flowers Foods, Inc. et al., CASE NO. 05-21738-CIV-SEITZ/MCALILEY filed in the UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA",  including all exhibits attached to said depositions.

4.   Copies of all Expert Witness reports filed in the case styled Keith D. Quarles, et al., v Flowers Foods, Inc. et al., CASE NO. 05-21738-CIV-SEITZ/MCALILEY filed in the UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA"

5.   Copies of all depositions taken in the case styled "Keith D. Quarles, et al., v Flowers Foods, Inc. et al., CASE NO. 05-21738-CIV-SEITZ/MCALILEY filed in the UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA", including all exhibits attached to said depositions.

6.   Copies of all documents produced by Plaintiffs and Defendants in the case styled "Keith D. Quarles, et al., v Flowers Foods, Inc. et al., CASE NO. 05-21738-CIV-SEITZ/MCALILEY filed in the UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA".

FILE COPY

S✕AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

| MIDDLE | DISTRICT OF | ALABAMA |

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 3:07-CV-617-MHT

TO:  Custodian of Records
Family Dollar Stores, Inc. c/o Prentice Hall Corp. System
150 South Perry Street
Montgomery, Alabama 36104

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE  THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis 6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME 4/30/2008 9:00 am |
| --- | --- |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| | 4/10/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                            DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# ATTACHMENT

Please produce:

1.      A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.      A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

## UNITED STATES DISTRICT COURT

MIDDLE                DISTRICT OF                ALABAMA

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 3:07-CV-617-MHT

TO:  Custodian of Records
Wal-Mart Stores, Inc. c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE  THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis 6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME  4/30/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE  4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| | | MANNER OF SERVICE |
|---|---|---|
| SERVED ON (PRINT NAME) | | HAND DELIVERY |

| | | TITLE |
|---|---|---|
| SERVED BY (PRINT NAME) | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

| Executed on | | |
|---|---|---|
| | DATE | SIGNATURE OF SERVER |

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# ATTACHMENT

Please produce:

1.    A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew  Baxter;  Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.    A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew  Baxter;  Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

| MIDDLE | DISTRICT OF | ALABAMA |
|---|---|---|

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:  Custodian of Records
Fred's Stores of Alabama, Inc. c/o W. Clark Campbell, Jr.
260 Washington Avenue
Montgomery, Alabama 36197

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE  THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis  6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME  4/30/2008 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE  4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

### PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# ATTACHMENT

Please produce:

1.    A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew  Baxter;  Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.    A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew  Baxter;  Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

SsAO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

## UNITED STATES DISTRICT COURT

MIDDLE        DISTRICT OF        ALABAMA

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:  Custodian of Records
Publix Supermarkets, Inc. c/o Prentice Hall Corp. System
150 South Perry Street
Montgomery, Alabama 36104

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE    THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis<br>6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME<br>4/30/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|
| | |
| | ADDRESS OF SERVER |

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT

Please produce:

1.    A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.    A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

ЅБAO88 (Rev. 12/06) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT

MIDDLE _____ DISTRICT OF _____ ALABAMA

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:  Custodian of Records
     Winn-Dixie Stores, Inc. c/o CSC Lawyers Inc. Service
     150 South Perry Street
     Montgomery, Alabama 36104

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE   THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis   6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME   4/30/2008 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE   4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

|  | DATE | | SIGNATURE OF SERVER |
|---|---|---|---|
| | | | |
| | | | ADDRESS OF SERVER |

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# ATTACHMENT

Please produce:

1.     A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.     A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

## UNITED STATES DISTRICT COURT

MIDDLE _____ DISTRICT OF _____ ALABAMA

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 3:07-CV-617-MHT

TO:  Custodian of Records
Bruno's, Inc. c/o CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, Alabama 36104

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE    THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis<br>6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME<br>4/30/2008 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                      DATE                                    SIGNATURE OF SERVER

                                                             ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
   (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
   (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
   (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
      (i) fails to allow reasonable time for compliance;
      (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
      (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) If a subpoena
      (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
   (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
   (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
   (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
   (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
   (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
   (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT

Please produce:

1.     A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.     A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

SAO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

MIDDLE                    DISTRICT OF                    ALABAMA

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:  Custodian of Records
Southern Family Markets, LLC c/o The Corporation Co.
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHMENT

| PLACE    THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis<br>6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME<br>4/30/2008 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

SIGNATURE OF SERVER _____

ADDRESS OF SERVER _____

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# ATTACHMENT

Please produce:

1.     A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter;  Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.     A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter;  Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

AO88 (Rev. 12/06) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT

MIDDLE                          DISTRICT OF                          ALABAMA

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:  Custodian of Records
     Target Corporation c/o The Corporation Company
     2000 Interstate Park Drive, Suite 204
     Montgomery, Alabama 36109

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE   THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis 6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME 4/30/2008 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
　　　　　　　　　　　DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# ATTACHMENT

Please produce:

1.    A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.    A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

## UNITED STATES DISTRICT COURT

| MIDDLE | DISTRICT OF | ALABAMA |
|---|---|---|

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:  Custodian of Records
Sonic Restaurants, Inc. c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE     THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis<br>6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME<br>4/30/2008 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case.

