**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **CHARLES MORROW**, *et al.,*     ) | |
|     ) | |
|     **Plaintiffs,**     ) | |
|     ) | **CASE NO: 3:07-cv-00617-MHT** |
| **v.**     ) | |
|     ) | |
| **FLOWERS FOODS, INC.**, *et al.,*     ) | |
|     ) | |
|     **Defendants.**     ) | |

**DEFENDANT FLOWERS FOODS, INC.'S, FLOWERS BAKING CO. OF OPELIKA, LLC'S, AND FLOWERS BAKING CO. OF THOMASVILLE, LLC'S BRIEF IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER AND/OR MOTION TO QUASH SUBPOENA**

COME NOW, Defendant Flowers Foods, Inc. ("Flowers Foods"), Flowers Baking Co. of Opelika, LLC ("Flowers/Opelika"), and Flowers Baking Co. of Thomasville, LLC ("Flowers/Thomasville"), by and through their undersigned counsel, and respectfully submit this Brief in Support of its Motion for Protective Order and/or Motion to Quash Subpoena.

**I.    PROCEDURAL AND RELEVANT FACTUAL BACKGROUND**

    A.    Plaintiffs' Complaint, Uniform Scheduling Order, and Motion for Conditional Certification

Plaintiffs, three current and eight former distributors with Flowers/Opelika and Flowers/Thomasville,[1] filed their Complaint on July 2, 2007, against Flowers Foods and Flowers/Opelika under 29 U.S.C. § 216(b), seeking to maintain a "nationwide" collective action on behalf of themselves and others "similarly situated."[2]

---

[1] Plaintiffs' names, subsidiaries with which they contracted, and whether they are/were a current or former distributor are outlined in Defendants' Motion for Protective Order and/or Motion to Quash Non-Party National Accounts Subpoenas, filed with this Court on this date. (Ct. Doc. No. 103.)

[2] While Defendants deny that Plaintiffs were or are "employees," Section 216(b) nonetheless is the vehicle for Plaintiffs to bring their claims given their contention that they are or were "employees" under the FLSA.

Plaintiffs filed their Motion to Conditionally Certify and Facilitate Class Notice and Memorandum in Support ("Motion for Conditional Certification") on September 21, 2007 (Ct. Doc. Nos. 32; 33), pursuant to this Court's Uniform Scheduling Order. (Ct. Doc. No. 28.)  This Court has not ruled on Plaintiffs' Motion.  In a subsequent Order dated April 25, 2008, this Court provided that "no further briefing (on whether conditional certification is appropriate) is permitted without leave of court." (Ct. Doc. No. 102, citing Ct. Doc. No. 35.)

Flowers Foods, Flowers/Opelika, and Flowers/Thomasville are the only current parties to this action. Further, pursuant to this Court's Scheduling Order, the deadline to add additional parties expired on January 3, 2008. (Ct. Doc. No. 28, pp. 2-3, § 5.)[3]

B.     Court Orders Limiting the Scope of Discovery to That Which Involves the Named Parties and Allegations Against Them

This Court has heard two separate Motions involving Plaintiffs' attempts to obtain class-wide discovery before a decision from this Court on conditional certification, namely Defendants' Motion for Protective Order Limiting the Scope of Plaintiffs' 30(b)(6) Videotaped Deposition to Flowers Foods (Ct. Doc. No. 48), and Plaintiffs' Motion to Compel the Production of Documents (Ct. Doc. No. 96). In both Motions, this Court held that because no decision on Plaintiffs' Motion for conditional certification has been issued, "this case only involves the current named parties and the allegations against them. Thus, discovery is also limited to those parties and subject matter." (Ct. Doc. Nos. 64; 102.)

C.     Plaintiffs' Subpoenas Requesting Pre-Conditional Certification Class-wide Discovery

Despite these two Orders, on or about April 11, 2008, Plaintiffs served sixteen subpoenas on national accounts, seeking class-wide discovery. These subpoenas are currently the subject of

---

[3] Although Plaintiffs moved to extend this deadline (Ct. Doc. No. 67), the Court issued an Order denying Plaintiffs' Motion, preserving the January 3, 2008, deadline to add additional parties. (Ct. Doc. No. 91.)

the Motion for Protective Order and/or Motion to Quash Non-Party National Accounts subpoenas, which Defendants filed with this Court on this date. (Ct. Doc. No. 103, and Exhibits attached thereto.)

On April 25, 2008, Plaintiffs informed Defendants that Plaintiffs were issuing a subpoena to the law firm of Zarco, Einhorn & Salkowski ("Zarco law firm") in Miami, Florida. (*See* April 25, 2008 E-Mail message from Teva Allen to Kevin Hishta and Sandra Reiss attached as Exhibit "A"). Later that afternoon, Plaintiffs sent Defendants a copy of the subpoena, which is attached hereto as Exhibit "B". The subpoena, which is not dated, was issued through the Middle District of Alabama and commands the Zarco law firm to produce:

1.    Copies of all Plaintiffs' depositions which were taken in the case . . . including all exhibits attached to said depositions.

2.    Copies of all Defendants' depositions which were taken in the case . . . including all exhibits attached to said depositions.

3.    Copies of all 30b6 depositions and 30b1 depositions taken in the case . . . including all exhibits attached to said depositions.

4.    Copies of all Expert Witness reports filed in the case . . .

5.    Copies of all depositions taken in the case . . . including all exhibits attached to said depositions.

6.    Copies of all documents produced by Plaintiffs and Defendants in the case . . .

The subpoena commands the production of the requested documents by April 30, 2008, five days after Plaintiffs informed Defendants that a subpoena was forthcoming. (*See id.*).

D.    Defendants' Production of Documents Pertaining to *Quarles*

1.    Production In Support of Response in Opposition to Conditional Certification

Defendants, in their Response in Opposition to Plaintiffs' Motion for Conditional

Certification (Ct. Doc. No. 42), discussed the *Quarles* case, which was filed in the Southern District of Florida against Flowers Foods, Flowers/Thomasville, Flowers Baking Co. of Florida, LLC ("Flowers/Florida"), and Flowers Baking Co. of Miami, LLC ("Flowers/Miami") by distributors with Flowers/Miami. Defendants discussed *Quarles* to inform the Court that some potential opt-ins within Plaintiffs' proposed nationwide class signed release and waivers of any FLSA claims, following court approval of the settlement, thus providing Defendants with a defense of release and waiver as to those individuals. (Ct. Doc. No. 42, p. 40, and Order cited therein and attached thereto as Exhibit 18). Defendants also informed the Court that in *Quarles,* Plaintiffs agreed that they did not have any cognizable claims under the FLSA, specifically, even assuming they were employees under the Act, they were nonetheless exempt because of the outside sales and Motor Carrier exemptions.[4]

### 2.   Production In Response to Specific Requests for Production from Plaintiffs

On September 10, 2007, Plaintiffs served Defendants Flowers Foods, Flowers/Opelika, and Flowers/Thomasville with Requests for Production, requesting (in pertinent part) "[a]ll complaints (judicial, administrative and/or internal (i.e. from employees) filed against and/or with Defendants since January 1, 2004 to the present that allege violations of the Fair Labor Standards Act." (*See* Ct. Doc. No. 102, Exhibit G attached thereto and incorporated therewith). Because Flowers Foods and Flowers/Thomasville were named parties in the *Quarles* case, Defendants provided Plaintiffs with the following documents: "Defendant Flowers Baking Co. of Miami, LLC's Motion for Partial Summary Judgment" (With Incorporated Memorandum of Law), dated October 25, 2006 (attached as Exhibit "C"), "Joint Motion for Court Approval of Dismissal of Plaintiffs' FLSA Claims Pursuant to Stipulated Consent Judgment," dated

---

[4]  None of the Plaintiffs in *Quarles* are current Plaintiffs to this lawsuit. Plaintiff Chambliss, the only Plaintiff who was a distributor with Flowers/Thomasville, was not involved in that case.

December 1, 2006 (attached as Exhibit "D"), "Joint Memorandum in Support of Motion for Court Approval of Dismissal of Plaintiffs' Fair Labor Standards Act Claims Pursuant to Stipulated Judgment," dated December 1, 2006 (attached as Exhibit "E"), "Order (1) Granting Joint Motion for Approval of Dismissal With Prejudice of Plaintiffs' FLSA Claims Pursuant to Stipulated Consent Judgment; (2) Providing Notice of Court Practice Upon Settlement; and (3) Closing Case," entered on December 5, 2006 (attached as Exhibit "F"), and the "Joint Stipulation of Dismissal with Prejudice," received January 8, 2007, and "Final Order of Dismissal With Prejudice," dated January 5, 2007 (attached as Exhibit "G").

## II.    ARGUMENT AND CITATION OF AUTHORITY

Under Rule 26(c)(4), the Court may "make any order which justice requires to protect a party or person from . . . undue burden or expense, including . . . that certain matters not be inquired into, or that the scope of the discovery or disclosure be limited to certain matters . . ." FED. R. CIV. P. 26(c)(4). Moreover, under Rule 45, this Court "must quash or modify a subpoena that . . . (i) fails to allow a reasonable time to comply; . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45 (c) (3) (A).

As will be discussed below, the Court should enter a Protective Order and/or Motion to Quash rendering the subpoena Plaintiffs served on the Zarco law firm unenforceable because it (A) seeks to obtain pre-conditional certification class-wide discovery, which this Court has previously held to be inappropriate and to which Plaintiffs would not otherwise be entitled; and (B) the subpoena is procedurally defective.

A.    The Court Should Issue a Protective Order Because the Subpoena Seeks Class-Wide Discovery

In two Orders in this case, this Court has clearly that because no decision on Plaintiffs' Motion for Conditional Certification has been issued, "this case only involves the current named parties and the allegations against them. Thus, discovery is also limited to those parties and subject matter." (Ct. Doc. Nos. 102, 64).

Notwithstanding, Plaintiffs are again attempting to seek impermissible pre-conditional certification classwide discovery by seeking all underlying documents and discovery pertaining to a lawsuit filed by distributors who contracted with Flowers/Miami, a subsidiary <u>which is not even a party to this lawsuit</u>, against Flowers Foods and Flowers/Thomasville and two non-party subsidiaries (namely, Flowers/Miami and Flowers/Florida). <u>None of the current Plaintiffs were involved in the *Quarles* case</u>. As such, Plaintiffs' subpoena requests information which is far beyond the permissible scope of discovery as outlined in this Court's Orders. (Ct. Doc. Nos. 64; 102).

Moreover, as discussed above, in response Request 20 of Plaintiffs' First Request for Production of Documents, Defendants produced numerous documents to Plaintiffs regarding this case. (*See* Exhibits C-G, *supra)*. The documents previously produced are <u>more than sufficient</u> to provide Plaintiffs with an understanding regarding the issues, arguments, and Order made in the *Quarles* case. Finally, certain documents requested by Plaintiffs within their subpoena, including those documents produced by Defendants, were designated as confidential and are subject to a Protective Order entered in that case. (*See Quarles* Protective Order, attached hereto as Exhibit "H"). Therefore, any disclosure to Plaintiffs of such information would violate such Order.

Finally, even assuming, *arguendo*, that the underlying documents pertaining to the *Quarles* case are relevant to Plaintiffs' individual claims, much of the information Plaintiffs seek in their subpoena to the Zarco law firm, such as the depositions, exhibits, and expert reports, are

a matter of public record. Therefore, Plaintiffs can obtain these documents through less burdensome means.

      B.    <u>The Court Should Enter a Protective Order Because the Subpoena is Procedurally Deficient</u>

A protective order is also required because Plaintiffs' subpoena to the Zarco law firm is procedurally deficient. First, Plaintiffs issued the subpoena from the Middle District of Alabama. The Zarco law firm, however, is in Miami, Florida. This Court, therefore, does not have jurisdiction over the Miami-based firm. *See* FED. R. CIV. P. 45 (a)(2) (C) ("A subpoena must issue as follows: . . . for production, inspection, copying, testing or sampling, if separate from a subpoena commanding a person's attendance, from the court for the district where the production or inspection is to be made.").

Second, the subpoena commands that the documents be produced by April 30, 2008. Although the subpoena is undated, Defendants can only presume that it was not issued to the Zarco law firm before April 25, 2008, the date on which Plaintiffs notified Defendants that a subpoena was forthcoming. (*See* Exhibit A, *supra*). Rule 45 of the Federal Rules of Civil Procedure requires that any subpoena issued on a nonparty allow the nonparty a "reasonable time for compliance." FED. R. CIV. P. 45 (c) (3) (A) (i). Here, the time frame for compliance with Plaintiffs' subpoena was anything but reasonable as the subpoena commanded voluminous documents to be copied and produced to an out-of-state address (presumably) within five business days (or less).

Therefore, because the subpoena is deficient on its face, this Court must order it unenforceable.

**III.   <u>CONCLUSION</u>**

For the reasons cited above, Defendants respectfully request that the Court grant its

Motion for Protective Order and/or Motion to Quash, prohibiting Plaintiffs from obtaining the information sought within their subpoena to the Zarco law firm, and rendering such subpoena unenforceable.

Respectfully submitted this 29th day of April, 2008.

<div style="margin-left:30%">

/s/ Kevin P. Hishta

Kevin P. Hishta

Georgia Bar No. 357410

Admitted *Pro Hac Vice*

OGLETREE, DEAKINS, NASH,

SMOAK & STEWART, P.C.

Bank of America Plaza

600 Peachtree Street, NE

Suite 2100

Atlanta, GA  30308

E-mail: Kevin.Hishta@ogletreedeakins.com

(404) 881-1300

(404) 870-1732 Fax; and

Sandra B. Reiss (ASB-3650-S80S)

OGLETREE, DEAKINS, NASH,

SMOAK & STEWART, P.C.