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT

Please produce:

1.     A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.     A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

⊙AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

MIDDLE _____ DISTRICT OF _____ ALABAMA

| | |
|---|---|
| CHARLES MORROW, et al., | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| FLOWERS FOOD, INC., et al. | Case Number:[1] 3:07-CV-617-MHT |

TO:   Custodian of Records
Arby's, Inc. c/o Richard A. Ball
200 South Lawrence Street
Montgomery, Alabama 36104

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHMENT

| PLACE   THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis<br>6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME<br>4/30/2008 9:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _(signature)_ | 4/10/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
  (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
  (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
  (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
  (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
    (i) fails to allow reasonable time for compliance;
    (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
    (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) If a subpoena
    (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
    (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
  (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
  (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
  (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
  (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
  (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**ATTACHMENT**

Please produce:

1.      A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia. Documents are requested for the past four (4) years.

2.      A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

## UNITED STATES DISTRICT COURT

| MIDDLE | DISTRICT OF | ALABAMA |
|---|---|---|

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:  Custodian of Records
Burger King Corporation c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE   THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis 6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME 4/30/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case.

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**ATTACHMENT**

Please produce:

1.    A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.    A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

MIDDLE    DISTRICT OF    ALABAMA

| CHARLES MORROW, et al., | **SUBPOENA IN A CIVIL CASE** |
|---|---|
| V. | |
| FLOWERS FOOD, INC., et al. | Case Number:[1]  3:07-CV-617-MHT |

TO:  Custodian of Records
Hardee's Food Systems, Inc. c/o CSC Lawyers Inc. Service
150 South Perry Street
Montgomery, Alabama 36104

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE   THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis<br>6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME<br>4/30/2008 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| | 4/10/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT

Please produce:

1.    A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.    A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

## UNITED STATES DISTRICT COURT

MIDDLE _____ DISTRICT OF _____ ALABAMA

| | |
|---|---|
| CHARLES MORROW, et al., | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| FLOWERS FOOD, INC., et al. | Case Number:[1] 3:07-CV-617-MHT |

TO:  Custodian of Records
     Sodexo, Inc. c/o Prentice Hall Corporation System
     150 South Perry Street
     Montgomery, Alabama 36104

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHMENT

| PLACE   THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis 6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME 4/30/2008 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT

Please produce:

1.    A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.    A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

S AO88  (Rev. 12/06) Subpoena in a Civil Case

### Issued by the

## UNITED STATES DISTRICT COURT

MIDDLE          DISTRICT OF          ALABAMA

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:  Custodian of Records
Chick-Fil-A, Inc. c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHMENT

| PLACE  THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis<br>6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME<br>4/30/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# ATTACHMENT

Please produce:

1.    A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew  Baxter;  Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.    A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew  Baxter;  Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

SsAO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

| MIDDLE | DISTRICT OF | ALABAMA |

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:  Custodian of Records
Zaxby's Holdings, LLC c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHMENT

| PLACE     THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis<br>6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME<br>4/30/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation material, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT

Please produce:

1.    A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia. Documents are requested for the past four (4) years.

2.    A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

# FILE COPY

AO88 (Rev. 12/06) Subpoena in a Civil Case

### Issued by the

# UNITED STATES DISTRICT COURT

MIDDLE                    DISTRICT OF                    ALABAMA

CHARLES MORROW, et al.,

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:  Custodian of Records
The Krystal Company c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE  THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis  6987 Halcyone Park Drive, Montgomery, Alabama 36117 | DATE AND TIME  4/30/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE  4/10/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis - Attorney for Plaintiffs
6987 Halcyone Park Drive, Montgomery, Alabama 36117  (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  | HAND DELIVERY |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# **ATTACHMENT**

Please produce:

1.     A copy of your complete file referable to Flowers Food, Inc., Flowers Food Bakery Group, Flowers Baking Company of Opelika, LLC, and Flowers Baking Company of Thomasville, LLC ("the Flowers Entities"), including, but not limited to, copies of all contracts, protocol agreements, and distribution agreements between you and the Flowers Entities, copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any of the Flowers Entities, and communications between you and the Flowers Entities with respect to products distributed by any of the following Plaintiff distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.  Documents are requested for the past four (4) years.