One Federal Place, Suite 1000

1819 Fifth Avenue North

Birmingham, Alabama 35203-2118

E-mail: Sandra.Reiss@odnss.com

Ph. (205) 328-1900

Fax (205) 328-6000

Counsel for Defendant Flowers Foods, Inc., Flowers Baking Co. of Opelika, LLC, and Flowers Baking Co. of Thomasville, LLC

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day of April, 2008, I electronically filed the foregoing Defendant Flowers Foods, Inc.'s, Flowers Baking Co. of Opelika, LLC's, and Flowers Baking Co. of Thomasville, LLC's Brief In Support of its Motion For Protective Order and/or Motion to Quash Subpoena with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Greg L. Davis, Esq.
The Law Offices of Greg L. Davis
6987 Halcyon Park Drive
Montgomery, AL  36117

Joe R. Whatley, Jr., Esq.
Whatley Drake & Kallas, LLC
2001 Park Place North
Suite 1000
Birmingham, Alabama  35203

Joseph P. Guglielmo, Esq.
Whatley Drake & Kallas, LLC
1540 Broadway, 37th Floor
New York, New York 10036

Amy Lynne Weaver
Whatley Drake & Kallas, LLC
2001 Park Place North
Suite 1000
Birmingham, Alabama  35203

Glen M. Connor
Whatley Drake & Kallas, LLC
2001 Park Place North
Suite 1000
Birmingham, Alabama  35203

E. Kirk Wood, Esq.
Wood Law Firm, LLC
PO Box 382434
Birmingham, Alabama 35238-2434


/s/ Kevin P. Hishta
Kevin P. Hishta

# Exhibit A

**Hishta, Kevin**

| | |
|---|---|
| **From:** | Teva Allen [teva.allen@charter.net] |
| **Sent:** | Friday, April 25, 2008 10:39 AM |
| **To:** | Reiss, Sandra B.; Hishta, Kevin; Hosey, Cheryl D. |
| **Cc:** | gldavis@knology.net |
| **Subject:** | Additional Morrow Subpoena |

--Dear Dear Kevin and Sandra: In accordance with Fed.R.Civ.P. 45 (b)(1) let this serve as Plaintiff's notice that we will be issuing a subpoena to the following:

        (1) Zarco Einhorn & Salkowski

We will, of course, be copying you on any documents received.

Teva Allen, CP
Paralegal to Greg L. Davis
6987 Halcyon Park Drive
Montgomery, AL 36106
Phone:(334)832-9080
Fax: (334) 409-7001

1

# Exhibit B

# FILE COPY

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

| MIDDLE | DISTRICT OF | ALABAMA |
|---|---|---|

CHARLES MORROW

V.

FLOWERS FOOD, INC., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:07-CV-617-MHT

TO:  ATTN: Bob Einhorn
     Zarco Einhorn & Salkowski
     100 SE 2nd Street, 27th Floor
     Miami, FL 33131

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT

| PLACE  THE LAW OFFICES OF GREG L. DAVIS; ATTN: Greg L. Davis 6987 Halcyon Park Drive, Montgomery, Alabama 36117 | DATE AND TIME 4/30/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Greg L. Davis, The Law Offices of Greg L. Davis-Attorney for Plaintiffs
6987 Halcyon Park Drive, Montgomery, Alabama 36117 (334) 832-9080

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

ATTACHMENT

Please Produce:

1.  Copies of all Plaintiffs' depositions which were taken in the case styled "Keith D. Quarles, et al., v Flowers Foods, Inc, et al., CASE NO. 05-21738-CIV-SEITZ/MCALILEY filed in the UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA", including all exhibits attached to said depostions.

2.  Copies of all Defendants' depositions which were taken in the case styled "Keith D. Quarles, et al., v Flowers Foods, Inc, et al., CASE NO. 05-21738-CIV-SEITZ/MCALILEY filed in the UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA", including all exhibits attached to said depositions.

3.  Copies of all 30b6 depositions and 30b1 depositions taken in the case styled "Keith D. Quarles, et al., v Flowers Foods, Inc, et al., CASE NO. 05-21738-CIV-SEITZ/MCALILEY filed in the UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA", including all exhibits attached to said depositions.

4.  Copies of all Expert Witness reports filed in the case styled Keith D. Quarles, et al., v Flowers Foods, Inc, et al., CASE NO. 05-21738-CIV-SEITZ/MCALILEY filed in the UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA"

5.  Copies of all depositions taken in the case styled "Keith D. Quarles, et al., v Flowers Foods, Inc, et al., CASE NO. 05-21738-CIV-SEITZ/MCALILEY filed in the UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA", including all exhibits attached to said depositions.

6.  Copies of all documents produced by Plaintiffs and Defendants in the case styled "Keith D. Quarles, et al., v Flowers Foods, Inc, et al., CASE NO. 05-21738-CIV-SEITZ/MCALILEY filed in the UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA".

# Exhibit C

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-21738-CIV-SEITZ/MCALILEY

KEITH D. QUARLES, CHARLES C.
LUTON, JOSEPH MAGILL, KEITH
SPELL, JOSE C. OCHOA, MARCUS
JOHNSON, EFRAIN SANTANA,
DANIEL LEON and SVEIN NYLUND,

        Plaintiffs,

vs.

FLOWERS FOODS, INC.,
FLOWERS BAKING CO. of
THOMASVILLE, LLC; FLOWERS
BAKING CO. of FLORIDA, LLC.,
FLOWERS BAKING CO. of MIAMI,
LLC., f/k/a FLOWERS BAKING CO.
of MIAMI, INC.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

---

## DEFENDANT FLOWERS BAKING CO. OF MIAMI, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT (WITH INCORPORATED MEMORANDUM OF LAW)

    Defendant Flowers Baking Co. of Miami, LLC ("Flowers/Miami"), pursuant to Fed. R.

Civ. P. 56 and S.D. Fla. L.R. 7.5, hereby moves for partial summary judgment on Plaintiffs'

claims as set forth below.

    **I.**      **SUMMARY OF THE ARGUMENT**[1]

    In their Complaint, Plaintiffs asserted the following claims against Defendants: (1)

---

[1] Pursuant to S.D. Fla. L.R. 7.5, Defendant is simultaneously filing a separate Statement of Undisputed Material Facts in support of this Motion. The Statement contains an appendix of pertinent exhibits. References to "SMF" in this Memorandum are to the separately numbered paragraphs of the Statement of Undisputed Material Facts. In accordance with the Court's Bench Order of October 13, 2006, this Memorandum of Law does not exceed 35 pages and the Statement of Undisputed Material Facts does not exceed 30 pages.

FBT001324

violation of FLA. STAT. § 686.413 (alleged violation of Florida's Agricultural Equipment Manufacturers and Dealers Act); (2) violation of FLA. STAT. § 559.803 and FLA. STAT. § 559.809 (alleged violation of Florida Sale of Business Opportunity Act); (3) violation of Florida's Deceptive and Unfair Trade Practices Act; (4) breach of contract; (5) breach of fiduciary duty; (6) violation of the Fair Labor Standards Act (FLSA); (7) fraudulent inducement; (8) negligent misrepresentation and omission; and (9) violation of implied covenant of good faith and fair dealing.[2]

The claims on which Flowers/Miami seeks summary judgment, and the grounds therefor, are as follows:

1.    All claims of Plaintiffs Keith Spell and Marcus Johnson are barred by the doctrine of judicial estoppel due to their failure to list such claims in their respective bankruptcy proceedings.

2.    Plaintiffs' claims under the Florida Sale of Business Opportunity Act are barred by the applicable four year statute of limitations.

3.    Plaintiffs' claims under Florida's Deceptive and Unfair Trade Practice Act are barred by the applicable four year statute of limitations.

4.    Plaintiffs' claims that they were improperly charged for promotional and feature price items and not properly credited for Pay-By-Scan accounts have no basis in fact or law.

5.    Plaintiffs' claims of breach of fiduciary duty fail because the distributor relationship between Plaintiffs and Flowers/Miami is not a fiduciary relationship.

---

[2] Early in this litigation, Plaintiffs withdrew Count I of the Complaint (alleged violation of FLA. STAT. § 686.413). Recently, Plaintiffs' counsel has advised Defendants' counsel that they will dismiss all claims, without prejudice, against Flowers Foods, Inc., Flowers Baking Co. of Thomasville, LLC, and Flowers Baking Co. of Florida, LLC. Hence, only Flowers/Miami is moving for partial summary judgment.

2

6.    Plaintiffs' claims for overtime compensation under the Fair Labor Standards Act fail because, even assuming, *arguendo*, Plaintiffs are employees, their claims are barred by both the Motor Carrier Act and outside sales exemptions.    Additionally, Plaintiffs' claims for minimum wage also fail due to the outside sales exemption and because the record evidence, in any event, demonstrates Plaintiffs' net income exceeded the minimum wage.

7.    Plaintiffs' fraudulent inducement and negligent misrepresentation claims are barred by the economic loss rule and otherwise.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is mandated if there is no genuine issue of material fact to be tried, and the moving party is entitled to judgment as a matter of law. *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir. 1990); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

To survive summary judgment, the opposing party must designate specific record evidence sufficient to establish each element of his or her claim, such that a reasonable jury could find in the party's favor. *Earley*, 907 F.2d at 1080.    The opposing party may not rest upon its pleading allegations, but must instead set forth specific facts showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Kee*, 918 F.2d at 1540.    A factual dispute is "genuine" only if the record taken as a whole could lead a rational trier of fact to find for the opposing party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

FBT001326

CASE NO.: 05-21738-CIV-SEITZ (Magistrate Judge McAliley)

### III.     ARGUMENT

**A.     The Claims Of Plaintiffs Keith Spell And Marcus Johnson Are Barred By The Doctrine Of Judicial Estoppel Due To Their Failure To List Such Claims In Their Respective Bankruptcy Proceedings**

Courts have long applied the doctrine of judicial estoppel to bar plaintiffs from recovering damages in lawsuits where they previously failed to list such lawsuits or claims as assets in their bankruptcy proceedings. Debtors in bankruptcy have an ongoing affirmative duty to disclose all assets, including contingent and unliquidated claims. By failing to disclose such claims but subsequently seeking damages in a separate action, a plaintiff takes an inconsistent position before different tribunals, works prejudice against his creditors, and makes a mockery of the judicial system. Plaintiffs Johnson and Spell have done just that, and their claims should be barred by judicial estoppel.

The United States Court of Appeals for the Eleventh Circuit has held that under the doctrine of judicial estoppel, a plaintiff's failure to disclose the existence of pending claims in a chapter 13 bankruptcy proceeding precludes the plaintiff from recovering monetary damages in the suit. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002). Claims that arise prior to confirmation of the chapter 13 repayment schedule are part of the bankruptcy estate, and timely disclosure of each claim is "necessary to the fulfillment of the bankruptcy plan." *Muse v. Accord Human Resources, Inc.*, No. 04-16491, 2005 U.S. App. LEXIS 7240, at *4 (11th Cir. Apr. 18, 2005).

Chapter 13 debtors have a continuing duty to modify their bankruptcy schedules when they accumulate new assets during the repayment period. *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d at 1286. Indeed, "[t]he duty of disclosure is a continuing one, and a debtor is required to disclose all *potential* causes of action." *Lewis v. Weyerhaeuser Co.*, No. 04-5675, 2005 U.S.

4

FBT001327

CASE NO.: 05-21738-CIV-SEITZ (Magistrate Judge McAliley)

App. LEXIS 13598, at *11 (6th Cir. July 6, 2005) (emphasis added) (citing *Browning Mfg. v. Mims* (*In re Coastal Plains, Inc.*), 179 F.3d 197, 208 (5th Cir. 1999)). "The Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *Browning*, 179 F.3d at 207-208 (citing 11 U.S.C. § 521(1)) (emphasis in original); *Union Carbide Corp. v. Viskase Corp.* (*In re Envirodyne Indus. Inc.*), 183 B.R. 812, 821 n.17 (Bankr. N.D. Ill. 1995) (holding "the debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information prior to confirmation to suggest that it may have a possible cause of action, then that is a "known" cause of action such that it must be disclosed").

Even if there is no evidence of intentional manipulation, when a plaintiff stands to gain financially from concealing the lawsuit, the court may infer deliberate or intentional manipulation from the omission of assets in the bankruptcy case. *Burnes*, 291 F.3d at 1287. This is particularly true in situations where a plaintiff debtor repeatedly appears before the bankruptcy court and fails to amend his or her petition. *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005). Moreover, the fact that a plaintiff's bankruptcy petition is involuntarily dismissed, such as for a failure to fund the plan, does not preclude application of judicial estoppel to subsequent claims for damages. *See, e.g., Galloway v. Stinger Wellhead Protection, Inc.*, No. 05-00601, 2006 U.S. Dist. LEXIS 47094, at *7-8 (S.D. Miss. July 10, 2006) ("[i]t would make little sense, and would certainly not serve the purpose of judicial estoppel, i.e., 'protect[ing] the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest,' to relieve a party of the consequences of his misrepresentation to the courts simply because he also failed to fulfill his payment obligations under his bankruptcy plan").

5

CASE NO.: 05-21738-CIV-SEITZ (Magistrate Judge McAliley)

    1.    <u>Plaintiff Spell</u>

Plaintiff Spell filed a chapter 13 bankruptcy petition on May 8, 2001. (SMF ¶ 26.) However, Spell failed to list any of his claims against Flowers/Miami. (SMF ¶ 28.) Neither did he disclose his equity interest in his distributorship, which he estimates to be $50,000. (SMF ¶¶ 25, 29.) In addition, Spell represents, contrary to the assertions in this lawsuit, that he is "an independent contractor/truck driver." (SMF ¶ 30.) Shortly thereafter, the bankruptcy court confirmed Spell's chapter 13 plan. (SMF ¶ 27.)

Even after this lawsuit was filed on June 7, 2005, Spell has repeatedly failed to disclose to the bankruptcy court the claims in this litigation. (SMF ¶¶ 31-33.) At his deposition on May 24, 2006, Spell admitted he still has not disclosed such claims. (SMF ¶ 34.)

    2.    <u>Plaintiff Johnson</u>

Plaintiff Johnson filed two separate bankruptcy petitions in which he failed to disclose his claims against Flowers/Miami. (SMF ¶¶ 36, 38, 41-42, 44.) By the time he filed his first petition, Johnson was aware of the facts giving rise to at least one of the claims now asserted in this lawsuit – that if an account opened outside one of the sections in his territory description, he would be required to purchase additional distribution rights to service the account. (SMF ¶ 37.) By the time he filed the second petition, the Plaintiffs had decided to file this lawsuit. (SMF ¶ 35.) Following the filing of his second petition, Johnson repeatedly filed motions to modify the plan without listing his claims. (SMF ¶ 42.) Johnson's most recent motion was filed less than a week before this lawsuit. In neither his two petitions nor his motions to amend did Johnson disclose his equity interest in his Flowers/Miami distributorship. (SMF ¶ 44.) Like Spell, contrary to his assertions in this lawsuit, Johnson also represented to the bankruptcy court that he was an "independent contractor/truck driver." (SMF ¶ 39.)

6

FBT001329

As noted above, the Eleventh Circuit has held that even if there is no evidence of intentional manipulation, when a plaintiff stands to gain financially from concealing the lawsuit, the court may infer deliberate or intentional manipulation from the omission of assets in the bankruptcy case. Flowers/Miami respectfully submits that the record in the instant case supports such an inference. Both Spell and Johnson had repeated opportunities to bring to the attention of the bankruptcy court the claims they are asserting in this lawsuit, after they unquestionably had knowledge of such claims. Similarly, they failed to disclose their considerable equity interests in their distributorships. They also represented to the bankruptcy court that they were "independent contractors," but now are asserting otherwise in the instant lawsuit. This is precisely the sort of "fast and loose" use of the judicial system that the doctrine of judicial estoppel is designed to remedy. Because both Spell and Johnson repeatedly failed to disclose their claims in this lawsuit to the bankruptcy court, the doctrine of judicial estoppel prevents them from recovering monetary damages in this lawsuit, and Flowers/Miami respectfully submits it should be granted summary judgment on this basis.