2.     A copy of your complete file referable to any of the following Plaintiff route distributors: Charles Morrow; Michael Overton; Lew Baxter; Melvin Snow; Ricky Small; Michael Smith; James Marty Smith; Greg Patisaul; Mark Murphy; Gary Chambliss; and Dwayne Cleveland, including all documents describing the Flowers Food, Inc., products distributed, any and all contracts, protocol agreements, and distribution agreements between you and any of the Flowers independent route distributor plaintiffs, and copies of all notes, memoranda, correspondence, and any other document that relates to negotiations between you and any Flowers route distributor plaintiffs for the past four (4) years.

This request includes any and all documents held by you and/or any of your affiliated entities, divisions, subsidiaries, and/or franchises operating in either the states of Alabama and/or Georgia.

 WhatleyDrake&Kallas

Joseph P. Guglielmo
Direct Dial: 212-447-7007
jguglielmo@wdklaw.com

November 26, 2007

VIA E-MAIL

Kevin P. Hishta
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2100 Bank of America Plaza
Atlanta, Georgia 30308

      Re:    *Morrow et al. v. Flowers Foods, Inc. and Flowers Baking Co. of Opelika, LLC*
             Civil Action No. 3:07-cv-00617-MHT

Dear Kevin:

     The purpose of this letter is to set forth our discussion regarding the production of documents, the plaintiffs' requests for admission and plaintiffs' interrogatories.

     During our meet and confers October 16 and November 15, 2007 on Plaintiffs' 30(b)(6) Notice, you have agreed to produce discovery from and concerning Flowers Foods, Flowers/Opelika and Flowers/ Thomasville (collectively "Defendants"). However, it is our understanding that Defendants continue to take the position that the scope of discovery should not include information concerning other potential independent distributors other than the twelve (12) named plaintiffs nor should it include information relating to any subsidiaries other than Defendants Flowers/ Opelika and Flowers/ Thomasville. Therefore, we agreed to set aside the overarching objection on the scope of discovery allowed until the Court has ruled on the pending Motion for Protective Order. Plaintiffs continue to believe that permissible discovery includes information relating to any subsidiaries of Flowers Foods including any discovery of Flowers Foods concerning its involvement or control of its subsidiaries.

     During our meet and confer, you identified areas where responsive materials potentially exist, including: the individual distributor files, accounting documents, national accounts files, policy and procedure documents, training documents, business model documents, implementation documents, prospective distributor records, hand-held computer records, emails and documents regarding risk of loss.

New York • Birmingham • Boston

Whatley Drake & Kallas, LLC   Attorneys at Law   1540 Broadway, 37th Floor   New York, New York 10036   Telephone: (212) 447-7070   Facsimile: (212) 447-7077
www.wdklaw.com

Kevin P. Hishta
November 26, 2007
Page 2

Specifically, as to production of these documents trails you confirmed the following:

- individual distributor files would be maintained at the subsidiary level and would primarily consist of paper files.

- accounting documents consisting primarily of weekly settlement statements and certain back-up documentation (most likely maintained as electronically stored information) that would be possessed both by the parent company and the subsidiaries.

- We agreed that production of representative sampling of documents of pay-by-scan, national accounts could be made at this time based on your representation of the volume and that plaintiffs and would discuss the production with you after the initial review.

- policy and procedure documents would be produced both at the parent and subsidiary level.

- training documents would exist at the individual subsidiary level and that production would be made from both locations.

- business model documents are located at both the parent and the subsidiary level.

- implementation documents are located primarily at the subsidiary level, but there will be some documents at the parent level.

- prospective distributor records are located at the individual subsidiary level.

- hand-held computer documents are located at the individual subsidiary level.

- Emails are located at both the parent and the subsidiary levels.

- We agreed that production of a representative sampling of documents concerning risk of loss documents including those that are found in the Protocol Agreement both from the parent and the subsidiary levels.

- As with the national account documents, we have agreed to accept the representative sampling and would discuss the production with you after the initial review.

With regard to these document trails, for those documents not subject to the overarching discovery disagreement mentioned above, You confirmed that Defendants have agreed to a rolling production, which should commence in the next three to four weeks. At this time, you have also agreed to confer with your production team and then consult us on the manner and method of production, including the method we have set forth in our request for production.