**B.      Plaintiffs' Claims Under The Florida Sale Of Business Opportunity Act Are Barred By The Applicable Four Year Statute Of Limitations**

Section 95.11(3) of the Florida Statutes provides that actions founded on statutory liability (like those here) must be commenced within four years of the date on which "the cause of action accrues." For statute of limitations purposes, a claim accrues "when the last element constituting the cause of action occurs."

Plaintiffs' Complaint, filed on June 7, 2005, alleges that Flowers violated Florida's Sale of Business Opportunities Act, FLA. STAT. § 559.80–.815 (2006), by "fail[ing] to provide Plaintiffs with the 'Disclosures Required By Florida Law' within the time prescribed by FLA. STAT. § 559.803," which Plaintiffs contend is "at least 3 working days prior to the time" they

7

signed their Distributor Agreements. (Compl. ¶ 93, Tab 28.)  In addition, Plaintiffs allege that

Flowers "made numerous misrepresentations of material fact . . . in violation of § 559.809."

(Compl. ¶ 94, Tab 28.)  Both of Plaintiffs' claims are barred because neither was brought within

the requisite time period.

1.     The Statute of Limitations Bars Any Claim Based On Flowers' Alleged Failure To
       Timely Provide Plaintiffs With Disclosures Required By Florida Law

Five of the Plaintiffs signed their Agreements on July 27, 1994. (SMF ¶ 45.)  The others

signed in December 1996, December 1999, January 2000, and February 2000.  (SMF ¶¶ 46-50.)

Therefore, the four-year statute of limitations ran for most of the Plaintiffs in July 1998, for

Johnson in 2000, for Nylund in December 2003, for Leon in January 2004, and for Santana in

February 2004.  Because Plaintiffs' Complaint was not filed until June 7, 2005, Plaintiffs' claim

that Flowers failed to timely provide them with the required disclosures is time barred and

Flowers/Miami respectfully submits summary judgment should be granted on such claims.

2.     The Statute of Limitations Bars Any Claim Based On Flowers' Alleged
       Misrepresentations Of Fact

Plaintiffs also claim that Flowers "made numerous misrepresentations of material

fact...in violation of § 559.809."   These alleged misrepresentations include topics such as

"[Plaintiffs'] total investment," "the quantity or quality of the products to be sold or distributed,"

"the training and management assistance available to the [Plaintiffs]," and others. (Compl. ¶ 94,

Tab 28.)

Even assuming, *arguendo*, Flowers made misrepresentations of material fact to the

Plaintiffs of the nature proscribed by Section 559.809 of the Sale of Business Opportunities Act,

such misrepresentations occurred prior to the Plaintiffs signing their Distributor Agreements.

(SMF ¶ 50.)  Because the last element of a violation of Section 559.809 of the Sale of Business

8

Opportunities Act is the alleged misrepresentation of material fact, the four-year period in which

Plaintiffs had to file a claim commenced during the meetings held prior to the date when they

signed their Distributor Agreements or, at the latest, on the date of signing.    Accordingly,

Plaintiffs' misrepresentation claims are time barred, and Flowers/Miami respectfully submits

summary judgment should be granted on such claims.

>        3.    The Delayed Discovery Doctrine Is Inapplicable To Plaintiffs' Sale of Business
>              Opportunities Act Claims

Any argument that the delayed discovery doctrine tolled the statute of limitations with

respect to either claim must be rejected.  No Florida courts have permitted the delayed discovery

doctrine to toll the statute of limitations in cases involving Florida's Business Opportunities Act.

In fact, Florida courts have expressly held that the delayed discovery doctrine was inapplicable to

similar causes of action in the business context (*e.g.*, tortious interference with business relations,

deceptive and unfair trade practices). *See Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip.

Co.*, 793 So. 2d 1127, 1128 (Fla. Dist. Ct. App. 2001) ("the trial court correctly concluded that

the delayed discovery doctrine is not applicable to causes of action for tortious interference and

unfair and deceptive trade practices"); *see also Davis v. Monahan*, 832 So. 2d 708, 711-12 (Fla.

2002) (affirming reasoning in *Yusuf*).

**C.    Plaintiffs' Claims Under Florida's Deceptive And Unfair Trade Practices Act Are
Barred By The Applicable Four Year Statute Of Limitations**

Plaintiffs allege that Flowers violated the Florida Deceptive and Unfair Trade Practices

Act, FLA. STAT. § 501.201, *et seq.* (the "FDUTPA"), by "making false representations of material

fact to Plaintiffs regarding the Flowers Distributor Program . . . ."   (Compl. ¶ 99, Tab 28.)

Plaintiffs also allege that Flowers violated FDUTPA "by failing to provide Plaintiffs with a

written disclosure or Uniform Franchise Offering Circular . . . that completely and accurately

FBT001332

disclosed the terms of the Flowers Distributorship Program." (Compl. ¶ 102, Tab 28.) Plaintiffs allege that Flowers' misrepresentations occurred during meetings with Plaintiffs held on July 1, 1994 and July 27, 1994, the latter meeting being the date on which most Plaintiffs signed the contract forming the basis of this action. (SMF ¶ 50.)

Plaintiffs' claims under FDUTPA are untimely as Florida's four-year statute of limitation applies to statutory claims such as under the FDUTPA. FLA. STAT. § 95.11(3)(f). That four-year period began to run at or around the time Plaintiffs signed their respective contracts, well in excess of four years prior to the commencement of this action. Accordingly, summary judgment is appropriate on all such claims.

D.    **Plaintiffs' Breach of Contract Claims That They Were Improperly Charged For Promotional And Feature Priced Items, And Not Properly Credited For Pay-By-Scan Accounts Have No Basis In Fact Or Law**

    1.    Plaintiffs' Claims That Flowers/Miami Failed To Provide Them With The Required Reduction In The Purchase Price Of Products When Adhering To Promotions And Feature Pricing Fail Because, In Fact, Plaintiffs Received Such Reductions On An Ongoing, Weekly Basis

Preliminarily, Flowers/Miami regularly engages in promotional/feature pricing in authorized charge accounts to generate additional sales and enhance product visibility. Such promotional/feature pricing also protects a distributor's equity (which is generally valued at ten times product sales) as such promotions are designed to increase branded unit sales. (SMF ¶ 54.) Section 12.2 of the Distributor Agreement provides in pertinent part:

> DISTRIBUTOR will adhere to all promotions and feature pricing with respect to the major and chain accounts in his/her Territory. Such promotions and feature pricing are optional with respect to local accounts. When DISTRIBUTOR follows promotions or feature pricing, DISTRIBUTOR will receive a reduction in his/her purchase price accounting for such promotion or feature pricing.

10

(SMF ¶ 55.)[3]

Of particular note, this section does not specify what the reduction will be, only that there will be *a* reduction. Of further note, this section specifies that a distributor will receive a reduction only *when* the distributor follows promotions or feature pricing, not before. This reduction in price given to distributors cannot be calculated until product delivery as there is no way for the Company to identify which units will be sold on promotion and which units will be sold by distributors at regular wholesale price. (SMF ¶ 57.) The difference between the regular, suggested wholesale price and the promotional price is referred to as the "price allowance." (SMF ¶ 56.)

As described in Flowers/Miami's Statement of Undisputed Material Facts, the reduction in price (off of the distributor's normal purchase price) is the Company's portion of the price allowance given to the retail account. (SMF ¶ 58.) As the Company's percentage portion of the price allowance is derived by subtracting the specified percentage discount (which generally ranges from 18% to 23%) from 100%, the Company bears the cost of most of the allowance. (SMF ¶¶ 51, 58.) The Company's philosophy of having distributors share in a small portion of the price allowance is based on the fact that feature pricing is intended to increase branded sales, which in turn benefits distributors' sales, income, and equity position. (SMF ¶ 61.)

This price allowance accounting methodology has been in place since Flowers/Miami converted to distributors in 1994. (SMF ¶ 60.) Since they have been distributors for Flowers/Miami, Plaintiffs, on a weekly basis, have received a weekly statement which includes a detailed accounting of price allowances, showing the additional reduction in the product purchase

---

[3] Additionally, Section 4.1 of the Agreement provides in pertinent part: "Products will be sold to DISTRIBUTOR at such terms and prices as established by COMPANY from time to time." (SMF ¶ 55.)

FBT001334

price the distributor receives when he/she follows the promotional/feature price. (SMF ¶ 64.) Furthermore, Plaintiffs have accepted the reduction in the product purchase price as calculated by the Company and, until this lawsuit, have never claimed that the Company was breaching the Distributor Agreement by calculating the reduced product purchase price in this manner, which it has done for years. (SMF ¶¶ 64-66.)

Contrary to Plaintiffs' claims, there is nothing in the Agreement to suggest Plaintiffs should receive a reduction in price equal to the full price allowance given the store, which they now claim. As noted above, the Distributor Agreement states the distributor will receive "a reduction in his/her purchase price accounting for such promotion or feature pricing." Flowers/Miami is doing precisely that. It is taking into account or considering the amount of the price allowance, bearing the lion's share of it, and reducing the distributor's purchase price accordingly. It is more than reasonable that distributors bear a small portion of the price allowance since feature pricing is intended to increase their branded sales, and, therefore, their income and equity position. This is particularly true given that the Company retains the right to set the terms and prices under Section 4.1 of the Agreement. Even assuming, *arguendo,* any ambiguity in the aforementioned contract language, the parties' ongoing performance under the contract, with Plaintiffs receiving detailed settlement statements every week and accepting the Company's methodology of computing the reduced purchase price, further confirms Plaintiffs do not have any actionable claim. Under Florida law:

> [t]he interpretation given by the parties to a contract is often the best indication of their intention at the time that the contract was entered into. Accordingly, where the terms of a written contract are in any respect doubtful or uncertain, it contains no provisions on a given point, or it fails to define with certainty the duties of the parties with respect to a particular matter or in a given emergency, and the parties to it have, by their conduct, placed a construction

FBT001335

upon it which is reasonable, <u>such construction must be adopted by the court</u>").

11 FLA. JUR. 2D § 150 (2005) (*emphasis added*) (citing various Florida state and federal court decisions); *see also Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So. 2d 544, 548 (Fla. Dist. Ct. App. 1973) ("[t]his court is committed to the doctrine that where the terms of a written contract are in any respect uncertain or doubtful and the parties thereto have by their conduct placed a construction upon the contract which is reasonable, such construction will be adopted by the court") (*quoting Orlando Orange Groves Co. v. Hale*, 161 So. 2d 284, 295 (Fla. 1935)); *Mesch v. Berry*, 528 So. 2d 1250, 1251-52 (Fla. Dist. Ct. App. 1988); *Am. Agronomics Corp. v. Ross*, 309 So. 2d 582, 584 (Fla. Dist. Ct. App. 1975). Accordingly, Flowers/Miami respectfully submits it should be granted summary judgment on Plaintiffs' claim for additional reductions in product purchase prices.[4]

> 2. <u>Plaintiffs' Claims That Flowers/Miami Breached The Distributor Agreement By Implementing Pay-By-Scan Accounting Fail Because Such Accounting Is Specifically Authorized By The Agreement And Because Such Accounting Is Required By Certain Major Retailers</u>

PBS is a retailer driven change in accounting methodology pursuant to which certain retailers will pay Flowers/Miami only for items scanned through the register. (SMF ¶ 67.) In Miami, a number of major accounts have implemented PBS accounting, including Wal-Mart, Winn Dixie, and Target. (SMF ¶ 68.) PBS eliminates the need for a retailer to check in the supplier and the supplier's inventory at the back door. Suppliers, such as distributors of Flowers/Miami, can deliver products directly to a PBS retailer's shelves. (SMF ¶ 69.) PBS

---

[4] Any breach of contract claim in excess of five years prior to the commencement of this action is barred by the five year statute of limitations set forth in FLA. STAT. § 95.11. Additionally, any claims of Plaintiffs' regarding improper charges for promotional and feature items under Count IX (breach of implied covenant of good faith and fair dealing) are barred for the reasons discussed above.

FBT001336

benefits both retailers and suppliers.  The principal benefits for a PBS supplier include elimination of wait and check-in time at the back door, the ability to redeploy this "freed up" time for sales growth, and additional flexibility in servicing PBS accounts.  (SMF ¶¶ 69-71.) Flowers/Miami's ability to meet large retailer requests and/or demands for PBS provide the Company and its distributors a competitive advantage and have strengthened the business relationships with such accounts, which inures to the benefit of Company distributors.  (SMF ¶¶ 72-74.)

Plaintiffs' claim that Flowers/Miami is somehow breaching the Distributor Agreement with PBS is legally unsupportable.  Under the Distributor Agreement, Flowers/Miami is only obligated to credit distributors' accounts for "accounts receivable" of authorized non-cash and chain accounts.  The Agreement does not state that distributors will be credited for product deliveries or when products are delivered to such accounts.  (SMF ¶ 77.)  In PBS accounts, accounts receivable do not arise until the goods are scanned through the retailer's register (*i.e.,* this is the point at which the PBS retailer agrees to pay Flowers/Miami for the goods that have been scanned through the register).  (SMF ¶ 79.)  Thus, Flowers/Miami is legally obligated under the Distributor Agreement to credit Plaintiffs' accounts only for such scanned goods.

Nonetheless, in conjunction with the implementation of PBS, Flowers/Miami (and other Flowers' subsidiaries) implemented an accounting system to provide distributors full credit for deliveries to PBS stores so that distributors did not have to wait for payment until items are scanned.  (SMF ¶ 80.)  The only difference between revenue from PBS customers and non-PBS customers from a distributor's standpoint is an occasional shrink reimbursement to the week-to-week advance credit given the distributor.  (SMF ¶ 81.)  While distributors are legally responsible for all product shrinkage, the Company has elected to share with its distributors the

14

FBT001337

financial impact of shrink. (SMF ¶ 82.) The Company bears most of the financial impact, but because some shrink is attributable to distributor error, the Company believes it is appropriate and reasonable for distributors to bear a small portion. (SMF ¶¶ 81-82.)