Kevin P. Hishta
November 26, 2007
Page 3

Lastly, you have agreed to re-review the requests for admission and the interrogatories and to modify Flowers Foods' responses with respect to the addition of the new Defendant, Flowers/ Thomasville. With this letter, plaintiffs are serving separate requests for production on Flowers/ Thomasville.

As to the specific interrogatories and requests for admission, we believe the following accurately reflects our discussion last week:

**Interrogatories**

**Interrogatory Nos. 3 & 4:**

Plaintiffs clarified that these interrogatories seek the identification of what is used to track various purchases, on a national level and on a local level. Defendants agreed they would revisit providing further responses in light of this clarification.

**Interrogatory No. 5:**

Plaintiffs clarified that this interrogatory seeks to know any alternate means of delivering fresh baked products. Defendants agreed they would revisit providing further responses in light of this clarification.

**Interrogatory No. 6:**

Defendants have responded that the only policy on whether distributors can distribute other product is in the contained in the independent distributor contract and have confirmed that there are no policy documents on this issue.

**Interrogatory No. 7:**

In addition to the response set forth in the interrogatory, Defendants confirmed that Flowers Industries wanted a model developed that was similar to other contracts in the bread industry, so they contacted outside counsel and that no person within Flowers Industries drafted any portion of the distributor agreement.

**Interrogatory Nos. 8 & 9:**

Defendant will revisit these interrogatories with respect to the new Defendant, Flowers/ Thomasville.

Kevin P. Hishta
November 26, 2007
Page 4

### Interrogatory Nos 15 & 16:

Defendants have further clarified their response by providing that Flowers/Opelika and Flowers/ Thomasville bear most of the burden of the price allowance and that distributors need to seek approval to change prices on the bakery products.

### Interrogatory No. 19:

Flowers Foods confirms that it does not have any thrift stores.

### Interrogatory No. 20:

Flowers/Opelika does not have regular company-run sales routes but rather certain instances where company-run routes may exist. Flowers/ Opelika stated that, in new market areas, there are company-run employee routes until that market area is sufficiently developed. Additionally, when a distributor sells his or her territory, an employee of the company will run the route until a new distributor is found.

### Requests for Admission:

### Request for Admission No. 18:

Regarding whether distributors are required to sell their stale products on a daily basis, Flowers admitted that, for a distributor to sell product back to Flowers, he or she must sell the product back within a certain time frame in order for Flowers to use it in their thrift stores. If a distributor does not sell it back within the designated time frame, Flowers will not buy the stale product.

If you disagree with any of the information above, please contact me.

Sincerely,

Joseph P. Guglielmo

JPG:ar

cc:     Sandra Reiss
        Greg L. Davis
        E. Kirk Wood
        Joe R. Whatley, Jr.
        Amy Weaver

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **CHARLES MORROW,** *et al.,*     ) | |
|                 ) | |
|     **Plaintiffs,**      ) | |
|                 ) | **CASE NO: 3:07-cv-00617-MHT** |
| **v.**                   ) | |
|                 ) | |
| **FLOWERS FOODS, INC.,** *et al.,*   ) | |
|                 ) | |
|     **Defendants.**     ) | |

## ORDER

Pending before the Court is Defendants' Motion for Protective Order and/or Motion to Quash Non-Party National Accounts Subpoenas ("Defendants' Motion for Protective Order"). (Doc. No. 103, filed April 28, 2008).

As this Court has previously stated in its Order dated November 27, 2007, and its Order dated April 23, 2008, "because the Court has not yet ruled on Plaintiffs' Motion to Conditionally Certify and Facilitate Class Notice (Doc. 32, filed September 21, 2007), this case only involves the current named parties and the allegations against them.  Thus, discovery is also limited to those parties and subject matter." (Ct. Doc. Nos. 64; 102.)

It is well established that under Federal Rule of Civil Procedure 26(c)(4), the Court may "make any order which justice requires to protect a party or person from . . . undue burden or expense, including . . . that certain matters not be inquired into, or that the scope of the discovery or disclosure be limited to certain matters . . ." Fed. R. Civ. P. 26(c)(4). The Court may also limit discovery if the discovery sought is duplicative or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii); (ii).

The subpoenas Plaintiffs served on various non-party national accounts, which are the subject of Defendants' Motion for Protective Order, seek information which is not limited to the named parties and subject matter.  Therefore, Plaintiffs' subpoenas seek information that exceeds the permissible scope of discovery at this time, as set forth in this Court's Orders. (Ct. Doc. Nos. 64; 102.)   Plaintiffs' subpoenas also seek duplicative information already provided by Defendants to Plaintiffs.

For the above reasons, it is **ORDERED** that Defendants' Motion for Protective Order is **GRANTED**.

Done this _____ day of _____, 2008.

_____