A detailed accounting analysis shows that each of the Plaintiffs have received proper and full credit for their PBS accounts. (SMF ¶¶ 83-85.) In a nutshell, Plaintiffs' claims regarding PBS boil down to the fact that they do not understand it. (SMF ¶ 149.) This is insufficient as a matter of law to create a material fact issue.[5]

### E.   Plaintiffs' Claims Of Breach Of Fiduciary Duty Fail Because The Distributor Relationship Between Plaintiffs And Flowers/Miami Is Not A Fiduciary Relationship

In Count V of their Complaint, Plaintiffs allege that the relationship between Plaintiffs and Flowers/Miami "was a confidential/fiduciary relationship" based on Flowers' alleged "complete domination and control over all aspects of Plaintiffs' business . . . ." (Compl. ¶ 108, Tab 28.) Based on the alleged conduct of Flowers/Miami throughout the independent contractor/franchise relationship with each Plaintiff, Plaintiffs allege that Flowers/Miami breached fiduciary duties allegedly owed to Plaintiffs. (Compl. ¶ 110, Tab 28.)

Plaintiffs' claims fail because the parties were not fiduciaries under Florida law. It is well-settled that franchiser/franchisee or independent contractor relationships "do not automatically give rise to fiduciary obligations." *Amoco Oil Co. v. Gomez*, 125 F. Supp. 2d 492, 509 (S.D. Fla. 2000) (citing *Riddle v. Mobile Oil Corp.*, No. 86-1636, 1992 U.S. Dist. LEXIS 4899, at *36 (S.D. Fla. Apr. 8, 1992)). Indeed, Judge Gold noted in the *Gomez* decision, "no court in the Eleventh Circuit or Florida has yet found that the fiduciary duty of disclosure extends to franchiser/franchisee relationships." *Gomez*, 125 F. Supp. 2d at 509.

---

[5] Any claims of Plaintiffs' regarding PBS under Count IX are also barred for the reasons discussed above.

CASE NO.: 05-21738-CIV-SEITZ (Magistrate Judge McAliley)

In the franchiser/franchisee or independent contractor context, the Southern District of

Florida and other courts in this circuit require a plaintiff to establish a fiduciary relationship

through proof of facts independent of the parties' contracts. As explained in *Gomez*:

> A fiduciary relationship exists when there is a relationship of trust
> and confidence between parties, where confidence is given by one
> and trust is accepted by the other. It is not enough for Gomez to
> prove that she placed her trust and confidence in [the defendant].
> She must also introduce "substantial evidence" that [the defendant]
> recognized, accepted, or undertook the duties of a fiduciary – that
> of advising, counseling, and protecting Gomez.

*Gomez*, 125 F. Supp. 2d at 509-10 (internal citations omitted). That is, it is critical for a plaintiff

to prove that the defendant affirmatively undertook the duties of a fiduciary relationship. *Id.*

In *Gomez*, the franchisee and independent contractor selling fuel owned by the Amoco

Oil Company brought a claim against Amoco alleging that it breached its fiduciary duty to

Gomez by failing to disclose certain facts concerning the franchised gas station at the time the

parties entered into the contract. *Gomez*, 125 F. Supp. 2d at 426-27. The court found significant,

if not dispositive, that the parties' agreement demonstrated an arms length transaction by way of

the following language:

> This Agreement creates an independent contractor relationship . . .
> This Agreement is not intended to, nor does it create a joint
> venture, partnership or employer/employee relationship between
> the parties . . . . No obligation, agreement or understanding shall
> be implied from any course of dealing or from any of the terms and
> provisions of the Agreement or the Lease, all obligations and
> understandings with respect to the subject matter hereof being
> expressly set forth in this Agreement and the Lease.

*Id.* at 509. After noting that other cases in this district have held that similar contractual language

fails to establish a fiduciary relationship, and that Gomez could not prove that Amoco

affirmatively undertook the duties of "advising, counseling, and protecting" Gomez, the court

dismissed Gomez' claim for breach of fiduciary duty. *Id.* at 509-10.

16

Plaintiffs' breach of fiduciary duty claims in the instant case are analogous to *Gomez* and should likewise be dismissed. Plaintiffs' contracts with Flowers/Miami specifically disclaim a fiduciary relationship, noting "[t]he parties do not intend to act as joint employers, parent/subsidiary, joint venturers, or any other legal capacity other than separate and distinct businesses acting pursuant to the terms of this Agreement." (SMF ¶ 86.)

While Plaintiffs assert that certain alleged control elements create a fiduciary relationship, such allegations do not demonstrate that Flowers/Miami undertook the role of advising, counseling, and protecting Plaintiffs. Rather, such allegations relate solely to whether Flowers/Miami has breached the Distributor Agreement. This conclusion is further buttressed by the fact that Plaintiffs' own testimony provides substantial evidence of an independent contractor relationship. (SMF ¶¶ 87-88, 96, 99-101, 142-48.) Moreover, even if it could be said that Plaintiffs naively relied on alleged representations or superior knowledge of Flowers/Miami in entering into the independent contractor agreement, such reliance does not create a fiduciary relationship under Florida law. *See Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1019 (S.D. Fla. 1992) (relying on recommendation, advice, and superior knowledge of defendant that eventually defrauds plaintiff did not create fiduciary relationship). Accordingly, Flowers/Miami respectfully submits it is entitled to summary judgment on Plaintiffs' claims for breach of fiduciary duty.

F.  **Assuming, *Arguendo*, Plaintiffs Are Employees Under The Fair Labor Standards Act (FLSA), Plaintiffs' Claims For Overtime Compensation Under Such Act Are Barred By Both The Motor Carrier And Outside Sales Exemptions**

Plaintiffs contend they were not paid overtime wages; however, even assuming, *arguendo*, that Plaintiffs are employees, they are exempt from FLSA overtime coverage under

17

FBT001340

both the Motor Carrier Act and outside sales exemptions. Accordingly, Flowers/Miami respectfully submits it should be granted summary judgment on Plaintiffs' claims for overtime.[6]

    1.    <u>Plaintiffs Are Exempt From The FLSA's Overtime Requirements Under The Motor Carrier Act</u>

Under Section 7 of the FLSA, employers are required to pay overtime pay to employees who work in excess of 40 hours in a workweek. 29 U.S.C. § 207(a)(1). The provisions of Section 7, however, do not apply with respect to an employee over whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to 49 U.S.C. § 31502 of the Motor Carrier Act (MCA). 29 U.S.C. § 213(b)(1).[7] Rather, an employee over whom the Secretary has such power is automatically excluded from the overtime requirements of Section 7 of the FLSA. 29 C.F.R. § 782.1(a). The Secretary of Transportation, under the MCA, has the power to establish maximum hours and qualifications of employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under § 31502 of the MCA and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate commerce within the meaning of the MCA. 29 C.F.R. § 782.2(a). Thus, the critical inquiries for application of the exemption are whether Plaintiffs were employed by a carrier subject to the Secretary's jurisdiction, whether

---

[6] Further assuming, *arguendo*, Plaintiffs are employees under the FLSA, Plaintiffs' claims for minimum wage are barred because the outside sales exemption, discussed below, applies to both Plaintiffs' claims for overtime as well as minimum wage. Additionally, there is no evidence of record to suggest that Plaintiffs did not receive the minimum wage. To the contrary, Plaintiffs' net income, as set forth above, confirms that they received compensation well in excess of the current minimum wage. (SMF ¶ 25.)

[7] In 2005, the President signed into law the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), which arguably modified the Motor Carrier Act to provide that the Secretary had jurisdiction only if the vehicle in question (including its load) weighs over 10,000 pounds. This was an unintentional consequence of the Act and legislation is planned to correct the error. The Department of Labor continues to take its traditional position, *i.e.*, no weight requirement. This arguable change to the motion carrier exemption is irrelevant to the instant case as all vehicles used by the Plaintiffs meet the SAFETEA-LU weight threshold. (SMF ¶ 90.)

FBT001341

Plaintiffs engaged in activities directly affecting safe operation of motor vehicles, and whether Plaintiffs' activities involved interstate commerce. The answer to each of these questions is yes.

> i.    *Plaintiffs Were Employees Of A Carrier Subject To The Secretary of Transportation's Jurisdiction*

To qualify for the MCA exemption, Plaintiffs must be employed by a carrier subject to the Secretary of Transportation's jurisdiction under 49 U.S.C. § 31502. The Secretary's jurisdiction under § 31502 extends to employees of a "motor carrier" and of a "motor private carrier" when needed to promote safety of operations. 49 U.S.C. § 31502(b). A motor private carrier is a person transporting property by motor vehicle when transportation is in interstate commerce; the person is the owner, lessee, or bailee or property being transported; and the property is being transported for sale, lease, rent or bailment or to further a commercial enterprise. 49 U.S.C. § 13102(13). In this case, uncontradicted evidence establishes that Plaintiffs drove delivery vans or trucks from which they distributed baked goods for Flowers/Miami. (SMF ¶ 89.) Plaintiffs delivered these baked goods to customers throughout the South Miami area who purchased those goods for resale. (SMF ¶¶ 91, 101.) Thus, as "employees," Plaintiffs were transporting property (baked goods) on behalf of Flowers/Miami for the purpose of selling and distributing that property to customers in the furtherance of a commercial enterprise. The first element for the MCA exemption is, therefore, satisfied. *Shew v. Southland Corp.*, 370 F.2d 376 (5th Cir. 1966) (transport driver covered by MCA exemption); *see also Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670 (10th Cir. 1993) (route delivery driver covered by MCA exemption).

19

FBT001342

CASE NO.: 05-21738-CIV-SEITZ (Magistrate Judge McAliley)

    ii.    *Plaintiffs Were Engaged In Activities That Directly Affected Operational
Safety Of Motor Vehicles*

The MCA exemption is applicable to those employees who are drivers, drivers' helpers,
loaders, or mechanics or those employees who directly affect the safe operation of motor
vehicles on the public highways in transportation in interstate commerce. *See Levinson v.
Spector Motor Serv.*, 330 U.S. 649, 678 (1947); 29 C.F.R. § 782.2(b)(2). It is the character of
the activities rather than the proportion of either the employee's time or activities that
determines the Secretary's need for the power to establish requirements for qualifications and
hours of service. *Levinson*, 330 U.S. at 674-75. Thus, the Supreme Court has held that drivers
with only 4% of their trips involving interstate commerce were still exempt from the FLSA's
overtime requirements because they directly affected the safe operation of motor vehicles in
interstate commerce. *Morris v. McComb*, 332 U.S. 422, 431-36 (1947); *see also Rogers
Cartage Co. v. Reynolds*, 166 F.2d 317, 321-22 (6th Cir. 1948) (although intrastate driving
occupied larger percentage of driver's time, the existence of interstate trips resulted in
application of MCA exemption); *Martin v. Airborne Express*, 16 F. Supp. 2d 623, 628-29
(E.D.N.C. 1996) (small number of actual interstate deliveries along with intrastate delivery of
packages originating out-of-state sufficient to invoke MCA exemption).

In this case, the evidence shows that, as a group, Plaintiffs delivered substantial product
that originated from out of state. During the years 2002–2005, no Plaintiff had less than 4.65%
of his total sales involved in interstate commerce, and the percentage was as high as 18.09%, all
above the 4% figure deemed sufficient by the Supreme Court. Although 2006 is not yet
complete, the evidence shows Plaintiffs' continued involvement in interstate commerce, with
sales of out-of-state product ranging from a low of 3.65% to a high of 20.16%. (SMF ¶¶ 91-
94.)

20

FBT001343

Under Supreme Court precedent, Plaintiffs, as drivers of delivery vehicles and as distributors of products originating from out-of-state, directly affected the safe operation of motor vehicles on public highways.

      iii.    *Plaintiffs Transported Goods In Interstate Commerce*

The final requirement for MCA application is that there must be transportation in interstate commerce. Transportation is interstate in nature when it involves either the actual transport of goods across state lines or the intrastate transport of goods in the flow of, or as part of a continuous movement in, interstate commerce. *Merchants Fast Motor Lines, Inc.* v. *ICC*, 528 F.2d 1042, 1044 (5th Cir. 1976); *Shew*, 370 F.2d at 380. If a driver transports goods wholly intrastate but the goods originated out-of-state, this activity is still within "interstate commerce" if there is a practical continuity of movement across state lines from the point of origin to the point of destination. Thus, entry of out-of-state goods into a warehouse where they are transferred for delivery to a local driver does not interrupt the interstate journey if the pause in the movement of goods in the warehouse is a convenient intermediate step of getting the products to their final destination. In such a case, there is a practical continuity of movement until the goods reach the customers for whom they were intended. *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943); *Galbreath v. Gulf Oil Corp.*, 413 F.2d 941, 945 (5th Cir. 1969); *Shew*, 370 F.2d at 380.

The *Shew* case is instructive given its factual similarity to the instant case. Southland owned a milk processing and packaging plant in Dallas, Texas, from which milk was distributed to its branches throughout Texas by private delivery trucks. The Dallas plant also received already manufactured products, such as butter and cream, from out-of-state producers. These out-of-state products were distributed from Dallas to other Texas branches by the same private

FBT001344

delivery trucks. Butter and cream were ordered every other day by branches in anticipation of their needs and the orders were consolidated at the Dallas office and then placed with out-of-state producers. No processing or alteration was done on these out-of-state products at the Dallas plant. The plaintiff was one of Southland's delivery drivers who regularly delivered Southland's milk products, as well as butter and the other out-of-state products, to the Midland-Odessa branches of Southland. He claimed that because he drove wholly intrastate he was not exempt.

The Fifth Circuit rejected the plaintiff's argument. The Fifth Circuit found that notwithstanding the intrastate driving by the plaintiff, there was a substantial movement of commodities in interstate commerce, by virtue of distribution of the out-of-state products. Those products were distributed by the plaintiff within the same or the next day of their initial delivery to the Dallas plant, pursuant to pre-existing orders from Southland's Texas branches, and were not processed or altered during their brief stay in Dallas. The court concluded that "[t]hough the transportation by Southland from Dallas to points in Texas is between points in the same state, these shipments originate out of state and are part of a continuous movement in interstate commerce." 370 F.2d at 380. Accordingly, the court held that the plaintiff was exempt from the overtime requirements of the FLSA because of the MCA exemption.

Two recent cases illustrate that courts continue to apply the same rationale. In *Alvarado v. I.G.W.T. Delivery Sys.*, 410 F. Supp. 2d 1272 (S.D. Fla. 2006), employees who were drivers for an independent subcontractor affiliated with an international delivery service were found to be exempt from overtime wages based upon the motor carrier exemption. The court stated:

> . . . Plaintiffs played a key intermediary role in the fulfillment of preexisting orders by delivering letters and packages to and from the DHL terminal to their ultimate interstate or international destinations. It is irrelevant that the plaintiffs themselves only traveled within the South Florida area picking up and delivering

FBT001345

packages, as this is enough to satisfy the interstate commerce requirement.

410 F. Supp. 2d at 1277.

A case more factually analogous is *Billings v. Rolling Frito-Lay Sales LP*, 413 F. Supp. 2d 817 (S.D. Tex. 2006). *Billings* involved a route sales representative who picked up inventory from a distribution center, delivered it to customers, and returned empty containers. The court held that the distribution centers were simply part of a continuous shipping process from the manufacturing facilities, located throughout the United States, to the retailers. The fact that the plaintiff worked only in the state of Texas was irrelevant.

This case is no different. When Plaintiffs had a customer that desired BlueBird or Cobblestone Mill products, which are baked by Flowers' subsidiaries outside the state of Florida, there was no standing inventory from which to obtain that product. Rather, they would place an order for a specified amount of the desired product. That order would in turn be passed on to the out-of-state producing plant. After baking the product, the producing plant would then ship the product to the bakery in Miami. Once the product arrived in Miami, it was then shipped to the Perrine warehouse. Plaintiffs would then deliver the product to the customers. The BlueBird and Cobblestone Mill products were in a continuous flow of interstate commerce from the moment they were shipped until their delivery by Plaintiffs. (SMF ¶¶ 91-94.) Thus, Plaintiffs meet the third requirement – transportation of goods in interstate commerce – of the MCA exemption.

2.    Plaintiffs Are Also Exempt From Both The Minimum Wage And The Overtime Requirements Of The FLSA Because They Were Outside Salesmen

Plaintiffs are exempt from both the minimum wage and overtime requirements of the Act as outside salesmen. *See* 29 U.S.C. § 213(a)(1). The Department of Labor has issued regulations

23

FBT001346

on the outside sales exemption, defining "outside salesman" as an employee (1) who is employed for the purpose of and who is customarily and regularly engaged away from his employer's business in making sales and (2) whose hours of work of a nature other than those that are making sales do not exceed 20% of the hours worked in the workweek by nonexempt employees of the employer, provided that work performed incidental to and in conjunction with the employee's own outside sales, including incidental deliveries and collections, shall not be regarded as exempt work. 29 C.F.R. § 541.500.   Driver salesmen are included within this definition if their primary duty is the making of sales or taking of orders, and all work incidental to their sales work is considered exempt work. 29 C.F.R. § 541.505. Specifically, the regulations provide:

> [T]here is little question that a routeman who provides the only sales contact between the employer and the customers, who calls on customers and takes orders for products which he delivers from stock in his vehicle or procures and delivers to the customer on a later trip, and who receives compensation commensurate with the volume of products sold, is employed for the purpose of making sales.

29 C.F.R. § 541.505(b).

Ackerman v. Coca-Cola Enter., Inc., 179 F.3d 1260 (10th Cir. 1999), exemplifies the application of the outside sales regulations, particularly to driver-salesmen.  In that case, the plaintiffs were sales representatives and account managers, whose primary responsibility was to sell Coca-Cola products to grocery stores, convenience stores and mass merchandisers.  Part of the regular job duties involved merchandising, which included tasks such as delivering products, restocking shelves, rotating products, setting up displays and other similar tasks.  The plaintiffs challenged their classification as outside salesmen, arguing that the merchandising work they performed, which exceeded 20% of the hours worked by nonexempt merchandisers, was

FBT001347

nonexempt in nature, thus making the outside sales exemption inapplicable to them. Referring to the regulations applying to promotion work and driver-salesmen found at 29 C.F.R. §§ 504 and 505, the Tenth Circuit noted:

> In both instances, the key inquiry is whether the employee in question actually consummates the sales of his or her employer's products at a particular location. If that employee consummates the sale but also performs a variety of other tasks intended to promote the company's products but not directly involving sales, those tasks may still be considered "incidental to and in conjunction with" those sales under the regulations.

179 F.3d at 1265. The court went on to note that a driver who "takes orders or obtains commitments" from customers for the products he delivers is engaged in selling and his activities such as delivering the products, shelving them and performing other promotion work are incidental exempt work. *Id.* at 1266 (quoting 29 C.F.R. § 541.505(d)). With respect to the plaintiffs before it, the court held that they were outside salesmen, resembling the exempt driver salesman described in 29 C.F.R. § 541.505(d), because they took orders and consummated sales with their customers. All other duties were incidental to their primary sales duty. *Id.* at 1266.

Plaintiffs had the exclusive rights to sell Flowers/Miami branded products within their defined territories. On a daily basis, Plaintiffs took orders for their customers, submitted these orders, delivered the products, shelved the products at the customer's location, rotated the product, removed the product when appropriate and handled special displays. They regularly spoke with management representatives of the customer and with individual consumers, both with the desire of increasing sales. All other duties are incidental to their sales duties. For certain cash customers, Plaintiffs handled all financial matters. Plaintiffs' earnings were totally dependent upon their sales. The more products they sold, the more money they made. Plaintiffs,

25

FBT001348

not anyone else, consummated the sales of Flowers/Miami products to customers in Plaintiffs'

territories. (SMF ¶¶ 95-101.) They are outside salespersons as a matter of law.[8]

**G.    Plaintiffs' Fraudulent Inducement And Negligent Misrepresentation[9] Claims Are
Not Actionable[10]**

    1.    The Economic Loss Rule Precludes Plaintiffs From Recovering Monetary
        Damages On Their Claims

        *i.    Plaintiffs' Fraudulent Inducement Claims Are Not Extraneous To The
            Breach Of Contract Claim*

The economic loss rule provides that "a party to a contract may not pursue a claim in tort

for solely economic losses unless the party breaching the contract has committed a tort which is

distinguishable from or independent of the breach of contract." *Excess Risk Underwriters, Inc. v.*

*Lafayette Life Ins. Co.,* 208 F. Supp. 2d 1310, 1315 (S.D. Fla. 2002) (*quoting Medalie v. FSC*

*Sec. Corp.,* 87 F. Supp. 2d 1295, 1299-1300 (S.D. Fla. 2000)).    Applying the rule in the

fraudulent inducement context, the court in *S&B Invs., LLC v. Motiva Enters., LLC,* No. 03-

61993, 2004 U.S. Dist. LEXIS 27502, at *10 (S.D. Fla. Dec. 6, 2004), explained that:

> The Court must look at the facts alleged and the relief sought to see
> if the fraudulent inducement claims are extraneous to the breach of
> contract or so closely interwoven with the breach to determine
> whether the economic loss rule bars the pleading of a separate tort
> claim.    The best way to give life to this abstraction is to see
> whether the misrepresentations relate to the Defendant's failure to

---

[8] Plaintiffs also seek punitive damages under their FLSA claim.  It is well-settled that punitive damages are not
available under the FLSA. *See, e.g., Bolick v. Brevard County Sheriff's Dept.,* 937 F. Supp. 1560 (M.D. Fla. 1996).
Additionally, any claims greater than two years prior to the filing of the Complaint are time barred.  29 U.S.C.
§ 255(a).
[9] Plaintiffs' negligent misrepresentation/omission claim fails for the same reasons detailed below.  In addition,
Plaintiffs' claim fails because there is no record evidence to show Plaintiffs investigated the alleged falsity of the
purported misrepresentations. *See Allocco v. City of Coral Gables,* 221 F. Supp. 2d 1317, 1356 (S.D. Fla. 2002).
[10] To the extent Plaintiffs' Complaint is construed as attempting to avoid the statute of limitations by asserting
fraudulent concealment, Plaintiffs' pleading is insufficient. *See Hall v. Burger King Corp.,* 912 F. Supp. 1509,
1536 (S.D. Fla. 1995) (*quoting Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 88 (2d Cir. 1961)).

FBT001349

perform the contract. If they do, then Plaintiff cannot maintain an independent tort.[11]

One of the alleged material breaches of the Distributor Agreement Plaintiffs cite in their breach of contract claim (Count IV) is Flowers' "[f]ailure to fully cooperate with Plaintiffs' sales effort as required under Section 6.1 of the Distribut[or] Agreement." (SMF ¶ 102.) Similarly, in support of their fraudulent inducement claim (Count VII), Plaintiffs' Complaint lists "Flowers cooperation with Plaintiffs' sales efforts" as an alleged misrepresentation that induced them to enter into the Distributor Agreement. (SMF ¶ 103.) This asserted basis for Plaintiffs' fraudulent inducement claim clearly is not extraneous to their breach of contract claim – indeed, it directly relates to Flowers' alleged failure to perform under the contract.

Likewise interwoven, Plaintiffs contend in their breach of contract claim that Flowers "[p]revent[ed] Plaintiffs from conducting their distributorship businesses separate, apart, and independent from Flowers as required by...the Distribut[or] Agreement," while Plaintiffs' fraudulent inducement claim alleges misrepresentations by Flowers representatives concerning "Flowers control over Plaintiffs' business activities." (SMF ¶¶ 104-05.) This basis for Plaintiffs' fraudulent inducement claim also relates to Flowers' alleged failure to perform under the Agreement.

Because the fraudulent inducement alleged by the Plaintiffs is not independent of the breach of contract claim, Plaintiffs' fraudulent inducement claim in the above-described respects is barred by the economic loss rule.

---

[11] A plaintiff may not avoid the economic loss rule by merely labeling a claim as fraud in the inducement. *See Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d at 1318-19.

FBT001350

    *ii.*    *The Distributor Agreement Encompasses The Topics Of The Alleged Misrepresentations That Purportedly Induced Plaintiffs To Enter Into The Agreement*

Plaintiffs' claims for fraudulent inducement and negligent misrepresentation are also barred by the economic loss rule to the extent that any allegedly fraudulent statements that purportedly induced the Plaintiffs to enter into their Distributor Agreements were embodied in the Agreements.[12] *See Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d at 1318 ("[b]ecause the statements allegedly made...to induce [plaintiff] to enter into the contracts also were embodied in the contracts, the claim for fraudulent inducement is barred by the economic loss rule").

Alleged misrepresentations by Flowers listed in the Complaint concern the following subjects:

- Scope of distributors' territories (SMF ¶ 106.)
- Opportunity for distributors to expand their territories (SMF ¶ 108.)
- Flowers' assistance to distributors (SMF ¶ 110.)
- Independence of distributors (SMF ¶¶ 104-05, 112.)
- Distributors' expected profits (SMF ¶ 114.)
- Alignment of the business interests of Flowers and Plaintiffs (SMF ¶ 116.)
- Quantity of products to be sold by distributors (SMF ¶ 118.)
- Sale of distribution rights unreasonable for the market (SMF ¶ 120.)
- Plaintiffs' total investment  (SMF ¶ 122.)

Each of these topics, however, is covered in the Agreement (often in multiple sections). (SMF ¶ 107 (scope of distributors' territories); SMF ¶ 109 (opportunity for distributors   to

---

[12] *See Flamenbaum v. Orient Lines, Inc.*, No. 03-22549, 2004 U.S. Dist. LEXIS 14718, at *23 (S.D. Fla. July 28, 2004).

FBT001351

expand territory); SMF ¶¶ 111, 113 (Flowers' assistance to distributors); SMF ¶ 113 (independence of distributors); SMF ¶ 115 (distributors' expected profits); SMF ¶ 117 (alignment of the business interests of Flowers and Plaintiffs); SMF ¶ 119 (quantity of products to be sold by distributors); SMF ¶ 121 (sale of distribution rights unreasonable for the market); SMF ¶ 123 (Plaintiffs' total investment).) Therefore, Plaintiffs' fraudulent inducement claims are barred by the economic loss rule.

2.    Plaintiffs' Fraudulent Inducement Claims Fail On The Merits

Assuming, *arguendo*, Plaintiffs' fraudulent inducement claims are not barred by the economic loss rule, Plaintiffs' claims fail on the merits because they have not established several of the requisite elements.

A claim of fraud in the inducement requires each of the following elements to be proven by clear and convincing evidence:

> (1) A misrepresentation of a material fact;
>
> (2) The representor of the misrepresentation knew or should have known of the statement's falsity;
>
> (3) Intent by the representor that the representation will induce another to rely and act on it; and
>
> (4) Resulting injury to the party acting in justifiable/reasonable reliance on the representation.

*Cibran Enters. v. BP Prods. N. Am., Inc.*, 365 F. Supp. 2d 1241, 1252 (S.D. Fla. 2005).

Plaintiffs' claims for fraudulent inducement fail at the outset because Plaintiffs cannot establish that Flowers' representatives made misrepresentations concerning a material fact.  In order to constitute a "representation" in the fraud context, a statement must concern a present or past fact.  Indeed, "[a] promise of future action...cannot, standing alone, be a basis for fraud because *it is not a representation*, there is no right to rely on it, and it is not false when made."

29

*Schubot v. McDonalds Corp.*, 757 F. Supp. 1351, 1356 (S.D. Fla. 1990) (emphasis added) (*quoting Cavic v. Grand Bahama Dev. Co., Ltd.*, 701 F.2d 879, 883-84 (11th Cir. 1983)).

Many of the alleged misrepresentations cited in Plaintiffs' Complaint, however, concern just such non-actionable statements. (SMF ¶ 140.) Neither these statements, nor the alleged representations of a similarly prospective nature contained within Plaintiffs' deposition testimony, can form the basis of a fraud claim.

In addition, Plaintiffs cannot establish fraudulent inducement because many of the professed "misrepresentations" listed in Plaintiffs' Complaint by unnamed Flowers' representatives were not false statements at all:

- Although Plaintiffs claim "Flowers representatives" made misrepresentations with respect to "Flowers training and management assistance to Plaintiffs" (SMF ¶ 110.), the testimony of several of the Plaintiffs evidences their satisfaction with the assistance Flowers was providing them. (SMF ¶¶ 124-27.) In fact, Quarles testified that, as of January 20, 2002, he was getting all the assistance with his distributorship from Flowers he wanted, there was nothing Flowers had neglected to do to assist him in running his distributorship, and Flowers helped him be a "business success." (SMF ¶ 127.)

- Plaintiffs contend that Flowers' representatives made misrepresentations with respect to "subsidiz[ing] Plaintiffs' independent distributorships until Plaintiffs' businesses would be viable." (Compl. ¶ 120(e), Tab 28.) Luton testified that Flowers explained that the subsidy was temporary, and Spell testified that the subsidy's discontinuance is not even an issue in this lawsuit. (SMF ¶¶ 128-29.) Moreover, the record evidence indicates Plaintiffs' distributorships were viable from day one. (SMF ¶¶ 11, 25.)

30

FBT001353

- Plaintiffs allege that Flowers' representatives made representations concerning the composition/scope of distributors' territories. (SMF ¶ 106.) Certain Plaintiffs testified, however, that they understood their territories consisted of discrete sections (rather than an all encompassing area), as reflected in their Agreements. (SMF ¶¶ 130-33.)

- Plaintiffs assert that Flowers' representatives made "[m]isrepresentations regarding the amount of profits which the Plaintiffs could expect" from their distributorships. (SMF ¶ 114.) Again, Plaintiffs' testimony and the financial performance of their distributorships refute the allegation in their Complaint. (SMF ¶¶ 25, 134-36.)

       *i.*     *Flowers' Representatives Did Not Make Representations To Plaintiffs That The Representatives Knew Or Should Have Known Were False*

Because, as shown above, the alleged misrepresentations by "Flowers representatives" that Plaintiffs cite in their Complaint and their depositions do not constitute false statements of past or present fact, logically, Plaintiffs cannot establish that Flowers' representative(s) knew or should have known of a statement's falsity.

Additionally, Plaintiffs fail to offer clear and convincing evidence that Flowers' representatives knew or should have known of the purported falsity of any alleged misrepresentations made to Plaintiffs. Those few Plaintiffs who contended that a Flowers' representative had knowledge of any representation's falsity, or that such knowledge could be imputed to a Flowers' representative, offered only conclusory allegations and conjecture in support of their contention. (SMF ¶ 136.) This "evidence" is insufficient as a matter of law. *See Employers Reins. Corp. v. Neighborhood Health P'ship, Inc.*, No. 01-4233, 2003 U.S. Dist. LEXIS, at *10 (S.D. Fla. April 15, 2004).

31

CASE NO.: 05-21738-CIV-SEITZ (Magistrate Judge McAliley)

ii.   *Plaintiffs Did Not Reasonably Rely On Any Purported Misrepresentations By Flowers Representatives*

Plaintiffs' fraudulent inducement claim also fails because they cannot establish the claim's fourth element: reasonable/justifiable reliance on purported misrepresentations.[13] In the fraud context, the "[merger] doctrine precludes reliance on a prior representation if the subject matter of the representation is adequately covered in the subsequent agreement entered into by the parties." *S&B Invs., LLC v. Motiva Enters., LLC*, 2004 U.S. Dist. LEXIS 27502, at *13-14 (*citing Schubot v. McDonalds Corp.*, 757 F. Supp. at 1358).

The Distributor Agreement executed by each Plaintiff contains an explicit merger/integration clause, entitled "**Entire Agreement**." (SMF ¶¶ 14, 137.) The existence of such a merger/integration clause in a contract executed subsequent to the alleged representations, although not required for the merger doctrine to apply, is a relevant factor that supports the doctrine's application. *See S&B Invs., LLC v. Motiva Enters., LLC*, 2004 U.S. Dist. LEXIS 27502, at *13-14) (court holding that plaintiff's fraud and negligent misrepresentation claims were "barred by the merger doctrine" and noting that "[t]he Agreement also contains an integration clause...that fact is relevant") (internal citations omitted); *Citicorp Vendor Fin. v. Mavic Med. Ctr.*, No. 02-22279, 2003 U.S. Dist. LEXIS 17618, at *11 (S.D. Fla. Sept. 9, 2003) (lease contained "a specific merger clause which makes it unreasonable, as a matter of law, for Defendants to have relied on any pre-contractual oral representations allegedly made by Plaintiff").

---

[13] Moreover, there is record evidence showing that several Plaintiffs did not actually rely on the alleged misrepresentations by Flowers which they now contend fraudulently induced them to enter into their Distributor Agreements. (SMF ¶ 138-39.)

32

Beyond merely constituting a relevant factor, the fact that the Distributor Agreement addresses the same topics as the alleged misrepresentations upon which Plaintiffs claim reliance is dispositive as to their fraud and negligent misrepresentation claims. *See Citicorp Vendor Fin. v. Mavic Med. Ctr.*, 2003 U.S. Dist. LEXIS 17618, at *11 ("[u]nder Florida law, it is well established that a party cannot recover based on alleged oral misrepresentations that are *adequately covered or expressly contradicted* in a later written contract") (emphasis added) (*citing Hillcrest Pacific Corp. v. Yamamura*, 727 So. 2d 1053, 1055-56 (Fla. Dist. Ct. App. 1999)). As comprehensively detailed above, the topics of the purported misrepresentations allegedly made to the Plaintiffs by Flowers' representatives are addressed within and/or contradicted by the Distributor Agreement.[14]

### 3.    Plaintiffs Waived Any Fraud Claim

Finally, to the extent Plaintiffs were ever able to establish a claim for fraudulent inducement, they waived such claim because, subsequent to becoming aware of the facts underlying what they now assert were fraudulent misrepresentations: 1) they continued to operate under their Distributor Agreements for years without filing suit;[15] and 2) they entered into addenda/updates/modifications to their Distributor Agreements and/or executed promissory notes for the purchase of additional distribution rights. (SMF ¶ 141.)[16]

---

[14] *See, infra,* section G(1)(ii) of this Memorandum.
[15] *See Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 921 So. 2d 43, 48 (Fla. Dist. Ct. App. 2006).
[16] *See Amoco Oil Co. v. Gomez*, 125 F. Supp. 2d 492, 507 (S.D. Fla. 2000).

FBT001356

CASE NO.: 05-21738-CIV-SEITZ (Magistrate Judge McAliley)

IV.    **CONCLUSION**

For the foregoing reasons, Flowers/Miami respectfully submits that the Court should

grant it summary judgment on Plaintiffs' claims addressed above.

Respectfully submitted this 25th day of October 2006.

By:

DAVID M. DeMAIO
Florida Bar No. 886513
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
701 Brickell Avenue
Suite 2020
Miami, Florida 33131
(305) 374-0506
(305) 374-0456 (fax)
david.demaio@ogletreedeakins.com

KEVIN P. HISHTA
Georgia Bar No. 357410
Admitted *Pro Hac Vice*
JOHN K. ANDERSON
Georgia Bar No. 017450
Admitted *Pro Hac Vice*
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
600 Peachtree Street, NE
Suite 2100
Atlanta, GA 30308
(404) 881-1300
(404) 870-1732 (fax)
Kevin.Hishta@ogletreedeakins.com
John.Anderson@ogletreedeakins.com

Counsel for Defendant Flowers Baking Co. of
Miami, LLC

34

## CERTIFICATE OF SERVICE

I hereby certify that I have this $\underline{25^{th}}$ day of October 2006 served opposing counsel with

a true and correct copy of Defendant Flowers Baking Co. of Miami, LLC's Motion for Partial

Summary Judgment (With Incorporated Memorandum of Law), by placing same in the United

States Mail, postage prepaid, and addressed as follows:

Herman J. Russomanno
Robert J. Borrello
Russomanno & Borrello, P.A.
Museum Tower - Penthouse 2800
150 West Flagler Street
Miami, FL 33130

Robert Zarco
Robert M. Einhorn
Michelle Odio
Zarco Einhorn Salkowski & Brito, P.A.
Bank of America Tower
100 Southeast 2nd Street
Suite 2700
Miami, FL 33131

By: _____

David DeMaio

# Exhibit D

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-21738-CIV-SEITZ/MCALILEY

KEITH D. QUARLES, CHARLES C.          )
LUTON, JOSEPH MAGILL, KEITH           )
SPELL, JOSE C. OCHOA, MARCUS          )
JOHNSON, EFRAIN SANTANA,              )
DANIEL LEON and SVEIN NYLUND,         )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    )
                                      )
FLOWERS FOODS, INC.,                  )
FLOWERS BAKING CO. of                 )
THOMASVILLE, LLC; FLOWERS             )
BAKING CO. of FLORIDA, LLC.,          )
FLOWERS BAKING CO. of MIAMI,          )
LLC., f/k/a FLOWERS BAKING CO.        )
of MIAMI, INC.                        )
        Defendants.                   )
                                      )
                                      )

## JOINT MOTION FOR COURT APPROVAL OF DISMISSAL OF PLAINTIFFS' FLSA CLAIMS PURSUANT TO STIPULATED CONSENT JUDGMENT

Plaintiffs Keith Quarles, Charles Luton, Joseph Magill, Keith Spell, Jose Ochoa, Marcus Johnson, Efrain Santana, Daniel Leon, and Svein Nylund, and Defendants Flowers Foods, Inc., Flowers Baking Co. of Thomasville, LLC, Flowers Baking Co. of Florida, LLC, and Flowers Baking Co. of Miami, LLC (collectively "the Parties"), having reached a tentative confidential agreement, now file this Joint Motion for Court Approval of Dismissal of Plaintiffs' Fair Labor Standards Act Claims Pursuant to Stipulated Consent Judgment and would show the Court as follows:

1.    Plaintiffs filed a Complaint on June 7, 2005, which included allegations that they "routinely worked more than forty (40) hours per week" and that Defendants "intentionally and willfully did not pay Plaintiffs the minimum wage or overtime wages as required by the [Fair Labor Standards Act, 29 U.S.C. § 201 et seq.]."

2.    As more fully detailed in Defendants' Motion for Partial Summary Judgment (With Incorporated Memorandum of Law), facts adduced during discovery revealed that Plaintiffs have no cognizable claims under the Fair Labor Standards Act ("FLSA" or "Act"). Defendants deny committing any violation of the FLSA and assert that Plaintiffs are exempt from the overtime requirements of the FLSA pursuant to the Motor Carrier Act. *See* 49 U.S.C. § 31502; 29 C.F.R. § 782.1(a). Furthermore, Defendants assert that Plaintiffs are exempt from both the minimum wage and overtime requirements of the Act as outside salesmen. *See* 29 U.S.C. § 213(a)(1). Plaintiffs now agree that they do not have any actionable claims under the FLSA against Defendants.

3.    On November 22, 2006, the Parties agreed to settle this case, with each party paying their own costs and attorneys' fees. The precise settlement terms will be set forth in nine separate Confidential Settlement Agreements and General Releases ("Agreements") entered into between the Plaintiffs and Defendants. The Agreements will specifically note that Plaintiffs are waiving any claims under the FLSA and have been advised by their counsel that, even assuming, *arguendo*, they are "employees" under the Act, they do not have viable claims due to the outside sales and Motor Carrier exemptions.

4.    The Parties' Agreements are contingent upon the dismissal with prejudice of Plaintiffs' FLSA claims. Such dismissal is subject to the Court's approval. Upon Court

FBT001360

approval, the Parties will file a joint stipulation of dismissal, with prejudice, with regard to all claims in this lawsuit.

WHEREFORE, Plaintiffs and Defendants pray that the Court approve the dismissal, with prejudice, of Plaintiffs' FLSA claims, and enter the proposed Stipulated Order.

Respectfully submitted this 1st day of December 2006.

s/ David M. DeMaio
DAVID M. DeMAIO
Florida Bar No. 886513
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
701 Brickell Avenue
Suite 2020
Miami, Florida 33131
(305) 374-0506
(305) 374-0456 (fax)
david.demaio@ogletreedeakins.com

KEVIN P. HISHTA
Georgia Bar No. 357410
Admitted *Pro Hac Vice*
JOHN K. ANDERSON
Georgia Bar No. 017450
Admitted *Pro Hac Vice*
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
600 Peachtree Street, NE
Suite 2100
Atlanta, GA 30308
Telephone: (404) 881-1300
Fax: (404) 870-1732
Kevin.Hishta@ogletreedeakins.com
John.Anderson@ogletreedeakins.com

Counsel for Defendants

- 3 -

FBT001361

s/Robert M. Einhorn
Robert M. Einhorn
Florida Bar No. 858188
Michelle Odio
Zarco Einhorn Salkowski & Brito, P.A.
Bank of America Tower
100 Southeast 2nd Street
Suite 2700
Miami, FL 33131
Telephone: (305) 374-5418
Fax: (305) 374-5428

Counsel for Plaintiffs

- 4 -

FBT001362

### CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2006, I have served the Plaintiff with a

true and correct copy of the foregoing JOINT MOTION FOR COURT APPROVAL OF

DISMISSAL OF PLAINTIFFS' FLSA CLAIMS PURSUANT TO STIPULATED CONSENT

JUDGMENT, by placing same in the U.S. First Class Mail, postage prepaid and addressed as

follows:

Herman J. Russomanno
Robert J. Borrello
Russomanno & Borrello, P.A.
Museum Tower – Penthouse 2800
150 West Flagler Street
Miami, FL 33130

Robert Zarco
Robert M. Einhorn
Michelle Odio
Zarco Einhorn Salkowski & Brito, P.A.
Bank of America Tower
100 Southeast 2nd Street
Suite 2700
Miami, FL 33131

By:    s/ David M. DeMaio
DAVID M. DeMAIO
Florida Bar No. 886513

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
701 Brickell Avenue
Suite 2020
Miami, Florida 33131
(305) 374-0506
(305) 374-0456 (fax)
david.demaio@ogletreedeakins.com

- 5 -

FBT001363

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 05-21738-CIV-SEITZ/MCALILEY

KEITH D. QUARLES, CHARLES C.    )
LUTON, JOSEPH MAGILL, KEITH    )
SPELL, JOSE C. OCHOA, MARCUS    )
JOHNSON, EFRAIN SANTANA,    )
DANIEL LEON and SVEIN NYLUND,    )
   )
      **Plaintiffs,**    )
   )
v.    )
   )
FLOWERS FOODS, INC.,    )
FLOWERS BAKING CO. of    )
THOMASVILLE, LLC; FLOWERS    )
BAKING CO. of FLORIDA, LLC.,    )
FLOWERS BAKING CO. of MIAMI,    )
LLC., f/k/a FLOWERS BAKING CO.    )
of MIAMI, INC.    )
      **Defendants.**    )
   )

### ORDER

THIS MATTER is before the Court on the Parties' Joint Motion for Court Approval of

Dismissal of Plaintiffs' Fair Labor Standards Act Claims Pursuant to Stipulated Consent

Judgment. Having considered the motion and found the dismissal of Plaintiffs' FLSA claims to

be a fair and reasonable resolution, it is hereby ORDERED that Parties' Joint Motion for Court

Approval of Dismissal of Plaintiffs' FLSA Claims Pursuant to Stipulated Consent Judgment be

GRANTED.

DONE AND ORDERED, this _____ day of December 2006.

_____
U.S. DISTRICT COURT JUDGE

FBT001364

# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-21738-CIV-SEITZ/MCALILEY

KEITH D. QUARLES, CHARLES C.          )
LUTON, JOSEPH MAGILL, KEITH           )
SPELL, JOSE C. OCHOA, MARCUS          )
JOHNSON, EFRAIN SANTANA,              )
DANIEL LEON and SVEIN NYLUND,         )
                                      )
          Plaintiffs,                 )
                                      )
v.                                    )
                                      )
FLOWERS FOODS, INC.,                  )
FLOWERS BAKING CO. of                 )
THOMASVILLE, LLC; FLOWERS             )
BAKING CO. of FLORIDA, LLC.,          )
FLOWERS BAKING CO. of MIAMI,          )
LLC., f/k/a FLOWERS BAKING CO.        )
of MIAMI, INC.                        )
          Defendants.                 )
                                      )
                                      )

_____

## JOINT MEMORANDUM IN SUPPORT OF JOINT MOTION FOR COURT APPROVAL OF DISMISSAL OF PLAINTIFFS' FAIR LABOR STANDARDS ACT CLAIMS PURSUANT TO STIPULATED CONSENT JUDGMENT

Plaintiffs Keith Quarles, Charles Luton, Joseph Magill, Keith Spell, Jose Ochoa, Marcus

Johnson, Efrain Santana, Daniel Leon, and Svein Nylund, and Defendants Flowers Foods, Inc.,

Flowers Baking Co. of Thomasville, LLC, Flowers Baking Co. of Florida, LLC, and Flowers

Baking Co. of Miami, LLC (collectively "the Parties"), having reached a tentative confidential

agreement, now file this Joint Memorandum in Support of Joint Motion for Court Approval of

Dismissal of Plaintiffs' Fair Labor Standards Act Claims Pursuant to Stipulated Consent

Judgment and respectfully request this Court grant their Motion.

FBT001365

## I. Background

Plaintiffs filed a Complaint on June 7, 2005, which included allegations that they "routinely worked more than forty (40) hours per week" and that Defendants "intentionally and willfully did not pay Plaintiffs the minimum wage or overtime wages as required by the [Fair Labor Standards Act, 29 U.S.C. § 201 et seq.]."

On November 22, 2006, the Parties agreed to settle this case, with each party paying their own costs and attorneys' fees. The precise settlement terms will be set forth in nine separate Confidential Settlement Agreements and General Releases ("Agreements") entered into between the Plaintiffs and Defendants. The Agreements will specifically note that Plaintiffs are waiving any claims under the Fair Labor Standards Act ("FLSA" or "Act") and that they have been advised by their counsel that, even assuming, *arguendo*, they are "employees" under the Act, they do not have viable claims due to the outside sales and Motor Carrier exemptions. Each Agreement is contingent upon the dismissal with prejudice of Plaintiffs' FLSA claims.

## II. Argument

This Court is empowered to approve a waiver of claims brought under the FLSA contained within a settlement agreement and to enter a stipulated judgment reflecting such approval. *See Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1320 (S.D. Fla. 2005) (*citing* 29 U.S.C. § 216(c); *Lynn Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *Lynn's Food Stores, Inc.*, 679 F.2d at 1353 ("[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness"). *See also Duffy v. Land Cap Prop. Servs., Inc.*, No. 06-20263, 2006 U.S. Dist. LEXIS 76023, at *1 (S.D. Fla. Oct. 19, 2006) (a court "may approve the settlement [of FLSA claims] in

FBT001366

order to promote the policy of encouraging settlement of litigation") (*citing Lynn Food Stores, Inc.*, 679 F.2d 1350 at 1354).

"In reviewing a settlement of an FLSA private claim, a court must 'scrutiniz[e] the settlement for fairness,' and determine that the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Duffy v. Land Cap Prop. Servs., Inc.*, 2006 U.S. Dist. LEXIS 76023, at *1 (*quoting Lynn Food Stores, Inc.*, 679 F.2d 1350 at 1352-53).

The Parties submit that dismissal with prejudice of Plaintiffs' FLSA claims is a fair and reasonable resolution. First and foremost, as more fully detailed in Defendants' Motion for Partial Summary Judgment (With Incorporated Memorandum of Law), facts adduced during discovery revealed that Plaintiffs have no cognizable FLSA claims. Specifically, Plaintiffs are exempt from the overtime requirements of the FLSA pursuant to the Motor Carrier Act. *See* 49 U.S.C. § 31502; 29 C.F.R. § 782.1(a). Furthermore, Plaintiffs are exempt from both the minimum wage and overtime requirements of the Act as outside salesmen. *See* 29 U.S.C. § 213(a)(1). Plaintiffs now agree that they do not have any actionable claims under the FLSA against Defendants.

The fact that the Parties have been represented by counsel since the inception of this lawsuit and throughout settlement negotiations also demonstrates the fairness and reasonableness of the dismissal of Plaintiffs' FLSA claims. *See Duffy v. Land Cap Prop. Servs., Inc.*, 2006 U.S. Dist. LEXIS 76023, at *2 ("[a] settlement entered into...where both sides are represented by counsel throughout litigation 'is more likely to reflect a reasonable compromise of disputed issues'") (*quoting Lynn Food Stores, Inc.*, 679 F.2d 1350 at 1352-53). Settlement negotiations specifically included discussions regarding the non-viability of Plaintiffs' FLSA claims.

-3-

Finally, judicial approval of the dismissal of Plaintiffs' FLSA claims is further appropriate in that the Agreements specifically note that Plaintiffs are waiving any claims under the FLSA and have been advised by their counsel that, even assuming, *arguendo*, they are "employees" under the Act, they do not have viable claims due to the outside sales and Motor Carrier exemptions.

### III. Conclusion

The Parties respectfully request that, in light of the foregoing, the Court grant their Joint Motion for Court Approval of Dismissal of Plaintiffs' FLSA Claims Pursuant to Stipulated Consent Judgment. Upon Court approval, the Parties will file a joint stipulation of dismissal, with prejudice, with regard to all claims in this lawsuit.

WHEREFORE, Plaintiffs and Defendants pray that the Court approve the dismissal, with prejudice, of Plaintiffs' FLSA claims, and enter the proposed Stipulated Order.

Respectfully submitted this 1st day of December, 2006.

s/ David M. DeMaio
DAVID M. DeMAIO
Florida Bar No. 886513
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
701 Brickell Avenue
Suite 2020
Miami, Florida 33131
(305) 374-0506
(305) 374-0456 (fax)
david.demaio@ogletreedeakins.com

KEVIN P. HISHTA
Georgia Bar No. 357410
Admitted *Pro Hac Vice*
JOHN K. ANDERSON

- 4 -

FBT001368

Georgia Bar No. 017450
Admitted *Pro Hac Vice*
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
600 Peachtree Street, NE
Suite 2100
Atlanta, GA 30308
Telephone: (404) 881-1300
Fax: (404) 870-1732
Kevin.Hishta@ogletreedeakins.com
John.Anderson@ogletreedeakins.com

Counsel for Defendants


s/ Robert M. Einhorn
Robert M. Einhorn
Florida Bar No. 858188
Michelle Odio
Zarco Einhorn Salkowski & Brito, P.A.
Bank of America Tower
100 Southeast 2nd Street
Suite 2700
Miami, FL 33131
Telephone: (305) 374-5418
Fax: (305) 374-5428

Counsel for Plaintiffs

- 5 -

FBT001369

### CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2006, I have served the Plaintiff with a

true and correct copy of the foregoing MEMORANDUM and SUPPORTING DOCUMENTS,

by placing same in the U.S. First Class Mail, postage prepaid and addressed as follows:

Herman J. Russomanno
Robert J. Borrello
Russomanno & Borrello, P.A.
Museum Tower – Penthouse 2800
150 West Flagler Street
Miami, FL 33130

Robert Zarco
Robert M. Einhorn
Michelle Odio
Zarco Einhorn Salkowski & Brito, P.A.
Bank of America Tower
100 Southeast 2nd Street
Suite 2700
Miami, FL 33131

By:     s/ David M. DeMaio
        DAVID M. DeMAIO
        Florida Bar No. 886513

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
701 Brickell Avenue
Suite 2020
Miami, Florida 33131
(305) 374-0506
(305) 374-0456 (fax)
david.demaio@ogletreedeakins.com

- 6 -

FBT001370

# Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 05-21738-CIV-SEITZ/MCALILEY

KEITH D. QUARLES, *et al.*,

    Plaintiffs,

v.

FLOWERS FOODS, INC., *et al.*,

    Defendants.

_____/

### ORDER (1) GRANTING JOINT MOTION FOR APPROVAL OF DISMISSAL WITH PREJUDICE OF PLAINTIFFS' FLSA CLAIMS PURSUANT TO STIPULATED CONSENT JUDGMENT; (2) PROVIDING NOTICE OF COURT PRACTICE UPON SETTLEMENT; AND (3) CLOSING CASE

THIS CAUSE is before the Court based upon the parties' Joint Motion for Court Approval of Dismissal of Plaintiffs' FLSA Claims Pursuant to Stipulated Consent Judgment [DE-65]. The parties stated in paragraph 2 of the Joint Motion that "facts adduced during discovery revealed that Plaintiffs have no cognizable claims under the Fair Labor Standards Act (the "FLSA" or "Act") . . . Plaintiffs now agree that they do not have any actionable claims under the FLSA against Defendants." Thus, the settlement involves Plaintiffs' waiver of any claims under the FLSA and a specific provision stating that, even assuming that Plaintiffs were Defendants' employees under the Act, their counsel has advised them that they do not have viable claims because of the outside sales and Motor Carrier exemptions. The parties have advised the Court that each party shall bear his/its own attorneys' fees and costs. Accordingly, upon due consideration, it is hereby

ORDERED that:

(1) The parties' Joint Motion for Court Approval of Dismissal of Plaintiffs' FLSA Claims Pursuant to Stipulated Consent Judgment [DE-65] is GRANTED, the Court having found the dismissal with prejudice of Plaintiffs' FLSA claims to be a fair and reasonable resolution;

(2) By **January 5, 2007**, the parties shall file with this Court their Joint Stipulation of Dismissal

FBT001371

With Prejudice of All Claims in This Action, pursuant to Federal Rule of Civil Procedure 41(a).  If the

parties fail to file their Joint Stipulation, the Court shall dismiss this case with prejudice;

 (3)  All pending motions not otherwise ruled upon in this Order are DENIED AS MOOT; and

 (4)  This case is CLOSED for statistical purposes.

 DONE AND ORDERED in Miami, Florida, this 5th day of December, 2006.

       PATRICIA A. SEITZ
       UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record

-2-

FBT001372

# Exhibit G



RECEIVED
JAN - 8 2007

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-21738-CIV-SEITZ/MCALILEY

KEITH D. QUARLES, CHARLES C.          )
LUTON, JOSEPH MAGILL, KEITH           )
SPELL, JOSE C. OCHOA, MARCUS          )
JOHNSON, EFRAIN SANTANA,              )
DANIEL LEON and SVEIN NYLUND,         )
                                      )
        Plaintiffs,                   )
                                      )
vs.                                   )
                                      )
FLOWERS FOODS, INC.,                  )
FLOWERS BAKING CO. of                 )
THOMASVILLE, LLC; FLOWERS             )
BAKING CO. of FLORIDA, LLC.,          )
FLOWERS BAKING CO. of MIAMI,          )
LLC., f/k/a FLOWERS BAKING CO.        )
of MIAMI, INC.                        )
        Defendants.                   )
_____)

## JOINT STIPULATION OF DISMISSAL WITH PREJUDICE

KEITH D. QUARLES, CHARLES C. LUTON, JOSEPH MAGILL, KEITH SPELL,

JOSE C. OCHOA, MARCUS JOHNSON, EFRAIN SANTANA, DANIEL LEON, and SVEIN

NYLUND (collectively "Plaintiffs"), and Defendants, FLOWERS FOODS, INC., FLOWERS

BAKING CO. OF THOMASVILLE, LLC, FLOWERS BAKING CO. OF FLORIDA, LLC, and

FLOWERS BAKING CO. OF MIAMI, LLC f/k/a/ FLOWERS BAKING CO. OF MIAMI,

INC., by and through respective undersigned counsel, stipulate to dismiss this action with

prejudice, each party to bear its own attorneys' fees and costs.

Respectfully submitted,

**ZARCO EINHORN SALKOWSKI & BRITO, P.A.**
*Counsel for Plaintiffs*
Bank of America Tower
100 SE 2nd Street
Suite 2700
Miami, Florida 33131

By: _____
      **ROBERT M. EINHORN**
      Florida Bar No. 858118

**OGLETREE DEAKINS NASH**
   **SMOAK & STEWART, P.C.**
*Counsel for Defendants*
600 Peachtree Street, NE
Suite 2100
Atlanta, Georgia 30308

By: _s/Kevin P. Hishta___ w/p
      **KEVIN P. HISHTA**
      Georgia Bar No. 357410

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 05-21738-CIV-SEITZ/MCALILEY



KEITH D. QUARLES, *et al.*,

     Plaintiffs,

v.

FLOWERS FOODS, INC., *et al.*,

     Defendants.

_____/

### FINAL ORDER OF DISMISSAL WITH PREJUDICE

THIS MATTER is before the Court based on the parties' Joint Stipulation of Dismissal With

Prejudice [DE-68]. Upon due consideration, it is hereby

    ORDERED that:

    (1) This action is DISMISSED WITH PREJUDICE, with each party to bear his/its own

attorneys' fees and costs;

    (2) All pending motions not otherwise ruled upon are DENIED AS MOOT; and

    (3) This case remains CLOSED.

DONE AND ORDERED in Miami, Florida, this 5 day of January, 2007.

                    PATRICIA A. SEITZ
                    UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record

-1-

# Exhibit H

ORIGINAL

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

#### CASE NO. 05-21738-CIV-SEITZ/MCALILEY

KEITH D. QUARLES, CHARLES C.   )
LUTON, JOSEPH MAGILL, KEITH   )
SPELL, JOSE C. OCHOA, MARCUS   )
JOHNSON, EFRAIN SANTANA,   )
DANIEL LEON and SVEIN NYLUND,   )
  )
      Plaintiffs,   )
  )
vs.   )
  )
FLOWERS FOODS, INC.,   )
FLOWERS BAKING CO. of   )
THOMASVILLE, LLC; FLOWERS   )
BAKING CO. of FLORIDA, LLC.,   )
FLOWERS BAKING CO. of MIAMI,   )
LLC., f/k/a FLOWERS BAKING CO.   )
of MIAMI, INC.   )
      Defendants.   )
  )
  )

#### CONSENT PROTECTIVE ORDER

Whereas the parties having consented hereto as evidenced by their signatures hereon, IT
IS HEREBY ORDERED THAT:

1.    The parties may designate as confidential for the purposes of this Order
documents (paper and electronic), answers to interrogatories, deposition testimony, electronic
data and other information and/or materials produced through the discovery proceedings which
may contain confidential commercial information or individual personal information (as defined
below).

2.    Any information or material so designated shall be considered "Confidential
Information" for the purposes of this Order. Any information so designated which is obtained by
the parties through the discovery process shall be used by the receiving parties solely in



connection with this action and may not be used or disclosed except as provided for in this Order. Any such designation shall be without prejudice to the rights of the parties to apply to the Court for a determination of whether said designation is proper. Nothing in this Order shall be construed to adjudicate the actual confidentiality of any such material, but rather the Order is entered solely for the purpose of facilitating the discovery process in the above-styled litigation.

3.     For purposes of this Order:

        a.     "Commercial Information" shall be defined as information related to one's business, the public dissemination of which could cause a financial hardship for the producer of the information or might place the producer at a competitive disadvantage and could include, for example, trade secrets, sales and marketing information, profit information, manufacturing processes, customer lists, technical or research information, and internal financial information. The term "Commercial Information" shall not include (1) information which at or prior to disclosure thereof in this action is or was publicly accessible or in the public domain or which, after disclosure thereof to the persons bound by this Order, becomes public without action on their part; and (2) information which was rightfully possessed by the party receiving it prior to its production in the proceedings of this action.

        b.     "Individual Personal Information" shall mean personal employment or independent contractor information, including:

                (1)     the contents of personnel or distributor files;

                (2)     medical records;

                (3)     documents relating to specific complaints of misconduct where an employee or an independent distributor is identifiable; and

                (4)     any document that describes compensation, transfers, promotions, employment history, distributor history, benefits, disciplinary action or termination, performance issues, or similar information, where a specific employee or independent distributor is identifiable.

-2-

4.    The designation of discovery material as "Confidential Information" for purposes of this Order shall be made as follows:

a.    In the case of documents, answers to interrogatories, electronic materials produced in paper form, or other written materials (apart from depositions, other pretrial testimony, transcripts thereof and exhibits thereto) by stamping the term "Confidential" on the front page of each document. The producing party may designate a related group of documents, such as a personnel file or the medical records of a single individual, as confidential by bundling the documents together and stamping the term "Confidential" on the first page of the bundled documents. In lieu of marking originals, the producing party may mark copies of the documents that are produced or exchanged. With respect to electronic data or information, the notation "Confidential" shall be plainly marked on a label affixed to the disk, tape, or other medium on which the information is stored.

b.    In the case of depositions, other pretrial testimony, the transcripts thereof, and exhibits thereto, by a statement by counsel on the record or by written notice to opposing counsel.

5.    Whenever any Confidential Information is disclosed or used at a deposition or other pretrial testimony in this action, (i) each portion of any such testimony in which the Confidential Information is disclosed or used shall be conducted with only those persons in attendance who are authorized under this Order to have access to such Confidential Information, and (ii) the transcript of such confidential portion and all confidential exhibits shall be bound separately after transcription, marked "Confidential," and thereafter deemed to be fully subject to the provisions of this Order.

When filed with the Court by any party, all confidential documents as well as all motions, briefs, memoranda or other documents containing or referencing (in such manner that the Confidential Information may be revealed thereby) the Confidential Information shall either be redacted to prevent the Confidential Information from being revealed or filed pursuant to Local Rule 5.4 of the Southern District of Florida. If a party seeks to make a filing under seal pursuant

-3-

to Local Rule 5.4, the party filing the Confidential Information shall do so by delivering to the Clerk of Court:

a.    the original of the filing containing Confidential documents in a plain envelope marked "Sealed Document" and bearing the case number and style of this action;

b.    one (1) copy of the filing containing the Confidential documents in a separate plain envelope marked "Sealed Document" and bearing the case number and style of this action;

c.    the original and one copy of a motion to seal, including a copy of this Consent Protective Order;

d.    a completed copy of the Court's sealed document tracking form; and

e.    instructions to the Clerk of Court to destroy the sealed documents upon expiration of the Court's Sealing Order.

6.    Confidential Information which is identified as such as provided herein and is produced by a party may be disclosed by the other parties hereto and their counsel only to the following persons:

a.    to the Court at any pretrial or post-trial stage in this action, either in camera, or in a sealed envelope pursuant to Local Rule 5.4 of the Southern District of Florida, or under such other safeguards as this Court may require at any pretrial or post-trial hearing herein;

b.    to counsel for the parties in this action actually working on this action (including in-house counsel for the parties) and paralegals, legal assistants, and secretaries of such counsel actually working on this action;

c.    to any independent experts, consulting firms, or other independent contractors retained to advise or assist counsel for any party in the preparation or trial of this action, provided that such expert, consultant or contractor to whom the disclosure is to be made shall consent in writing (by executing the form of the Confidentiality Agreement attached hereto) to be bound by the terms of this Order;

-4-

       d.     to court reporters actually recording proceedings in this action provided that the court reporter consents in writing (by execution of the form of the confidentiality agreement attached hereto) to be bound by the terms of this Order;

       e.     to the parties themselves and to any employees, principals, partners, shareholders, or independent contractors of a party to whom the party's attorney reasonably believes disclosure is necessary in connection with preparation for discovery or trial in this action, provided that such employees, principals, partners, shareholders, or independent contractors consent in writing (by executing the form of the confidentiality agreement attached hereto) to be bound by the terms hereof;

       f.     to the author of the Confidential Information, the addressee(s) or other recipient(s) thereof, or any person employed in a confidential position by the party producing the Confidential Information at the time the confidential document was created and who in fact had access, or authority to access, the specific Confidential Information at issue;

       g.     to any witness or prospective witness in this action, provided, however, that any such witness or prospective witness consents in writing (by executing the form of the confidentiality agreement attached hereto) to be bound by the terms hereof;

       h.     to all persons deposed, but only if the deponent (1) is another party in this litigation who has consented to or is otherwise bound by the terms and restrictions of this Order; or (2) has, as a non-party, agreed in writing to be bound by the terms and restrictions of this Order and has executed the confidentiality agreement attached hereto; and

       i.     to other persons as agreed by the parties or as ordered by the Court.

     7.     If the deponent who is being provided confidential information is a non-party, it shall be the responsibility of the party taking the deposition to inform the deponent, prior to any question premised upon, containing or referencing Confidential Information (in such manner that the Confidential Information may be revealed thereby), that the questions may be premised upon, contain or reference information that has been designated as confidential and that is subject to this Order. If a deponent has not previously executed a confidentiality agreement, a copy of the

agreement and this Order shall be provided to the deponent or the deponent's counsel prior to such questioning and absent good cause for refusing to be bound by the terms and restrictions of this Order, the deponent shall execute the attached confidentiality agreement prior to such questioning.  If a deponent refuses to execute the Confidentiality Agreement, and if that deponent is subsequently provided Confidential Information during that deposition, then the deponent shall nevertheless be bound by the terms of said Confidentiality Agreement.  In such event, the party taking the deposition shall provide the deponent with a copy of the Confidentiality Agreement and advise the deponent that, pursuant to this paragraph, he or she is nevertheless bound by the terms of said Confidentiality Agreement.

8.      Nothing in this Order, however, shall prevent the use of any Confidential Information at trial or the disclosure of that information to any jury.  If any party believes that disclosure of the Confidential Information at any trial or hearing would be harmful to him, the party may apply to the Court for special handling of the Confidential Information at any trial or hearing.

9.      Nothing in this Order shall be construed as a waiver by either party of their right to object to any request for discovery.  This Order shall not be construed as an agreement by either party to produce any documents or to supply any information and shall not constitute an admission that any documents or information which may exist are relevant in any way to the issues raised in this or any other litigation or a waiver of any privilege or immunity with respect thereto.  Further, except as expressly provided herein, nothing in this Order is intended to limit any party's right to make use of or object to the use of such information under applicable rules of evidence.

10.     Upon request, all Confidential Information provided by any party during the course of this action, and all copies thereof, shall be promptly returned to the producing party at the conclusion of this action.  In addition, upon request, each party shall promptly destroy, in whatever form stored or reproduced, all of the materials that contain Confidential Information of another person or party at the conclusion of this action.  The party receiving a request to return or

-6-

destroy the above-referenced material may instead make the materials available to the requesting party for retrieval.

11.     If a party believes that information or material requested in discovery is of such a sensitive nature that it would not be adequately protected by this Order, that party shall remain free to move this Court for the entry of a more restrictive Protective Order, the right to so move not being waived or prejudiced by the entry of this Order. Moreover, the parties shall remain free to seek modification of this Order.

12.     Confidential documents, or information produced or disclosed during the litigation which the producing party did not designate as confidential at the time of production or disclosure, but which that party later desires to designate as confidential, may be so designated by notifying in writing each of the parties to whom the information was given. Each recipient of this notice shall then promptly stamp or mark the documents or information as confidential and notify all others to whom the recipient has conveyed the documents or information of its designation as confidential.     Once notified, each recipient shall treat the documents or information as confidential and subject to the terms and restrictions of this Order.

13.     Should any party object to the designation of any information as confidential, that party shall notify in writing the party producing the information of its objection. The producing and objecting party shall then confer and attempt in good faith to resolve the disagreement. Following this conference, if the disagreement remains, the party objecting to the confidentiality designation may apply to the Court for determination of whether the designated information should remain confidential; provided, however, that the party claiming confidentiality shall have the burden of proof as to the confidential nature of the information. Until the Court rules on the objecting party's application, any information which has been produced and designated as confidential shall be treated as confidential and subject to the terms and restrictions of the Order.

14.     Failure by any party to challenge a particular claim of confidentiality at the time the information is designated confidential shall not constitute a waiver of the right subsequently to challenge such claim of confidentiality.

-7-

15.    Nothing contained in this Order shall apply to:

a.    Information which at or prior to disclosure thereof in this action is or was publicly accessible or in the public domain or which, after disclosure thereof to the persons bound by this Order, becomes public without action on their part; and

b.    Information which was rightfully possessed by the party receiving it prior to its production in the proceedings of this action.

16.    Non-parties requested or compelled to produce documents or give depositions in this action may also designate documents as "Confidential Information" under the terms of this Order, deposition testimony or other information subject to the same procedures and limitations as applied to parties.

17.    The provisions of this Order shall continue to be binding upon conclusion of this action. The Court retains jurisdiction over the parties for enforcement of the provisions of this Order following conclusion of the action.

Dated this the 7th day of January, 2006.

**CONSENTED TO BY:**

KEVIN P. HISHTA
Georgia Bar No. 357410
Admitted *Pro Hac Vice*
**JOHN K. ANDERSON**
Georgia Bar No. 017450
Admitted *Pro Hac Vice*
**OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.**
600 Peachtree Street, NE
Suite 2100
Atlanta, GA 30308
(404) 881-1300
(404) 870-1732 (fax)
Kevin.Hishta@ogletreedeakins.com
John.Anderson@ogletreedeakins.com

**DAVID M. DeMAIO**
Florida Bar No. 886513
**OGLETREE, DEAKINS, NASH, SMOAK**

-8-

& STEWART, P.C.
Brickell Bayview Centre, Suite 1830
80 Southwest 8th Street
Miami, Florida 33130
(305) 374-0506
(305) 374-0456 (fax)
david.demaio@ogletreedeakins.com

**Counsel for Defendants**

**ROBERT ZARCO**
Florida Bar No. 502138
**ROBERT M. EINHORN**
Florida Bar No. 858188
**ZARCO EINHORN SALKOWSKI & BRITO,
P.A.**
Bank of America Tower
100 Southeast 2nd Street
Suite 2700
Miami, FL 33131
(305) 374-5418
(305) 305-374-5428 (fax)


**HERMAN J. RUSSOMANNO**
Fla. Bar No. 240346
**ROBERT J. BORRELLO**
Fla. Bar No. 764485
**RUSSOMANNO & BORRELLO, P.A.**
Museum Tower – Suite 2101
150 West Flagler Street
Miami, FL 33130
(305) 373-2101
(305) 373-2103 (fax)

**Counsel for Plaintiffs**


SO ORDERED this _(0th_ day of _march_ , 2006.


United States ~~District~~ Judge
MAGISTRATE

-9-

**EXHIBIT A**

**CONFIDENTIALITY AGREEMENT**

I hereby acknowledge that I may receive information designated as confidential by the party producing that information in discovery in the following action: Keith Quarles, et al. v. Flowers Foods, Inc., et al., In the United States District Court, Southern District of Florida, Case No.: 05-21738-CIV (the "Litigation").

I certify my understanding that if I receive Confidential Information it will be provided to me pursuant to the terms and restrictions contained in a Consent Protective Order ("Order") agreed upon by the parties in the Litigation. I further certify that I have been given a copy of and have read the terms of the Order and I agree to be bound by its terms.

I agree that the Confidential Information I receive shall not be disclosed to anyone else and that this information shall not be used for any purpose other than preparation of my testimony and/or review in preparation of my testimony, or so that I can provide my opinion, advice, recommendations regarding facts and/or issues related to this case, including, without limitation, discovery, motions, trial and/or appeal of the Litigation.

I understand that all documents that I receive containing information designated as confidential, and all working copies, computer data storage, digests or abstracts prepared from this material, are to remain in my personal custody until I have completed my assigned duties, *if* any, whereupon all such material and all notes made by me containing any of this confidential information are to be returned to the party or counsel who provided the confidential information to me.

I understand that any violation of the Order may subject me to sanctions by the Court. I further agree and do hereby submit myself to the jurisdiction of the Court for purposes of all matters concerning enforcement or violation of the Order.

Dated: _____

(Print Name)

(Signature)

(Address)

-11-

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES MORROW, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO: 3:07-cv-00617-MHT |
| v. | ) | |
| | ) | |
| FLOWERS FOODS, INC., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court is Defendants' Motion for Protective Order and/or Motion to Quash Subpoena ("Defendants' Motion for Protective Order"). (Doc. No. ___, filed April 29, 2008).

As this Court has previously stated in its Order dated November 27, 2007, and its Order dated April 23, 2008, "because the Court has not yet ruled on Plaintiffs' Motion to Conditionally Certify and Facilitate Class Notice (Doc. 32, filed September 21, 2007), this case only involves the current named parties and the allegations against them. Thus, discovery is also limited to those parties and subject matter." (Ct. Doc. Nos. 64; 102.)

It is well established that under Federal Rule of Civil Procedure 26(c)(4), the Court may "make any order which justice requires to protect a party or person from . . . undue burden or expense, including . . . that certain matters not be inquired into, or that the scope of the discovery or disclosure be limited to certain matters . . ." Fed. R. Civ. P. 26(c)(4). The subpoena Plaintiffs served on Zarco, Einhorn, & Salkowsi, which is the subject of Defendants' Motion for Protective Order, seeks underlying information and documents which do not pertain to or involve the named Plaintiffs. Therefore, Plaintiffs' subpoena seeks information that exceeds the permissible

scope of discovery at this time, as set forth in this Court's Orders. (Ct. Doc. Nos. 64; 102.)

For the above reasons, it is **ORDERED** that Defendants' Motion for Protective Order is

**GRANTED**.

Done this _____ day of _____, 2008.

_____